UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/SNOW

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

Plaintiff,

v.

CIRCUITRONIX LLC,

Defendant.
_____/

**DEFENDANT CIRCUITRONIX, LLC'S MOTION TO DISMISS**

This case should be dismissed because the Plaintiff, Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida"), did not mediate this dispute before filing suit, as required by the contract between the parties.

Benlida and the Defendant, Circuitronix LLC ("CTX"), are parties to a written contract governed by Florida law, the Standard Manufacturing And Representation Agreement ("Manufacturing Agreement").[1] Section 10.4 of the Manufacturing Agreement requires the parties to submit any controversy "aris[ing] out of or concerning the performance of this Agreement" to "mediation with an independent mediator" prior to litigation. Here, Benlida failed to mediate its claims prior to filing this case, and rejected good-faith efforts by CTX to mediate, as required by the Manufacturing Agreement.

---

[1] The Manufacturing Agreement is **Exhibit 1** to the contemporaneously filed supporting declaration of Chauncey D. Cole IV. The Manufacturing Agreement and other exhibits to the declaration are cited hereafter as "[Ex. ___]."

In addition, Benlida failed to join all required parties pursuant to Rule 19 of the Federal Rules of Civil Procedure. In particular, Benlida failed to join two foreign companies that are parties to the Manufacturing Agreement, ROK Printed Circuit Co., Ltd. ("ROK") and Circuitronix Hong Kong, Ltd. ("CTX-HK"). Despite having an essential role in this dispute, these foreign entities were omitted from Benlida's pleadings in an apparent effort to improperly invoke the Court's subject matter jurisdiction, despite the lack of complete diversity among the required parties.

Accordingly, Defendant, Circuitronix LLC ("CTX"), respectfully requests that the Court dismiss this action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

1. **Background**

Based in Fort Lauderdale, Florida, CTX specializes in the manufacture and distribution of printed circuit boards ("PCBs"), electrical components used in a variety of products, including automobiles, lighting fixtures, and security systems.[2] Benlida is one of several Chinese manufacturers CTX has contracted or partnered with over the years for the manufacture of its PCBs.

On March 1, 2012, Benlida and its foreign affiliate, ROK, entered into a written contract with CTX for the manufacture of PCBs, the Manufacturing Agreement. [Ex. 1].[3] Among other things, the Manufacturing Agreement provides covenants not to compete and exclusivity protections for CTX, as well as terms concerning sales and marketing, quality, pricing, payment,

---

[2] CTX also engages in additional lines of business that include plastic injection parts, mechanical and electronic components, electronic manufacturing services, and contract manufacturing.

[3] The parties subsequently entered into a Letter Agreement that added CTX-HK as an additional party to the Manufacturing Agreement. [Ex. 2].

delivery, and lead-time. [Ex. 1]. The Manufacturing Agreement also contains a section entitled "Dispute Resolution" that requires the parties to follow certain dispute resolution procedures prior to litigation. [Ex. 1 at pg. 7, § 10.4].

In the ensuing years following execution of the Manufacturing Agreement, the parties have conducted substantial business together, with payments from CTX to Benlida in excess of $70 million as of early 2021.

**2. Benlida's False And Constantly Shifting Claims**

As early as 2019, Benlida began making a series of false and contradictory claims against CTX, alleging that CTX owed Benlida money related to their ongoing business together. Despite CTX's best efforts to engage Benlida in good faith discussions to address its concerns, Benlida persisted in demanding additional payments from CTX without offering any specific explanation of justification for its position. In addition, Benlida's position constantly shifted and changed, seemingly with every discussion.

As discussions between CTX and Benlida continued, at various times Benlida would assert that it was owed sums ranging from approximately $1 million to $2.3 million, without providing any substantive basis for its shifting and contradictory claims. Throughout these discussions, CTX consistently pointed out the fact that all commercial records, banking records, as well as regular correspondence and communication between the companies, indicated that CTX had not only fully paid Benlida pursuant to the terms of the Manufacturing Agreement, but CTX maintained a significant *credit balance* due to *overpayments* that had accumulated over the course of the companies' relationship.[4]

---

[4] CTX further communicated that its position was even stronger than the base payment balance, in light of additional accumulated credits due to contractual lead-time violations by Benlida.

