UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/SNOW

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

Plaintiff,

v.

CIRCUITRONIX LLC,

Defendant.
_____/

**DEFENDANT CIRCUITRONIX, LLC'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

Plaintiffs' Third Amended Complaint [DE 26] (the "TAC") should be dismissed with prejudice. First, Plaintiffs admit that ROK Printed Circuit Co., Ltd. ("ROK"), has no claims against the Defendant, Circuitronix LLC ("CTX"). Plaintiffs' opposition brief concedes that "ROK ceased manufacturing and selling goods in 2018 and none of the invoices at issue concern ROK." [DE 28] at 9. Further, Plaintiffs' corporate representative, Huang Hanchao (aka "Douglas"), offers testimony under oath that "none of the invoices identified [in the TAC] are ROK invoices. Rather, Benlida issued all of the invoices. All of the moneys owed by CTX are owed to Benlida, not ROK." [DE 29-3] at 2, paragraph 4.

Thus, it is clear that the TAC, which improperly lumps ROK together with its separate affiliate corporation, Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida"), fails to state any claim on behalf of ROK. Indeed, Plaintiffs' filings make it clear that ROK does not even believe

1

that it has any claims against CTX. Accordingly, ROK's claims should be dismissed with prejudice.

Second, prior to joining this action as a plaintiff, ROK failed to mediate its claims against CTX as required by the parties' Standard Manufacturing And Representation Agreement ("Manufacturing Agreement"). In much the same way as the TAC attempts to take ROK along for the ride by improperly lumping it together with Benlida, Plaintiffs attempt to argue that ROK should be given credit for participating in the recent mediation between Benlida and CTX. These arguments are without merit. Further, ROK's failure to mediate with CTX prior to joining this lawsuit makes perfect sense in light of the fact that ROK does not even believe that it has any claims against CTX. That also explains why ROK was not included as a plaintiff in any of the first three iterations of the complaint. *See* [DE 1, 6, 9].

Finally, Plaintiffs argue that Circuitronix Hong Kong, Ltd. ("CTX-HK") is merely a nominal party that is not necessary and indispensable to this dispute, despite admitting that nearly *half of the invoices* that are the basis of the TAC were issued to CTX-HK, and not CTX. To support this argument, Plaintiffs rely almost entirely on a 2014 busines authorization document signed by CTX, in which CTX authorized CTX-HK to place orders on CTX's behalf, and CTX agreed to accept all debts due to those orders. *See* [DE 29-1] at 4-5 (the "2014 Authorization"). However, Plaintiffs fail to mention that the 2014 Authorization they identify was expressly superseded by contract in 2016, when the parties signed a Letter Agreement that formally added CTX-HK as an additional party to the Manufacturing Agreement. [DE 15-2]. Thus, by the time the earliest invoices identified in the TAC were issued, in 2018, the 2014 Authorization had already been superseded (*i.e.*, no longer in effect) for more than two years. Further, in 2018 Benlida requested that CTX sign an agreement to make payments for CTX-HK, and CTX declined that

2

request. (**Exhibit 1**, attached). The reality is that at the time Benlida issued the 2018, 2019, and 2020 invoices identified in the TAC, CTX-HK was itself a party to the Manufacturing Agreement, the 2014 Authorization was no longer in effect, Benlida knew that CTX had not agreed to make payments for CTX-HK, and CTX was not liable for the invoice obligations allegedly incurred by CTX-HK. Accordingly, CTX-HK is a necessary and indispensable party in this dispute and the TAC should be dismissed with prejudice in accordance with Rule 12(b)(7).

