UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/SNOW

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

Plaintiff

v.

CIRCUITRONIX, LLC,

Defendant
_____/

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S THIRD AMENDED COMPLAINT AND
DEFENDANT'S COUNTERCLAIM**

**ANSWER**

Defendant, Circuitronix, LLC ("CTX"), through undersigned counsel, hereby answers Plaintiff's Third Amended Complaint [DE 26] as follows:

1. ADMITTED that Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida") is a corporation formed under the laws of, and with its principal place of business in, the People's Republic of China. As to the remaining allegations, CTX lacks knowledge or information sufficient to form a belief about the truth of the allegations, and they are therefore DENIED.

2. CTX lacks knowledge or information sufficient to form a belief about the truth of the allegations, and they are therefore DENIED.

3. ADMITTED that ROK Printed Circuit Co. Ltd. ("ROK") is a corporation formed under the laws of, and with its principal place of business in, the People's Republic of China. As to the remaining allegations, CTX lacks knowledge or information sufficient to form a belief about the truth of the allegations, and they are therefore DENIED.

1

4. CTX lacks knowledge or information sufficient to form a belief about the truth of the allegations, and they are therefore DENIED.

5. ADMITTED

6. ADMITTED

7. ADMITTED

8. DENIED

9. ADMITTED that the Court has jurisdiction under 28 U.S.C. § 1332 based on Plaintiff's allegations, otherwise DENIED.

10. ADMITTED

11. DENIED

12. DENIED

13 – 431. DENIED

432. ADMITTED

433. ADMITTED that in December 2016 the parties discussed and partly agreed upon parameters for certain pricing adjustments, both increases and decreases, based upon various factors including lead time, production volume, and shipment volume, among other things. DENIED in all other respects.

434. DENIED

435. DENIED

436. DENIED

437. DENIED

438 – 445. DENIED

446. CTX repeats its responses to the prior allegations.

447. ADMITTED that CTX ordered goods from Plaintiff pursuant to the terms of the parties' contract, DENIED in all other respects.

448. ADMITTED that CTX agreed to pay the purchase price specified by the parties' contract and subject to its terms and conditions, including quality, delivery, and lead-time, among other things, and amounts stated in invoices subject to these considerations. DENIED in all other respects.

449. DENIED

450. ADMITTED

451. DENIED

452. DENIED

453. DENIED

454. DENIED

455. DENIED

456. DENIED

457. DENIED

## GENERAL DENIAL

All allegations not specifically admitted or explained herein are denied and strict proof is demanded and required. CTX specifically denies all allegations in the Plaintiff's wherefore clause, judgment demand, and prayer for relief, and denies that Plaintiff is entitled to any relief on any of its claims.

## AFFIRMATIVE DEFENSES

1. **FIRST AFFIRMATIVE DEFENSE**: SETOFF AND RECOUPMENT – Defendant asserts that the Plaintiff owes money or other valuable consideration to the Defendant,

and has not properly credited payments made by the Defendant, and that as a result the Defendant owes less than the amount claimed by the Plaintiff. Not only has CTX paid the alleged debt in full, CTX has provided Plaintiff with millions of dollars in advance payments, and has paid Plaintiff and its affiliate, ROK Printed Circuit Co. Ltd., in excess of $70 million. CTX maintains a significant credit balance due to overpayments that have accumulated over the course of the companies' relationship. As a result, both Plaintiff and ROK owe Defendant millions of dollars.

2.    **SECOND AFFIRMATIVE DEFENSE**: ACCORD AND SATISFACTION – Defendant asserts that the alleged account, debt, or contract has already been satisfied, the Plaintiff having received full satisfaction, as Defendant has paid the full amount owed under the parties' agreement or, as to some invoices, the Plaintiff has agreed to settle for less than the amount stated on the face of the invoice, and the Defendant has paid this amount. CTX maintains a significant credit balance due to overpayments that have accumulated over the course of the companies' relationship. As a result, both Plaintiff and ROK owe Defendant millions of dollars.

3.    **THIRD AFFIRMATIVE DEFENSE**: STATUTE OF LIMITATIONS – The recovery in this case is barred by the statute of limitations, Florida Statute § 95.11. In particular, the statute bars any recovery for breach of a written contract after 5 years, and for breach of a verbal contract or account stated after 4 years. This case was filed on January 19, 2021. Although Plaintiff only asserts claims for unpaid invoices from 2018 to 2019, in reality Plaintiff is seeking to justify these false claims by asserting that the money Defendant paid for these invoices was used by Plaintiff to pay alleged debts from many years ago, prior to January 19, 2017 and prior to January 19, 2016. Thus, to the extent Plaintiff is seeking to recover for these older claims, or attempting to make an end run around the statute of limitations by tying payments for 2018 and 2019 invoices to older claims, the recovery is barred by § 95.11.

