DRAFT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/SNOW

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

Plaintiff

v.

CIRCUITRONIX, LLC,

Defendant
_____/

**DEFENDANT'S THIRD-PARTY COMPLAINT AGAINST
<u>CHINA EXPORT & CREDIT INSURANCE CORPORATION ("SINOSURE")</u>**

Defendant / Third-Party Plaintiff, Circuitronix, LLC ("CTX") sues Third-Party Defendant, China Export & Credit Insurance Corporation ("Sinosure"), and alleges:

**<u>INTRODUCTION</u>**

1. This is an action by CTX against China Export & Credit Insurance Corporation, commonly known as "Sinosure," for tortious interference with contract.

2. CTX is party to a written contract governed by Florida law, the Standard Manufacturing And Representation Agreement, dated March 1, 2012 (the "Manufacturing Agreement"). [DE 15-1]. The contract concerns the manufacture, distribution and sale of printed circuit boards ("PCBs"), related electronic and industrial components, and related contract manufacturing work and services.

3. The other parties to the Manufacturing Agreement are Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida") and its affiliate ROK Printed Circuit Co., Ltd. ("ROK"), both Chinese corporations. The parties subsequently entered into a Letter Agreement, dated July 21,

1

DRAFT

2016, that added Circuitronix Hong Kong, Ltd. ("CTX-HK") as an additional party to the Manufacturing Agreement, among other things. [DE 15-2].

4. Benlida and ROK have both materially breached the Manufacturing Agreement and the Letter Agreement. Among other things, Benlida and ROK have materially breached these contracts by improperly demanding price increases, prepayments, and payment premiums, in violation of Section 2 and Section 4 of the Manufacturing Agreement, as well as Section 3 of the Letter Agreement.

5. Representatives of Benlida and ROK have indicated that Sinosure, with knowledge of the contracts, intentionally and unjustifiably procured these breaches by instructing Benlida and ROK to demand these price increases, prepayments, and payment premiums, and not to accept further orders from CTX unless these improper demands were met.

## PARTIES

### CTX

6. CTX is a Florida limited liability company with its corporate headquarters and principal place of business in Fort Lauderdale, Florida.

7. CTX specializes in the manufacture, sale and distribution of PCBs for a variety of applications, including automotive, industrial, lighting, and security systems. It also engages in a variety of other lines of business, including contract manufacturing, electronic manufacturing services, plastic injection molded parts, rubber parts, metal parts, PCBA (printed circuit board assembly), and polymer thick film technology for laminate substrates.

8. Rishi Kukreja is the sole member of CTX, and is a citizen of Florida.

### SINOSURE

9. Sinosure is a corporation formed under the laws of, and with its principal place

DRAFT

of business in, the People's Republic of China.

10. Sinosure is a major Chinese state owned enterprise under the administration of the Ministry of Finance of the People's Republic of China serving as the provider of export credit insurance, in particular coverage for the export of high-value added goods in China.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 and 1367.

12. This diversity action involves damages in excess of $75,000 and is between acitizen of Florida and citizens or subjects of a foreign state.

13. Venue is proper in this district under 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida.

14. All conditions precedent to bringing this action have occurred or have been waived.

## GENERAL ALLEGATIONS

### BACKGROUND

15. CTX is an American business that specializes in the global manufacturing, sale and distribution of PCBs for a variety of applications, including automotive, industrial, lighting, and security systems, among other things.

16. Benlida and ROK are foreign PCB manufacturing companies that own, operate or contract with PCB factories located in the People's Republic of China.

17. A printed circuit board is a physical base made for connecting, supporting, and stabilizing electronic components. PCBs are primarily made of a material that does not conduct electricity, such as plastic or fiberglass. Material that conducts electricity, such as copper or gold, is then etched (set in thin lines) either inside the board between the layers of non-conductive

3

DRAFT

material, or on the surface of the board. This enables the flow of electricity. Electronic components are then attached to the PCB. The conductive metal etched into the PCB allows electricity to travel from one component to another in electrical circuits.

18. PCBs are used in almost all computers and electronic devices today, with a global market of over $60 billion per year.

19. Sinosure is a Chinese corporate entity that serves as a provider of export credit insurance, in particular coverage for the export of high-value added goods in China.

**THE MANUFACTURING AGREEMENT**

20. Benlida and ROK entered into a written contract with CTX, titled the Manufacturing Agreement, for the sale, marketing, manufacturing and distribution of PCBs and related components and services. *See* DE 15-1.

21. Under the terms of the Manufacturing Agreement, the "Product" to be marketed, manufactured and sold included "any contract manufacturing related work or services provided by Manufacturer [i.e., Benlida or ROK] or any associated entities." *See Id.*, at § 1.1.

22. Pursuant to the Manufacturing Agreement, CTX agreed to purchase PCBs from Benlida and ROK and perform global sales and marketing for PCBs on an exclusive basis for specific customers identified or introduced by CTX. *See Id.*, at §§ 1.1 – 1.7.

