UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/SNOW

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

Plaintiff,

v.

CIRCUITRONIX LLC,

Defendant.
_____/

**DEFENDANT CIRCUITRONIX, LLC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Jiangmen Benlida Printed Circuit Co., Ltd.'s ("Benlida") motion for partial summary judgment must be denied because the contract Benlida relies on to support its argument, that Defendant Circuitronix LLC ("CTX") is liable for invoices Benlida issued to non-party Circuitronix Hong Kong, Ltd. ("CTX-HK"), was expressly superseded and became inoperative in 2016, more than two years before the date of the earliest invoices identified in Benlida's operative complaint.

The contract Benlida clings to, the 2014 Authorization, was only in effect from January 1, 2014 to July 21, 2016. On July 21, 2016, Benlida and CTX signed a new contract, the Letter Agreement, which expressly superseded the 2014 Authorization, rendering it inoperative and without continuing legal effect.

All of the invoices identified in Benlida's operative complaint are from 2018 to 2020, more than two years after the 2014 Authorization was expressly superseded and ceased to have any legal effect. Thus, the contract that Benlida now identifies and relies upon as the sole basis for its motion

1

for partial summary judgment has no application whatsoever to the 2018, 2019 and 2020 invoices that are the subject of Benlida's complaint. Accordingly, Benlida's motion for partial summary judgment must be denied.

## FACTUAL BACKGROUND

On March 1, 2012, Benlida and its foreign affiliate, ROK Printed Circuit Co., Ltd., entered into a written contract with CTX for the manufacture of printed circuit boards ("PCBs"), the Standard Manufacturing And Representation Agreement ("Manufacturing Agreement") [DE 15-1].[1]

Benlida's Third Amended Complaint [DE 26] (the "TAC") requests damages of over $13.5 million, claiming that CTX breached the Manufacturing Agreement by failing to pay for hundreds of invoices issued in 2018, 2019 and 2020. *Id*. at ¶ 11; *see also* [DE 54 at ¶ 1]. The earliest invoices identified in the TAC are dated from December 2018. *See* [DE 26].

However, Benlida concedes – as it must – that ***nearly half*** of the invoices identified in the TAC are invoices that Benlida issued to CTX-HK, a distinct and different legal entity than the Defendant in this case, CTX. [DE 29-3] at 2. Benlida's principal, Huang Hanchao (aka "Douglas"), provided a sworn declaration, under penalty of perjury, admitting that all of the invoices identified in paragraphs 261 through 431 of the TAC "are Benlida invoices that were issued to CTX-HK," and not to CTX. *Id*.; *see also, e.g.*, [DE 15-8] (sample invoice identified in the TAC and issued to CTX-HK).

The Defendant, CTX, is a Florida limited liability company, with its headquarters in Ft. Lauderdale. [DE 26] at ¶ 5. CTX-HK is a Hong Kong corporation with its headquarters in Hong

---

[1] The Manufacturing Agreement is docket entry [DE 15-1] and is Exhibit 1 to the previously filed supporting declaration of Chauncey D. Cole IV [DE 15]. The Manufacturing Agreement and other exhibits to the declaration are cited hereafter by docket entry number.

Kong [DE 15-2] at 1.  Unlike CTX, CTX-HK is not a party in this case.  Indeed, Benlida actively opposed joining CTX-HK as a party in this action, and made a considered choice not to sue CTX-HK (presumably because doing so would destroy diversity jurisdiction in this action). [DE 28] at 4-9.  Although CTX and CTX-HK are corporate affiliates, they are separate and distinct legal entities. *See* [DE 15-2] at 1 (*Letter Agreement* – defining CTX and CTX-HK as distinct entities); *see also* [DE 43] at ¶3 (*Benlida's Answer To Defendant's Counterclaim* – admitting that the parties entered into a Letter Agreement that added CTX-HK as an additional party to the original Manufacturing Agreement).

At the time Benlida and CTX entered into the Manufacturing Agreement in 2012, CTX-HK was not a party to the contract.  *See* [DE 15-1].  As the business developed in the ensuing years, and because CTX-HK was not a party to the Manufacturing Agreement, CTX signed a business authorization document on January 1, 2014, in which CTX authorized CTX-HK to place orders on CTX's behalf, and CTX agreed to accept all debts due to those orders.  [DE 29-1] at 4-5; [DE 53-1] at 4 (the "2014 Authorization").

