# United States District Court
# Southern District of Florida

**Case No. 21-60125-CIV-Scola/Snow**

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

        Plaintiff,

v.

CIRCUITRONIX, LLC,

        Defendant.

## Motion to Reopen and Enforce Settlement Agreement

Plaintiff Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida" or "BLD"), by the law firm of Mazzola Lindstrom LLP, and counsel of record Jean-Claude Mazzola, hereby moves to enforce the settlement agreement executed by the parties hereto, deeming the case terminated, and requests an award of attorneys' fees and costs in accordance with the settlement agreement.

1. I am mindful of the Court's frustration with the parties' numerous motions for additional time to submit a joint motion to dismiss this case. However, as defendant Circuitronix, LLC ("CTX") continues with its, seemingly, never ending efforts to renegotiate the deal after the settlement has been finalized, with no end in sight, and CTX advising by email on November 22 (1:17 p.m.) that if "Benlida pursues action to enforce and does not succeed, CTX will not pursue any further settlement negotiations," I am constrained to move to reopen and enforce the settlement agreement. The pertinent facts, which I state under penalty of perjury, pursuant to 28 U.S.C. § 1746, are as follows.

1

2. The parties, through their principals and counsel, settled the case. CTX's purported, pretextual termination of the settlement agreement is nothing more than a further effort at delay – something it has done in this case for months.

3. The parties jointly represented to the Court, in their most recent motion of November 17 (DE 102), that they had finalized the settlement agreement and the incorporated revised manufacturing agreement ("RMA"). In that joint motion, the parties offered to present the settlement agreement and the RMA to the Court for *in camera* inspection to demonstrate they had indeed been working diligently to bring this matter to a close. Naturally, there would have been no need for the parties to have offered them for *in camera* inspection if they were not actually representative of a meeting of the minds as to the essential terms.[1]

4. Both parties also jointly represented to the Court that – after they had executed the settlement agreement and the RMA – CTX had five business days to review and approve Benlida's auditor-certified financial statements for 2021, and financial statements for Q1, Q2, and Q3 of 2022. The parties agreed to this to demonstrate Benlida's financial stability, and more specifically, *the absence of short- to medium-term risk of insolvency or financial collapse.*

5. When the parties filed their recent joint motion for an enlargement of time, Benlida was in full compliance with all its obligations of the fully executed settlement agreement, and in detrimental reliance on CTX's execution thereof, Benlida turned over its audited financial statements for 2021, and its Q1, Q2, and Q3 financial statements for 2022. And thus, by the close of business on November 17, *CTX's* obligations under the settlement agreement fully attached. CTX was bound to perform its end of the bargain by making the first

---

[1] Benlida remains willing to make the settlement agreement and RMA available to the Court for *in camera* inspection.

2

payment pursuant to the settlement agreement, thus triggering the immediate filing of the dismissal of this action.

6. But on November 17th, with just about 30 minutes left before the close of business, CTX suddenly said it "found" a problem and said it wanted to pull out of the deal. CTX claimed it was doing so in accordance with its unilateral right to terminate the settlement agreement, though as will be discussed below, such exercise of its right must be in good faith, and have a reasonable basis.[2]

7. For the first time, CTX claimed that Benlida's financials reflected a short- to medium-term risk of insolvency or financial collapse. Notably, in its pretextual "termination notice," CTX identified no specific risks. None. It merely parroted the words.

8. Its bad faith is made most palpable by the fact that – as stated in the joint motion of November 17 (DE 102) – on review of Benlida's financials, CTX had "flagged" issues that required additional due diligence. At the time of the joint moiton of November 17th, Benlida agreed that CTX could have an additional three business days – to November 22 – to complete its review of Benlida's financials. However, as of the close of business on November 22, CTX had still failed to identify any specific basis to believe, based upon the audited financial statements for 2021, and the Q1, Q2, and Q3 2022 financial statements, that Benlida faced a specific risk of short- to mid-term involvency or financial collapse.

