**Exhibit B**

**Revised Manufacturing Agreement**
**Note: Benlida version has execution page.**
**Redacted per Judge Goodman's January 18, 2023**
**Paperless Order.**

# <u>REVISED MANUFACTURING AGREEMENT</u>

This Revised Manufacturing Agreement (this "<u>Agreement</u>") is entered into by and between: Jiangmen Benlida Printed Circuit Co., Ltd. ("<u>BLD</u>") on one hand; and Circuitronix, LLC ("<u>CTX</u>") and Circuitronix Hong Kong, Ltd. ("<u>CTX-HK</u>") on the other hand (BLD, CTX and CTX-HK shall hereinafter be collectively referred to as the "<u>Parties</u>" or "<u>parties</u>", and individually as a "<u>Party</u>" or "<u>party</u>").   The effective date of this Agreement is the last date on which the last Party executes this Agreement ("<u>Effective Date</u>").

**WHEREAS** BLD is engaged in manufacturing of "Bare Printed Circuit Boards" ("<u>PCBs</u>"), and CTX and CTX-HK supply high quality PCBs to their customers on a worldwide basis;

**WHEREAS** subject to the terms and conditions as set forth in this Agreement, CTX and CTX-HK desire to engage BLD as a contract manufacturer of PCBs and to further develop and create demand for PCBs;

**NOW, THEREFORE,** in consideration of the mutual covenants and promises contained herein, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

# <u>TERMS</u>

## 1.  <u>MANUFACTURING AND SALE</u>

**1.1    Appointment.**        Subject to the terms and conditions of this Agreement, CTX and CTX-HK hereby appoint BLD as their manufacturing agent during the Term (as defined below) for the purpose of supplying Products to customers and potential customers identified by CTX or CTX-HK.   For purposes of this Agreement, "<u>Product</u>" shall mean any PCB or contract manufacturing-related work or services provided by BLD or any associated entities.   CTX and CTX-HK shall identify potential customers that may be interested in purchasing Products.

**1.2    Purchase Orders.**        CTX and CTX-HK will solicit and promote sales of Product and issue and release purchase orders for such products to BLD ("<u>Purchase Orders</u>").   CTX and CTX-HK shall also undertake responsibility for providing BLD with necessary specifications or drawings, etc., as may be required for providing full and clear inputs for manufacturing, packaging, and forwarding supplies.   BLD hereby agrees to accept any Purchase Orders that meet the established pricing, lead-time, and capacity requirements set forth in this Agreement.   CTX will, in good faith, undertake and endeavor to purchase, on average, over each quarter, at least 4000 sq meters per week from BLD; however, this volume goal is not binding upon CTX, and is aspirational only.   CTX's failure or inability to meet the goal shall not constitute a breach of contract and shall not result in any penalty to CTX.   BLD acknowledges that the payment term during the first 12 months after the Effective Date of this Agreement may operate as a deterrent to CTX being able to achieve this volume goal.

**1.3    Conduct of Business; Signage at Factory.** CTX and CTX-HK shall conduct business in their own name and shall maintain their own sales staff and offices.   BLD hereby agrees to display

1

CTX signage at all BLD factories and manufacturing locations, at the discretion of CTX, and to display such CTX signage at all times.  BLD, as the contract manufacturing agent of CTX and CTX-HK, hereby agrees to cooperate in all aspects of the business, including communications with customers, with the aim of communicating to the greatest extent possible that the Parties are conducting business together as a unified and integrated commercial enterprise.

**1.4   Marketing Period.**

> ***a.   Identified Potential Customers.***       CTX or CTX-HK shall, from time to time, provide a list to BLD of potential customers.  BLD shall promptly review such list and, within three (3) business days after delivery thereof, shall provide written notice to CTX and CTX-HK if BLD objects to CTX or CTX-HK adding that potential customer to such list.  BLD may only object to a potential customer if such person or entity is already a customer of BLD, and must provide CTX with evidence that it is already an existing customer within three (3) business days (not including official public holidays in China).  If BLD does not timely object to a potential customer in accordance with this section (each an "Identified Potential Customer"), CTX and CTX-HK shall have the exclusive right, for a period of twelve (12) months thereafter (the "Marketing Period") to promote and solicit the sale of Products to the Identified Potential Customer, including its respective affiliates, successors, or assigns.  **Schedule A** attached hereto (the "Exclusive Customer List") contains a current list of Identified Potential Customers that have been accepted by BLD. **Schedule A** shall be updated from time to time by CTX or CTX-HK to include additional Identified Potential Customers (and a copy of any such updated schedule shall be promptly provided to BLD).  For purposes of this Agreement, an Identified Potential Customer shall be deemed to mean and include the respective affiliates, successors, and assigns of each Identified Potential Customer.  For the Identified Potential Customers on **Schedule A** on the Effective Date, the Marketing Period shall be 24 months from the Effective Date, rather than 12 months.

