**Subject:** RE: Benlida adv. CTX - [confidential settlement privileged communication]
**Date:** Wednesday, October 26, 2022 at 12:33:04 PM Eastern Daylight Time
**From:** Jean-Claude Mazzola
**To:** STEPHEN F. ROSENTHAL, Richard Lerner, AGUAN@GECPAS.COM
**CC:** Chauncey Cole
**Attachments:** image006.jpg, image007.jpg, image008.jpg, image009.jpg, image010.jpg, image011.jpg, Settlement Agreement - BLD v. CTX (10-26-22 CTX redline) (JCM1), 1.docx, Revised Manufacturing Agreement - BLD v. CTX (10-26-22 CTX redline) (531407.3) (JCM1), 1.docx

Hello Stephen and Chauncey,

We did speak with our clients this morning.  Please see the Settlement Agreement and the Revised Manufacturing Agreement in redline attached.

Regarding the Settlement Agreement, we have accepted all changes but did add a line in 3. b. to reflect that the financials to be provided during the 23-month payment period will be used for the same purpose as in paragraph 3. a. "to demonstrate proof of BLD's financial stability, demonstrating a lack of short to medium term risk of insolvency or financial collapse."  We also removed "sub" from "subsection" in paragraph 3. a. to reflect that the confidentiality of the financials relates to the entirety of paragraph 3.  It is likely superfluous as it is all addressed in paragraph 8.  Nevertheless, as you can imagine, our clients, although amenable to sharing their financials, do want to ensure their confidentiality.

With respect to the Revised Manufacturing Agreement, we have accepted all changes. Benlida will provide to us tonight the information needed for the Cost Change Parameters spreadsheet at Schedule B in response to your request at your number 4 in your email below.

Please have look and let us know when is good to discuss.   We do have to get back to the court today.  We do expect that we will be able to sign all on our end tomorrow.

Thank you,

JCM



**Jean-Claude Mazzola**
Attorney
Mazzola Lindstrom LLP
1350 Avenue of the Americas, 2nd Floor  New York, NY 10019
M: +1 (646) 250-6666 |O: +1 (646) 216-8585
jeanclaude@mazzolalindstrom.com

**From:** STEPHEN F. ROSENTHAL <SROSENTHAL@podhurst.com>
**Sent:** Tuesday, October 25, 2022 8:43 PM
**To:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>; Richard Lerner <Richard@mazzolalindstrom.com>; AGUAN@GECPAS.COM
**Cc:** Chauncey Cole <chauncey.cole@coletrial.com>
**Subject:** RE: Benlida adv. CTX - [confidential settlement privileged communication]



Resending, since the RMA failed to attach.

Stephen

Stephen F. Rosenthal I Partner I Podhurst Orseck, P.A. I Miami, FL I 305-358-2800 I
www.podhurst.com

**From:** STEPHEN F. ROSENTHAL
**Sent:** Tuesday, October 25, 2022 8:42 PM
**To:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>; Richard Lerner
<Richard@mazzolalindstrom.com>; AGUAN@GECPAS.COM
**Cc:** Chauncey Cole <chauncey.cole@coletrial.com>
**Subject:** RE: Benlida adv. CTX - [confidential settlement privileged communication]

JC, Rich and Angela,

We have spoken to our client, and Benlida's request to modify the language in Section 3.a. of the Settlement Agreement—where Benlida is giving CTX threshold assurances of its financial health—in a way that would limit CTX's discretion to decide that this long-term deal presents too great a financial risk for it, has unfortunately been counterproductive. Your proposed changes have conveyed an unhelpful message to CTX that only increases its concern.

If Benlida is confident in its own financial position, then it should either just accept that provision as written in the attached draft, or it should provide CTX with the requested financials right away, in advance of the signing of the Agreement, to give CTX appropriate assurances (and we can jointly ask Judge Scola for another week's time). Either way, CTX will agree to treat those documents as confidential, as Benlida has requested. Prior to you having sent additional redlines to the Settlement Agreement, we had drafted and inserted a comparable provision (in redline in Section 3) to accomplish that confidentiality request. We have also added the phrase into Section 8 regarding confidentiality of those documents that you requested in your draft. If Benlida is willing to provide the financials in advance of the closing of the deal, CTX will of course agree to keep them confidential and a freestanding agreement can be drawn up for that purpose. Let us know.

