| | |
|---|---|
| **Subject:** | Re: Benlida adv. CTX |
| **Date:** | Friday, July 1, 2022 at 9:38:20 AM Eastern Daylight Time |
| **From:** | Chauncey Cole |
| **To:** | Jean-Claude Mazzola |
| **CC:** | Kevin Kelly, Richard Lerner |
| **Priority:** | High |
| **Attachments:** | image001.jpg, image002.jpg, image003.jpg, image004.jpg, FW: Benlida v. CTX - mediation proposal.eml, Fwd: Benlida v. CTX - mediation proposal.eml |

Good Morning Jean-Claude,

We have carefully reviewed the proposed changes you sent over to us on the Settlement Agreement and the Manufacturing Agreement, and we have discussed those proposals with our client in light of our conversation on the phone last week. I've set forth our position in detail on each issue below. As you will see, some of the proposed changes are acceptable and some are not. The main problem is that some of the proposed changes appear to be efforts to deviate from or renegotiate essential deal terms that were agreed at mediation and included in the mediation term sheet (attached). Those main deal points are non-negotiable. They were agreed at mediation and set forth in writing. They are binding on both sides and we expect both sides to honor them. Nonetheless, in the spirit of cooperation and in an effort to start this renewed relationship off on a good foot, we are prepared to make reasonable changes that do not fundamentally alter the terms that were agreed upon in mediation. If we are able to resolve these issues by agreeing in principle on all points, we are prepared to revise the documents accordingly and move forward with closing the agreement. Time is of the essence, and we need to close no later than July 31, and hopefully sooner. We look forward to receiving your response, and please let me know if you would like to schedule a call to discuss further.

1. <u>Exclusive Customer List</u>

We cannot possibly agree to remove this huge number of customers from the list. This is non-negotiable. Not removing any customers from the list was one of the first terms we requested during the mediation, even before there was any offer of payment, and it was one of the first points that was agreed. It is also the second point set forth in the mediation term sheet that both sides agreed to: "No customers shall be removed from the existing exclusive customer list."

Even so, in the spirit of cooperation and as a gesture of good faith towards Benlida, if there really is a **very small** number of customers where Benlida feels that they have a specific opportunity to win business, CTX would consider working with them or making a concession to allow Benlida to pursue the opportunity without CTX. However, this would need to be a very discrete and specific group that could be evaluated on a case by case basis.

DEFENDANT'S EXHIBIT 29

2.   **Reconciliation of pre-paid POs**

We agree that it makes sense to come up with a list of open POs that have already been prepaid at the time of closing, so that there is no issue with those obligations being subject to the general release. We will need to revise the proposed language you sent us on this, and probably we will need a specific schedule that lists all the open POs, but we are generally in agreement with your proposal to include a term like this.

3.   **UL Logo Issue**

We are okay with this change. We may want to massage or formalize the proposed language you sent a bit, but we are okay with this change in principle.

4.   **Financial Disclosures / Proof of BLD Financial Stability**

We cannot agree to the requested change. This is an essential term from our side because of the fact that we are required to make a large cash payment of $1.5 million immediately on closing, with another $1 million over the next 20 months, and the deal only makes good business sense for us if Benlida is going to be our partner going forward. In the past, Benlida has communicated serious financial concerns, and its sister company, ROK, ran into financial difficulties and ceased operations. We need some assurance that Benlida is not poised to suffer the same fate. Again, this is one of the essential deal points that was agreed upon in mediation, and it is not a reciprocal obligation. We are insisting on the term that was agreed in mediation and set forth in the term sheet.

5.   **Pricing matrix**

We cannot accept any of the proposed changes to the pricing matrix. Again, this is an essential deal point that was agreed in mediation and we provided a specific matrix in writing that was part of the term sheet. Suggesting increases here would be like us suggesting a reduction in the $2.5 million payment. This is completely non-negotiable. Additionally the baseline of the price increase formula is unacceptable and with this baseline we will not be able to proceed.

6.   **Lead time schedule**

As above, the lead time was agreed during the mediation and incorporated into the pricing matrix that was signed off on. Nonetheless, on this specific issue we are open to considering some reasonable revision to lead time in order to ensure the smooth operation of the business going forward, and to make sure both companies do not run into major delivery problems down the road. The leadtime should govern any orders

up to 8000 sq. meters per week. Please provide us with a reasonable proposal as to a competitive leadtime that Benlida can meet, given the agreed capacity of 8000 sq. meters. If we cannot agree on this point, we reserve the right to hold Benlida to the lead time set forth in in the matrix that was part of the mediation term sheet.

7. <u>Payment terms – proposed section 4.4</u>

We agree in principle with specifying a procedure for the companies to exchange monthly statements in order to keep track of invoices and payments, to avoid further discrepancies. We will need to revise the language you have proposed to make it more formal and specific. However, we do not agree that this will give BLD the right to revert to prepayment.

8. <u>"Good faith" language</u>

This is something you mentioned during our call that was not included in the proposed revisions yet. As I understood, Benlida wanted to include something to the effect that both sides would approach the renewed business relationship and conduct themselves under the new manufacturing agreement in good faith, endeavoring to exercise their contractual rights in good faith for the benefit of the join business. We are completely open to including a clause like that in the contract, as it is certainly my client's hope to begin a new chapter of cooperation and success with Benlida, and to always treat Benlida with respect and in good faith. Clearly, we would need to review the specific language, but the concept is something we are open to.

Respectfully yours,

Chauncey D. Cole IV, Esq.

Chauncey Cole, PA
9100 South Dadeland Blvd., Suite 1553
Miami, FL 33156
chauncey.cole@coletrial.com
Direct: 786-497-7053
Mobile: 518-229-2782



LITIGATION

**From:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>
**Date:** Monday, June 27, 2022 at 10:38 AM
**To:** Chauncey Cole <chauncey.cole@coletrial.com>
**Cc:** Kevin Kelly <kevin@mazzolalindstrom.com>, Richard Lerner <Richard@mazzolalindstrom.com>
**Subject:** RE: Benlida adv. CTX

Ok – let me know.  Thank you.   JCM



Jean-Claude Mazzola
Attorney
Mazzola Lindstrom LLP
1350 Avenue of the Americas, 2nd Floor  New York, NY 10019
M: +1 (646) 250-6666 |O: +1 (646) 216-8585
jeanclaude@mazzolalindstrom.com


**From:** Chauncey Cole <chauncey.cole@coletrial.com>
**Sent:** Monday, June 27, 2022 10:37 AM
**To:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>
**Subject:** Re: Benlida adv. CTX

We will get back to you with our feedback in the next day or two.

Respectfully yours,

Chauncey D. Cole IV, Esq.

Chauncey Cole, PA
9100 South Dadeland Blvd., Suite 1553
Miami, FL 33156
chauncey.cole@coletrial.com
Direct: 786-497-7053
Mobile: 518-229-2782



**From:** Jean-Claude Mazzola <jeanclaude@mazzolalindstrom.com>
**Date:** Monday, June 27, 2022 at 10:21 AM
**To:** Chauncey Cole <chauncey.cole@coletrial.com>
**Subject:** Benlida adv. CTX

Hi Chauncey,  Any word from your client?  Let me know please.  Thank you,  JCM



## Jean-Claude Mazzola
Attorney
Mazzola Lindstrom LLP

1350 Avenue of the Americas, 2nd Floor  New York, NY 10019
M: +1 (646) 250-6666 | O: +1 (646) 216-8585
jeanclaude@mazzolalindstrom.com