UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD., *et al.*

    Plaintiffs,

v.

CIRCUITRONIX LLC,

    Defendant.

_____/

### CIRCUITRONIX, LLC'S MOTION FOR SUMMARY JUDGMENT

    Defendant Circuitronix, LLC ("CTX") seeks summary judgment on Plaintiff Jiangmen Benlida Printed Circuit Co., Ltd.'s ("Benlida") claims for breach of contract and account stated, alleging nonpayment of some 400 invoices for shipments of printed circuit boards and related materials.  Benlida's failure to plead any basis on which CTX could be made responsible for debts on invoices issued to a separate company, Circuitronix (Hong Kong) Ltd. ("CTX-HK"), dooms the portion of its claims based on those Hong Kong invoices.  As to the remaining invoices *issued to CTX*, Benlida's failure to plead its theory of nonpayment—evidently relying on an unpled and undisclosed accounting methodology under which Benlida apparently applied payments CTX made for those invoices to unspecified older debts—similarly bars its ability to use that theory now and claim nonpayment.  Additionally, record evidence plainly belies Benlida's allegations that the invoices it itemizes in the Third Amended Complaint ("TAC") are unpaid; CTX sent, and Benlida received, money allocated to pay each of those invoices long before this suit was filed.

    This motion asserts several bases to issue summary judgment as to different subsets of Benlida's claims and which span all of the claims.  *First*, Benlida did not articulate any theory under which CTX could be made responsible for debts owed by a separate affiliated company, CTX-HK.  Benlida has admitted that nearly half of the invoices in the TAC were issued to CTX-HK, *not* CTX.  Under accepted principles of corporate liability, Benlida may not attempt to make CTX answerable for those alleged debts as a matter of law.  Benlida's presumed reliance upon a 2014 letter, in which CTX agreed to assume responsibility for a narrow class of CTX-HK debts,

1

fails to establish a legal basis upon which to hold CTX liable for the invoices Benlida sent to CTX-HK. That letter, by its plain text, does not create carte blanche responsibility for CTX, and in any event was superseded and rendered inoperative by a 2016 contract. The invoices Benlida sues upon were all issued after the 2016 contract. No genuine issue of material fact prevents summary judgment in CTX's favor as to the claims for unpaid invoices issued to *CTX-HK*.

*Second*, the Court should grant summary judgment for CTX as to the remaining invoices *issued to CTX* based on Benlida's deficient pleading and the clear thrust of the record evidence. Preliminarily, Benlida has not pled what its basis is for alleging that CTX has not paid these invoices. Particularly considering that CTX *did* contemporaneously pay Benlida amounts sufficient to cover those invoices along with monthly "payment detail" statements specifying that the payments were intended to cover those invoices, it is incumbent upon Benlida to have pled its theory for allocating that money differently. Nor did Benlida ever disclose how it calculated its damages as Rule 26(a) requires, something that would have explained how it had applied the monies CTX paid. Though Benlida finally confirmed—only through discovery in late May 2023—that it applied those monies to unspecified older debts on a first-in-first-out ("FIFO") basis, it has *never* informed CTX what debts those were, how old they were, or when Benlida applied the monies intended to cover the invoices sued upon to those older debts. These failures implicate Rule 37(c)(1). To the extent Benlida applied CTX's payments to debts it claims were outstanding prior to January 19, 2016, such claims would be barred by the statute of limitations.

## I. FACTUAL BACKGROUND

CTX is a domestic company incorporated and headquartered in Florida. TAC, ¶ 5. It specializes in the manufacture and distribution of PCBs, electrical components used in a variety of consumer products. DE 34 at ¶ 15. CTX-HK is a Hong Kong corporation with its headquarters in Hong Kong. SMF Exhibit 4 - Excerpts of Transcript of Huang Sulan Deposition ("Tracy Huang Dep.") at 26:5-8. Although CTX and CTX-HK are corporate affiliates, they are separate and distinct legal entities. *See* Statement of Material Facts ("SMF") ¶ 3 (citing SMF Exhibit 2 - Excerpts of Transcript of Lina Ochoa Deposition ("Ochoa Dep.") at 14:21-22; SMF Exhibit 3 - Excerpts of Transcript of Nicole Donaldson Deposition ("Donaldson Dep.") at 218:3-22). Only CTX is a party in this case. Indeed, Benlida actively opposed joining CTX-HK as an indispensable party in this action. DE 28 at 4-9.

A. **The Parties' Contractual Arrangement in the Manufacturing Agreement and the Letter Agreement**

On March 1, 2012, China-based Benlida and its foreign affiliate, ROK Printed Circuit Co., Ltd. ("ROK"), entered into a written contract with CTX for the manufacture of PCBs, the Standard Manufacturing And Representation Agreement ("Manufacturing Agreement"). SMF ¶¶ 5-7 (citing Ex. A to SMF Exhibit 1 - Declaration of Christina H. Martinez ("Martinez Decl.")). CTX-HK was not a party to the Agreement. *See id.*

Because CTX-HK was not a party to the Manufacturing Agreement, and because the parties decided to involve CTX-HK at a step in the manufacturing process of certain of CTX's orders at Benlida, CTX signed a "business authorization" document with Benlida on January 1, 2014, whereby it authorized CTX-HK "to place orders to [Benlida] on [CTX's] behalf" and agreed to "assume[] all [CTX-HK] debts due *on those orders*." SMF ¶ 9 (citing Ex. B to Martinez Decl. (the "Business Authorization")) (emphasis added). By its terms, the Business Authorization only applied to debts "on those orders" which CTX-HK placed on CTX's behalf. *Id*.