By September 2019, both parties had engaged outside counsel to discuss dispute resolution, including the possibility of an agreement to submit Benlida's claims to binding arbitration. Those discussions did not produce any agreement or resolution, and despite repeated invitations by CTX the dispute was never submitted to mediation. Perhaps the biggest obstacle to any resolution continued to be Benlida's inability to articulate the basis for its claims, or even settle on the specific amount of the claims. Nonetheless, the parties continued to conduct business together throughout 2019 and 2020.

Finally, on October 21, 2020, after undersigned counsel for CTX requested that Benlida set out its claim in writing, Benlida provided a draft complaint that asserted – for the first time – that Benlida was owed approximately *$5.3 million* by CTX due to a large number of unpaid invoices from "June 2019 through January 2020." [Ex. 3 at ¶¶ 194-195].

CTX quickly determined that this claim was flatly contrary to the facts, and easily refuted by the evidence. CTX assembled readily available evidence, including bank records showing regular monthly wire transfer payments to Benlida, as well as monthly reconciliation statements provided by CTX to Benlida, tying each of these payments to the specific invoices identified in Benlida's draft complaint. *See, e.g.,* [Ex. 4] (showing monthly payment from CTX of $1.2 million against monthly invoices from Benlida totaling $840,661.50). The monthly statements provided to Benlida by CTX not only show that CTX paid the invoices, but also that CTX accumulated *overpayments* that resulted in a substantial *credit balance* with Benlida. All of this information was then offered to Benlida's counsel.

After a period of silence, on January 8, 2021, Benlida provided a revised draft complaint, similarly asserting that CTX had failed to pay a large number of invoices, but now claiming that the amount owed was actually nearly *$13.7 million*, a dramatic increase of approximately *$8.4*

4

*million* from the claim described just two months earlier. [Ex. 5]  The new draft also included claims related to over 170 invoices issued to CTX-HK, rather than CTX.  [Ex. 5 at ¶¶ 259-429].

Once again, CTX quickly communicated to Benlida that the claims were contrary to the facts and the evidence, particularly wire transfer records, bank statements, and monthly reconciliations available to both companies. CTX also communicated its view that Benlida suddenly increasing its claim by over *$8 million* contributed to the strong impression that the claim is arbitrary and unjustified.  Nonetheless, CTX invited any further dialogue that would be helpful in achieving a resolution. [Ex. 6].

3.  **Section 10.4 of the Manufacturing Agreement – Dispute Resolution**

Section 10.4 of the Manufacturing Agreement requires the parties to follow dispute resolution procedures prior to filing suit.  The dispute resolution provision applies to "any controversy … aris[ing] out of or concerning the performance of this Agreement," and requires that any such controvery "shall" be submitted to "mediation with an independent mediator" prior to litigation.  [Ex. 1 at pg. 7, § 10.4].

The full text of Section 10.4 of the Manufacturing Agreement states as follows:

**10.4   Dispute Resolution**

(a) In the spirit of continued cooperation, the parties intend to and hereby establish the following dispute resolution procedure to be utilized in the event any controversy should arise out of or concerning the performance of this Agreement.

(b) It is the intent of the parties that any dispute be resolved informally and promptly through good faith negotiation between Manufacturer and Circuitronix. Either party may initiate negotiation proceedings by written notice to the other party setting forth the particulars of the dispute. The parties agree to meet in good faith to jointly define the scope and a method to remedy the dispute. If these proceedings are not productive of a resolution, then senior management of Manufacturer and Circuitronix are authorized to and will meet personally to confer in a bona fide attempt to resolve the matter.

5

> (c) Should any disputes remain existent between the parties after completion of the two-step resolution process set forth above, then the parties shall promptly submit any dispute to mediation with an independent mediator. In the event mediation is not successful in resolving the dispute, the parties may agree to submit the dispute to arbitration as provided by their respective jurisdiction.

[Ex. 1 at pg. 7, § 10.4].

### 4. Benlida Files Suit Without Mediation

Benlida filed the present civil action on January 19, 2021. [DE 1]. The Court dismissed Benlida's original complaint, as well as its First Amended Complaint, *sua sponte*, based on pleading deficiencies identified by the Court, particularly Benlida's failure to properly allege the Court's subject matter jurisdiction. [DE 4 and 7]. Benlida filed a Second Amended Complaint ("SAC") on February 1, 2021. [DE 9]. The SAC purports to assert claims for Breach Of Contract and Account Stated against CTX, and claims damages in the principal amount of $13,655,335.93. [DE 9 at ¶¶ 435, 443, 455].