## ARGUMENT

### 1. Plaintiffs Admit That ROK Has No Claims Against CTX

We begin by noting that under Florida law, corporations and LLCs, even close corporate affiliates, are recognized as separate legal entities. *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074 (11th Cir.2003) ("Corporations are separate legal entities and contracts made by a parent corporation do not bind a subsidiary merely because one corporation owns all of the stock of the other corporation"); *see also Mendez v. JFK Med. Ctr. Ltd. P'ship*, No. 17-80866-CIV, 2018 WL 5045210, at *3 (S.D. Fla. Sept. 4, 2018) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation is not liable for the acts of its subsidiaries … Indeed, a parent corporation and its wholly-owned subsidiary are separate and distinct legal entities … As a separate legal entity, a parent corporation is not liable for torts committed by its subsidiary and cannot exercise the rights of its subsidiary.") (internal quotations and citations omitted); *Donnelly v. Kellogg Co.*, 293 F. Supp. 53, 55 (S.D. Fla. 1968) ("the two corporations are separate legal entities with separate legal identities. While there is some interlocking of management, both are independent, viable concerns, and under these circumstances it could not be said that the offices of [one] are also the offices of [the other].").

In addition, "a corporation does not have standing to assert claims belonging to a related or closely affiliated corporation simply because their businesses are intertwined." *Titan5 Holdings Ltd. v. Majuda Corp.*, No. 13-80130-CIV, 2013 WL 1664516, at *2 (S.D. Fla. Apr. 17, 2013) (*quoting Elandia Int'l, Inc. v. Koy*, No. 09-20588-CIV, 2010 WL 2179770, at *6 (S.D. Fla. Feb. 22, 2010)). Thus, under Florida law, the mere fact that two corporations are affiliates or subsidiaries "does not make the two corporations interchangeable for purposes of bringing or defending a lawsuit." *Am. Int'l Grp., Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 336 (Fla. Dist. Ct. App. 2004).

Here, the TAC attempts to erase the legal distinction between ROK and Benlida by improperly lumping them together, and then relying completely on allegations that, at best, only plausibly support claims by Benlida, and not by ROK. Rather than refuting this point, in all of Plaintiffs' filings in opposition to the motion to dismiss, they essentially acknowledge and admit that it is correct.

Plaintiffs' opposition brief concedes that "ROK ceased manufacturing and selling goods in 2018 and ***none of the invoices at issue concern ROK***." [DE 28] at 9 (emphasis added). Further, Plaintiffs' corporate representative offers testimony under oath that "none of the invoices identified [in the TAC] are ROK invoices. Rather, Benlida issued all of the invoices. ***All of the moneys owed by CTX are owed to Benlida, not ROK***." [DE 29-3] at 2, paragraph 4 (emphasis added).

Plaintiffs also state that ROK "is only named as a plaintiff herein because it is a signatory to the governing manufacturing agreement." [DE 28] at 3. However, being a party to an agreement, without more, is not sufficient to state a claim. Rather, a breach of contract claim requires allegations that the plaintiff suffered damages that were proximately caused by the defendant's

4

breach. *Crowley American Transport, Inc. v. Richard Sewing Machine Co.*, 172 F.3d 781, 784 (11th Cir. 1999). Here, the TAC contains no such allegations on behalf of ROK, except to the extent it improperly lumps ROK together with Benlida, ignoring the clear legal distinction between the two. Moreover, as Plaintiffs' filings make clear, ROK suffered no damages from the alleged breach because all moneys "are owed to Benlida, not ROK." [DE 29-3] at 2, paragraph 4.

Plaintiffs' filings go even further in proving that the TAC fails to state a claim on behalf of ROK and that ROK in fact has no claims against CTX. For instance, the declaration of Mr. Huang Hanchao states: "In fact, ROK ceased manufacturing and selling goods to CTX by mid 2018." *Id*. Plaintiffs' brief reiterates this point, stating that "ROK ceased manufacturing and selling goods in 2018." [DE 28] at 3.

Yet, the only claims set forth in the TAC are based on invoices from 2020, 2019, and very late in 2018, after ROK had already ceased operations. The earliest invoice to CTX listed in the TAC is from December 29, 2018. [DE 6] at paragraph 13. The earliest invoice to CTX-HK listed in the complaint is from December 18, 2018. *Id*. at paragraph 261. Both of these dates are *after* the time ROK supposedly ceased operations, "by mid 2018," according to the testimony of Plaintiffs' corporate representative. [DE 29-3] at 2, paragraph 4.