4. **FOURTH AFFIRMATIVE DEFENSE**: LACHES – The Defendant asserts that the Plaintiff has waited an unreasonably long time to file this lawsuit, and Defendant's ability to defend the lawsuit has been unduly prejudiced by this unreasonable delay by denying Defendant access to documents and other physical evidence, and witnesses with a reasonably fresh recollection of the events underlying this lawsuit.

5. **FIFTH AFFIRMATIVE DEFENSE**: WAIVER AND RELEASE – The Defendant asserts that the Plaintiff specifically represented to the Defendant that the sums now claimed by the Plaintiff, and sums for prior invoices, were paid by the Defendant, or that a substantially smaller amount was owed. Plaintiff has, through its actions and representations, waived and released its right to sue on these amounts and therefore cannot sustain this action.

6. **SIXTH AFFIRMATIVE DEFENSE**: EQUITABLE ESTOPPEL – The Defendant asserts that the Plaintiff specifically represented to the Defendant that the sums now claimed by the Plaintiff, and sums for prior invoices, were paid by the Defendant, or that a substantially smaller amount was owed. The Defendant reasonably relied upon these representations to its detriment by continuing to do business with Plaintiff, and continuing to make additional payments and advance additional sums of money, which Plaintiff now fails to credit to Defendant's account. Defendant requests that the Court decide this case as though Plaintiff's prior representations were true.

7. **DEFENSES RESERVED**: – The foregoing affirmative defenses are raised by Defendant without waiver of any other defenses that may come to light during the discovery proceedings in this case or otherwise. Defendant hereby reserves the right to amend or supplement its answer and to assert any other related defenses as they become available.

## **DEMAND FOR JURY TRIAL**

Defendant demands a jury trial on all matters so triable.

## **PRAYER FOR RELIEF**

Wherefore, Defendant requests that the Court enter judgment in favor of Defendant, Circuitronix, LLC, and against Plaintiff, as to all causes of action, and that the Court award Defendant its attorneys' fees and costs.

\*\*\*

## COUNTERCLAIM

Defendant / Counterclaim Plaintiff, Circuitronix, LLC ("CTX") sues Plaintiff / Counterclaim Defendant, Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida"), and alleges:

## INTRODUCTION

1. This is an action by CTX against Benlida for breach of contract and breach of fiduciary duty.

2. CTX and Benlida are parties to a written contract governed by Florida law, the Standard Manufacturing And Representation Agreement, dated March 1, 2012 (the "Manufacturing Agreement"). [DE 15-1]. The contract concerns the manufacture, distribution and sale of printed circuit boards ("PCBs"), related electronic and industrial components, and related contract manufacturing work and services.

3. The parties subsequently entered into a Letter Agreement, dated July 21, 2016, that added Circuitronix Hong Kong, Ltd. ("CTX-HK") as an additional party to the Manufacturing Agreement, among other things. [DE 15-2].

4. CTX and Benlida also entered into an express fiduciary relationship, with Benlida acting as CTX's agent. [DE 15-2 at ¶ 3]. Accordingly, Benlida undertook contractual, common law, and statutory duties of good faith, fair dealing, loyalty, and care. *Id*.

5. Over a period of years, Benlida materially breached its contract with CTX and violated applicable law by, among other things, failing to adhere to its promises, materially breaching contractual terms governing pricing, delivery, and payment, and materially breaching its fiduciary duties by accepting and retaining, but failing to properly credit, millions of dollars in payments made by CTX.

## PARTIES

**CTX**

6. CTX is a Florida limited liability company with its corporate headquarters and principal place of business in Fort Lauderdale, Florida.

7. CTX specializes in the manufacture, sale and distribution of PCBs for a variety of applications, including automotive, industrial, lighting, and security systems. It also engages in a variety of other lines of business, including contract manufacturing, electronic manufacturing services, plastic injection molded parts, rubber parts, metal parts, PCBA (printed circuit board assembly), and polymer thick film technology for laminate substrates.

8. Rishi Kukreja is the sole member of CTX, and is a citizen of Florida.

**BENLIDA**

9. Benlida is a corporation formed under the laws of, and with its principal place of business in, the People's Republic of China. [DE 26 at ¶¶ 1-2].