23. In return, Benlida and ROK agreed to manufacture the Product for CTX and the exclusive customers identified by CTX. *See Id*.

24. Benlida and ROK also agreed to accept and fulfill purchase orders for CTX and customers identified by CTX based on the pricing matrix and delivery terms agreed upon by the parties in the contract. *See Id.*, at §§ 2.1 – 3.5.

25. Under the contract, any proposed price increases require no less than four months

of prior written notice, and such proposed increases are required to be justified by an increase in the cost parameters set forth in the pricing matrix. *See Id.*, at § 2.2.

26. Benlida and ROK further agreed not to do business, directly or indirectly, with any customers identified by CTX (defined in the Agreement as either "Identified Potential Customers" or "Exclusive Circuitronix Customers"), other than through CTX. In other words, Benlida and ROK agreed not to circumvent CTX by selling products directly to the customers obtained through the work of CTX. *See Id.*, at § 1.6.

27. Benlida and ROK further agreed not to disclose or make any commercial use of confidential information or trade secrets of CTX, without its prior written consent, recognizing that immediate and irreparable damage would result from a breach. *See Id.*, at § 8.1.

28. By entering into the subsequent Letter Agreement, Benlida and ROK expressly agreed to act as the agent of CTX for purposes of manufacturing products for CTX and its exclusive customers. *See* [DE 15-2] at § 3.

29. Pursuant to the Letter Agreement, Benlida and ROK expressly acknowledged and agreed to undertake fiduciary duties including "a contractual, common law and statutory duty of good faith, fair dealing, loyalty, and care." *See* [DE 15-2] at § 3. Benlida and ROK further agreed to "subordinate and refrain from acting on any of its desires that may adversely affect CTX USA's interests." *Id*.

**CTX'S PERFORMANCE, PAYMENTS, AND CREDIT BALANCE**

30. In the ensuing years following execution of the Manufacturing Agreement, the parties have conducted substantial business together, with payments from CTX to Benlida and ROK in excess of $70 million as of early 2021.

31. CTX's payments have been made by numerous regular monthly wire transfers

5

DRAFT

from bank accounts held by CTX to accounts specified by Benlida and ROK. In some cases, Benlida has instructed CTX to make payments for Benlida invoices to its affiliate, ROK. These monthly wire transfers have resulted in CTX paying Benlida and ROK millions of dollars annually, and tens of millions over the course of the parties' business relationship.

32. In addition to making payments, CTX provides Benlida and ROK with a monthly reconciliation statement that shows: (1) the amount paid by CTX that month, (2) the invoices that are being paid, (3) the credit balance of CTX's account, and (4) the banking records confirming the payment amounts. *See*, *e.g*., DE 15-4.

33. Often, the monthly wire payments made by CTX to Benlida and ROK *exceed* the amount of monthly invoices, resulting in a credit balance in favor of CTX that carries over to the following month. *See Id*. (showing monthly payment from CTX of $1.2 million against monthly invoices from Benlida totaling only $840,661.50).

34. In fact, since August, 2019, CTX has *prepaid* for all orders with Benlida and ROK, meaning that all purchase orders and invoices have been *paid in full even before* Benlida or ROK ship the product to CTX.

35. Thus, CTX has not only fully and timely paid Benlida and ROK for all shipments and invoices pursuant to the terms of the Manufacturing Agreement and Letter Agreement, but CTX currently maintains a significant *credit balance* due to *overpayments* that have accumulated over the course of the companies' relationship. This fact is confirmed by commercial records, banking records, as well as regular correspondence and communication between the companies, all of which demonstrate that CTX has substantially overpaid both Benlida and ROK, each by an amount in excess of $1 million.

36. Further, CTX's credit balance is even higher than these base payment balances,

6

DRAFT

because of additional accumulated credits due to contractual lead-time violations by Benlida and ROK. Pursuant to the parties' agreements, late shipments by Benlida and ROK, beyond the contractually specified lead-time, result in specified price discounts agreed to by the parties (referred to in the industry as "lead-time penalties"). The amount of the price discount depends on the length of the lead-time violation, with longer delays resulting in higher price discounts according to the parties' agreement.

37. However, Benlida and ROK fail to recognize CTX's overpayments and resulting credit balance, and in fact now claim that CTX has not paid hundreds of invoices and owes enormous sums of additional money. [DE 26].

**BENLIDA AND ROK'S BREACHES**

38. Benlida and ROK have materially breached several provisions of the Manufacturing Agreement and Letter Agreement, including terms governing pricing, delivery, and payment. *See* [DE 34 at 7 (Defendant's Counterclaim)].

39. In addition, Benlida and ROK have materially breached their fiduciary duties to CTX, including the duty of loyalty, by accepting and retaining, but failing to properly credit, millions of dollars in payments made by CTX. Benlida and ROK have further breached their fiduciary duties to CTX by improperly demanding advance prepayments, overpayments, and payment premiums, in excess of the contractual price terms agreed by the parties, and threatened to cancel deliveries or shut down production if CTX failed to comply with these improper demands. *See* [DE 34 at 7].