However, on July 21, 2016, the parties signed a new Letter Agreement (the "Letter Agreement") that formally added CTX-HK as an additional party to the Manufacturing Agreement. [DE 15-2].  The Letter Agreement specifically stated that, except as expressly modified by the Letter Agreement itself, the Manufacturing Agreement would remain in full force and effect.  [DE 15-2] at 2 (¶ 1).  However, all other prior written agreements between CTX and Benlida were expressly superseded.  *Id*. at 3, ¶ 6.  The plain language of the Letter Agreement states:

> This [Letter] Agreement and the [Manufacturing Agreement] represent the parties' full and complete understanding regarding the subject matter hereof. All prior agreements, covenants, representations or warranties, express or implied, oral or written, that refer or relate to the employment relationship have either been merged

> into this [Letter] Agreement and/or the [Manufacturing Agreement] or have been intentionally omitted therefrom. This [Letter] Agreement and the [Manufacturing Agreement] supersede any and all prior agreements or understandings between [CTX] and [Benlida and ROK].

*Id.* at 3, paragraph 6.

Thus, as of July 21, 2016, the 2014 Authorization was inoperative and without effect. Instead, CTX-HK was itself a party to the Manufacturing Agreement, and both CTX and CTX-HK were each independently responsible for their own obligations under the terms of the Manufacturing Agreement and the Letter Agreement.  As a formal party to the contract, CTX-HK had the opportunity to engage in business with Benlida completely independent of CTX, and CTX was no longer required to undertake any responsibility for obligations incurred by its foreign affiliate.

Further, on October 5, 2018, Benlida requested that CTX sign a new agreement to make payments for CTX-HK.  [DE 30-1] (email attaching proposed agreement titled "The Letter of Authorization for Payment Entrust"). CTX declined that request, and never signed the proposed agreement, providing yet another clear indication that, after the Letter Agreement, CTX did not agree and was not required to make payments for CTX-HK.

## ARGUMENT

### 1. LEGAL STANDARD

Summary judgment is only appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005) (citing Fed. R. Civ. P. 56(c)). The moving party bears the burden of proof, and when assessing whether the movant has met this burden, the court should view the evidence, any ambiguities therein and all factual inferences therefrom in the

4

light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Absolute Trading Corp v. Pdvsa Servs., Inc.*, No. 10-21371-CIV, 2011 WL 13115435, at *3 (S.D. Fla. Oct. 5, 2011) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)). Genuine disputes of fact exist when the evidence is such that a reasonable jury could render a verdict for the non-movant. *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016).

### 2. RELATED CORPORATIONS ARE SEPARATE LEGAL ENTITIES WITH THEIR OWN DEBTS AND OBLIGATIONS

There is no question that CTX and CTX-HK are separate and distinct legal entities. It is well settled that corporations, even closely related affiliate corporations, are not interchangeably liable for each other's debts and obligations. *Beck v. Royale Harbour of N. Palm Beach Condo. Ass'n, Inc.*, No. 14-80611-CIV, 2014 WL 4782962, at *3 (S.D. Fla. Sept. 3, 2014). Rather, each corporation is recognized as a separate and distinct legal entity, each with sole responsibility for its legal obligations. *Id*. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Id*. (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

"Ordinarily, a corporation which chooses to facilitate the operation of its business by employment of another corporation as a subsidiary will not be penalized by a judicial determination of liability for the legal obligations of the subsidiary." *Bestfoods*, 524 U.S. at 61. "Limited liability is the rule, not the exception." *Id*.

Here, it is undisputed that *nearly half of the invoices* identified in the TAC, all of which date from 2018 and after, are CTX-HK invoices (and not CTX invoices). Benlida's principal,

Huang Hanchao (aka "Douglas"), has already admitted in sworn testimony that "*the 'BLDCCT-HK'-denominated invoices identified in paragraphs 261 through 431* [of the TAC] *are Benlida invoices that were issued to CTX-HK*." [DE 29-3] at 2 (emphasis added).

Thus, in order to hold CTX liable for the alleged debts and obligations of CTX-HK with regard to these CTX-HK invoices from 2018 to 2020, Benlida requires some hook to overcome the default legal conclusion that CTX is not responsible for these invoices. The sole hook Benlida now provides for this assertion is the 2014 Authorization, which is dated January 1, 2014.

However, Benlida fails to mention that the 2014 Authorization was expressly superseded by contract in 2016, *more than two years before the first CTX-HK invoice identified in the TAC*.

### 3. THE AGREEMENT BENLIDA RELIES UPON WAS EXPRESSLY SUPERSEDED IN 2016

Benlida now asks the Court to enter partial summary judgment, "holding that defendant CTX is liable as guarantor for CTX-HK's debts." [DE 53 at 4]. To support this argument, Benlida relies exclusively on the 2014 Authorization document signed by CTX, in which CTX authorized CTX-HK to place orders on CTX's behalf, and CTX agreed to accept all debts due to those orders. *See* [DE 53-1] at 4.