9. This was what was bargained for: CTX had five days to make its determination based upon the financial statements that had been provided on November 9. As it stated in the joint motion, it had only "flagged" issues; it had not actually determined that there was a specific

---

[2] See *Sepe v City of Safety Harbor*, 761 So 2d 1182, 1184 (Fla Dist Ct App 2000), discussed infra.

3

risk of insolvency or collapse. Nor did it avail itself of the additional three business days that Benlida voluntarily gave CTX to determine, based upon the financials that had been provided – which is all that was bargained for – to determine that there was such a risk.

10.     CTX's last minute about face came months after negotiations, with myriad documents having been provided, and very many hours of meetings and calls and discussions among CTX's and Belinda's principals and counsel. Its "termination" of the settlement agreement – which it already acknowledged in writing was done and executed – is more of the same.³

11.     It is CTX's *modus operandi* of willful and dilatory tactics to delay and avoid the inevitable. (Indeed, prior to the filing of the action, CTX had delayed negotiations for months.) But it cannot get out of the settlement agreement it has now agreed to. Having failed to identify any specific risks of short- to mid-term involvency or financial collapse for Benlida, CTX can neither delay this any further, nor – using a conclusory pretext – get out of the deal that it agreed to.

12.     A short history: After a round of difficult and time consuming negotiations by counsel, this case was settled at the end of October.

13.     **October 28** – On Friday, October 28 (5:26 p.m.), counsel for CTX, emailed me, advising that "[o]ur clients have accepted the proposal from Benlida for the tin and copper prices …. [¶] Our clients cannot accept the proposed changes to the gold price…. [¶] Everything else is

---

³ Indeed, CTX's purported "termination" itself demonstrates that there was an antecedent executed agreement, and thus a meeting of the minds; otherwise, there would have been nothing to terminate.

unchanged from the prior versions. Please take a look at the attached, particularly the table on page 25 and let us know if we are clear for execution."[4]

14. Over that weekend, an issue arose as regards section 2.4 of the RMA which was resolved through direct client-to-client discussions.

15. **October 31** – On Monday, October 31 (10:45 a.m.), I wrote to counsel for CTX, advising that our respective clients had spoken amongst themselves, and had mutually agreed to revise the applicable sections of the RMA. I provided to counsel for CTX the language that the clients themselves had agreed to.

16. **October 31** – Later in the evening of October 31 (9:21 p.m.), counsel for CTX wrote:

> Thanks, JC / Rich. We have discussed with our client and I believe we are all in agreement. Please see the attached settlement agreement, which incorporates all of the prior changes. We revised the new language in Section 2.4 of the Revised Manufacturing Agreement slightly so please take a look at it. We added a line to clarify that the existing prices are without any premiums that were being charged, and cleaned up the grammar slightly. *I believe we should be in a position to execute these documents tomorrow.* If there are any hiccups, I would recommend that we provide an update to the Court tomorrow and ask for a very brief extension, *but hopefully it is all smooth sailing*. (Emphasis added).

17. **November 1** – In response to that October 31 email, Benlida accepted all of CTX's new proposed terms. Making it official, by email of November 1 (10:51 a.m.), I turned over to CTX's counsel Benlida's execution pages of the settlement agreement and the RMA – <u>offer and acceptance, done</u>. And that should have been that. Financials would have been

---

[4] Rather than attach the email chains, text messages, and agreements as exhibits to this memorandum, I will submit such as may be relevant in reply in the event that CTX disputes the accuracy of any of my representations regarding such items, or as the Court may request.

obtained, translated, forwarded to CTX's counsel pursuant to the settlement agreement, reviewed, approved (perhaps), money paid, dismissal filed.

18. **November 3** – Although a settled case, on Thursday, November 3 (9:02 p.m.), counsel for CTX wrote to me, advising that they had found "a few relatively minor items that needed to be revised in order to bring this to a conclusion. You can see those changes in the attached redlines…." One of the "relatively minor items" included "revis[ing] the initial term of the agreement to 10 years instead of 5." Another was "to say that if a party becomes insolvent/bankrupt, etc., then the agreement can be terminated, but is not automatically terminated. In other words, it is an option for either party to terminate if the other one goes bankrupt, but it is not an automatic event. We think this is more favorable to both parties."