> ***b.   Extension of Marketing Period.***       The Marketing Period shall be extended if, in the opinion of CTX or CTX-HK, BLD (1) performed poorly during any audit or visit by an Identified Potential Customer or (2) submitted a poor or sub-standard Product sample.  In such cases, the Marketing Period shall be extended by a timeframe equal to (i) the period between the Identified Potential Customer's first audit and the follow-up audit; and/or (ii) the time between the first sample submission and the next sample submission.  The Marketing Period shall also be extended in the event of any material breach of this Agreement for a period of time equal to the period of the breach.

**1.5   Exclusive Sales Period.**       If CTX or CTX-HK procures a Purchase Order from an Identified Potential Customer during the Marketing Period (any such Identified Potential Customer becoming an "Exclusive Customer"), CTX and CTX-HK shall have the exclusive right, for a period of two (2) years from the date BLD completes the last Purchase Order related (directly or indirectly) to that Exclusive Customer (the "Exclusive Sales Period"), to deal exclusively with such Exclusive Customer, including handling such account and procuring Purchase Orders for the Products.  Each current Exclusive Customer is listed on **Schedule A**, which schedule shall be updated from time to time by CTX or CTX-HK to include any additional Exclusive Customers (and a copy of any such updated schedule shall be promptly provided to BLD).  For purposes of this Agreement, an Exclusive Customer shall be deemed to mean and include the respective

affiliates, successors, and assigns of each Exclusive Customer.  For the Exclusive Customers currently on **Schedule A**, the Exclusive Sales Period will begin on the later of the Effective Date or the date of completion of the most recent Purchase Order.  The Exclusive Sales Period shall also be extended in the event of any material breach of this Agreement for a period of time equal to the period of the breach.

**1.6     No Solicitation, Communications or Sales.**

a)  BLD agrees that it shall not directly or indirectly (i) solicit any Identified Potential Customer during the Marketing Period or any Exclusive Customer during the Exclusive Sales Period; or (ii) contract with or otherwise sell or deliver any Product to any Identified Potential Customer during the Marketing Period or any Exclusive Customer during the Exclusive Sales Period. BLD further agrees that should any Identified Potential Customer or Exclusive Customer have any communication with BLD or any of its affiliates for the purpose of doing any business with, or purchasing any Product from, BLD or any of its affiliates, BLD shall (i) immediately refer said such Identified Potential Customer or Exclusive Customer to CTX and CTX-HK, and (ii) provide written notice to CTX and CTX-HK of same.  Likewise, CTX and CTX-HK agree not to interfere in any business relationship that BLD may have with its customers.

b)  BLD hereby represents and confirms, after exercising all due diligence, that it has not, either directly or indirectly through some third party, had any communication with any Exclusive Customer or Identified Potential Customer, except in conjunction with CTX. CTX considers this representation to be an essential inducement to entering the Settlement Agreement, and if it turns out to be false, has the right to treat such discovery as a breach warranting immediate termination of the Settlement Agreement notwithstanding Section 10.2, and requiring all Settlement Payments made to BLD to be returned to CTX.

**1.7     Manufacturer's Acknowledgement.**      BLD acknowledges that CTX and CTX-HK have and will expend substantial monies on advertising, marketing, technology, and in the development of potential customers. BLD further agrees that the identity of CTX or CTX-HK customers, the specifications of their orders and pricing thereof, are considered confidential and proprietary in nature, a valuable asset of CTX or CTX-HK, are deemed to be "Trade Secrets" of CTX or CTX-HK and are subject to the protections of Section 8 hereof.

**1.8     Non-Solicitation of CTX Employees and Customers.**      BLD, including its officers, directors, and employees, during the Term of this Agreement and for a period of two (2) years after termination of this Agreement, shall not: solicit; recruit; hire; or attempt to solicit, recruit, or hire, directly or by assisting another to do so, any shareholder, officer, employee or agent of (1) CTX or CTX-HK, (2) any affiliate of CTX or CTX-HK, or (3) any employee, vendor, or customer of CTX, CTX-HK, or their affiliates.  BLD hereby acknowledges that the restrictions contained in this Section 1.8 are reasonably necessary to further CTX and CTX-HK's legitimate business interests, including protecting CTX and CTX-HK's: (a) trade secrets; (b) valuable confidential business information and professional information; (c) substantial relationships with specific, prospective or existing customers; and (d) customer goodwill associated with CTX and CTX-HK's trademarks and service marks.

**1.9    Trademarks and Service Marks.**    CTX or CTX-HK shall have the right to select, own and maintain trademarks or service marks for Product in any territory where the customers on the Exclusive Customer List operate ("Territory") including any and all goodwill associated with such trademarks or service marks.  CTX or CTX-HK may register and renew such trademarks or service marks at their discretion.