Similarly, Benlida's request to delete its previously agreed-to obligation (in Section 3.b.) to provide updated financials on a quarterly basis throughout the period that CTX was agreeing to make settlement payments to Benlida is also unacceptable. That change in position (from the one you communicated as recently as our call yesterday) only underscores the importance of Benlida giving CTX insight into its financial stability.

Aside from those primary issues, there are four other issues to discuss:

1. We inserted language in redline in Sections 1.4 and 1.5 of the Revised Manufacturing Agreement for the issues regarding the exclusive customers that we discussed during yesterday's phone call.

2. Regarding Benlida's new proposed language about the exercise of due diligence in Section 1.6(b) of the Revised Manufacturing Agreement, CTX can accept it if it's moved it in that sentence as set forth below in red, since it is Benlida's representation, not something CTX could independently know:

> BLD hereby represents and confirms, after exercising all due diligence, that it has not, either directly or indirectly through some third party, had any communication with any

Exclusive Customer or Identified Potential Customer …

3. In Section 2.4 of the Revised Manufacturing Agreement, CTX wishes to add the line in red to eliminate a possible ambiguity:

> **Agreed Pricing For Existing Part Numbers.** The Parties have specifically agreed that as of the Effective Date, pricing for all existing part numbers shall become the <u>lower</u> of: (1) the price calculated in the Pricing Matrix, or (2) 10% less than the pricing as of the day before the Effective Date. <span style="color:red">The pricing as of the day before the Effective Date means the price without any surcharge.</span> This provision takes priority over the Pricing Matrix for existing part numbers.

4. Please note that in the draft of the Revised Manufacturing Agreement that Benlida had approved, there are blanks that CTX was waiting for Benlida to fill in for the "Cost Change Parameters" spreadsheet in Schedule B (page 25), specifically the "Remark" field for tin cost, copper cost, and exchange rate, to confirm that the parties are on the same page on this set of variables. Please have Benlida send the information it believes should be plugged in.

Regards,

Stephen

Stephen F. Rosenthal I Partner I Podhurst Orseck, P.A. I Miami, FL I 305-358-2800 I
www.podhurst.com

**From:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>
**Sent:** Tuesday, October 25, 2022 10:52 AM
**To:** Chauncey Cole <chauncey.cole@coletrial.com>; STEPHEN F. ROSENTHAL <SROSENTHAL@podhurst.com>
**Cc:** Richard Lerner <Richard@mazzolalindstrom.com>; AGUAN@GECPAS.COM
**Subject:** RE: Benlida adv. CTX

Hello – Please see attached. On the settlement agreement I have proposed what I think are minor revisions. We did discuss the addition of the wire details, the addition of the word "reasonably" before "determines" and the striking of "sole," and expanding the Confidentiality section to include the financials that Benlida will be sharing with CTX. I did modify paragraph 3. b. so that when CTX's prepay obligations have ended, so does Benlida's with respect to sharing financials which I think makes sense. On the Manufacturing Agreement, at paragraph 1.6 b) I added language that reflects that Benlida's representation is being made after having "exercised all due diligence". I have noted the changes in highlighted and strikethrough. I do recall that CTX was going to add some additional language regarding the tolling as it relates to the customer list which I did not add. I also recall that there was discussion about "3 days" in connection with that. Our side's only issue is that the "3 days" be Chinese Business Days. We have the financials and are in the process of translating to English. Please review and get back to us your soonest. Thank you and thank you for your assistance with this, JCM



**Jean-Claude Mazzola**
Attorney
Mazzola Lindstrom LLP

1350 Avenue of the Americas, 2nd Floor  New York, NY 10019
M: +1 (646) 250-6666 |O: +1 (646) 216-8585
jeanclaude@mazzolalindstrom.com

**From:** Chauncey Cole <chauncey.cole@coletrial.com>
**Sent:** Monday, October 24, 2022 11:15 AM
**To:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>; STEPHEN F. ROSENTHAL
<SROSENTHAL@podhurst.com>
**Cc:** Richard Lerner <Richard@mazzolalindstrom.com>
**Subject:** Re: Benlida adv. CTX

Sure, let's do 1:30.