On July 21, 2016, the parties signed a Letter Agreement (the "Letter Agreement") that added CTX-HK as a party to the Manufacturing Agreement. SMF ¶ 9 (citing Ex. C to Martinez Decl.). The Letter Agreement specifically stated that, except as expressly modified by the Letter Agreement itself, the Manufacturing Agreement would remain in full force and effect. *Id.* at 2, ¶ 1. However, an integration clause expressly superseded all other prior written agreements between CTX and Benlida:

> This [Letter] Agreement and the [Manufacturing Agreement] represent the parties' full and complete understanding regarding the subject matter hereof. All prior agreements, covenants, representations or warranties, express or implied, oral or written, that refer or relate to the employment relationship have either been merged into this [Letter] Agreement and/or the [Manufacturing Agreement] or have been intentionally omitted therefrom. This [Letter] Agreement and the [Manufacturing Agreement] supersede any and all prior agreements or understandings between [CTX] and [Benlida and ROK].

*Id*. at 3, ¶ 6. Thus, upon the signing of the Letter Agreement, the Business Authorization became inoperative. From that point forward, CTX no longer assumed responsibility for any debts arising from orders CTX-HK made to Benlida on CTX's behalf.

On October 5, 2018, Benlida sent CTX a proposed agreement that would have obligated CTX to make payments for CTX-HK, but CTX did not sign it. SMF ¶¶ 11-12 (citing SMF Exhibit

3

4 - Excerpts of Transcript of Huang Sulan Deposition ("Tracy Huang Dep.") at 221:2-9); SMF ¶¶ 12-13 (citing Ex. D to Martinez Decl.). All of the CTX-HK invoices in the TAC date from after that failed attempt. SMF ¶ 20 (citing Tracy Huang Dep. at 42:6-24 (explaining how Benlida's invoice name reveals its date); SMF ¶ 22 (citing Ex. I to Martinez Decl. at ¶ 15); TAC ¶¶ 261-431.

### B. Pertinent Procedural History

Benlida filed the instant lawsuit on January 19, 2021. DE 1. Asserting claims for breach of contract and account stated, the complaint listed hundreds of allegedly unpaid invoices issued to CTX and CTX-HK. The claims included 170 invoices issued to CTX-HK. DE 15-5, ¶¶ 259-429. The Court dismissed Benlida's original complaint and its First Amended Complaint *sua sponte*. DE 4; DE 7. Benlida filed a Second Amended Complaint and then the operative TAC to add ROK as a plaintiff. DE 9; DE 26.

The Third Amended Complaint ("TAC") individually enumerates 419 invoices that Benlida alleges it issued "to Circuitronix" between December 2018 and December 2019. *See* DE 26, ¶¶ 13-431; SMF ¶ 20 (citing Tracy Huang Dep. at 42:6-24). The TAC does not mention CTX-HK at all. It does not contain any allegations that CTX assumed any debts of CTX-HK. The TAC also does not reference older debts or invoices from before the 2018-2019 period or so much as hint that Benlida used a particular accounting methodology to conclude that "Circuitronix has paid no portion of the amount owed." *See, e.g.*, TAC, ¶ 13.

Upon CTX's motion to dismiss the TAC, including on the basis that it failed to join CTX-HK as an indispensable party (DE 27), the Court granted in part and denied in part the motion, ruling among other things, that "Benlida has chosen, in this action, to seek relief against only Circuitronix," not CTX-HK. DE 31 at 4.

In CTX's subsequent Answer and Counterclaim, it raised an affirmative defense of statute of limitations. DE 34 at 4, ¶ 3 ("[T]o the extent [Benlida] is seeking to recover for … older claims [prior to January 19, 2017 and prior to January 19, 2016], or attempting to make an end run around the statute of limitations by tying payments for 2018 and 2019 invoices to older claims, the recovery is barred by [the statute of limitations]").

Benlida's initial disclosures failed to include a computation of its damages, as required by Fed. R. Civ. P. 26(a)(1)(A)(iii). Its disclosure failed to explain how Benlida considered the invoices it sent to CTX unpaid when CTX had sent Benlida payment for those invoices. SMF ¶ 16 (citing Ex. F to Martinez Decl.); *see* SMF Exhibit 6 - Declaration of Lina Ochoa ("Ochoa Decl."), ¶ 4.

4

Benlida's disclosure failed to reveal the accounting methodology it was relying upon internally to compute that the invoices sued upon had not been paid. Fact discovery has now closed (on June 8, 2023), yet Benlida never supplemented its initial disclosure, despite CTX having done so.

## II.   STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting Fed. R. Civ. P. 56(c)). Courts view the evidence and draw all reasonable factual inferences therefrom in favor of the nonmoving party. *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020).