At no time prior to the filing of this action, or the SAC, did Benlida submit this dispute to mediation with an independent mediator, as required by Section 10.4 of the Manufacturing Agreement. Benlida also rejected CTX's good faith invitations to mediate this dispute prior to the parties engaging in litigation. *E.g.*, [Ex. 7 at 1].

In addition, despite asserting claims related to more than 170 invoices directed to CTX-HK, Benlida's pleadings failed to name either CTX-HK or Benlida's foreign affiliate, ROK, as parties.

## ARGUMENT

### 1. Benlida Failed To Mediate As Required By The Manufacturing Agreement

A contract that requires mediation as a condition precedent to litigation requires dismissal of the action if the required mediation has not been conducted. *Mullales v. Aspen Am. Ins. Co.*,

No. 18-23661-CIV, 2018 WL 6270974, at *2 (S.D. Fla. Nov. 30, 2018).  Under Florida law, when "the parties' agreement requires mediation as a condition precedent to arbitration or litigation, the complaint must be dismissed." *3-J Hosp., LLC v. Big Time Design, Inc.*, No. 09-61077-CIV-MARRA, 2009 WL 3586830, at *2 (S.D. Fla. Oct. 27, 2009) (citing *Kemiron Atlantic, Inc. v. Aguakem Intern., Inc.*, 290 F.3d 1287 (11th Cir. 2002) (holding that plaintiff's failure to request mediation, which was a condition precedent to arbitration under the parties' contract, precluded enforcement of arbitration under the contract)); *see also Woods v. Holy Cross Hospital*, 591 F.2d 1164 (5th Cir. 1979) (dismissing medical malpractice action where mediation was a condition precedent to filing suit under state law).[5]

This case should be dismissed because Benlida, did not mediate this dispute before filing suit, as required by the contract between the parties.  Section 10.4 of the Manufacturing Agreement requires the parties to submit any dispute "aris[ing] out of or concerning the performance of this Agreement" to "mediation with an independent mediator" prior to litigation.  Section 10.4(c) unambiguously states that "Should any disputes remain existent between the parties after completion of the two-step resolution process set forth above, then the parties ***shall promptly submit any dispute to mediation with an independent mediator***." [Ex. 1 at pg. 7, § 10.4(c)] (emphasis added).  Here, Benlida failed to mediate its claims prior to filing this case, and rejected good-faith efforts by CTX to conduct mediation, as required by the dispute resolution procedures set forth in the Manufacturing Agreement.[6]

---

[5] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 & 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

[6] We note that although Benlida failed to specifically identify the Manufacturing Agreement in the SAC, or attach the contract to its pleading, the Court may consider the Manufacturing Agreement in ruling on this motion to dismiss without converting the motion into one for summary judgment

7

By prematurely filing this lawsuit without first attempting to mediate, Benlida has deprived CTX of the benefit of its bargain and prematurely burdened the Court and the parties. Accordingly, CTX respectfully requests that the case be dismissed. *Mullales*, 2018 WL 6270974, at *2; *see also 3-J Hosp., LLC*, 2009 WL 3586830, at *2.

### 2. Benlida Failed To Join All Required Parties Pursuant To Rule 19

Pursuant to Rule 12(b)(7) a court must dismiss a complaint if the plaintiff has failed to join a necessary and indispensable party under Rule 19. "When analyzing motions to dismiss premised upon the failure to join a required party, courts in the Eleventh Circuit utilize a two-step analysis." *Davis v. Raymond*, No. 12-22578-CIV, 2013 WL 2047424, at *3 (S.D. Fla. May 14, 2013). "First, they decide whether an absent party is required in the case under Rule 19." *Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*, No. 10-61856-CIV, 2011 WL 7807548, at *2 (S.D. Fla. July 26, 2011) (*citing Molinos Valle del Cibao v. Lama*, 633 F.3d 1330, 1344 (11th Cir.2011)). "If the party is a required party, the court must order that the person be made a party. Second, if the parties cannot join the new party, the court must consider if, 'in equity and good conscience, the action should proceed among the existing parties or should be dismissed.' When making this decision, courts look at the pleadings and affidavits as well as evidence introduced by the parties. *Int'l Importers, Inc.*, 2011 WL 7807548, at *2 (citations omitted).