Thus, Plaintiffs admit that ROK ceased operations months before the first invoice listed in the TAC was even issued. Plaintiffs further admit that the invoices create no obligations for CTX to pay ROK, no rights for ROK to collect payment from CTX, and that ROK suffered no damages from CTX's alleged failure to pay. Accordingly, the TAC does not allege facts sufficient to state a claim on behalf of ROK.

Further, in light of Plaintiffs' own admissions, leave for ROK to amend would be futile given that ROK itself does not believe that it has any claims against CTX, none of the invoices at

issue create any liability from CTX to ROK, and all of the moneys allegedly owed "are owed to Benlida, not ROK." *Id*. For all of these reasons, ROK's claims should be dismissed with prejudice.

### 2. ROK Failed To Mediate As Required By The Manufacturing Agreement

A contract that requires mediation as a condition precedent to litigation requires dismissal of the action if the required mediation has not been conducted. *Mullales v. Aspen Am. Ins. Co.*, No. 18-23661-CIV, 2018 WL 6270974, at *2 (S.D. Fla. Nov. 30, 2018).

The simple fact is that prior to the filing of the TAC, ROK did not engage in any mediation with CTX. As stated in the motion to dismiss [DE 27], the only participants in the May 2021 mediation were Benlida and CTX. ROK did not appear or participate in any way.

Plaintiffs now attempt to argue around this obvious defect by once again improperly attempting to eliminate the clear legal distinction between ROK and Benlida. Plaintiffs argue that ROK should be given credit for participating in the recent mediation between Benlida and CTX because: (1) Huang Xiangjiang ("Mr. Huang") and Huang Hanchao ("Douglas"), who are allegedly principals and members of both Benlida and ROK, were both present during the mediation, and (2) after the first two days of mediation, but prior to the third and final day, Plaintiffs' counsel requested consent to amend the pleadings in this case to add ROK as a party.

Much like the allegations of the TAC, these arguments completely ignore the separate legal existence and legal distinction between the two corporations, ROK and Benlida, treating them as one and the same. These companies are not one and the same, and the law is clear that affiliated "[c]orporations are separate legal entities." *Whetstone Candy*, 351 F.3d at 1074. Further, a "corporation is a legal entity existing separate and distinct from its shareholders, officers, and directors." *Siegmund v. Xuelian*, No. 12-62539-CIV, 2016 WL 1359595, at *2 (S.D. Fla. Apr. 6, 2016), *aff'd sub nom. Siegmund v. Xuelian Bian*, 746 F. App'x 889 (11th Cir. 2018). Moreover,

the fact that companies may have overlapping shareholders, board members, or directors does not destroy the separate legal identity of those corporations, and "one of the basic tenets of corporate law is that shared directors and officers of parents and subsidiaries may hold the same position in both and 'change hats' to represent the two corporations separately." *Mendez v. JFK Med. Ctr. Ltd. P'ship*, No. 17-80866-CIV, 2018 WL 5045210, at *4 (S.D. Fla. Sept. 4, 2018).

Thus, the fact that Huang Xiangjiang and Huang Hanchao were present for mediation involving Benlida does not mean that ROK also participated in the mediation.[1]  Nor does the fact that counsel for Benlida requested to file a complaint on behalf of ROK shortly before the third and final day of mediation mean that ROK participated in mediation.[2]

Even if these gentlemen, or counsel, were authorized to mediate on behalf of ROK, they never did so.  At no time prior to the mediation was CTX, or the mediator, ever informed that ROK would be participating or that Benlida's lawyers and corporate representatives would also be appearing on behalf of ROK. Nor was any communication made during the mediation indicating that ROK would be joining the mediation.