10. Benlida is engaged in the business of manufacturing PCBs and providing contract manufacturing related work and services involving PCBs.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 and § 1367.

12. This diversity action involves damages in excess of $75,000 and is between a citizen of Florida and citizens or subjects of a foreign state.

13. Venue is proper in this district under 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Florida. Further, Benlida contractually agreed to irrevocably submit to jurisdiction and venue in this district.

14. All conditions precedent to bringing this action have occurred or have been waived.

## GENERAL ALLEGATIONS

**BACKGROUND**

15. CTX is an American business that specializes in the global manufacturing, sale and distribution of PCBs for a variety of applications, including automotive, industrial, lighting, and security systems, among other things.

16. Benlida is a foreign PCB manufacturing company that owns, operates or contracts with PCB factories located in the People's Republic of China.

17. A printed circuit board is a physical base made for connecting, supporting, and stabilizing electronic components. PCBs are primarily made of a material that does not conduct electricity, such as plastic or fiberglass. Material that conducts electricity, such as copper or gold, is then etched (set in thin lines) either inside the board between the layers of non-conductive material, or on the surface of the board. This enables the flow of electricity. Electronic components are then attached to the PCB. The conductive metal etched into the PCB allows electricity to travel from one component to another in electrical circuits.

18. PCBs are used in almost all computers and electronic devices today, with a global market of over $60 billion per year.

**THE MANUFACTURING AGREEMENT**

19. Benlida, and its foreign affiliate ROK Printed Circuit Co., Ltd. ("ROK") entered into a written contract with CTX, titled the Manufacturing Agreement, for the sale, marketing, manufacturing and distribution of PCBs and related components and services. *See* DE 15-1.

20. Under the terms of the Manufacturing Agreement, the "Product" to be marketed, manufactured and sold included "any contract manufacturing related work or services provided

9

by Manufacturer [i.e., Benlida or ROK] or any associated entities." *See Id.*, at § 1.1.

21. Pursuant to the Manufacturing Agreement, CTX agreed to purchase PCBs from Benlida and perform global sales and marketing for PCBs on an exclusive basis for specific customers identified or introduced by CTX. *See Id.*, at §§ 1.1 – 1.7.

22. In return, Benlida agreed to manufacture the Product for CTX and the exclusive customers identified by CTX. *See Id.*

23. Benlida also agreed that it would accept and fulfill purchase orders for CTX and customers identified by CTX based on the pricing matrix and delivery terms agreed upon by the parties in the contract. *See Id.*, at §§ 2.1 – 3.5.

24. Under the contract, any proposed price increase requires no less than four months of prior written notice, and such proposed increases are required to be justified by an increase in the cost parameters set forth in the pricing matrix. *See Id.*, at § 2.2.

25. Benlida further agreed not to do business, directly or indirectly, with any customers identified by CTX (defined in the Manufacturing Agreement as either "Identified Potential Customers" or "Exclusive Circuitronix Customers"), other than through CTX. In other words, Benlida agreed not to circumvent CTX by selling products directly to the customers obtained through the work of CTX. *See Id.*, at § 1.6.

26. Benlida further agreed not to disclose or make any commercial use of confidential information or trade secrets of CTX, without its prior written consent, recognizing that immediate and irreparable damage would result from a breach. *See Id.*, at § 8.1.

27. By entering into the subsequent Letter Agreement, Benlida expressly agreed to act as the agent of CTX for purposes of manufacturing products for CTX and its exclusive customers. *See* [DE 15-2] at § 3.

28. Pursuant to the Letter Agreement, Benlida expressly acknowledged and agreed to undertake fiduciary duties including "a contractual, common law and statutory duty of good faith, fair dealing, loyalty, and care." *See* [DE 15-2] at § 3. Benlida further agreed that it "shall subordinate and refrain from acting on any of its desires that may adversely affect CTX USA's interests." *Id*.

**CTX'S PERFORMANCE, PAYMENTS, AND CREDIT BALANCE**

29. In the ensuing years following execution of the Manufacturing Agreement, the parties have conducted substantial business together, with payments from CTX to Benlida and ROK in excess of $70 million as of early 2021.

30. CTX's payments have been made by numerous regular monthly wire transfers from bank accounts held by CTX to accounts specified by Benlida. In some cases, Benlida has instructed CTX to make payments for Benlida invoices to its affiliate, ROK.[1] These monthly wire transfers have resulted in CTX paying Benlida and ROK millions of dollars annually, and tens of millions over the course of the parties' business relationship.