**SINOSURE'S TORTIOUS INTERFERENCE**

40. Sinosure has had knowledge of CTX's contracts with Benlida and ROK, and CTX's valuable business relationship with Benlida and ROK, since at least July 2019.

DRAFT

41. On July 15, 2019, representatives of Benlida and ROK, as well as Sinosure, contacted CTX to inform CTX that Benlida had submitted a claim to Sinosure for payments from CTX pursuant to the Manufacturing Agreement and Letter Agreement.

42. Among other things, in the correspondence of July 15, 2019, Benlida and ROK stated that Sinosure "advised not to accept any new orders from CTX from now on," and that in "order to guarantee our further cooperation, please provide a payment plan on future shipment, so that we can send to Sinosure for their approval. As soon as such an approval was attained, we will resume the shipment." In other words, Sinosure was now directing Benlida and ROK to violate the terms of the Manufacturing Agreement (Section 2, 3 and 4 in particular) and the Letter Agreement (Section 3 in particular), and materially breach their contracts with CTX.

43. Sinosure's intentional interference with the contractual relationship between CTX and Benlida and ROK also included instructions to Benlida and ROK to disregard the pricing (Section 2), delivery (Section 3), and payment (Section 4) terms of the Manufacturing Agreement, and unilaterally demand improper advance prepayments and payment premiums.

44. For example, on June 18, 2021, Benlida wrote to CTX stating that, at Sinosure's direction, Benlida would not accept any further purchase orders ("POs") from CTX pursuant to the Manufacturing Agreement unless CTX agreed to pay for 120% of the value of the order in advance of production, in violation of Sections 2, 3, and 4 of the Manufacturing Agreement. Benlida specifically stated: "As the requirement of our co-obligee, the insurance company [i.e., Sinosure], CTX should make 120% prepayment of the order value to us before we release the orders. All POs CTX send to us these days will only be valid when Benlida receive 120% prepayment."

45. As another example, on August 16, 2021, Benlida wrote to CTX stating that

8

DRAFT

Sinosure had insisted Benlida further materially breach the price terms of its contract with CTX by demanding payment of premiums for certain PCBs. Benlida specifically stated: "at the request of Sinosure, CTX need to pay an additional 4% premium for double-side PCBs."

46. In addition to dozens of similar written communications, representatives of Benlida and ROK have repeatedly stated, in face to face meetings and on telephone calls, that Sinosure has instructed Benlida and ROK to overcharge CTX, in breach of the terms of the Manufacturing Agreement and the Letter Agreement, by forcing CTX to pay higher prices, including premiums, and make prepayments before any product has been produced or shipped. These improper pricing and payment demands are backed up by a threat to halt production if the improper payments are not made.

47. In order to mitigate the catastrophic damages that would result from the threatened total production shutdown, CTX was forced to make overpayments of more than $500,000.

48. Sinosure's interference and the breaches of contract and fiduciary duty by Benlida and ROK are continuing in nature and recurrent and have resulted in damages to CTX that exceed $1,000,000.

## COUNT I (TORTIOUS INTERFERENCE)

49. CTX realleges Paragraphs 1 through 48.

50. Benlida and ROK entered into valid, binding and enforceable written contracts with CTX (the Manufacturing Agreement and the Letter Agreement) and the parties had a valuable business relationship under which CTX had legal rights.

51. Sinosure was aware and had knowledge of CTX's contracts with Benlida and ROK, and had knowledge that the parties had a valuable business relationship under which CTX

DRAFT

had legal rights.

52.     Sinosure intentionally, wrongfully, and unjustifiably procured Benlida and ROK's material breach of the contracts, and intentionally, wrongfully, and unjustifiably interfered with the valuable business relationship between CTX and Benlida and ROK (*see supra* ¶¶ 37-41).

53.     Sinosure tortiously interfered, without any justification or privilege.

54.     Sinosure's interference and the material breaches by Benlida and ROK have caused damage to CTX.

WHEREFORE, CTX requests the Court to enter judgment in its favor and against Sinosure, for damages, including punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs, injunctive relief, and such further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

CTX demands a jury trial on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, CTX demands judgment against Sinosure, for damages, including punitive damages, pre-judgment and post-judgment interest, the costs of suit, including attorneys' fees and costs, and any such other, further relief as the Court deems just and appropriate.

Dated: October 29, 2021                                   Respectfully submitted

                                                        **CHAUNCEY COLE, PA**
*Counsel for Circuitronix, LLC*
9100 South Dadeland Blvd., Suite 1553
Miami, Florida 33156
Tel.:    (786) 497-7053

DRAFT

By: /s/ *Chauncey D. Cole IV*
Chauncey D. Cole, IV, Esq.
Florida Bar No. 102184
chauncey.cole@coletrial.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on October 29, 2021 as filed with the Clerk of the Court using CM/ECF.   By:  /s/ *Chauncey D. Cole IV*
Chauncey D. Cole IV