However, Benlida's argument must be rejected and its motion must be denied because the 2014 Authorization was expressly superseded by contract in 2016, when the parties signed the Letter Agreement that formally added CTX-HK as an additional party to the Manufacturing Agreement. [DE 15-2]. The Letter Agreement specifically states:

> This [Letter] Agreement and the [Manufacturing Agreement] represent the parties' full and complete understanding regarding the subject matter hereof. All prior agreements, covenants, representations or warranties, express or implied, oral or written, that refer or relate to the employment relationship have either been merged into this [Letter] Agreement and/or the [Manufacturing Agreement] or have been intentionally omitted therefrom. *This [Letter] Agreement and the [Manufacturing Agreement] supersede any and all prior agreements or understandings between [CTX] and [Benlida and ROK].*

*Id*. at 3, ¶ 6 (emphasis added). The plain language of this merger provision expressly superseded the 2014 Authorization, rendering it inoperative and without effect from July 21, 2016, the date of the Letter Agreement. *See, e.g., Comsof, N.V. v. Cigarette Racing Team, Inc.*, No. 01-4856-CIV-MOORE, 2002 WL 227034, at *3 (S.D. Fla. Jan. 25, 2002) (explaining that a "classic merger clause" precludes a party "from enforcing extraneous oral and written agreements"); *see also Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007) (a written contract containing a merger clause supersedes all prior representations and agreements).

Thus, by the time the earliest invoices identified in the TAC were issued, in December 2018, the 2014 Authorization had already been inoperative and without effect for more than two years. Indeed, one of the primary reasons for entering into the Letter Agreement in 2016 was to formally add CTX-HK as a party to the Manufacturing Agreement, allowing CTX-HK to be a full participant, and eliminating any need for CTX to provide assurances for obligations incurred by CTX-HK.

Thus, the 2014 Authorization, the sole document identified by Benlida as the basis for its motion for partial summary judgment, had been expressly superseded and was without legal effect at the time of the CTX-HK invoices identified in the TAC. Accordingly, Benlida's motion for partial summary judgment must be denied.

### 4. BENLIDA REQUESTED A GUARANTEE AGREEMENT IN 2018 AND CTX DECLINED

Further, on October 5, 2018, Benlida – fully aware that CTX was not obligated to make payments for CTX-HK – requested that CTX sign a new agreement to make payments for CTX-HK. [DE 30-1] (email attaching proposed agreement titled "The Letter of Authorization for Payment Entrust"). CTX declined that request, and never signed the proposed agreement, providing yet another clear indication that, after the 2016 Letter Agreement, CTX did not agree to

make payments for CTX-HK. CTX's refusal to sign a subsequent agreement undermines Benlida's position that CTX must be liable for CTX-HK's alleged obligations.

The reality is that at the time Benlida issued the 2018 through 2020 invoices identified in the TAC: (1) CTX-HK was itself a party to the Manufacturing Agreement; (2) the 2014 Authorization was no longer in effect; (3) Benlida knew that CTX had not agreed to make payments for CTX-HK, having rejected a new proposed agreement to that effect; and (4) CTX was not liable for the invoice obligations allegedly incurred by CTX-HK. Accordingly, Benlida's motion for partial summary judgment must be denied.

## CONCLUSION

For all of these reasons, CTX respectfully requests that the Court enter an Order denying Benlida's motion for partial summary judgment.

Dated: March 1, 2022                                                                  Respectfully submitted

| **PODHURST ORSECK, P.A.**<br>*Co-Counsel for Circuitronix, LLC*<br>SunTrust International Center<br>One S.E. 3rd Avenue, Suite 2300<br>Miami, Florida 33131<br>Tel.: 305-358-2800/Fax: 305-358-2382<br><br>*By: /s/ Stephen F. Rosenthal*<br>Stephen F. Rosenthal<br>Florida Bar No. 0131458<br>srosenthal@podhurst.com<br>Robert C. Josefsberg<br>Florida Bar No. 040856<br>rjosefsberg@podhurst.com<br>Matthew Weinshall<br>Florida Bar No. 84783<br>mweishall@podhurst.com<br>Christina H. Martinez<br>Florida Bar No. 1029432 | **CHAUNCEY COLE, PA**<br>*Counsel for Circuitronix, LLC*<br>9100 South Dadeland Blvd., Suite 1553<br>Miami, Florida 33156<br>Tel.:   (786) 497-7053<br><br>By: */s/ Chauncey D. Cole IV*<br>Chauncey D. Cole, IV, Esq.<br>Florida Bar No. 102184<br>chauncey.cole@coletrial.com<br><br> |

| cmartinez@podhurst.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on March 1, 2022 as filed with the Clerk of the Court using CM/ECF.    By: /s/ *Chauncey D. Cole IV*___
Chauncey D. Cole IV