19. Counsel concluded:

> Our client is of course eager to review and hopefully approve the financials as well, so please do provide those at your earliest convenience. It also seems that the judge is running out of patience with us, s**o please do let us know if you think there will be any problem *finalizing* this thing tomorrow.** (emphasis added).

20. Ten years is a lot longer than five years and, on its face, unlikely to be considered a minor change by most. Rather than declare this an already settled case, refuse the changes, and move to enforce, in the spirit of mutual cooperation, Benlida agreed to CTX's further last-minute changes.

21. **November 5** – Although Benlida had handed over its signatures on November 1, CTX had yet to respond in kind. Since the terms of the deal had changed, I thought it prudent, though not a legal necessity, to confirm, if only to assuage my clients, that CTX had had in fact signed the settlement agreement. I confirmed this via text message with CTX's counsel on Saturday, November 5 (2:53 p.m.); CTX's counsel acknowledged that he had CTX's signature in hand – *viz.*, that Rishi Kukreji of CTX had executed the settlement agreement.

22. At 10:12 p.m. that same day, November 5, I advised CTX's counsel that the two changes were agreed to by Benlida, and requested confirmation that the settlement agreement would be deemed effective on Monday, November 7,[5] the next business day, so that we would all be on the same page as regards the start of the clock on providing finacials *and* the time for which CTX was to agree and pay, and the day on which the joint dismissal motion was to be filed.

23. CTX's counsel responded, "Wow," apparently relieved that after months of negotiations, we had finally reached the conclusion.

24. **November 7** – On November 7 (6:03 p.m.), I forwarded the re-executed execution pages of the settlement agreement and RMA and reiterated that this case was settled as of November 7, and acknowledged my client's obligation, pursuant to the settlement agreement, to produce the audited financials within five business days of the effective date.

25. **November 8** – Tuesday, November 8 (3:41 p.m.), counsel for CTX wrote to me to advise that it had "discovered two minor changes that are required for the RMA, which you can see [in the redline]." In this case minor was, yet again, clearly in the eyes of beholder, at least for the change related to pricing. It seemed to be clearly a very important issue because at the conclusion of the Zoom meeting (see *infra.*), CTX's principal insisted on hearing directly from Benlida that that change had been agreed to and accepted – not willing to accept my word for it, nor as I recall his own counsel's.

26. Even though there could be no question that the case was, yet again, already settled as of the afternoon of November 8 and CTX had already confirmed on the afternoon of November 5 CTX's signatures were in hand, and that November 7 was the date of execution,

---

[5] At no time has CTX ever disputed that November 7 is the effective date.

CTX inexplicably said that "hopefully [these changes] are non-issues and we *can* execute agreement." (emphasis added). "[C]an execute agreement" seemed a curious phrase under the circumstances, as if CTX were willing this case to be still not yet settled.

27. Later that same day, November 8 (9:41 p.m.), I advised that CTX's further two changes were acceptable.

28. **November 9** – Because the case was settled, pursuant to Benlida's obligations under the agreement, the next day, Wednesday, November 9 (6:40 p.m.), I sent Benlida's audited financial statements and financial statements for Q1, Q2, and Q3 of 2022 to CTX, along with Benlida's execution pages for the updated version of the settlement agreement and the RMA.

29. Pursuant to the settlement agreement, CTX now had five business days to review the financials to determine whether Benlida faced a short- or medium-term risk of insolvency or financial collapse. As November 11 was Veterans' Day, CTX had until November 17 to complete its review and make its determination. Assuming there were no catastrophic issues with the financials, the clock would run at the end of the fifth business day, CTX would make its first payment, and the joint motion for dismissal would be filed. (Practically, as the money would have not likely hit my Attorney Trust Account until Friday pursuant to the requirement to pay "within 10 business days of the Effective Date,"[6] and as the bank may have held it for a day, the dismissal motion would have been filed on the following Monday or Tuesday.)