**1.10    Fiduciary Duties.**    BLD acknowledges that CTX and CTX-HK are reposing a significant amount of trust in BLD to act as CTX and CTX-HK's agent vis-à-vis the companies listed on **Schedule A**, and that when BLD has to perform an action for these companies, or when it is communicating directly with these companies, BLD is in a superior position than CTX or CTX-HK to affect CTX or CTX-HK's relationship with these companies.  Accordingly, BLD hereby acknowledges that it owes CTX and CTX-HK a contractual, common law and statutory duty of good faith, fair dealing, loyalty, and care and hereby represents and warrants that it will use its best efforts to promote and further CTX and CTX-HK's business interests with respect to the companies listed on **Schedule A**.  Consistent therewith, BLD shall subordinate and refrain from acting upon any of its desires that may adversely affect CTX or CTX-HK's interests with the companies on **Schedule A**.  Without limiting the generality of the foregoing, it shall be deemed a material breach of this Agreement, a breach of the fiduciary duties that BLD owes CTX and CTX-HK, as well as a breach of its contractual obligations to act in good faith, if BLD does not permit the companies listed on **Schedule A** to visit its factory or factories, or perform an audit, or if BLD refuses to provide any other information or documentation about itself to the companies, within a reasonable period of time, not to exceed one (1) week, upon receiving such a request.

**1.11    Change of Control.**    BLD shall not engage in or effect any change of Control without the prior written consent of CTX or CTX-HK.  For the purposes of this Agreement, "Control" shall mean, with respect to BLD, the power to direct the management and policies of BLD, directly or indirectly, whether through ownership of voting securities or other beneficial interests, by contract or otherwise.

## 2.    PRICING; PURCHASE ORDERS

**2.1    Pricing Matrix.**    Except as otherwise expressly set forth in this Agreement, all business will be conducted as per the pricing matrix in **Schedule B** ("Pricing Matrix").

**2.2    Price Increases.**    No price increases shall be permitted, except in accordance with the terms set forth in **Schedule B**. Any proposed price increases must be adequately justified by demonstrating a price increase in the parameters set forth in section 4 of the Pricing Matrix.

**2.3    Purchase Order Price.**    The acceptance by BLD of a Purchase Order issued by CTX or CTX-HK creates a binding obligation on both Parties.  Therefore, notwithstanding any conflict with other provisions of this Agreement, including the Pricing Matrix or Section 2.4, the pricing stated in a Purchase Order always takes precedence and governs the transaction.

**2.4**    **Agreed Pricing For Existing Part Numbers.**    The Parties have specifically agreed that as of the Effective Date, pricing for all existing part numbers shall be as follows:

1. For any existing part number (or new revision of an existing part number) which was first produced after 07/31/22, the price will be the **lower** of: 5% of the existing price, or the Pricing Matrix.

2. For any existing part number (or new revision of an existing part number) which was first produced before 07/31/22, the price will be the **lower** of: 10% of the existing price, or the Pricing Matrix.

3. Existing prices are always without any premium which was being included.

**2.5**    **Lowest Price Guaranty.**    No customer of BLD shall be given lower pricing than that provided to CTX and CTX-HK pursuant to the terms of this Agreement.

**3.  <u>DELIVERY</u>**

**3.1**    BLD shall use best commercial efforts to ensure timely delivery of all Products in accordance with the delivery requirements set forth in the lead-time schedule attached hereto as **<u>Schedule C</u>** or as otherwise set forth in an accepted Purchase Order (the "<u>Lead-Time Schedule</u>").

**3.2**    Delivery date shall imply date of delivery at port of entry.  If BLD fails to adhere to quality standards and/or to the Lead-Time Schedule, CTX and CTX-HK reserve the right to procure the Product elsewhere and to recover from BLD all such procurement costs and expenses and consequential damages suffered by CTX as a result of BLD's failure, including but not limited to line-down costs.

**3.3**    BLD and CTX (and CTX-HK) shall agree to Lead-Time Schedule flexibility requirements specific to the Product as documented in any addenda.

**3.4**    Upon learning of any potential delivery delays, BLD shall immediately notify CTX and CTX-HK as to the cause and extent of such delay.

**3.5**    If BLD fails to make deliveries at the specified time and such failure is caused by BLD, BLD will, at no additional cost to CTX or CTX-HK, employ accelerated measures such as material expediting fees, premium transportation costs, or labor overtime required to meet the specified delivery schedule or minimize the lateness of deliveries.

**4.  <u>PAYMENT TERMS</u>**

**4.0**    For the first 12 months from the Effective Date payment will be conducted on the existing pre-payment arrangement.

**4.1**    Starting 12 months from the Effective Date, the Parties agree to payment terms of AMS 30 days from the date of invoice.

**4.2**      Currency will be in U.S. Dollars unless specifically negotiated and reflected in any addenda hereto.

**4.3**      Payment terms are not and shall not be conditioned on the availability of credit insurance.

**4.4**      In connection with Section 4.1, BLD shall send out a list of shipment records of the previous month before the 5th of each month, CTX or CTX-HK should confirm or revise before the 15th of the month; if not, CTX or CTX-HK shall be deemed to have agreed with BLD's records and will record in its account books in accordance with the same. CTX or CTX-HK will effect payment according to the shipment records of the previous month by the 30th of the month, with a grace period of 10 days.  If CTX fails to follow the above time line, BLD reserves the right to immediately reverse the payment terms back to Section 4.0.

## 5.   QUALITY; PACKAGING AND DOCUMENTATION

**5.1      Quality Requirements.**      BLD shall manufacture and deliver the Products in accordance with the specifications provided to BLD by CTX or CTX-HK (the "Product Specifications").  In the event that a quality specification is ambiguous, BLD shall conform to the standards set forth in IPC 600 G Class II.