Respectfully yours,

Chauncey D. Cole IV, Esq.

Chauncey Cole, PA
9100 South Dadeland Blvd., Suite 1553
Miami, FL 33156
chauncey.cole@coletrial.com
Direct: 786-497-7053
Mobile: 518-229-2782



**From:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>
**Date:** Monday, October 24, 2022 at 9:14 AM
**To:** Chauncey Cole <chauncey.cole@coletrial.com>, "srosenthal@podhurst.com"
<SROSENTHAL@podhurst.com>
**Cc:** Richard Lerner <Richard@mazzolalindstrom.com>
**Subject:** RE: Benlida adv. CTX

Can you do 1PM or 130PM?  Please let me know.  Thank,  JCM

**Page 4 of 6**



## Jean-Claude Mazzola
Attorney
Mazzola Lindstrom LLP
1350 Avenue of the Americas, 2nd Floor  New York, NY 10019
M: +1 (646) 250-6666 |O: +1 (646) 216-8585
jeanclaude@mazzolalindstrom.com

**From:** Chauncey Cole <chauncey.cole@coletrial.com>
**Sent:** Monday, October 24, 2022 11:13 AM
**To:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>; STEPHEN F. ROSENTHAL
<SROSENTHAL@podhurst.com>
**Cc:** Richard Lerner <Richard@mazzolalindstrom.com>
**Subject:** Re: Benlida adv. CTX

Hi JC,

Stephen and I are generally available this afternoon.  Do you want to set up a call at 12:30?

Respectfully yours,

Chauncey D. Cole IV, Esq.

Chauncey Cole, PA
9100 South Dadeland Blvd., Suite 1553
Miami, FL 33156
chauncey.cole@coletrial.com
Direct: 786-497-7053
Mobile: 518-229-2782



**From:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>
**Date:** Monday, October 24, 2022 at 8:41 AM
**To:** Chauncey Cole <chauncey.cole@coletrial.com>, "srosenthal@podhurst.com"
<SROSENTHAL@podhurst.com>
**Cc:** Richard Lerner <Richard@mazzolalindstrom.com>
**Subject:** Benlida adv. CTX

Gents – Are you available for a call today?  We did discuss with our clients, and they are generally in agreement with all.  I do have couple of questions that I think would be more efficient via telephone.  Thank so much.  JCM



**Jean-Claude Mazzola**
Attorney
Mazzola Lindstrom LLP

1350 Avenue of the Americas, 2nd Floor  New York, NY 10019
M: +1 (646) 250-6666 |O: +1 (646) 216-8585
jeanclaude@mazzolalindstrom.com

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (this "Agreement") is entered into by and between: Jiangmen Benlida Printed Circuit Co., Ltd. ("BLD") and ROK Printed Circuit Co., Ltd. ("ROK") (referred to together as "BLD/ROK") on one hand; and Circuitronix, LLC ("CTX") and Circuitronix Hong Kong, Ltd. ("CTX-HK") (referred to together as "CTX/CTX-HK") on the other hand (BLD/ROK and CTX/CTX-HK shall hereinafter be collectively referred to as the "Parties" and individually as a "Party"). The effective date of this Agreement is the last date on which the last Party executes this Agreement ("Effective Date").

## BACKGROUND

WHEREAS BLD is the Plaintiff in a legal action pending in the United States District Court, Southern District of Florida, *Jiangmen Benlida Printed Circuit Co., Ltd. v. Circuitronix, LLC*, Case 0:21-cv-60125-RNS (S.D. Fla.) (the "Litigation");

WHEREAS CTX is the Defendant and counterclaimant in the Litigation;

WHEREAS ROK and CTX-HK are affiliates of BLD and CTX, respectively, and have interests associated with the Litigation by virtue of their affiliations with BLD and CTX, and the Parties' business together;

WHEREAS the Parties desire to resolve the Litigation and have agreed to resolve the Litigation on the terms set forth in this Agreement;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

## TERMS

1.      **Settlement Payment**. CTX shall pay BLD the total amount of $5,000,000.00 (USD) as follows (the "Settlement Payment"):

      a.  $1,500,000.00 within 10 business days of the Effective Date of this Agreement.