Initially, the moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1160 (11th Cir. 2022). Having done so, the burden shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993). The non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). If the evidence is insufficient for a jury to find for the non-moving party or if it is "merely colorable" or "not significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

## III.   ARGUMENT

This motion seeks summary judgment as to all of Benlida's claims, though it proceeds in two parts, tracking the division in Benlida's claims. For the reasons in Part A, summary judgment is appropriate as to claims based upon invoices Benlida issued for sales to CTX-HK, a separate company that is not a defendant in this case. There is no basis to hold CTX liable for those asserted debts. And for the reasons in Part B, summary judgment is appropriate as to the claims based upon the other set of invoices for sales to CTX. Benlida has admitted to receiving millions of dollars from CTX sufficient to cover the invoices it sues upon, yet has failed to plead or disclose any basis for computing its damages such that those invoices could be unpaid.

**A. Summary Judgment Should Issue As to Claims Based on Invoices to CTX-HK Because There Is No Genuine Dispute of Material Fact That CTX Is *Not* Responsible for That Company's Alleged Debts**

*1. CTX is not responsible for CTX HK's Debts Under Florida Law*

Florida law bars Benlida's recovery from CTX on alleged debts that correspond to a different entity, CTX-HK. By Benlida's own admission, Benlida issued 170, or almost half, of the 419 allegedly unpaid invoices identified in the TAC to CTX-HK—*not* to CTX, the United States-based company named as the sole defendant. *See* SMF ¶ 18 (citing Ex. H to Martinez Decl. (Decl. of Huang Hanchao) at ¶ 5); SMF ¶ 18 (citing Ex. G to Martinez Decl.) (CTX's Request for Admissions); *see also* SMF Exhibit 5 - Excerpts of Transcript of Wu "Roger" Yukun Deposition ("Roger Wu Dep.") at 36:18-37:10.[1] As the Court previously observed, "Benlida has chosen, in this action, to seek relief against only Circuitronix" (DE 31 at 4), and Benlida has to live with that choice.

There is no dispute that CTX and CTX-HK are separate corporate entities. *See, e.g.*, Ochoa Dep. at 14:21-22; Donaldson Dep. at 218:3-22. CTX is an American company based in Fort Lauderdale, Florida; CTX-HK is a Hong Kong company based in Hong Kong. *See* SMF ¶¶ 1-2. And CTX and CTX-HK independently sent Benlida distinct sets of purchase orders for which Benlida issued distinct sets of invoices. *See, e.g.*, Donaldson Dep. at 217:17-218:22 (testifying that "U.S. invoices or purchase orders are separate from … Hong Kong").

It is well settled that "[c]orporations like [CTX] and [CTX-HK] are presumed to be 'distinct legal entit[ies]" under Florida law, and that the law of the state is "not willing to 'easily disregard this fiction'" of corporate distinctiveness. *Edmondson*, 43 F.4th at 1162 (quoting *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011)) (last alteration in original); *cf. Clark v. Ashland, Inc.*, No. 2:13-CV-794-FTM-29, 2014 WL 2199643, at *3 (M.D. Fla. May 27, 2014) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation … is not liable for the acts of its subsidiaries.") (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998)). Thus, "the acts of one corporation cannot generally be imputed to another[.]" *United States ex rel. Lewis v. Cmty.*

---

[1] Benlida failed to respond to CTX's requests for admissions; they were admitted by operation of law. *See* Fed. R. Civ. P. 36(a)(3).

*Health Sys., Inc.*, No. 18-20394-CIV, 2020 WL 3103994, at *20 (S.D. Fla. June 11, 2020) (Scola, J.).

In view of this established authority, CTX cannot be held responsible for alleged nonpayment of invoices issued to, and corresponding to debts allegedly incurred by, *CTX-HK*. While the TAC vaguely alleges that all the disputed invoices were "issued to Circuitronix" (DE 26, ¶¶ 13-431), almost half of them use the designations "BLDCCT-*HK*" or "CCT-BLD-[invoice number](*HK*)." *See* TAC, ¶¶ 261-431. Benlida has admitted it issued invoices with these designations to CTX-HK and not CTX. *See* SMF ¶ 18 (citing Roger Wu Dep. at 36:18-37:10); SMF ¶ 18 (citing Ex. H to Martinez Decl. (Huang Hanchao Decl.) at ¶ 5); SMF ¶ 18 (citing Ex. G to Martinez Decl.) (CTX's Request for Admissions). Since Benlida has admitted that it issued these invoices to a separate company from the defendant, Benlida cannot recover on claims alleging *CTX* failed to pay those invoices.