"The first part of the test might be more clearly understood as involving two questions: whether the non-party should be joined and whether joinder is feasible. Where both a nonparty should be joined and joinder is feasible, the nonparty is 'required' or 'necessary' but not

---

because the Manufacturing Agreement is (1) central to the plaintiff's claim and (2) its authenticity is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002); *see also Darrin Cupo, D.M.D, P.A. v. Orthodontic Centers of Am., Inc.*, No. 07-23020-CIV, 2008 WL 11333239, at *4 (S.D. Fla. Jan. 15, 2008).

necessarily 'indispensable.' If so, then pursuant to Rule 19(a)(2), the Court must order that the person be made a party, rather than dismiss. Thus, dismissal for failure to join an indispensable party is only appropriate where the nonparty cannot be made a party." *Davis*, 2013 WL 2047424, at *4.

### a. ROK And CTX-HK Are Required Parties

Rule 19(a) requires the joinder of a person "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" if either:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
   (i) as a practical matter impair or impede the person's ability to protect the interest; or
   (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*Davis*, 2013 WL 2047424, at *4 (quoting Fed. R Civ. P. 19(a)(1)).

Here, all of the factors identified in Rule 19(a) support a finding that both ROK and CTX-HK are required parties. Both ROK and CTX-HK are parties to the Manufacturing Agreement and claim an interest in the subject matter of this action. In particular, the absence of ROK and CTX-HK from this case leaves both CTX and Benlida exposed to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

For example, in the SAC, Benlida purports to assert claims against CTX based on over 170 invoices issued to CTX-HK, not CTX. [DE 9 at ¶¶ 259-429]; *see also* [Ex. 8]. It is well settled that corporations, even closely related affiliate corporations, are not interchangeably liable for each other's debts and obligations. *See Beck v. Royale Harbour of N. Palm Beach Condo. Ass'n, Inc.*, No. 14-80611-CIV, 2014 WL 4782962, at *3 (S.D. Fla. Sept. 3, 2014) ("It is a general principle

9

of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."). However, even if CTX defeats these claims on the merits in this case, either Benlida or ROK could potentially attempt a second bite at the apple by seeking a recovery from CTX-HK in a subsequent lawsuit. Further, in the unlikely event that CTX is judged liable for these amounts in this case, Benlida or its affiliate, ROK, could seek a second windfall recovery on the same invoices from CTX-HK in a subsequent action. If the evidence in this case establishes that neither CTX or CTX-HK are liable to Benlida or ROK, without CTX-HK as a party to the action, Benlida or ROK could later seek a do-over in a subsequent action against CTX-HK.

Similarly, if the evidence in this case shows that money is owed by ROK to either CTX or CTX-HK, then without ROK as a party in this case, CTX and/or CTX-HK would be required to conduct a separate action against ROK, and ROK would have a second bite at the apple, with the potential for inconsistent results.

In addition, "a corporation does not have standing to assert claims belonging to a related or closely affiliated corporation simply because their businesses are intertwined." *Titan5 Holdings Ltd. v. Majuda Corp.*, No. 13-80130-CIV, 2013 WL 1664516, at *2 (S.D. Fla. Apr. 17, 2013) (*quoting Elandia Int'l, Inc. v. Koy*, No. 09-20588-CIV, 2010 WL 2179770, at *6 (S.D. Fla. Feb. 22, 2010)). Thus, without ROK and CTX-HK present in this action, there is the potential for either Benlida or CTX to obtain judgment on claims that properly belong to the absent corporate parties.

Finally, the entire controversy concerning the Manufacturing Agreement simply cannot be resolved completely among the existing parties, Benlida and CTX, without the other two parties to the Manufacturing Agreement, ROK and CTX-HK, present in the case. ROK and CTX-HK would not necessarily be bound by the results of the case, and could continue to assert claims and

rights inconsistent with those results. For all of these reasons, both ROK and CTX-HK are required parties pursuant to Rule 19.