When you actually step back and think about it, it makes perfect sense that ROK never attempted to mediate with CTX, never put CTX on notice of its claims in writing pursuant to Section 10.4 of the Manufacturing Agreement, or otherwise made any effort to follow the required dispute resolution protocols of Section 10.4.  It makes perfect sense because, as Plaintiffs admit in their opposition filings, ROK itself (unlike Benlida) does not even believe that it has any claims

---

[1] We note that, according to the allegations in the TAC, Benlida and ROK do not have identical ownership.  Benlida is allegedly owned, directly or indirectly, by 34 individuals; ROK only two.

[2] Further, nothing in CTX's response to that request, providing consent to file an amended complaint pursuant for purposes of Rule 15(a)(2), and given after mediation with Benlida had concluded, waived the requirement for ROK to mediate.  *See* attached **Exhibit 2**.

against CTX. That also explains why only Benlida, and not ROK, was listed as the only plaintiff in each of the *first three iterations* of Plaintiffs' complaint. [DE 1, 6, 9]. For this additional reason, ROK's claims should be dismissed.

### 3. Plaintiffs Failed To Join A Necessary And Indispensable Party, CTX-HK

Plaintiffs argue that CTX-HK is merely a "nominal party" that is not necessary and indispensable to this dispute, despite admitting that nearly *half of the invoices* that are the basis of the TAC were issued to CTX-HK, and not CTX. *See* [DE 29-3] at 2, paragraph 5 ("The 'CCT-BLD'-denominated invoices identified in paragraphs 13 through 260 of the third amended complaint are Benlida invoices issued to CTX; the *'BLDCCT-HK'-denominated invoices identified in paragraphs 261 through 431 are Benlida invoices that were issued to CTX-HK*") (emphasis added).

To support this argument, Plaintiffs rely almost entirely on the 2014 Authorization document signed by CTX, in which CTX authorized CTX-HK to place orders on CTX's behalf, and CTX agreed to accept all debts due to those orders. *See* [DE 29-1] at 4-5.

However, Plaintiffs fail to mention that the 2014 Authorization was expressly superseded by contract in 2016, when the parties signed a Letter Agreement that formally added CTX-HK as an additional party to the Manufacturing Agreement. [DE 15-2]. The Letter Agreement specifically states:

> This [Letter] Agreement and the [Manufacturing Agreement] represent the parties' full and complete understanding regarding the subject matter hereof. All prior agreements, covenants, representations or warranties, express or implied, oral or written, that refer or relate to the employment relationship have either been merged into this [Letter] Agreement and/or the [Manufacturing Agreement] or have been intentionally omitted therefrom. This [Letter] Agreement and the [Manufacturing Agreement] supersede any and all prior agreements or understandings between [CTX] and [Benlida and ROK].

8

*Id.* at 3, paragraph 6. This merger provision expressly superseded the 2014 Authorization, rendering it inoperative and without effect from July 21, 2016, the date of the Letter Agreement. *See, e.g., Comsof, N.V. v. Cigarette Racing Team, Inc.*, No. 01-4856-CIV-MOORE, 2002 WL 227034, at *3 (S.D. Fla. Jan. 25, 2002) (explaining that a "classic merger clause" precludes a party "from enforcing extraneous oral and written agreements"); *see also Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007) (a written contract containing a merger clause supersedes all prior representations and agreements).

Thus, by the time the earliest invoices identified in the TAC were issued, in December 2018, the 2014 Authorization had already been without effect for more than two years. Indeed, one of the primary reasons for entering into the Letter Agreement in 2016 was to formally add CTX-HK as a party to the Manufacturing Agreement, allowing CTX-HK to be a full participant, and eliminating any need for CTX to provide assurances for obligations incurred by CTX-HK.

We note that throughout their opposition filings, the Plaintiffs' greatly overstate the scope and effect of the 2014 Authorization, even during the period when it was in effect. At various times, Plaintiffs argue that the document shows that "CTX-HK was merely an agent of CTX" and that "CTX has agreed to be responsible for CTX-HK's debts and obligations." [DE 28] at 6.