31. In addition to making payments, CTX provides Benlida with a monthly reconciliation statement that shows: (1) the amount paid by CTX that month, (2) the invoices that are being paid, (3) the credit balance of CTX's account, and (4) the banking records confirming the payment amounts. *See*, *e.g*., DE 15-4.

32. Often, the monthly wire payments made by CTX to Benlida *exceed* the amount of monthly invoices, resulting in a credit balance in favor of CTX that carries over to the

---

[1] At various times, Benlida has indicated that it and its affiliates were not in compliance with the tax and customs law of the People's Republic of China, due to not reporting contractual and mutually accepted credit notes that had been provided, causing income to be overstated, and was moving funds between Benlida and ROK in an effort to rectify this problem. We believe that this lawsuit is partly an effort to justify some of those actions.

following month. *See Id*. (showing monthly payment from CTX of $1.2 million against monthly invoices from Benlida totaling only $840,661.50).

33. In fact, since August, 2019, CTX has *prepaid* for all orders with Benlida and ROK, meaning that all purchase orders and invoices have been *paid in full even before* Benlida or ROK ship the product to CTX.

34. Thus, CTX has not only fully and timely paid Benlida and ROK for all shipments and invoices pursuant to the terms of the Manufacturing Agreement and Letter Agreement, but CTX currently maintains a significant *credit balance* due to *overpayments* that have accumulated over the course of the companies' relationship. This fact is confirmed by commercial records, banking records, as well as regular correspondence and communication between the companies, all of which demonstrate that CTX has substantially overpaid both Benlida and ROK, each by an amount in excess of $1 million.

35. Further, CTX's credit balance is even higher than these base payment balances, because of additional accumulated credits due to contractual lead-time violations by Benlida and ROK. Pursuant to the parties' agreements, late shipments by Benlida and ROK, beyond the contractually specified lead-time, result in specified price discounts agreed to by the parties (referred to in the industry as "lead-time penalties"). The amount of the price discount depends on the length of the lead-time violation, with longer delays resulting in higher price discounts according to the parties' agreement.

36. However, Benlida fails to recognize CTX's overpayments and resulting credit balance, and in fact now claims that CTX has not paid hundreds of invoices and owes Benlida enormous sums of additional money. [DE 26].

**BENLIDA'S BREACHES**

37. Benlida has materially breached several provisions of the Manufacturing Agreement and Letter Agreement, including terms governing pricing, delivery, and payment.

38. In addition, Benlida has materially breached its fiduciary duties to CTX, including the duty of loyalty, by accepting and retaining, but failing to properly credit, millions of dollars in payments made by CTX. Benlida has further breached its fiduciary duties to CTX by improperly demanding advance prepayments, overpayments, and payment premiums, in excess of the contractual price terms agreed by the parties, and threatened to cancel deliveries or shut down production if CTX failed to comply with these improper demands.

39. In particular, after signing the Manufacturing Agreement, Benlida repeatedly and systematically began breaching the contract by, among other things:

   a. improperly demanding price increases that are contrary to the terms of the Manufacturing Agreement, specifically Sections 2.1 and 2.2. In particular, Benlida is required to provide written notice at least 4 months in advance of any proposed price change, and continue fulfilling orders under the original agreed price terms during that entire period. Further, any proposed price change "must be justified by demonstrating a price increase in the parameters which form the base of the Pricing Matrix." *See* [DE 15-1], at § 2.2. Contrary to the terms of the Manufacturing Agreement, Benlida has demanded exorbitant price increases without providing written notice at least 4 months in advance. Further, Benlida has not demonstrated that these proposed increases are justified by corresponding increases in the parameters that form the Manufacturing Agreement's pricing matrix. Benlida has improperly demanded these price increases and refused to perform under the price terms included in the Manufacturing Agreement.

   b.  failing to fulfill contractually required lead times in accordance with Section 3 of the Manufacturing Agreement. At least 250 orders from December, 2016, to 2021, have been delivered beyond the required lead time, in material breach of the delivery requirements of the Manufacturing Agreement. Benlida's failure to deliver on time pursuant to the contract has resulted in contractual lead-time penalties in excess of $1 million.

   c.  by accepting and retaining, but failing to properly credit, millions of dollars in payments made by CTX, in violation of Section 4 of the Manufacturing Agreement, as well as the fiduciary duty clause memorialized in Section 3 of the Letter Agreement. In particular, despite the fact that CTX maintains a credit balance of over $1 million due to accumulated overpayments with Benlida, which Benlida has accepted and retained, and despite the fact that CTX has ***fully paid for all of the invoices*** identified in Benlida's Third Amended Complaint [DE 26], Benlida refuses to recognize or credit these payments and falsely claims that these hundreds of invoices have not been paid and that CTX owes Benlida additional millions.