---

[6] The settlement agreement provides for the "Effective Date" to be the "last date on which the last Party executes this Agreement." CTX advised on November 5 that CTX had executed the agreement, Benlida did provide its signatures on November 1 and then again on November 7 and November 9. Notably, Benlida provided the financials as well on November 9 which was timely ("no later than five business days after the Effective Date"), regardless of whether the effective date is November 5, 7 or 9. "Within five business days" to approve was thus November 17.

30. **November 16** – But as things would play out at 7:26 p.m. on November 16, counsel sent us an email stating:

> Our clients have completed their review of the Benlida financial statements and they are prepared to make a decision on approval of the financials tomorrow. Prior to doing so, they would like to have a conference call with representatives of Benlida on the line so that they can go over some of the information in the financials and ask some questions about information that is not completely clear from the documents. The purpose is really to get additional information and comfort with the numbers before making the final decision on approval. To that end, could we schedule a conference call with Benlida **tomorrow morning at 8:30 am**? I expect that on our side we would be joined by the CEO and the corporate controller from CTX, and there should be someone there from Benlida who has familiarity with the financials. Please let us know. Thanks.

31. **November 17** – The next morning, November 17, the attorneys and the principals had a Zoom meeting lasting nearly three hours, wherein the financials were discussed in extraordinary detail. The participants included counsel for CTX, as well as Mr. Kukreji, and CTX's in-house corporate controller Celin Astudillo. My law partner Richard Lerner and I attended in behalf of Benlida, as well as Florida attorney Angela Guan, and Benlida officers Huang Xianjiang ("Mr. Huang"), Huang Sulan ("Tracy"), Wu Yukun ("Roger"), Huang Hanchao ("Douglas"), and Benlida's controller, Ms. Jian.

32. At the conclusion of the Zoom conference, Mr. Kukreji expressed his pleasure that his questions had been answered satisfactorily and his concerns allayed. At no time did Mr. Kukreji or finance officer Astudillo express a belief that there was a short- or medium-term risk of insolvency or financial collapse.

33. Soon after the Zoom conference ended, at 11:40 a.m., counsel for CTX reached out to me to see if I could talk at 2:30 p.m. I advised yes, but cautioned that my clients would be asleep at that time.

34. **The conversation with CTX during the afternoon of November 17:** At about 2:30 p.m. counsel for CTX and I did talk. CTX requested additional time to review the financials. I advised that my clients were asleep and that my instructions were that no more extensions for financial review could be agreed. Counsel for CTX was nothing but professional, courteous, and candid, but CTX was in a pickle – the clock was running and they had no more time outs.

35. During the conversation, I was advised that CTX might be required to "terminate" the settlement agreement but in doing so, I was cautioned to explain to my clients, to the effect, that the decision to terminate should not be understood as an unwillingness to go forward. **Rather, it was merely because CTX was "out of time"; in other words, it was a necessary move by CTX to buy more time – like taking a fall and feigning injury to stop the play.**

36. I also recall being advised by CTX, to the effect, that perhaps CTX should have negotiated more time to review the financials – *i.e.*, in sum and substance, five business days was too short or too optimistic for CTX to have completed its review. However, five days was what was bargained for, and what was agreed to.

37. In accordance with my client's instructions at that time, I advised that no more extensions could be granted.

38. **CTX Pretextually Terminates** – With the clock running out, at 4:31 p.m., on November 17, counsel for CTX emailed to me a letter bearing the caption, "Notice of Termination of Settlement Agreement," stating "CTX has carefully reviewed the BLD financial statements and determined that BLD faces an unacceptable risk of instability, and has failed to demonstrate that BLD does not face a short to medium term risk of insolvency or financial

collapse. [¶] Accordingly, CTX hereby elects to immediately void and terminate the Agreement."