**5.2      Packaging and Documentation.**      Product packaging shall conform to CTX or CTX-HK's documentation specifications, including but not limited to, markings on the cartons, weight restrictions, documentation, etc.  Export-worthy containers or corrugated boxes shall be used, and each carton shall contain a packaging slip clearly marked. Copies of AWB, Packing List and Invoice shall be emailed and faxed to CTX or CTX-HK upon shipment of Product.

## 6.   ENGINEERING CHANGES

**6.1**      CTX or CTX-HK may, upon advance written notice to BLD, submit engineering changes for incorporation into the Products. It is important that this notification include documentation of the change to effectively support an investigation of the impact of the engineering change. BLD will make a reasonable effort to review the engineering change and report to CTX or CTX-HK. If any such change affects the price, delivery, or quality performance of said Product, an equitable adjustment will be negotiated between BLD and CTX or CTX-HK prior to implementation of the change. Irrespective, any proposed price increase must conform to the Pricing Matrix attached hereto as **Schedule B** and remains subject to the requirement of Section 2.2 hereof.

**6.2**      BLD agrees not to undertake significant process changes, design changes, or process step discontinuance affecting electrical performance and/or mechanical form and fit without prior written notification and concurrence of CTX or CTX-HK.

**7.   INVENTORY MANAGEMENT**

**7.1**   BLD agrees to use laminates according to the CTX-approved vendor list ("AVL") including any sourcing plans as provided by any addenda hereto.

**7.2**   All CTX or CTX-HK tooling/equipment furnished to BLD or paid for by CTX or CTX-HK in connection with this Agreement shall:

a.   Be clearly marked and remain the personal property of CTX or CTX-HK; and

b.   Be kept free of liens and encumbrances.

Unless otherwise agreed, CTX or CTX-HK is responsible for the general maintenance of CTX or CTX-HK tooling/equipment. BLD shall hold CTX and CTX-HK property at its own risk and shall not modify the property without the written permission of CTX or CTX-HK. Upon CTX's request, BLD shall redeliver the property to CTX or CTX-HK in the same condition as originally received by BLD with the exception of reasonable wear and tear. In the event the property is lost, damaged or destroyed, BLD shall be liable for the replacement cost of such property. BLD shall return all CTX or CTX-HK property to CTX, CTX-HK, or its agent within forty-eight (48) hours of being directed to do so in writing by CTX or CTX-HK.

**8.   CONFIDENTIAL INFORMATION**

**8.1**   Each Party agrees not to disclose or make any commercial use of confidential information and/or trade secrets of the other Party regarding customer specifications or otherwise without obtaining prior written consent from such other Party. The unauthorized disclosure of the existence and nature of the relationship between BLD and CTX or CTX-HK shall be deemed a breach of this confidentiality provision.  Each Party recognizes that immediate and irreparable damage will result to the non-breaching party if one of the Parties breaches any of the terms and conditions of this Section 8, and accordingly, each Party consents to the entry by any court of competent jurisdiction of an injunction in favor of the non-breaching Party (without bond or other security being required) to restrain any such breach, in addition to any other remedies or claims which the non-breaching Party may seek. This Section of the Agreement is considered by the parties to be an integral part of this Agreement, and shall survive for a period of two (2) years from the date of termination of this Agreement.

**8.2**   Subject to the terms hereof and the proprietary rights of the parties, BLD and CTX agree to exchange, at least semi-annually, relevant process development information and business plans to include market trends, process technologies, product requirements, new product developments, available capacity and other information to support technology advancements by both BLD and CTX or CTX-HK.

**8.3**   Regarding the Circuitronix UL logo specifically assigned to BLD  (designated "CTX", and not designated "CTX-1", "CTX-2", or any other derivation), it is CTX's responsibility to inform BLD when that CTX UL logo is used in other manufacturers.  BLD has no right to reject CTX's use of any CTX UL logo in other manufacturers (whether designated "CTX" or any other

designation, such as "CTX-1", "CTX-2", etc.).  The other manufacturers using the CTX UL logo (designated "CTX", and not designated "CTX-1", "CTX-2", or any other derivation), as of the Effective Date of this Agreement, are listed in **Schedule D**.

### 9. <u>WARRANTY</u>

**9.1**     Except as expressly set forth in Section 9.2 below, BLD unconditionally warrants that (i) the Product will conform to the specifications applicable to such Product at the time of its manufacture, which are furnished in writing by CTX or CTX-HK and accepted by BLD; (ii) such Product will be of good material (supplied by BLD) and workmanship and free from defects for which BLD is responsible in the manufacture; (iii) such Product will be free and clear of all liens and encumbrances and that BLD will convey good and marketable title to such Product. In the event that any Product manufactured shall not be in conformity with the foregoing warranties, BLD shall, at BLD's option, credit CTX or CTX-HK for any such nonconformity or, at BLD's expense, replace, repair or correct such Product.

**9.2**     BLD shall have no responsibility or obligation to CTX or CTX-HK under warranty claims with respect to Products that have been subjected to abuse, misuse, accident, alteration, neglect or unauthorized repair. In addition, BLD's warranty shall be limited to one year from the date of manufacture of the Product for any feature of the Product that characteristically deteriorates over time (e.g., solder).