      b.  $150,000.00 per month, starting 12 months from the Effective Date of this Agreement, for 23 months (with the exception of the final installment being $200,000 rather than $150,000). Payment shall be by wire, or other electronic transfer of funds, to:

| | |
|---|---|
| Bank: | JPMorgan Chase Bank, N.A. |
| | 850 Third Avenue |
| | New York, NY 10022 |
| Bank Routing Number: | 021000021 |

| SWIFT Code: | CHASUS33 |
| Account Name: | Mazzola Lindstrom LLP Attorney Trust Account IOLA |
| | 1350 Avenue of the Americas, 2nd Floor |
| | New York, NY 10019 |
| Account Number: | 296865980 |

2.     **Revised Manufacturing Agreement**.      BLD   and   CTX/CTX-HK   hereby agree and enter into the contemporaneously executed Revised Manufacturing Agreement ("Revised Manufacturing Agreement"), attached hereto as **Exhibit 1**.  The Revised Manufacturing Agreement is an essential and necessary component of this Agreement, and its terms are specifically incorporated herein by reference.  The Revised Manufacturing Agreement includes all commercial terms not otherwise expressly set forth in this Agreement, but which are an essential part hereof, including but not limited to the Parties' agreements as to: (1) display of CTX signage and communications with customers, (2) exclusive customer list, (3) pricing, (4) payment terms, and (5) capacity.

3.     **Proof of BLD's Financial Stability**.

   a.   No later than 5 business days after the Effective Date, BLD shall provide CTX with its auditor certified financial statements for 2021, and financial statements for Q1, Q2, and Q3 2022. The financials must include a balance sheet, income statement and cash flow statement and must be translated in English. This requirement is necessary to demonstrate proof of BLD's financial stability, demonstrating a lack of short to medium term risk of insolvency or financial collapse. This is an essential and necessary term of this Agreement and, within 5 business days after receiving the BLD financial statements, if CTX determines in its sole discretion that BLD faces an unacceptable risk of instability, this Agreement becomes immediately voidable at CTX's sole discretion.  All financial data provided by BLD in connection with this subsection shall be kept strictly confidential by CTX and shall not be disclosed to third-parties, other than CTX's attorneys, accountants, or other professional advisors.

   b.   In addition, the same terms shall apply during the 23-month period in which CTX has agreed to make monthly settlement payments to BLD.  Specifically, BLD shall provide CTX comparable updated financial information, as such requirement is necessary to demonstrate proof of BLD's financial stability and a lack of short to medium term risk of insolvency or financial collapse, no later than 5 business days before the first anniversary of the Effective Date, and no later than 5 business days before the end of each subsequent quarter during the 23-month period in which CTX will pay settlement payments to BLD so that CTX has assurance of BLD's financial stability.

4.     **General Release**. The Parties hereby release and discharge each other, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, insurers, affiliates and assigns, and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns and successors in interest, if any, from all known and unknown charges, complaints, claims, grievances,

liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, expenses (including attorneys' fees and costs), and punitive damages, of any nature whatsoever, known or unknown, which they have, or may have had, against one another, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from any event preceding the Effective Date of this Agreement, including but not limited to, any claims that have been or could have been raised under federal, state or local law in the Litigation, or any facts underlying or associated with the Litigation. This release is intended by the Parties to be a general release with the broadest possible application and scope available under the law, subject only to the Parties' continued business relationship pursuant to the terms of the Revised Manufacturing Agreement.

5. **Dismissal of Litigation**. The Parties and their counsel shall take whatever actions are necessary to ensure that the Litigation is dismissed in its entirety, with prejudice and without costs or fees, within 10 business days of the Effective Date of this Agreement. The Parties and their counsel will cooperate in securing the dismissal of the Litigation as appropriate.

6. **No Admission of Liability**. The Parties acknowledge that this Agreement is a compromise and final settlement of disputed claims and that it may not be construed as an admission of liability by any of the Parties. Further, the Parties specifically disclaim and deny any liability.

7. **Material Breach / Settlement Payments**. The Parties acknowledge that any material breach of this Agreement or the Revised Manufacturing Agreement by BLD/ROK would result in irreparable harm to CTX/CTX-HK and shall entitle CTX to stop any remaining Settlement Payments and recover any Settlement Payment amounts paid up to that point, in addition to any and all other forms of relief available under the law. In the event of a material breach by BLD, BLD agrees to give CTX first priority among its creditors for repayment of any Settlement Payment CTX has made.