### 2. *The Business Authorization does not create a genuine issue of material fact about whether CTX assumed the debts of CTX-HK*

The TAC does not articulate how CTX could be held liable for alleged debts of CTX-HK, but CTX presumes Benlida intends to argue that the Business Authorization created that obligation, since that is what they argued in a motion for partial summary judgment they later withdrew. *See* DE 53 at 2; DE 63. By its own express terms, and by operation of the 2016 Letter Agreement which superseded it, the Business Authorization could not prevent summary judgment from issuing in CTX's favor with respect to claims based on invoices to CTX-HK.

 a. <u>Benlida did not allege that the Business Authorization made CTX liable for CTX-HK debts and arguing that now would constitute an impermissible amendment of the complaint</u>

First, Benlida has failed to plead any facts regarding the Business Authorization that would support its use to render CTX liable for supposed CTX-HK debts. The federal notice pleading standard requires that a complaint "'give the defendant fair notice of what the plaintiff's claim is *and the grounds upon which it rests*.'" *Winther v. U.S. Steel Corp.*, 852 F. App'x 482, 484 (11th Cir. 2021) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) and *Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 697 n.3 (11th Cir. 2019)) (emphasis added). While a party need not identify the "precise theory" it will use at summary judgment, it must provide "allegations as to every material point necessary to sustain a claim on any legal theory." *Ray*, 915 F.3d at 697 n.3. Where a complaint "provide[s] no notice whatsoever" of a theory, *Hurlbert*

7

*v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006), or no "factual allegations that could possibly be construed" as advancing the theory, *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 (11th Cir. 2012), then it may be properly be rejected when belatedly raised in response to a motion for summary judgment.

If Benlida resorts to this theory in response to this motion, this body of precedent bars it from doing so. The TAC provides "no notice whatsoever" and "no factual allegations that could possibly be construed" as advancing the theory that the Business Authorization effectively makes CTX responsible for nearly half of the disputed invoices.

This Court rejected a similar ploy by the plaintiffs in *Berene v. Nationstar Mortgage LLC*, No. CV 14-61153-CIV, 2016 WL 3787558, at *3 (S.D. Fla. June 15, 2016) (Scola, J.), before granting the defendant's motion for summary judgment. There, the plaintiff-borrowers brought a private right of action against their mortgage servicer under the Real Estate Settlement Procedures Act (RESPA), based on the servicer's alleged violation of regulations regarding the processing of the borrowers' loss-mitigation applications in connection with a looming foreclosure. *Id.* at *2. The borrowers submitted a partial application before completing it with supplemental materials several months later and, at summary judgment, they relied on those later-filed materials to trigger the servicer's supposedly failed RESPA obligations. *Id.* On review of the servicer's motion for summary judgment, however, the Court observed that the borrowers' operative complaint "is devoid of any reference to" the supplemental documents. *Id.* at *3. The Court determined that motion's focus on the submission of the supplemental documents was a "'fundamental change' in the focus of the Borrowers' allegations" and "not merely an additional fact, supporting[] the RESPA violation already pleaded in the complaint." *Id.* (quoting *Hurlbert*, 439 F.3d at 1297). Accordingly, the Court determined, the borrowers could not assert their "new, additional theory of relief at the summary judgment stage" and granted the motion for summary judgment. *Id.*

If Benlida were to rely on the Business Authorization, that would run afoul of the principle the Court recognized in *Berene*. The Business Authorization constitutes more than "merely additional facts asserted in support of the … claim already pled in [the] complaint," *Hurlbert*, 439 F.3d at 1297; it would inject an entirely new purported legal obligation into the mix, which would "effect[] a fundamental change in the nature of [Benlida's] claim" that CTX is (somehow) responsible for debts CTX-HK allegedly owes.

8

b. <u>The Business Authorization's express terms do not make CTX liable for all CTX-HK debts</u>

Even if Benlida could properly rely on the Business Authorization, that document does not provide a blanket authorization for CTX to cover any and all CTX-HK debts. Instead, its plain language shows that it would apply only to finite situations where CTX-HK had placed an order with Benlida on CTX's behalf, not any order CTX-HK placed with Benlida. The one-sentence, one-page document reads, in its entirety:

> For the purposes of our company's business, Circuitronix, LLC. [sic] hereby authorize CIRCUITRONIX (HONG KONG), LIMITED to place orders to your company *on our behalf*. CIRCUITRONIX, LLC assumes all CIRCUITRONIX (HONG KONG) , [sic] LIMITED's debts *due to these orders*.

Ex. B to Martinez Decl. (emphasis added).

Benlida has not alleged that any, let alone all, of the invoices it itemizes in the TAC issued to CTX-HK were for orders that CTX-HK placed on CTX's behalf. Without proof that those invoices involved that species of specialized purchase order, the Business Authorization could not even apply on its own terms to make CTX responsible for CTX-HK's alleged debts.

c. <u>The Letter Agreement superseded the Business Authorization</u>

Regardless, the Business Authorization would add nothing because the Letter Agreement expressly superseded any prior agreements between the parties.

As with any contract, "'the plain meaning of the [Letter Agreement's] language governs its interpretation.'" *Julian Depot Miami, LLC v. Home Depot U.S.A., Inc.*, 364 F. Supp. 3d 1354, 1359 (S.D. Fla. 2018) (Scola, J.) (quoting *Slater v. Energy Servs. Grp. Intern., Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011)), *aff'd*, 824 F. App'x 609 (11th Cir. 2020). The Letter Agreement contains the following merger provision:

> ***This [Letter] Agreement and the [Manufacturing Agreement] represent the parties' full and complete understanding regarding the subject matter hereof.*** All prior agreements, covenants, representations or warranties, express or implied, oral or written, that refer or relate to the employment relationship have either been merged into this [Letter] Agreement and/or the [Manufacturing Agreement] or have been intentionally omitted therefrom. ***This [Letter] Agreement and the [Manufacturing Agreement] supersede any and all prior agreements or understandings between [CTX] and [Benlida and ROK].***

SMF ¶ 10 (citing Ex. C to Martinez Decl. at 3, ¶ 6) (emphasis added).