### b. CTX-HK Cannot Be Joined And The Case Should Be Dismissed

It appears that Benlida's affiliate, ROK, can be joined in this action without destroying the Court's subject matter jurisdiction, which is founded upon allegations of diversity of citizenship. However, CTX-HK, a Hong Kong corporation, cannot be joined in this action without destroying complete diversity and depriving the Court of subject matter jurisdiction. *Impuls I.D. Int'l, S.L. v. Psion-Teklogix, Inc.*, 234 F. Supp. 2d 1267, 1273 (S.D. Fla. 2002) (foreign corporations on both sides of the cause of action violates the requirement of complete diversity and deprives the court of subject matter jurisdiction founded on diversity of citizenship); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 580 at n. 2 (1999)("The foreign citizenship of defendant Ruhrgas, a German corporation, and plaintiff Norge, a Norwegian corporation, rendered diversity incomplete"). Indeed, it appears that Benlida intentionally failed to add CTX-HK as a party in order to avoid the requirement of complete diversity and improperly invoke the Court's subject matter jurisdiction. On two prior occasions, the Court, on its own initiative, dismissed Benlida's complaint for failure to properly allege subject matter jurisdiction. [DE 4 and 7]. Benlida may also have perceived some form of tactical advantage if it were permitted to impose the alleged debts and obligations of an absent CTX-HK onto its US affiliate, CTX.

Because joinder of CTX-HK in this action is not feasible, the Court must consider whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Int'l Importers, Inc.*, 2011 WL 7807548, at *2 (quoting Rule 19(b)). "Rule 19(b) provides a list of factors the Court should consider in making this inquiry. The factors are: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the

existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non joinder." *Id.* at *10 (quoting Rule 19(b)).  These four factors are not exclusive. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 862 (2008).

Each of the factors set forth in Rule 19(b) strongly weighs in favor of dismissal of the case. For the same reasons noted above, a judgment rendered in the absence of CTX-HK would likely prejudice CTX-HK or the existing parties, including both CTX and Benlida.  Clearly, any judgment indicating that CTX-HK is liable to Benlida would present the danger of prejudice to CTX-HK.  Yet, even if both CTX and CTX-HK are judged not liable to Benlida, CTX-HK may face the real possibility of a second lawsuit targeting it with substantially the same claims. Similarly, in the absence of CTX-HK, there is a risk of a judgment against CTX for obligations properly attributable to CTX-HK, such as for the more than 170 CTX-HK invoices cited by Benlida in the SAC. [DE 9 at ¶¶ 259-429]; *see also* [Ex. 8]. There does not appear to be any extent to which the prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures.

Further, any judgment rendered in the absence of CTX-HK would not be adequate because it would not achieve a full resolution of the dispute related to the Manufacturing Agreement at issue in this case.  In particular, both ROK and Benlida could continue to assert claims against CTX-HK in a second suit, with a substantial risk of inconsistent results from any judgment in this case.

Finally, the last enumerated factor, whether the plaintiff would have an adequate remedy if the action were dismissed for non joinder, weighs decisively in favor of dismissal.  Benlida could

simply refile the same claims in Florida state court, with all the proper parties appropriately joined in the action.  Pursuant to Section 13.4 of the Manufacturing Agreement, the parties have agreed that venue is proper in the Florida state courts of Miami-Dade County.  [Ex. 1 at pg. 9, § 13.4]. Although some litigants do understandably prefer the formality, structure, and efficiency offered by the federal courts, there is certainly no question that Florida's Eleventh Judicial Circuit, in and for Miami-Dade County, is an adequate and appropriate forum for Benlida to have its day in court.

Accordingly, this case should also be dismissed for non joinder pursuant to Rule 19 and Rule 12(b)(7).

## CONCLUSION

For all of these reasons, CTX respectfully requests that the Court enter an Order granting this motion and dismissing this action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Dated: April 12, 2021                                                         Respectfully submitted

**CHAUNCEY COLE, PA**
*Counsel for Circuitronix, LLC*
9100 South Dadeland Blvd., Suite 1553
Miami, Florida 33156
Tel.:    (786) 497-7053

By: /s/ *Chauncey D. Cole IV*
Chauncey D. Cole, IV, Esq.
Florida Bar No. 102184
chauncey.cole@coletrial.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on April 12, 2021 as filed with the Clerk of the Court using CM/ECF.                    By:  /s/ *Chauncey D. Cole IV*
Chauncey D. Cole IV