The plain language of the document itself is much more limited than that. As the document states, CTX authorized CTX-HK to place orders with Benlida and ROK on CTX's behalf, and assumed all "debts *due to these orders*." [DE 29-1] at 4-5 (emphasis added). In other words, CTX agreed to pay for any orders placed by CTX-HK *on CTX's behalf*. *Id*. CTX never agreed to assume *all* of CTX-HK's debts and obligations generally, and CTX never agreed to assume CTX-HK's debts for orders that were *not placed on behalf of CTX*. Thus, even during the 2014 to 2016 period when the authorization was in effect, CTX-HK had the ability to place orders for itself that

9

were not on behalf of CTX, and for which CTX assumed no liability. Clearly, as of 2016 when CTX-HK itself became a party to the Manufacturing Agreement and the Letter Agreement, and the 2014 Authorization was expressly superseded, CTX-HK had the ability to place orders for itself and incur its own debts and obligations. [3]

Further, on October 5, 2018, Benlida – fully aware that CTX was not obligated to make payments for CTX-HK – requested that CTX sign an agreement to make payments for CTX-HK. **Ex. 1** (email attaching proposed agreement titled "The Letter of Authorization for Payment Entrust"). CTX declined that request, providing yet another clear indication that, after the 2016 Letter Agreement, CTX did not agree to make payments for CTX-HK.

The reality is that at the time Benlida issued the 2018, 2019, and 2020 invoices identified in the TAC, CTX-HK was itself a party to the Manufacturing Agreement, the 2014 Authorization was no longer in effect, Benlida knew that CTX had not agreed to make payments for CTX-HK, and CTX was not liable for the invoice obligations allegedly incurred by CTX-HK. Accordingly, CTX-HK is a necessary and indispensable party in this dispute and the TAC should be dismissed with prejudice in accordance with Rule 12(b)(7).

Finally, we note that the Plaintiffs fail provide any persuasive reason why this matter cannot be fully adjudicated, with all necessary parties present, in the state courts of Florida. The

---

[3] We note that although Plaintiffs failed to specifically identify the Manufacturing Agreement and the Letter Agreement in the TAC, or attach the contracts to its pleading, the Court may consider the contracts in ruling on this motion to dismiss without converting the motion into one for summary judgment because the contracts are (1) central to the plaintiff's claim and (2) their authenticity is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (c*iting Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002); *see also Darrin Cupo, D.M.D, P.A. v. Orthodontic Centers of Am., Inc.*, No. 07-23020-CIV, 2008 WL 11333239, at *4 (S.D. Fla. Jan. 15, 2008); *see also* [DE 29-3] at 1-2, paragraph 3 (Plaintiffs' corporate representative declaring: "Indeed, I was the signatory to the 2012 and 2016 agreements with CTX, having executed the agreements in behalf of both Benlida and ROK").

only reasons they cite are purported delays caused by the change in forum and the need to serve CTX-HK with process. However, a certain measure of delay is a small price to pay for the certainty of having a forum with jurisdiction to adjudicate the matter among all necessary parties. Further, any delays have been occasioned by Plaintiffs' own failure to give consideration to the limited subject matter jurisdiction of the federal courts. Plaintiffs have a readily available and easily accessible alternative forum to have their day in court, and there is no sound reason why they should ask this Court to proceed without an indispensable party such as CTX-HK, or proceed without the complete diversity required to establish subject matter jurisdiction.

## CONCLUSION

For all of these reasons, CTX respectfully requests that the Court enter an Order granting this motion and dismissing this action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Dated: July 6, 2021                                          Respectfully submitted

**CHAUNCEY COLE, PA**
*Counsel for Circuitronix, LLC*
9100 South Dadeland Blvd., Suite 1553
Miami, Florida 33156
Tel.:   (786) 497-7053

By: */s/ Chauncey D. Cole IV*
Chauncey D. Cole, IV, Esq.
Florida Bar No. 102184
chauncey.cole@coletrial.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on July 6, 2021 as filed with the Clerk of the Court using CM/ECF.         By: */s/ Chauncey D. Cole IV*
                                                                     Chauncey D. Cole IV