   d.  by repeatedly demanding prepayments, advance payments, and payment premiums, in violation of Section 2 and Section 4 of the Manufacturing Agreement, as well as Section 3 of the Letter Agreement, and threatening to cancel orders or halt production unless CTX complied with Benlida's improper demands.

   e.  disclosing CTX's confidential information and trade secrets, including pricing information, to other PCB suppliers and manufacturers in China, in violation of Section 8 of the Manufacturing Agreement and Section 3 of the Letter Agreement as part of a coordinated effort to get multiple PCB suppliers to gang up on CTX and demand higher prices and other commercial concessions.

40. Further, Benlida has materially breached its fiduciary duties by, among other things:

 a. improperly demanding price increases that are contrary to the terms of the parties' agreements, in violation of its fiduciary duties of good faith, fair dealing, loyalty and due care.

 b. failing to fulfill contractually required lead times, in violation of the fiduciary duty of due care.

 c. by accepting and retaining, but failing to properly credit, millions of dollars in payments made by CTX in violation of its fiduciary duties of good faith, fair dealing, loyalty and due care.

 d. demanding improper prepayments, advance payments, and payment premiums and threatening to cancel orders or halt production unless CTX complies with these improper demands, in violation of its fiduciary duties of good faith, fair dealing, and loyalty.

 e. communicating and corresponding with other PCB suppliers and manufacturers in China in a coordinated effort to get multiple PCB suppliers to gang up on CTX and demand higher prices and other commercial concessions in violation of its fiduciary duties of good faith, fair dealing, and loyalty.

41. These breaches of contract and Benlida's fiduciary duties are continuing in nature and recurrent and have resulted in damages to CTX that exceed $1 million.

## COUNT I (BREACH OF CONTRACT)

42. CTX realleges Paragraphs 1 through 41.

43. Benlida entered into valid, binding and enforceable written contracts with CTX (the Manufacturing Agreement and the Letter Agreement).

44. Benlida materially breached these contracts (*see supra* ¶¶ 37-41).

45. Benlida's breaches have caused damage to CTX in excess of $75,000.

46. CTX is entitled to recover its damages against Benlida, including attorneys' fees and costs pursuant to Section 13.5 of the Manufacturing Agreement.

WHEREFORE, CTX requests the Court to enter judgment in its favor and against Benlida, for damages, pre-judgment and post-judgment interest, attorneys' fees and costs, injunctive relief, and such further relief as the Court deems just and appropriate.

## COUNT II (BREACH OF FIDUCIARY DUTY)

47. CTX realleges Paragraphs 1 through 41.

48. Benlida owed contractual, common law, and statutory fiduciary duties to CTX, including duties of good faith, fair dealing, loyalty, and care.

49. Benlida's fiduciary duties are expressly recognized and agreed in Section 3 of the Letter Agreement. Further, by accepting and retaining substantial overpayments and prepayments made by CTX, Benlida became obligated to safeguard those funds for the benefit of CTX as its fiduciary and not take possession of those funds or expend them for its own benefit.

50. Benlida materially breached its fiduciary duties (*see supra* ¶¶ 37-41).

51. Benlida's breaches of fiduciary duty have caused damage to CTX in excess of $75,000.

52. CTX is entitled to recover its damages against Benlida, including punitive damages, and attorneys' fees and costs pursuant to Section 13.5 of the Manufacturing Agreement.

WHEREFORE, CTX requests the Court to enter judgment in its favor and against Benlida, for damages, including punitive damages, pre-judgment and post-judgment interest,

attorneys' fees and costs, injunctive relief and such further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

CTX demands a jury trial on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, CTX demands judgment against Benlida, for damages, including punitive damages, pre-judgment and post-judgment interest, the costs of suit, including attorneys' fees and costs, and any such other, further relief as the Court deems just and appropriate.

Dated: October 15, 2021                                Respectfully submitted

**CHAUNCEY COLE, PA**
*Counsel for Circuitronix, LLC*
9100 South Dadeland Blvd., Suite 1553
Miami, Florida 33156
Tel.:     (786) 497-7053

By: /s/ *Chauncey D. Cole IV*
Chauncey D. Cole, IV, Esq.
Florida Bar No. 102184
chauncey.cole@coletrial.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on October 15, 2021 as filed with the Clerk of the Court using CM/ECF.                    By:  /s/ *Chauncey D. Cole IV*
Chauncey D. Cole IV