39. Importantly, nowhere in the Notice of Termination does CTX articulate any facts to show that Benlida "faces an unacceptable risk of instability" or presents a "short to medium term rish of insolvency or financial collapse," further underscoring the pretextual nature of the termination as nothing more than an effort to obtain more time. I texted and then called counsel soon thereafter, knowing that we were obligated to report back to the Court.

40. Benlida of course deemed the termination a nullity – a pretext to buy more time – and yet another example of CTX's continued acts of delay and avoidance.

41. Notwithstanding, in the joint motion for a further enlargement of time, filed later that evening (DE 102), it is stated that notwithstanding the purported notice of termination, *which Benlida deemed a nullity*, "the parties have agreed in principle to proceed on the same settlement terms, with a modification to allow additional time for financial due diligence." Benlida was willing to agree to three business days to allow CTX to continue reviewing the financials. CTX wanted thirty days, but seemingly recognized that the Court would never agree to such a long extension to review the financial statements – a review which should have been completed in five days and for which CTX had already had eight days and by Tuesday would have had 13. Presumably recognizing that the Court would not give it thirty days, CTX suggested that the Court give it until November 29 which, had the Court granted it, would have given CTX twenty days (inclusive of holidays) to complete the bargained-for five-day review.

42. That CTX pretextually terminated the settlement to buy time, was, as I recall reiterated to me and my law partner Richard Lerner during a separate telephone conversation with CTX counsel on the afternoon of November 18.

43. Throughout the weekend of November 19 and 20, we wrote to counsel for CTX, inviting them to submit additional questions for our and our client's review. None were ever provided.

44. As the Court declined to grant additional time for further "financial due diligence," it is Benlida's position that (a) the termination notice was indeed a nullity, as it was nothing but a transparent effort to buy more time, as counsel acknowledged; and (b) the settlement agreement is enforceable, as the financial statements demonstrate that there is no reasonable basis to believe that Benlida faces a short- or medium-term risk of financial instability or collapse.

45. While the settlement agreement provides that CTX may make the determination of solvency "in its sole discretion," it is well established that "[n]umerous cases arising in many varied contexts apply the implied duty of good faith and fair dealing to an obligation that is exercised with sole discretion." *Sepe v City of Safety Harbor*, 761 So 2d 1182, 1184 (Fla Dist Ct App 2000) (omitting string cites set forth in footnote 2). And of course, exercising sole discretion with its implied duty of good faith and fair dealing, never allows for a pretextual termination simply because there was not enough time, or because a party should have negotiated for more time to begin with.

46. We further note that on at least one occasion – September 21 (10:51 a.m.) – during the protracted settlement negotiations, CTX threatened to move to enforce the settlement; unfortunately, Benlida is now constrained to so move, as it appears that there is no end in sight.

47. That there is no end in sight is made even more clear by the email received from CTX on November 21 (2:46 p.m.), wherein CTX seeks, yet again, to interject new terms and conditions into the deal, which have no bearing on Benlida's short- or medium-term financial

condition. Indeed, CTX continues to fail to identify any specific basis for concern, instead just expressing an amorphous concern, to be elaborated on later. The bad faith is demonstrated most clearly by now asking for a personal guarantee. The email states as follows:

> Gentlemen,
>
> We've had a chance to confer with our clients, and we would like you to consider the following steps to try to bridge the gap and achieve resolution of this matter.
>
> 1. It is clear that based on the review of financial statements and the discussion last week, there are some very serious concerns on our side about the financial condition of BLD and its future as a going concern. We would like to attempt to alleviate those concerns through further disclosure and discussion through an open dialogue with BLD, with the goal of achieving a sufficient level of assurance.
>
> 2. In an effort to move forward toward a potential closing of the current proposed agreement, Mr. Astudillo is preparing a written recap of some of the facts discussed last week, for the purpose of providing that to BLD so that they can confirm and/or clarify the information in writing. The goal would be to have them confirm the information, then conduct at least one further zoom meeting for purposes of due diligence, like the one we had with them last Thursday. Then, at the end of the due diligence process – assuming we are comfortable moving forward – we would ask BLD to certify in writing any important facts we are relying on that come out in the due diligence process. Assuming BLD agrees to this process, and it could be achieved, that would potentially resolve one major hurdle.
>
> 3. The second major hurdle is based on information we learned for the first time last week. BLD has a new factory in Jiangxi, China, that is scheduled to begin production in March 2023. Our understanding previously was that the new factory would be operated under the BLD corporate umbrella, and would therefore automatically fall within the scope of the Revised Manufacturing Agreement (RMA). However, based on what was said during the call last week, that does not appear to be the case. Evidently, that factory is being operated through a newco that may not be formally affiliated with BLD. This creates a risk that once the new factory is up and running, BLD could begin funneling resources to the new operation, and/or formally dissolve while the newco and new factory continue to operate. We will need to revise the RMA to account for this, either by having the newco as a signatory, binding the principal owner, Mr. Huang, and/or specifying that the Jiangxi factory is included in the deal.
>
> 4. If everything goes smoothly – perhaps a major "if" – we believe that realistically the steps above are likely to take a fair amount of time to resolve. In that light, we propose that we give the court a realistic appraisal of the situation and ask for 30 days to try to resolve these issues.

13

48. While the email uses the word "concerns," nowhere does it articulate those concerns, nor does it particularize the facts on which CTX has an objectively reasonable basis to believe that Benlida is at short- or medium-term risk of collapse, nor even a basis for a subjective suspicion that there is such a risk; rather, the fact that CTX wishes to continue to negotiate itself establishes that it believes that there is no such risk and underscores that it is just engaged in an effort to buy more time. After all, what reasonable business would continue to negotiate such a deal if it believed its counterparty was going to fall apart?

49. And though the promised "written recap" prepared by Mr. Astudillo was provided to me on November 22 (12:41 a.m.), nowhere in the "written recap" did Mr. Astudillo identify any concern that the audited financial statement for 2021, or Q1, Q2, or Q3 indicates an unacceptable risk of instability, or that Benlida faces a short- to medium-term risk of insolvency or financial collapse. All of this of course further underscores that this is not a case of "we don't like the financials," but rather one of "we need more time to decide."

50. The parties spent months negotiating this complex deal and, if more time was needed to review the financials, if a "back and forth" and questions to be answered were needed, the parties could have negotiated that. Instead the parties agreed on five business days to review. Clearly, for CTX they "ran out of time" and perhaps they should have negotiated for more time.

51. As demonstrated by the above, even after the parties had agreed, and had a meeting of the minds, CTX continued to renegotiate. With each additional "ask," Benlida responded, "sure." Nevertheless, enough is enough. There is a deal in place, and CTX cannot frustrate it by pretextually terminating it because they want to spend more time pondering and renegotiating.

**Incorporated Memorandum of Law**

52. As noted above, while the settlement agreement provides that CTX may make the determination of solvency "in its sole discretion," it is well established that "[n]umerous cases arising in many varied contexts apply the implied duty of good faith and fair dealing to an obligation that is exercised with sole discretion." *Sepe v City of Safety Harbor*, 761 So 2d 1182, 1184 (Fla Dist Ct App 2000) (omitting string cites set forth in footnote 2). The above factual recital demonstrates that a deal was reached, and there has been no good-faith termination of the settlement agreement, inasmuch as there has been no particularized basis to believe that Benlida faces a short- to medium-term risk of insolvency, much less financial collapse. Thus, there is a fully enforceable agreement.

53. "District courts have inherent power to enforce settlement agreements." *Malvaes v. Constellation Brands, Inc.*, No. 14-21302-CIV, 2016 U.S. Dist. LEXIS 194186, at *6, 2016 WL 4007332 (S.D. Fla. June 23, 2016) (citing *Ford v. Citizens and Southern National Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991); *Kent v. Baker, III*, 815 F.2d 1395, 1398 (11th Cir. 1987). Both state and federal courts highly favor settlement agreements and enforce such agreements whenever possible. *Id.* at *6 (citing *Reed v. United States*, 717 F. Supp. 1511, 1516-1517 (S.D. Fla. 1988); *Sea-Land Services, Inc. v. Sellan*, 64 F. Supp. 2d 1255, 1262 (S.D. Fla. 1999)).