THE WARRANTIES CONTAINED IN THIS SECTION ARE IN LIEU OF, AND BLD EXPRESSLY DISCLAIMS, AND CTX AND CTX-HK WAIVE, ALL OTHER REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, STATUTORY OR ARISING BY COURSE OF DEALING OR PERFORMANCE, CUSTOM, USAGE IN THE TRADE OR OTHERWISE, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY, TITLE AND FITNESS FOR A PARTICULAR USE.

**9.3**     An "<u>Epidemic Condition</u>" shall exist when failure reports or statistical samplings show that more than one percent (1%) of the same Product installed or shipped during any one month contain an identical, repetitive defect in BLD supplied material and/or workmanship. If during the warranty period of one year, the same Product shows evidence of an Epidemic Condition, CTX or CTX-HK shall promptly notify BLD of such condition. Upon notification, CTX and CTX-HK shall have the right, pending correction of the Epidemic Condition, to postpone further shipments of such Product by giving written notice of such postponement to BLD. Both parties shall work together to prepare and propose a corrective action plan addressing implementation and procedure milestones for remedying such Epidemic Condition(s). All Parties shall use best efforts to implement the remedy in accordance with the agreed upon schedule. In the event of Epidemic Failure, BLD will:

 (a) Incorporate the remedy in the affected Product in accordance with CTX or CTX-HK engineering change order procedures.

 (b) Ship all subsequent Products incorporating the required modification.

**9.4**     BLD shall have no liability or responsibility under Sections 9.1 and 9.3 above for any losses or damages to the extent that any such Epidemic Failure claims are the direct result of:

(a)     BLD's compliance with CTX or CTX-HK specifications;

(b)     the negligence of CTX or CTX-HK or any other person providing goods or services in connection with the design, development, production, and distribution of the Product (with the exception of BLD's manufacture of the Product);

(c)     modification or alteration of the Product by a party other than BLD; or

(d)     defects in CTX or CTX-HK's products or components thereof (with the exception of the Products and BLD supplied components thereof).

## 10. <u>TERM; TERMINATION; DISPUTE RESOLUTION</u>

**10.1     Term.** This Agreement shall commence on the Effective Date and shall continue in full force and effect for a period of ten (10) years, or until terminated in accordance with the terms set forth in this Agreement (the "<u>Term</u>").  This Agreement shall be renewed automatically for succeeding Terms of five (5) years each, unless either party gives written notice to the other, at least 24 months prior to the expiration of the existing Term, of that party's intention not to renew.

**10.2     Termination.**

**(a)** If either party fails to meet any one or more of the terms and conditions as stated in either this Agreement or any addenda hereto, the Parties agree to negotiate in good faith to resolve such default. If the defaulting Party fails to cure such default or submit an acceptable written plan to resolve such default within thirty (30) days following notice of default, the non-defaulting Party shall have the right to terminate this Agreement by furnishing the defaulting Party with thirty (30) days' written notice of termination.

**(b)** This Agreement may be terminated by an unaffiliated Party should any Party; (i) become insolvent; (ii) enter into or file a petition, arraignment or proceeding seeking an order for relief under the bankruptcy laws of its respective jurisdiction; (iii) enter into a receivership of any of its assets or; (iv) enter into a dissolution of liquidation of its assets or an assignment for the benefit of its creditors.

**10.3     Post Expiration or Termination Rights.**     For a period of 3 years after termination or expiration of this Agreement (the "<u>Post-Term Period</u>"), BLD agrees that it shall continue to perform, manufacture and deliver Products hereunder in accordance with the terms of this Agreement, including the Price Matrix and Lead-Time Schedule, with respect to (i) all Purchase Orders for Exclusive Customers that were pending or in the process of manufacturing or delivery at the time of such expiration or earlier termination of the Term or (ii) all future Purchase Orders with respect to existing Exclusive Customers at the time of such expiration or earlier termination that CTX or CTX-HK may decide to submit to BLD for fulfillment in accordance with the terms hereof, including the Price Matrix and Lead-Time Schedule.  Further, BLD agrees that all the terms of Section 1 and 8 of this Agreement shall apply fully during the Post-Term Period.

**10.4    Dispute Resolution.**

(a) In the spirit of continued cooperation, the parties intend to and hereby establish the following dispute resolution procedure to be utilized in the event any controversy should arise out of or concerning the performance of this Agreement.

(b) It is the intent of the parties that any dispute be resolved informally and promptly through good faith negotiation between BLD and CTX. Either party may initiate negotiation proceedings by written notice to the other party setting forth the particulars of the dispute. The parties agree to meet in good faith to jointly define the scope and a method to remedy the dispute. If these proceedings are not productive of a resolution, then senior management of BLD and CTX or CTX-HK are authorized to and will meet personally to confer in a bona fide attempt to resolve the matter.

(c) Should any disputes remain existent between the parties after completion of the two-step resolution process set forth above, then the parties shall promptly submit any dispute to mediation with an independent mediator. In the event mediation is not successful in resolving the dispute, the parties may commence legal action in accordance with Section 13.4 of this Agreement.