8. **Confidentiality of Agreement**. The Parties expressly understand and agree that this Agreement and any financial records provided in accordance with paragraphs 3.a. and b. above shall remain CONFIDENTIAL and shall not be disclosed to any third party whatsoever, except to the Parties' counsel, accountants, insurers, financial advisors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, the Parties' management, officers, directors or members, or as required by law or order of court. Nothing contained in this paragraph shall prevent any Party from stating that the Parties have resolved the Litigation (without otherwise disclosing the specific terms of this Agreement), or taking reasonable steps to enforce this Agreement. Further, the Parties recognize and agree that CTX/CTX-HK shall, in their sole discretion, have the exclusive right to communicate to customers on the Exclusive Customer List that the Parties have settled the Litigation, including but not limited to in the form of the letter attached hereto as **Exhibit 2**.

9. **Agreement is Legally Binding**. The Parties intend this Agreement to be legally binding upon, and shall inure to the benefit of, each of them and their respective successors, assigns, executors, administrators, heirs and estates.

3

10.  **Entire Agreement**. The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof, including but not limited to the Manufacturing Agreement of March 1, 2012 and the Letter Agreement of July 21, 2016. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto.

11.  **New or Different Facts: No Effect**. Except as provided herein, this Agreement shall be, and remain, in effect despite the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute a release of any Party's rights to enforce the terms of this Agreement.

12.  **Interpretation**. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

13.  **Governing Law. Choice of Forum. Service of Process**. This Agreement is made and entered into within and shall be governed by, construed, interpreted and enforced in accordance with the laws of the state of Florida, without regard to the principles of conflicts of laws. Any action to enforce this Agreement shall be brought only in a court of competent jurisdiction located in Broward or Miami-Dade County, Florida, and the Parties hereby irrevocably agree to submit to such jurisdiction and waive any objections to jurisdiction or the laying of venue in such courts. The Parties further expressly agree that service of process in any action to enforce this Agreement may be completed by emailing the summons and complaint to counsel for the Parties at:

a.  jeanclaude@mazzolalindstrom.com  and  richard@mazzolalindstrom.com  (for BLD/ROK)

b.  chauncey.cole@coletrial.com and srosenthal@podhurst.com (for CTX/CTX-HK).

14.  **Reliance on Own Counsel**. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement or otherwise.

15.  **Counterparts**. This Agreement may be executed by the Parties in counterparts,

4

each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16. **Authority to Execute Agreement**. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any By-law, Covenants and/or other restrictions placed upon them by their respective entities.

17. **Enforcement of Agreement: Attorneys' Fees and Costs.** The prevailing party shall be entitled to its attorneys' fees and costs in any dispute related to or arising from this Agreement, including those attorneys' fees and costs related to pre-litigation investigations and negotiations, as well as those attorneys' fees and costs associated with litigation, arbitration, mediation, appeals and quasi-judicial proceedings, as well as all litigation regarding entitlement and amount of fees and costs. "Costs" shall be given the broadest possible definition available under the law, and shall include copying costs, travel costs, filing fees, government fees, expert fees, court reporter and videographer costs, retention of experts and accountants, and all other costs reasonably incurred by the prevailing party to advance its position during the dispute.

**IN WITNESS WHEREOF**, and intending to be legally bound, each of the Parties hereto have caused this Agreement to be executed as of the date(s) set forth below. Each person signing this Agreement in a representative capacity warrants that he or she has full authority to bind his or her principal to this Agreement.

| **Jiangmen Benlida Printed Circuit Co., Ltd.** | **Circuitronix, LLC** |
|---|---|
| Signature:_____ | Signature:_____ |
| Print Name:_____ | Print Name:_____ |
| Title:_____ | Title:_____ |
| Date:_____ | Date:_____ |
| **ROK Printed Circuit Co. Ltd.** | **Circuitronix Hong Kong, Ltd.** |
| Signature:_____ | Signature:_____ |
| Print Name:_____ | Print Name:_____ |
| Title:_____ | Title:_____ |
| Date:_____ | Date:_____ |

5

6