The plain language of this broad merger provision superseded the Business Authorization, rendering it inoperative and without effect from July 21, 2016, the date of the Letter Agreement. *See, e.g.*, *Comsof, N.V. v. Cigarette Racing Team, Inc.*, No. 01-4856-CIV-MOORE, 2002 WL 227034, at *3 (S.D. Fla. Jan. 25, 2002) (explaining that a "classic merger clause" precludes a party "from enforcing extraneous oral and written agreements"); *see also Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007) (a written contract containing a merger clause supersedes all prior representations and agreements).

Thus, by the time the earliest invoices identified in the TAC were issued, in December 2018, the Business Authorization had already been inoperative for more than two years.[2] Indeed, one of the primary reasons for entering into the Letter Agreement in 2016 was to formally add CTX-HK as a party to the Manufacturing Agreement, allowing it to be a full participant, and eliminating any need for CTX to provide separate assurances for particular obligations that may be incurred by CTX-HK on CTX's behalf. *See* Ex. C to Martinez Decl. at 1. In determining the intent of the parties to the Letter Agreement, "'[t]he court must look at the contract as a whole, the parties, and the purpose of the agreement.'" *Julian Depot*, 364 F. Supp. 3d at 1359 (citation omitted). "'[T]he objective meaning of the words used,'" *id.*, demonstrates a central purpose of the agreement was to have CTX-HK "join in this [Letter] Agreement and in the Secondary Manufacturing Agreement," Ex. C to Martinez Decl. [DE 15-2] at 1].

To the extent the Court were to resort to extrinsic evidence concerning the parties' intent about the superseding effect of the Letter Agreement, the record evidence confirms Benlida's understanding that CTX was not responsible for any CTX-HK debts, at least as of 2018. On October 5, 2018—before any of the CTX-HK invoices in the TAC—Benlida requested that CTX sign a new agreement that would have made it responsible for payments incurred by CTX-HK. SMF, ¶ 11 (citing DE 30-1 (email attaching proposed agreement titled "The Letter of Authorization for Payment Entrust"); SMF, ¶¶ 11-12 (citing Tracy Huang Dep. at 221:2-9). CTX declined, and never signed the proposed agreement. *Id.* at 221:2-9. If Benlida itself believed CTX was already obligated to cover CTX-HK's debts, it would not have attempted to secure that agreement.

---

[2] The TAC alleges that the earliest invoice CTX failed to pay was issued on December 29, 2018. DE 26, ¶ 13 (invoice CCT-BLD-181229001); SMF ¶ 20 (citing Roger Wu Dep. at 32:4-34:6).

10

For all of these reasons, Benlida may not assert the Business Authorization as a shield to summary judgment on the claims based on invoices to CTX-HK. Partial summary judgment should therefore issue as to claims based on paragraphs 261-431of the TAC.

**B. Summary Judgment Should Also Issue on the Claims Based on the Remaining Invoices Issued to CTX**

There is no genuine issue of material fact that CTX *did* pay the invoices Benlida alleges were not paid. Benlida alleges that the invoices it sent to CTX "have not been paid." TAC, ¶ 12. Those invoices span the period of December 29, 2018 through December 18, 2019. *See* TAC, ¶ 13 (earliest invoice), ¶ 259 (latest invoice); *see* SMF ¶ 20 (citing Tracy Huang Dep. at 42:6-24 (explaining invoice numbering)). As to each of these invoices, Benlida alleges that CTX "has paid no portion of the amount owed." TAC, ¶¶ 13-260.

But Benlida has since ***admitted*** that it received payments from CTX totaling over $12.2 million ($12,240,285.87) during the span of December 24, 2018 through July 1, 2020.[3] SMF ¶ 22 (citing Benlida's Am. Interrog. Resp. No. 14). And during that same period, Benlida asserts that the value of its shipments to CTX amounted to just over $10 million ($10,058,195.91). *Id.* In other words, it is uncontested that CTX paid Benlida some $2.4 million *more* than the face value of the invoices Benlida claims were not paid! Not surprisingly, a document Benlida sent to CTX to facilitate an outside audit of its financial statements represented that the "balance … from the account books of our company" as of December 31, 2019: CTX owed Benlida "$0.00" and that Benlida actually owed CTX $75.684.83. SMF ¶ 13 (Ex. E to Martinez Decl.).[4] It is therefore mathematically impossible for Benlida to prove its allegations that CTX did not pay the invoices in paragraphs 13-260 of the TAC—*unless* Benlida is somehow applying those payments differently.

Discovery has very recently revealed that Benlida claims to have been secretly doing just that, applying monies CTX sent for payment of those invoices to older debts Benlida contends CTX owed it, such that Benlida considers the invoices in the TAC unpaid. Benlida cannot rely

---

[3] Benlida used May 2020 as the point in time it used for calculating its damages in the complaint. SMF ¶ 14 (citing Roger Wu Dep. at 239:7-15).