54. Under Florida law, settlement agreements are interpreted under the law of contracts, and must be "firm or definite in its essential terms" to be legally enforceable. *De Cespedes v. Bolanos*, 711 So. 2d 216, 218 (Fla. Dist. Ct. App. 1998); see also *Miles v. Nw. Mut. Life Ins. Co.*, 677 F. Supp. 2d 1312, 1314 (M.D. Fla. 2009). In *U.S. Bank Nat'l Ass'n v. Benoit*, 190 So. 3d 235, 237 (Fla. Dist. Ct. App. 2016), the court stated, "parties have broad discretion in fashioning the terms of a settlement agreement, and courts must enforce a settlement agreement so long as the parties agree on the essential terms and seriously understand and intend to be

bound by the terms." (Internal citations and quotations omitted). See also *De Cespedes v. Bolanos*, 711 So. 2d 216, 218 (Fla. Dist. Ct. App. 1998) (where the court found that though the parties had not reached decisions on certain terms, a settlement agreement had been reached as the parties agreed to the essential terms). Here, the essential terms have been agreed to, as CTX's issuance of a "termination" reinforces.

55. Additionally, execution of a settlement agreement is unnecessary when parties have already agreed to the essential terms. In *Miles*, 677 F. Supp. 2d at 1314, the court determined that an email between party counsel on behalf of their clients indicating an acceptance of an offer of settlement, and agreement to file a notice of settlement prior to a formally executed agreement demonstrated an intent to be bound to the settlement agreement essential terms. In cases where the essential terms have already been agreed to, execution of a formal settlement draft is "merely a procedural formality." *See id.* at 1316 (citing *Boyko v. Ilardi*, 613 So. 2d 103, 104 (Fla. 3d DCA 1996)). Here, though the parties have agreed to the settlement terms, both parties assented to the agreement of the essential terms by email, and agreed to and executed the final versions. Offer and acceptance. A deal is a deal. In this case, the execution of the agreement itself would be a mere formaility. CTX cannot negate its execution of the agreement by directing its counsel to not turn over its signature pages, particularly since counsel has confirmed that CTX executed the agreement, and Benlida has relied upon its representations by turning over its confidential financial information.

## Conclusion

Accordingly, plaintiff Jiangmen Benlida Printed Circuit Co., Ltd. respectfully requests that the Court issue an order:

(1) reopening and enforceing the settlement agreement with its incorporated RMA;

(2) declaring CTX's termination notice of November 17 a nullity;

(3) awarding Belinda attorney's fees and costs, pursuant the settlement agreement;[7]

(4) terminating and closing the action; and

(5) awarding such further relief as is just and proper.

## Certification

Pursuant to Local Rule 7.1(a)(3), undersigned counsel for Benlida certifies that I have conferred in good faith to reach agreement on the issues raised in this motion, and have been unable to to so. As part of our meet and confer, CTX advised on November 23 (1:17 p.m.) that "if Benlida pursues [an] action to enforce and does not succeed, CTX will not pursue any further settlement negotiations." We expect that CTX will oppose this motion.

Dated: New York, New York
      November 28, 2022

Respectfully submitted,

**MAZZOLA LINDSTROM LLP**
*Attorneys for Plaintiff Benlida*

By: */s/ Jean-Claude Mazzola*
Jean-Claude Mazzola
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
646.250.6666
jeanclaude@mazzolalindstrom.com

---

[7] We again note that the settlement agreement and RMA will be provided to the Court upon request.

## Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing has been served via electronic mail on a registered CM/ECF user on November 28, 2022.

By: /s/ *Jean-Claude Mazzola*
Jean-Claude Mazzola