## 11. <u>BLD CAPACITY</u>

**11.1**    BLD commits to producing up to 8000 sq. meters per week for CTX and/or CTX-HK pursuant to the terms of this Agreement should CTX and/or CTX-HK desire to utilize that capacity.

## 12. <u>INDEMNIFICATION</u>

**12.1**    BLD shall defend, indemnify, and hold CTX and CTX-HK, its officers, directors, employees, and agents (the "<u>Circuitronix Indemnified Parties</u>") harmless against any and all claims, demands, proceedings, losses, damages, obligations, liabilities, deficiencies, fines, costs, or expenses (including, without limitation, reasonable attorneys' fees) (collectively, "<u>Losses</u>") arising directly or indirectly as a result of, or relating to, (a) any material breach of this Agreement by BLD or its officers, trustees, employees, or agents; (b) any negligence by BLD in the manufacture of the Product or any failure to manufacture the Product in accordance with the Product Specifications; or (c) any negligence or wrongful acts of BLD or its officers, trustees, employees, or agents, except to the extent that any such Losses are due to the negligence or wrongful acts of CTX or CTX-HK, its officers, trustees, employees, or agents.

**12.2**    CTX and CTX-HK shall defend, indemnify, and hold BLD, its officers, directors, employees, and agents harmless against any and all Losses arising directly or indirectly as a result of, or relating to defects in the Product Specifications, except to the extent that any such Losses are due to the negligence or wrongful acts of BLD, its officers, trustees, employees, or agents.

## 13. <u>GENERAL</u>

**13.1    Insurance.**    Each party to this Agreement will maintain insurance to protect itself from claims (i) by the party's employees, agents and subcontractors under Worker's Compensation and

Disability Acts, (ii) for damages because of injury to or destruction of tangible property resulting out of any negligent act, omission or willful misconduct of the party or the party's employees or contractors, (iii) for damages because of bodily injury, sickness, disease or death of its employees or any other person arising out of any negligent act, omission, or willful misconduct of the party or the party's employees, agents or subcontractors.

**13.2    Assignment.**   No party shall delegate, assign or transfer its rights or obligations under this Agreement, whether in whole or part, without the written consent of the other party.

**13.3    Force Majeure.**       No party shall be liable for any failure or delay in its performance under this Agreement due to acts of God, acts of civil or military authority, fires, floods, earthquakes, riots, wars or any other cause beyond the reasonable control of the delayed party provided that the delayed party: (i) gives the other party written notice of such cause within fifteen (15) days of the discovery of the event; and (ii) uses its reasonable efforts to remedy such delay in its performance.

**13.4    Governing Law; Venue; Service of Process.**       This Agreement is made and entered into within and shall be governed by, construed, interpreted and enforced in accordance with the laws of the state of Florida, without regard to the principles of conflicts of laws. Any action arising from or related to this Agreement shall be brought only in a court of competent jurisdiction located in Broward or Miami-Dade County, Florida, and the Parties hereby irrevocably agree to submit to such jurisdiction and waive any objections to jurisdiction or the laying of venue in such courts. The Parties further expressly agree that service of process in any action to arising from or related to this Agreement may be completed by emailing the summons and complaint to the Parties at:

    a.   jeanclaude@mazzolalindstrom.com   and   richard@mazzolalindstrom.com   (for BLD)

    b.   chauncey.cole@coletrial.com   and   srosenthal@podhurst.com   and rishik@circuitronix.com (for CTX or CTX-HK).

**13.5    Prevailing Party Attorneys' Fees and Costs.**       The prevailing party shall be entitled to its attorneys' fees and costs in any dispute related to or arising from this Agreement, including those attorneys' fees and costs related to pre-litigation investigations and negotiations, as well as those attorneys' fees and costs associated with litigation, arbitration, mediation, appeals and quasi-judicial proceedings, as well as all litigation regarding entitlement to and amount of fees and costs. "Costs" shall be given the broadest possible definition available under the law, and shall include copying costs, travel costs, translator and interpreter costs, filing fees, government fees, expert fees, court reporter and videographer costs, retention of experts and accountants, and all other costs reasonably incurred by the prevailing party to advance its position during the dispute.

**13.6    No Waiver.**   Any waiver of any provision of this Agreement or the full and timely performance of any duties arising hereunder shall be in writing and shall be effective only in the specific instance and only for the purpose for which given. No failure or delay on the part of either party in exercising any right, power or privilege arising hereunder shall operate as a waiver thereof, nor shall any partial exercise of any right, power or privilege arising hereunder preclude any other or further exercise thereof or the exercise of any right, power or privilege. Except where otherwise

specified herein, the provisions of this Agreement may be waived, varied, modified or amended only by a written instrument executed by and on behalf of all the Parties.

**13.7     No Oral Understandings / Merger Clause.**          This Agreement embodies the entire agreement between the parties hereto with respect to the subject matter hereof and cancels and supersedes any and all prior or contemporaneous, oral or written understandings, negotiations or communications on behalf of such parties. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions of this Agreement will nevertheless continue in full force and effect.  Further, except as expressly set forth in this Agreement, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto.