[4] This document was produced on the last day of the discovery period only after CTX scheduled a discovery hearing with the Court to compel better production of documents reflecting historical snapshots of Benlida's accounts receivable for CTX. CTX has not yet been able to depose any Benlida witnesses about it.

11

on this undisclosed accounting methodology to salvage its claims, both because this theory wasn't pled or properly disclosed and because it was inconsistent with the parties' course of performance.

Stripped down, the parties' ordinary conduct under the Manufacturing and Letter Agreements consisted of CTX issuing purchase orders for PCBs that Benlida invoiced, manufactured, and delivered to CTX. CTX paid the invoices for those orders—at times even before receiving shipments—and documented its payment with "Payment Details" sent to Benlida that identified the invoices to which CTX intended its payments to be applied. SMF ¶¶ 24-25 (citing Ochoa Decl., ¶¶ 4-6; Tracy Huang Dep. at 253:6-254:3). Despite Benlida's knowledge of CTX's direction and expectation that payments be applied to particular invoices (*id*. at 253:13-16, 254:2-3), Benlida apparently secretly applied the payments in a completely different manner: to older debts they asserted *either* CTX *or* CTX-HK owed. Tracy Huang Dep. at 254:4-255:17, 324:11-327:6; Roger Wu Dep. at 68:1-4, 69:2-16, 192:8-193:7. They admit that did not tell CTX they were doing this. Tracy Huang Dep. at 324:11-327:6; Roger Wu Dep. at 69:2-16.

As a matter of law, because CTX directed Benlida to apply its payments to the invoices listed on its Payment Details, Benlida understood that was what CTX was instructing, but Benlida never communicated any objection to that instruction yet secretly followed a different practice internally, Benlida became bound by CTX's course of performance and cannot now, in litigation, rely on an undisclosed accounting process to claim that the 2018-2019 invoices to CTX were not paid. Benlida should be barred from relying on its unpled and undisclosed theory of first-in/first-out ("FIFO") accounting to claim money for these invoices.

### 1. *Benlida may not rely on an unpled accounting theory to support its allegations of nonpayment*

Benlida's allegations of unpaid invoices rely on an accounting methodology that it has only recently disclosed to CTX in writing via unsworn interrogatory responses served on May 18, 2023.[5] Apparently using this FIFO methodology, Benlida applied the payments CTX made for the 2018-2019 invoices enumerated in the TAC to older, unspecified debt Benlida contends

---

[5] At CTX's urging, Benlida served corrected, sworn interrogatory responses on May 24, 2023. *See* Ex. L to Martinez Decl. Benlida's witnesses confirmed this practice during depositions in May and June 2023. *See, e.g.*, Roger Wu Dep. at 68:1-4.

12

existed, thereby rendering the 2018-2019 invoices still unpaid. Benlida, however, failed to plead its reliance on this methodology to support the allegation that "Circuitronix has paid no portion of the amount owed" on any of the disputed invoices. DE 26, ¶¶ 13-431. As before, that pleading failure forecloses Benlida's ability to pivot to it to escape summary judgment as a matter of law. *See Berene*, 2016 WL 3787558, at *3.

Far from pleading the legal theory its claims rely upon, the TAC contains no factual allegations whatsoever that would support the theory that the reason the CTX invoices remain unpaid is that Benlida had been using an undisclosed FIFO accounting methodology, applying CTX's payments to (still) unspecified earlier debts. It is well-settled that a plaintiff may not amend the complaint through argument at summary judgment, *id.*; *GeorgiaCarry.Org, Inc.*, 687 F.3d at 1258 n.27, and the Court should not countenance Benlida's attempt to do so here.

### 2. Benlida should be barred from relying on a FIFO theory as a sanction for failure to disclose its damages computation

The Court should disallow Benlida from relying on a FIFO allocation for two additional reasons. First, aside from failing to plead this theory, Benlida also withheld revealing it in its initial disclosures, in violation of its obligations. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); *Vital Pharms., Inc. v. Monster Energy Co.*, No. 21-13264, 2022 WL 3083273, at *2 (11th Cir. Aug. 3, 2022) (affirming sanctions ruling because defendant "never presented the required computation of lost sales or loss of goodwill, much less *how those damages might be computed*") (emphasis added); *Boldstar Tech., LLC v. Home Depot USA, Inc.*, No. 07-80435-CIV, 2008 WL 11320010, at *2 (S.D. Fla. Feb. 28, 2008) (stating "parties must perform 'some analysis' and cannot rely on general statements" to comply with their Rule 26 obligations) (citation omitted).

That failure was neither "substantially justified" nor "harmless." Fed. R. Civ. P. 37(c).[6] Particularly because Benlida was aware, during the course of the parties' business relationship, that CTX was making payments for invoices on an ongoing basis, but that Benlida was secretly applying those funds in a vastly different manner, it was particularly incumbent on Benlida to

---

[6] That CTX did not move to compel Benlida to supplement its disclosures once it learned—three weeks ago—of Benlida's reliance of FIFO accounting does not absolve Benlida from its independent duty to supplement them upon "'learn[ing] that in some material respect the disclosure or response is incomplete or incorrect' and the information has not otherwise been made known to the other part[y]." *Vital Pharms.*, 2022 WL 3083273, at *2 (quoting Fed. R. Civ. P. 26(e)(1)(A)).