**13.8     Tolling.**          Any material breach of this Agreement shall toll the applicable time periods set forth in this Agreement during the period of the material breach.

**13.9     Notice.**          All notices, demands, consents, approvals, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder (collectively, "Notices") shall be in writing and shall be given by email and, unless otherwise agreed by the parties in writing, shall additionally be given by personal delivery, or facsimile, or reputable overnight courier service (charges prepaid) or United States registered or certified mail (postage prepaid, return receipt requested) addressed as hereinafter provided, provided however that any Notice given by facsimile shall also be given by personal delivery or US registered or certified mail.  Notice shall be deemed delivered on: (a) if by overnight express delivery or personal delivery, the date of receipt, or attempted delivery, if such communication is refused; (b) if sent by overnight courier service, one (1) business day after having been deposited for next day overnight delivery with any reputable overnight courier service; and (c) if sent by mail (as aforesaid), the date of receipt or attempted delivery, if such mailing is refused.  Until further notice, notices and other communications under this Agreement shall be addressed to the parties listed below as follows:

| If to BLD: | Email: tracy@benlida.com; douglas@benlida.com |
| --- | --- |
| | Address:     Jiangmen Benlida Printed Circuit Co., Ltd. |
| | 76 Longxi Road, High-Tech Industrial Park |
| | Jiangmen, Guangdong, China |
| | Attn: Mr. Huang Hanchao |
| If to CTX: | Email: rishik@circuitronix.com |
| | Address:     Circuitronix, LLC |
| | 3131 SW 42nd Street |
| | Fort Lauderdale, Florida 33312 |
| | Attn: Mr. Rishi Kukreja |
| If to CTX-HK: | Email: rishik@circuitronix.com; akshayk@circuitronix.co.in |

Address:      Circuitronix (Hong Kong), Limited
Unit 16 7/F Block A
Po Lung Centre
11 Wang Chiu Road, Kowloon
Attn: Mr. Akshay Koul

\*\*\*

**IN WITNESS WHEREOF**, and intending to be legally bound, each of the Parties hereto have caused this Agreement to be executed as of the date(s) set forth below. Each person signing this Agreement in a representative capacity warrants that he or she has full authority to bind his or her principal to this Agreement.

| Jiangmen Benlida Printed Circuit Co., Ltd. | Circuitronix, LLC |
|---|---|
| Signature: | Signature: |
| Print Name: | Print Name: |
| Title: | Title: |
| Date: 2022.11 | Date: |
| | **Circuitronix Hong Kong, Ltd.** |
| | Signature: |
| | Print Name: |
| | Title: |
| | Date: |



14

## <u>SCHEDULE A</u>

## EXCLUSIVE CUSTOMER LIST

(Identified Potential Customers and Exclusive Customers)

**<u>Exclusive Customer List</u>**

**Updated: 08/31/2022**











**SCHEDULE A (continued)**

**Identified Potential Customer List**

## SCHEDULE B

## PRICING MATRIX

### 1.  BASE PRICING

| Layer Count | Base Price | NRE | L/T | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

"General Specification of P/N : FR4(KB, Shengyi) TG135, 0.062", 1oz. Copper base for Outer Layers and Inner Layers;4 mil line;
4mil spacing  for those outer 1OZ pcb, but 5/5mil for those base copper 1OZ; smallest drill hole size  8mil, hole density < 85holes per sq. inch", Routing,

PCB Spec. IPC 600 Class 2 as default.  Finish as long as the copper thickness is as per IPC 600 Class 2.

* For any P/N where 3 months Dollar Spend  is more than US$25K the NRE Cost is waived or will be returned if paid.

Base price including 2500 linear inches routing length per sq meter.

* No extra cost for colored Soldermask

* No extra cost for prepeg

| | | | | | | |
|---|---|---|---|---|---|---|
| 1inch=1000mil=2.54cm=0.0254m | | | 1mm=1000um | 1000um/25.4=mil | 35um=1oz | |
| 1um=0.001mm | un微米 | | | | | |

## 2. **ADDERS**

| Finish | Cost Adder | | USD/sq meter | 0.039 thickness(1.0T) | 0.061 thickness(1.6T) | 0.079 Thickness(2.0T) |
|---|---|---|---|---|---|---|
| OSP BLASL (Lead Free BLASL) | sq inch | | | sq mm | 怪看有貴Elare price, no extra add | sq mm |
| Im Tin( 1.2 micron min) | sq inch | | | sq mm | 怪看有貴Elare price, no extra add | sq mm |
| Im Tin( 1 micron min) | sq inch | | 3x | sq mm | 怪看有貴Elare price, no extra add | sq mm |
| Im Silver | sq inch | | 4x | sq mm | 怪看有貴Elare price, no extra add | sq mm |
| Im Gold (3u" min) | sq inch | <20% area | 6x | sq mm | 怪看有貴Elare price, no extra add | sq mm |
| Im Gold (2u" min) | sq inch | <20% area | 8L | sq mm | 怪看有貴Elare price, no extra add | sq mm |
| Im Gold (3u" min) | | <20% area | 10L | sq mm | 怪看有貴Elare price, no extra add | sq mm |
| Peelable Soldermask | | <20% area | | | | |
| | | Top and bottom | | | | |
| Gold Plating 30 U | sq inch | | | | | |
| | Quote by Gerber | | | | | |
| G/F ( 48/bandi...pcs ) | USD | PCS | 3-5 U" | | | |
| | USD | PCS | 30 U" | | | |
| V2PPGM,附連卡 | sq inch | | | | | |
| Vacuum Boom plugged on in hole | sq inch | | | | | |