13

disclose how it was computing its damages in this case. There is **no** justification for Benlida to have failed to disclose the accounting methodology it was relying on for its claims that these invoices were somehow not paid.

That failure has prejudiced CTX's ability to defend against those claims, because it deprived CTX of advance notice of Benlida's damages theory. Benlida initially refused to produce its witnesses for deposition in the United States when they were noticed to take place in the Spring of 2022, requiring CTX to move to compel their attendance. *See* DE 66. Benlida was able to take four depositions of CTX witnesses at that time. CTX took none from Benlida, until after this case was unstayed and Benlida withdrew its opposition to producing its employees for deposition here. Those depositions therefore did not take place until the end of the discovery period (on May 23-26, and 31, 2023), resulting in CTX discovering Benlida's FIFO theory up against the dispositive-motion deadline.[7] Compounding the prejudice, Benlida did not produce documents evidencing its internal accounting practice until the middle of the depositions, after questioning revealed it to CTX. *See* Martinez Decl. at ¶¶ 5-7.

Not only has CTX's use of the discovery process been impaired by Benlida's failure properly to disclose its damages computation, but CTX still cannot tell *how* Benlida applied CTX's payments to past debts. For one thing, Benlida apparently has no documentation showing which older debts it applied CTX's current payments to. (CTX has requested them, and Benlida disclaims that they exist). In addition, the late May 2023 depositions revealed to CTX for the first time that Benlida's FIFO process involved applying payments from CTX (which CTX instructed be used to cover invoices to CTX) to pay debts owed by CTX-HK. Roger Wu Dep. at 192:8-193:7; Tracy Huang Dep. at 254:4-255:17; 324:11-20. Benlida kept a combined accounts receivables book for both CTX and CTX-HK, such that it applied payments from CTX to debts of CTX-HK as well. Roger Depo. at 192:8-193:7; Tracy Huang Dep. at 247:5-249:8, 254:4-255:17; 324:11-20. As a result of these commingled records, Benlida did not, before filing its claims in this case, even segregate out the CTX-HK debts to compare apples to apples—the funds it received from CTX against CTX-only invoices. Tracy Huang Dep. at 257:17-259:21. (When they finally did so in response to an interrogatory, it revealed that CTX paid Benlida more than the face value of Benlida's invoices! *See* Am. Rog. No. 14.) As a result, CTX still has no

---

[7] Not all of the deposition transcripts have even been transcribed as of the date of preparing this motion, against the dispositive-motion deadline of June 9, 2023.

visibility into what debts Benlida is claiming existed, which company they related to, and when Benlida applied CTX's payments to them. This leaves CTX to defend against claims of non-payment essentially in the dark.

Second, Benlida's use of the FIFO allocation could allow Benlida unfairly to circumvent the statute of limitations. For a claim of account stated it is four years; for breach of a written contract, five years. §§ 95.11(2)(b), (3)(k), Fla. Stat. If any of the older (supposed) debts to which Benlida applied the payments CTX made for the newer invoices listed in the TAC were more than four years old as of the date of the filing of the original complaint (e.g., dating back to January 18, 2017), an account-stated claim for that debt would be untimely. Likewise would a breach of contract claim be for a debt outstanding as of January 18, 2016. Benlida has *never* disclosed the age of the supposed debts it applied CTX's payments to, let alone identified the particular invoices it contends were outstanding when, in 2018-2020, CTX paid it for the invoices listed in the complaint. To this day, despite CTX's document requests seeking Benlida's historical accounting records and having deposed five Benlida witnesses in the past two weeks, Benlida has still not identified what older debts it applied CTX's payments to, or when it did so. *See* Roger Wu Dep. at 69:17-73:15 (CFO unable to tell age of CTX's debts as of December 2018).

Benlida's failure to disclose what old debts it applied CTX's payments to, and the fact that Benlida's accounting commingled it with CTX-HK, should disentitle Benlida from relying in its undisclosed FIFO accounting theory to claim the invoices were unpaid. CTX has been prejudiced in its ability to defend against these claims.

3. ***There is no genuine dispute of material fact that CTX made payments for the TAC invoices issued to it, and that it directed Benlida to apply the payments to those invoices without objection as part of the parties' course of performance***

Benlida is bound by the parties' course of dealing concerning the allocation of CTX's payments, and it cannot wriggle out of that historical arrangement for litigation purposes.

Between December 2018 and July 2020, CTX made payments on the TAC invoices that were memorialized in emails regularly transmitting "Payment Details" to Benlida, which identified payments CTX had made and the corresponding invoices to which CTX intended its payments to be applied. Tracy Huang Dep. at 261:7-262:24; Roger Wu Dep. at 192:8-20; Ochoa Decl., ¶¶ 4-6. Benlida's Sales Director admitted that she understood CTX's request that the payments be applied to the invoices listed in the Payment Details. Tracy Huang Dep. at 14:9-17,

15

253:6-254:3.  The undisputed evidence of these payments and CTX's course of performance documenting how the payments were to be applied—and Benlida's acceptance of those payments without objection or indication that it was applying the payment to different supposed debt—warrant the entry of summary judgment for CTX as a matter of law on Benlida's breach of contract and account stated claims.