The adders below are not addders

| | T g 170 adder | T g 170 adder | halogen free adder | | |
|---|---|---|---|---|---|
| 3x | 0.050/sq inch | 0.050/sq inch | 0.066 /sq inch | | |
| 4x | 0.00x/sq inch | 0.007/sq inch | 0.007/sq inch | | |
| 4L | 0.00/sq inch | 0.002/sq inch | 0.002/sq inch | | |
| 8L | 0.00/sq inch | 0.011/sq inch | 0.011/sq inch | | |
| 10L | 0.00/sq inch | 0.011/sq inch | 0.011/sq inch | | |
| 12L | 0.00/sq inch | 0.016/sq inch | 0.016/sq inch | | |

| Others and Non-Standard | By Quote |
|---|---|
| X-cost adder | |
| V-Scoring | |
| Manual V-Scoring | |
| CNC & Jump V-Scoring | depends on extra but no more than historical |

3/3 mil   2% for 2L, 4L,3% for 6-10L, this is for partial 1/3mil, for the whole line width /spacing with 1/3mil, the price need to be updated

### 3.  CU ADDER

**Outer layer price add**
**1）如下为外层铜厚的price add**

| Outer layer basic copper thickness minimum<br>（外层基础铜厚） | Finished copper thickness<br>实际成品完成铜厚 | BASE Price adder |
|---|---|---|
| H/H (0.5/0.5 oz) | 1oz/1oz | |
| 1oz/1oz | 1.5/1.5OZ | |
| 1.5/1.5OZ | 2/2OZ | |
| 2/2OZ | 3/3oz | |
| | | |

**Laminate copper thickness price add**
**2)如下为基材铜厚的Price add**

| Laminate copper thickness minimum<br>基材铜厚 | BASE | Remark |
|---|---|---|
| H/HOZ | | |
| 1OZ/1OZ | | |
| 2OZ/2OZ | | This is the adding price for every single core |
| 3OZ/3OZ | | |
| | | |
| | | |

Costs are in sq. meters.

4. **COST CHANGE PARAMETERS**

A.   On the first Monday of every month BLD shall provide CTX and CTX-HK with the pricing for KB 1.5mm, 1oz./1oz. Laminate, Copper and Tin cost.

B.   The pricing discussed in subsection A, above, will then be plugged into the following formula sheet (updated as of 28thst of October, 2022):

| FR-4 | up% | Occupied in PCB% | Total cost of PCB increasing% | Remark |
|---|---|---|---|---|
| Laminate price | | ██████ | 0.00% | Baseline price is RMB ████ per 48" X 40" sheet in June 2022 (without VAT) |
| Tin cost | | ████ | 0.00% | Baseline price is RMB ████ with VAT per ton |
| Copper cost | | ████ | 0.00% | Baseline price is RMB ████ with VAT per ton |
| exchange rate | | ██████ | 0.00% | Baseline US████ is RMB ████. No change between RMB ████ and RMB ████. Any conversion above ████ will give a cost reduction and any conversion above ████ will give a cost increase. |
| exchange rate impact | | | | |

C.   The cost increase/decrease will be calculated for all shipments received by CTX or CTX-HK for that particular month and a lump sum debit/credit shall be provided no later than the last working day of the following month.

D.   The only parameters which impact pricing are those shown on the Pricing Matrix, with the exception of laminate brands not included in the Pricing Matrix. BLD may only increase such laminate costs by the same amount as BLD's own out-of-pocket cost for such laminates. For example, if a sheet of the laminate included in the base pricing is ████ per sheet, and four PCBs can fit on the sheet, and the cost of a sheet of laminate not included in the Pricing Matrix is ████, then the highest cost BLD can charge is ████, divided by 4 (████). Additionally, if CTX or CTX-HK is able to source the laminate at a price less than that quoted by BLD, then BLD is obligated to buy the laminate from CTX or CTX-HK, or their source, and base the cost increase on that purchase price.

## <u>SCHEDULE C</u>

## LEAD-TIME SCHEDULE

1. <u>LEAD-TIME</u>

| Layers | Less than 8000sqm | Greater than 8001sqm |
|--------|-------------------|----------------------|
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |
| ██████ | ██████ | ████████████████████ |

2. <u>LEAD-TIME DISCOUNT</u>

The following price discounts shall apply to any shipments that exceed the lead-time noted above:

| Delay in Days | Total Discount |
|---------------|----------------|
| █ | ████ |
| █ | ████ |
| █ | ████ |
| █ | ████ |
| █ | ████ |
| █ | ████ |
| █ | ████ |
| ██████ | ████ |

These discounts shall be applied to the total purchase price set forth in the CTX or CTX-HK Purchase Order.