Although the Manufacturing Agreement does not explicitly specify how Benlida should have applied CTX's payments to its debts, courts within this Circuit have interpreted Florida's Commercial Code to allow "a course of dealing [to] become part of an agreement, via a type of estoppel, when one party fails to object to the manner in which the other party performs under the agreement." *Premix-Marbletite Mfg. Corp. v. SKW Chemicals, Inc.*, 145 F. Supp. 2d 1348, 1356 (S.D. Fla. 2001) ("Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.") (citing § 672.208(1), Fla. Stat.); *see also* § 671.205(1), Fla. Stat. (defining "course of performance" and "course of dealing").

The record evidence shows that the parties' course of performance of their duties under the Manufacturing Agreement involved CTX paying Benlida via wire transfers and on a regular basis sending Benlida "Payment Details" which itemized the Benlida invoices CTX was paying, as well as the payments to be applied to those invoices.  *See* SMF ¶ 23 (citing Ochoa Decl. ¶¶ 4-6); Donaldson Dep. 85:2-86:1 (explaining process of creating payment details); Ochoa Dep. 81:1-15 (same); Tracy Huang Dep. at 261:7-262:24 (admitting that, for invoices issued from December 2018 to August 2019, CTX sent Benlida payment details on a regular basis); Roger Wu Dep. at 192:8-20 (acknowledging Benlida's receipt of CTX Payment Details).  Although Benlida and CTX had frequent disputes regarding outstanding shipments and payments, there is *no* evidence that Benlida objected to CTX's attribution of particular payments to particular invoices.  To the contrary, it is uncontested that Benlida did *not* communicate to CTX that Benlida was applying CTX's payments in a different manner than the Payment Detail requested.  Tracy Huang Dep. at 324:11-325:14; 326:5-327:3; Roger Wu Dep. at 69:2-16; *see* Ochoa Decl., ¶ 7.

Beyond the parties' course of performance, common law authority additionally recognizes the special power of an obligor, here CTX, to direct an obligee's (Benlida's)

application of a payment or other performance. RESTATEMENT (SECOND) OF CONTRACTS § 258(1). The Restatement's comments note that the obligor need not even manifest in words a direction of payment to a specified debt, which may be inferred from other circumstances like the amount or timing of payment. *Id.* cmt. b. Notably, a creditor like Benlida only has the power to direct application of a payment if the debtor has not already done so, and the creditor may not direct application of a payment to a debt that is disputed. RESTATEMENT (SECOND) OF CONTRACTS § 259. Furthermore, application of a payment by the creditor "is not effective unless within a reasonable time the creditor notifies the debtor or otherwise manifests to him his intention to make the application. *Mere entry by the creditor on his books is not enough*." *Id.* cmt. b. (emphasis added).

Consistent with this guidance, there is no genuine issue of fact that CTX made payments to Benlida on the TAC invoices and that it directed those payments to apply to the invoices in its payment details. There is no dispute that CTX made substantial payments to Benlida from December 2018 to July 2020. *See* SMF ¶ 22 (citing Ex. I to Martinez Decl. at ¶ 14 (Benlida's Revised Response to Interrogatory 14). There is no dispute that, when CTX sent Benlida payment for the invoices identified in the TAC, it indicated that it wanted and expected those payments to be applied to the particular TAC invoices that it specified through regular "payment details" communications that plainly identified the invoices that should be discharged. *See* Ochoa Decl. ¶¶ 4-6. Once CTX rendered that direction regarding how to apply its payment and once Benlida accepted payment, Benlida was not free to apply the payment to the debt it selected. *See* RESTATEMENT (SECOND) OF CONTRACTS § 258 cmt. a. Even if CTX had remained silent as to how Benlida should apply the payments, Benlida never notified CTX that it intended to apply the payments to supposedly older debts, as would be necessary to render that application effective. *Id.* § 259 cmt. b. Instead, Benlida contented itself with the uncommunicated entry of the application in its books, which is "not enough." *Id.*

Benlida's acceptance and/or lack of objection to CTX's repeated payments on invoices and transmission of payment details does not permit Benlida to apply an undisclosed, unconsented-to FIFO methodology to the payments under governing law. Although Benlida claims that invoices from December 29, 2018 to December 18, 2019 were not paid, it concedes that CTX paid Benlida $12,240,285.87 during that period. Ex. I to Martinez Decl. Thus, whether using the shipment amount of $10,058,195.91 that Benlida identified in its interrogatory

responses or its alleged invoiced amount of $11,539,408.36 from the TAC (¶ 437), Benlida admits that CTX's payments during this period surpass its debt to Benlida.  *See also* SMF ¶ 13 (Ex. E to Martinez Decl.) (showing Benlida's own account books showed CTX owed Benlida "$0.00" as of December 31, 2019).  Because Benlida may not avoid the force of that conclusion through some FIFO accounting methodology given the parties' course of performance under the contracts as a matter of law, summary judgment is proper.