# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

     Plaintiff,

v.

CIRCUITRONIX LLC,

     Defendant.

_____/

### DECLARATION OF CHRISTINA H. MARTINEZ

1.     I am a member of the Bar of the State of Florida and I am an associate at Podhurst Orseck,
P.A. I have been a member of the Florida Bar since 2020 and a member of the New York Bar since
2016. In addition, I am admitted to practice law in the United States District Court, Southern District of
Florida. I am counsel to Defendant, Circuitronix, LLC ("CTX") in this case. I make the following
declaration based upon my personal knowledge:

2.     Discovery in this case was ongoing last year before the case was administratively
closed on June 3, 2022.

3.     Prior to the stay, Benlida initially refused to produce its witnesses for deposition in
the United States when they were noticed to take place in the spring of 2022, requiring CTX to
move to compel their attendance. *See* DE 66.

4.     Benlida took four depositions of CTX witnesses on May 24, 25, 26, and 27, 2022.
CTX took none from Benlida, until after this case was unstayed and Benlida withdrew its
opposition to producing its employees for deposition in the United States. Those depositions
therefore did not take place until three weeks ago (on May 23 to 26 and May 31, 2023).

5. During his deposition, Yukun "Roger" Wu testified about the existence of different records related to Benlida's recording of invoices and payments related to CTX. *See, e.g.*, Statement of Material Facts Exhibit 5 - Excerpts from Transcript of Wu Yukun Deposition 61:6-63:6 (confirming existence of historical data in files related to CTX); 65:17-66:6 (confirming existence of Excel spreadsheet for Circuitronix showing paid and unpaid invoices; CTX counsel requesting the document); 73:16-74:20 (CTX's counsel asking about spreadsheet of aging accounts receivable). Although these documents were responsive to CTX's requests for production, they had not been produced.

6. After Mr. Wu's deposition, I emailed counsel for Benlida requesting the records that had been referenced at the deposition, including the database of aging debts of accounts receivables as well as the database for accounts receivable for CTX and CTX-HK, and the combined database Mr. Wu testified Benlida kept for the two companies.

7. Just before the following day's deposition the next morning—the third of four that week—counsel for Benlida emailed, in his words, "CTX-US and CTX-HK combined invoices in Excel through December 2020, showing FIFO attribution of payments and also pro formas when payments were made contemporaneously" together with an "email with spreadsheets of August 2021."

8. In connection with CTX's Motion for Summary Judgment ("Motion"), I attach as exhibits to this declaration the following materials from the record of this case:

a. A true and correct copy of the Standard Manufacturing and Representation Agreement between the parties [DE 15-1], dated March 1, 2012, referenced in the Motion as **Exhibit A**;

b. A true and correct copy of the Business Authorization, dated January 1, 2014, referenced in the Motion as **Exhibit B**;

c. A true and correct copy of a draft of the Letter Agreement [DE 15-2], dated July 21, 2016, referenced in the Motion as an attachment to the email attached hereto as **Exhibit C**;

d. A true and correct copy of an October 5, 2018 email from Huang "Tracy" Sulan to Rishi Kukreja and the attached "The Letter of Authorization for Payment Entrust" [DE 30-1] referenced in the Motion as **Exhibit D**;

e. A true and correct copy of the document produced by Plaintiff on June 8, 2023 titled "Confirmation for Audit Purposes," referenced in the Motion as **Exhibit E**;

f. A true and correct copy of Plaintiff's Initial Disclosures, dated February 11, 2022, referenced in the Motion as **Exhibit F**;

g. A true and correct copy of Defendant's Requests for Admissions, dated May 3, 2023, referenced in the Motion as **Exhibit F**;

h. A true and correct copy of the Declaration of Huang Hanchao [DE 29-3], referenced in the Motion as **Exhibit H**;

i. A true and correct copy of Plaintiff's Revised Responses to Interrogatory 14, dated June 8, 2023, referenced in the Motion as **Exhibit I**;

j. A true and correct copy of Defendant's First Set of Interrogatories, dated April 23, 2022, referenced in the Motion as **Exhibit J**;

k. A true and correct copy of Plaintiff's Unsworn Responses to Interrogatories, dated May 17, 2023, referenced in the Motion as **Exhibit K**; and

l.       A true and correct copy of Plaintiff's Sworn Corrected Responses to

Interrogatories, dated May 24, 2023,  referenced in the Motion as **Exhibit L**.

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Christina H. Martinez

Executed on June ___9___, 2023

# EXHIBIT A

EXECUTION COPY

## STANDARD MANUFACTURING
## AND REPRESENTATION AGREEMENT

**THIS STANDARD MANUFACTURING AND REPRESENTATION AGREEMENT** is dated as of March 1, 2012 and is entered into by and among **JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD. (** 江门市奔力达电路有限公司**)**"**Benlida**"**)**, a Hong Kong company whose principal place of business is located at 江门市高新区龙溪路 76 号 (76, Longxi Road, High-tech Industrial Park, Jiangmen, Guangdong, China), and **ROK PRINTED CIRCUIT CO., LTD.(** 江门市凯禹电路有限公司**)**("**ROK**"**),** a Hong Kong company whose principal place of business is located at 江门市江海区东南工业区（高新区）8 号地 21 号厂房 (21 Workshop, 8, High-tech Industrial Park, Dongnan Industrial Park, Jianghai District, Jiangmen, Guangdong ,China) (Benlida and ROK are collectively referred to herein as the "***Manufacturer***") and **CIRCUITRONIX, LLC**, a Florida limited liability company whose principal place of business is located at 2 South Biscayne Blvd, Suite 3800, Miami, Florida 33131 ("***Circuitronix***").

**WHEREAS,** Manufacturer is engaged in manufacturing of "Bare Printed Circuit Boards."

**WHEREAS,** subject to the terms and conditions as set forth in this Agreement, Manufacturer desires to engage Circuitronix to assist it in the development of, and the creation of demand for, Bare Printed Circuit Boards.

**NOW, THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other consideration, the receipt and adequacy of which is hereby acknowledged by the parties, Circuitronix and Manufacturer agree as follows:

1. **CIRCUITRONIX REPRESENTATION RIGHTS**

    **1.1    Appointment.**  Subject to the terms and conditions of this Agreement, Manufacturer hereby appoints Circuitronix as its representative during the Term (as defined below) for the purpose of identifying potential customers that may be interested in purchasing Products.  For purposes hereof, "Product" shall mean any contract manufacturing related work or services provided by Manufacturer or any associated entities.

    **1.2    Diligent Efforts**.  Circuitronix will diligently solicit and promote sales of Product and shall not offer any price quotations, accept any orders, or make any commitments on behalf of the Manufacturer, without the Manufacturer's prior approval.  Circuitronix shall also undertake responsibility for releasing a Purchase Order to Manufacturer, along with necessary specifications or drawings, etc., as may be required for providing full and clear inputs for manufacturing, packaging, and forwarding supplies.

    **1.3    Conduct of Business; Expenses; Signage at Factory**.  Circuitronix shall conduct all of its business in its own name, shall maintain its own sales staff and offices, and shall bear all office costs related thereto.





### 1.4 Marketing Period.

(a) *Identified Potential Customers.* Circuitronix shall, from time to time, provide a list to Manufacturer of potential customers. Manufacturer shall promptly review such list and, within three (3) business days after delivery thereof, shall provide written notification to Circuitronix if Manufacturer objects to Circuitronix representing a potential customer appearing on such list. Manufacturer may only object to a potential customer if such person or entity is already a customer of Manufacturer or if a bona-fide conflict exists. If the Manufacturer does not timely object to a potential customer (each an "***Identified Potential Customer***"), Circuitronix shall have the exclusive right, for a period of twelve (12) months thereafter (the "***Marketing Period***") to promote and solicit the sale of Products to the Identified Potential Customers, including their respective successors or assigns. **Schedule A** attached hereto contains a current list of Identified Potential Customers. **Schedule A** shall be updated from time to time by Circuitronix to include additional Identified Potential Customers (and a copy of any such updated schedule shall be promptly provided to Manufacturer).

(b) *Extension of Marketing Period.* The Marketing Period shall be extended if, in the opinion of Circuitronix, the Manufacturer (i) performed poorly during any audit or visit by an Identified Potential Customer audit or (ii) submitted a poor or sub-standard Product sample. In such case, the Marketing Period shall be extended by a timeframe equal to (i) the period between the Identified Potential Customer's first audit and the follow up audit; and/or (ii) the time between the first sample submission and the next sample submission.

### 1.5 Exclusive Sales Period.
If Circuitronix procures a Purchase Order (as defined below) from an Identified Potential Customer during the Marketing Period (any such Identified Potential Customer being hereinafter referred to as a "***Circuitronix Customer***"), Circuitronix shall have the exclusive right, for a period of two (2) years from the date of the last Purchase Order submitted by the Circuitronix Customer (the "***Exclusive Sales Period***"), to deal exclusively with such Circuitronix Customer, including handling such account and procuring Purchase Orders for the Products. Each current Circuitronix Customer shall be listed on **Schedule A**, which schedule shall be updated from time to time by Circuitronix to include any additional Circuitronix Customers (and a copy of any such updated schedule shall be promptly provided to Manufacturer). For purposes of this Agreement, a Circuitronix Customer shall be deemed to mean and include the respective successor or assign of each Circuitronix Customer.

### 1.6 No Solicitation, Communications or Sales.
Manufacturer agrees that it shall not directly or indirectly (i) solicit any Identified Potential Customer during the Marketing Period or any Circuitronix Customer during the Exclusive Sales Period; or (ii) contract with or otherwise sell or deliver any Product to any Identified Potential Customer during the Marketing Period or any Circuitronix Customer during the Exclusive Sales Period. Manufacturer further agrees that should any Identified Potential Customer or Circuitronix Customer have any communication with Manufacturer or any of its affiliates for the purpose of doing any business with, or purchasing any Product from, Manufacturer or any of its affiliates, Manufacturer shall (i) immediately refer said such Identified Potential Customer or Circuitronix Customer to Circuitronix and (ii) provide written notice to Circuitronix of same. Likewise, Circuitronix

agrees to not interfere in any business relationship that Manufacturer may have with its customers.

**1.7    Manufacturer's Acknowledgement**.    Manufacturer acknowledges that Circuitronix has and will expend substantial monies on advertising, marketing, technology, and in the development of potential customers.  Manufacturer further agrees that the identity of Circuitronix customers, the specifications of their orders and pricing thereof, are considered confidential and proprietary in nature, a valuable asset of Circuitronix, are deemed to be "Trade Secrets" of Circuitronix and are subject to the protections of Section 8 hereof.

## 2.    PRICING; PURCHASE ORDERS

**2.1    Pricing Matrix**.    All business will be conducted as per the pricing matrix as outlined in **Schedule B** ("**Pricing Matrix**"). The pricing matrix will clearly state the assumptions which will constitute the base of the pricing including but not limited to laminate costs, copper price, gold price, silver price, RMB-US Dollar exchange rate and labor costs.

**2.2    Price Increases**.    Notwithstanding anything herein to the contrary, the Manufacturer will not increase pricing without first providing no less than four (4) months prior written notice to Circuitronix.  Any proposed price increases must be adequately justified by demonstrating a price increase in the parameters which form the base of the Pricing Matrix.

## 3.    DELIVERY

**3.1**    Manufacturer shall use best commercial efforts to ensure timely delivery of all Products in accordance with the delivery requirements set forth in the "Lead-Time" schedule attached hereto as **Schedule C** or as otherwise set forth in an accepted Sales Contract or Purchase Order (the "**Lead-Time Schedule**").

**3.2**    Delivery date shall imply date of delivery at port of entry.  If Manufacturer fails to adhere to quality standards and/or to the Lead-Time Schedule, Circuitronix reserves the right to procure the Product elsewhere and to recover from Manufacturer all such procurement costs and expenses and consequential damages suffered by Circuitronix as a result of Manufacturer's failure.

**3.3**    Manufacturer and Circuitronix shall agree to Lead-Time Schedule flexibility requirements specific to the Product as documented in any addenda.

**3.4**    Upon learning of any potential delivery delays, Manufacturer shall immediately notify Circuitronix as to the cause and extent of such delay.

**3.5**    If Manufacturer fails to make deliveries at the specified time and such failure is caused by Manufacturer, Manufacturer will, at no additional cost to Circuitronix, employ accelerated measures such as material expediting fees, premium transportation costs, or labor overtime required to meet the specified delivery schedule or minimize the lateness of deliveries.

**4. PAYMENT TERMS**

    **4.1** Manufacturer and Circuitronix agree to payment terms of AMS 60 days from the date of invoice.

    **4.2** Currency will be in U.S. Dollars unless specifically negotiated and reflected in any addenda hereto.

**5. QUALITY; PACKAGING AND DOCUMENTATION**

    **5.1 Quality Requirements.** Manufacturer shall manufacture and deliver the Products in accordance with the specifications provided to Manufacturer by Circuitronix (the "*Product Specifications*"). In the event that a quality specification is ambiguous, Manufacturer shall conform to the standards set forth in IPC 600 G Class II.

    **5.2 Packaging and Documentation.** Product packaging shall conform to Circuitronix's documentation specifications, including but not limited to, markings on the cartons, weight restrictions, documentation, etc. Export worthy containers or corrugated boxes shall be used, and each carton shall contain a packaging slip clearly marked. Copies of AWB, Packing List and Invoice shall be faxed to Circuitronix upon shipment of Product.

**6. ENGINEERING CHANGES**

    **6.1** Circuitronix may, upon advance written notice to Manufacturer, submit engineering changes for incorporation into the Products. It is important that this notification include documentation of the change to effectively support an investigation of the impact of the engineering change. Manufacturer will make a reasonable effort to review the engineering change and report to Circuitronix. If any such change affects the price, delivery, or quality performance of said Product, an equitable adjustment will be negotiated between Manufacturer and Circuitronix prior to implementation of the change. Irrespective, any proposed price increase must conform to the Pricing Matrix attached hereto as **Schedule B** and remains subject to the requirement of Section 2.2 hereof.

    **6.2** Manufacturer agrees not to undertake significant process changes, design changes, or process step discontinuance affecting electrical performance and/or mechanical form and fit without prior written notification and concurrence of the Circuitronix.

**7. INVENTORY MANAGEMENT**

    **7.1** Manufacturer agrees to use laminates according to the Circuitronix approved vendor list ("*AVL*") including any sourcing plans as provided by any addenda hereto.

    **7.2** All Circuitronix tooling/equipment furnished to Manufacturer or paid for by Circuitronix in connection with this Agreement shall:

      (a) Be clearly marked and remain the personal property of Circuitronix.

      (b) Be kept free of liens and encumbrances.

4

Unless otherwise agreed, Circuitronix is responsible for the general maintenance of Circuitronix tooling/equipment. Manufacturer shall hold Circuitronix property at its own risk and shall not modify the property without the written permission of Circuitronix. Upon Circuitronix's request, Manufacturer shall redeliver the property to Circuitronix in the same condition as originally received by Manufacturer with the exception of reasonable wear and tear. In the event the property is lost, damaged or destroyed, Manufacturer' shall be liable for the replacement cost of such property. Manufacturer shall return all Circuitronix property to Circuitronix or its agent within forty-eight (48) hours of being directed to do so in writing by Circuitronix.

## 8. CONFIDENTIAL INFORMATION

**8.1** Each party agrees not to make any commercial use of confidential information and/or trade secrets of the other party regarding customer specifications or otherwise without obtaining prior written consent from such other party. Each party recognizes that immediate and irreparable damage will result to the non-breaching party if one of the parties breaches any of the terms and conditions of this Section 8, and accordingly, each party consents to the entry by any court of competent jurisdiction of an injunction in favor of the non-breaching party (without bond or other security being required) to restrain any such breach, in addition to any other remedies or claims which the non-breaching may seek. This Section of the Agreement is considered by the parties to be an integral part of this Agreement, and shall survive for a period of two (2) years from the date of termination of this Agreement.

**8.2** Subject to the terms hereof and the proprietary rights of the parties, Manufacturer and Circuitronix agree to exchange, at least semi-annually, relevant process development information and business plans to include market trends, process technologies, product requirements, new product developments, available capacity and other information to support technology advancements by both Manufacturer and Circuitronix.

## 9. WARRANTY

**9.1** Except as expressly set forth in Section 9.2 below, Manufacturer unconditionally warrants that (i) the Product will conform to the specifications applicable to such Product at the time of its manufacture, which are furnished in writing by Circuitronix and accepted by Manufacturer; (ii) such Product will be of good material (supplied by Manufacturer) and workmanship and free from defects for which Manufacturer is responsible in the manufacture; (iii) such Product will be free and clear of all liens and encumbrances and that Manufacturer will convey good and marketable title to such Product. In the event that any Product manufactured shall not be in conformity with the foregoing warranties, Manufacturer shall, at Manufacturer's option, credit Circuitronix for any such nonconformity or, at Manufacturer's expense, replace, repair or correct such Product.

**9.2** Manufacturer shall have no responsibility or obligation to Circuitronix under warranty claims with respect to Products that have been subjected to abuse, misuse, accident, alteration, neglect or unauthorized repair. In addition, Manufacturer's warranty shall be limited to one year from the date of manufacture of the Product for any feature of the Product that characteristically deteriorates over time (e.g., solder).

THE WARRANTIES CONTAINED IN THIS SECTION ARE IN LIEU OF, AND MANUFACTURER EXPRESSLY DISCLAIMS AND CIRCUITRONIX WAIVES ALL OTHER REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, STATUTORY OR ARISING BY COURSE OF DEALING OR PERFORMANCE, CUSTOM, USAGE IN THE TRADE OR OTHERWISE, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY, TITLE AND FITNESS FOR A PARTICULAR USE.

    **9.3**    An "***Epidemic Condition***" shall exist when failure reports or statistical samplings show that more than one percent (1%) of the same Product installed or shipped during any one month contain an identical, repetitive defect in Manufacturer supplied material and/or workmanship. If during the warranty period of one year, the same Product shows evidence of an Epidemic Condition, Circuitronix shall promptly notify Manufacturer of such condition. Upon notification, Circuitronix shall have the right, pending correction of the Epidemic Condition, to postpone further shipments of such Product by giving written notice of such postponement to Manufacturer.  Both parties shall work together to prepare and propose a corrective action plan addressing implementation and procedure milestones for remedying such Epidemic Condition(s). Both parties shall use best efforts to implement the remedy in accordance with the agreed upon schedule. In the event of Epidemic Failure, Manufacturer will:

    **(a)**    Incorporate the remedy in the affected Product in accordance with Circuitronix engineering change order procedures.

    **(b)**    Ship all subsequent Products incorporating the required modification.

    **9.4**    Manufacturer shall have no liability or responsibility under Sections 9.1 and 9.3 above for any losses or damages to the extent that any such Epidemic Failure claims are the direct result of:

    **(a)**    Manufacturer's compliance with Circuitronix specifications;

    **(b)**    the negligence of Circuitronix or any other person providing goods or services in connection with the design, development, production, and distribution of the Product (with the exception of Manufacturer's manufacture of the Product);

    **(c)**    modification or alteration of the Product by a party other than Manufacturer; or

    **(d)**    defects in Circuitronix's products or components thereof (with the exception of the Products and Manufacturer supplied components thereof).

## 10.    TERM; TERMINATION; DISPUTE RESOLUTION

    **10.1**    **Term**. This Agreement shall commence on the date hereof and shall continue in full force and effect until terminated in accordance with the terms set forth in this Agreement (the "***Term***").

    **10.2**    **Termination.**

(a)     If either party fails to meet any one or more of the terms and conditions as stated in either this Agreement or any addenda hereto, Manufacturer and Circuitronix agree to negotiate in good faith to resolve such default. If the defaulting party fails to cure such default or submit an acceptable written plan to resolve such default within thirty (30) days following notice of default, the nondefaulting party shall have the right to terminate this Agreement by furnishing the defaulting party with thirty (30) days written notice of termination.

(b)     This Agreement shall immediately terminate should either party; (i) become insolvent; (ii) enter into or file a petition, arraignment or proceeding seeking an order for relief under the bankruptcy laws of its respective jurisdiction; (iii) enter into a receivership of any of its assets or; (iv) enter into a dissolution of liquidation of its assets or an assignment for the benefit of its creditors.

**10.3    Post Expiration or Termination Rights.**  Notwithstanding the expiration of the Term or earlier termination thereof pursuant to Section 10.2 hereof, Manufacturer agrees that it shall continue to perform, manufacture and deliver Products hereunder in accordance with the terms hereof, including the Price Matrix and Lead-Time Schedule, with respect to (i) all Purchase Orders for Circuitronix Customers that were pending or in the process of manufacturing or delivery at the time of such expiration or earlier termination of the Term or (ii) all future Purchase Orders with respect to existing Circuitronix Customers at the time of such expiration or earlier termination that Circuitronix may decide to submit to Manufacturer for fulfillment in accordance with the terms hereof, including the Price Matrix and Lead-Time Schedule.

**10.4    Dispute Resolution**

(a)     In the spirit of continued cooperation, the parties intend to and hereby establish the following dispute resolution procedure to be utilized in the event any controversy should arise out of or concerning the performance of this Agreement.

(b)     It is the intent of the parties that any dispute be resolved informally and promptly through good faith negotiation between Manufacturer and Circuitronix. Either party may initiate negotiation proceedings by written notice to the other party setting forth the particulars of the dispute. The parties agree to meet in good faith to jointly define the scope and a method to remedy the dispute. If these proceedings are not productive of a resolution, then senior management of Manufacturer and Circuitronix are authorized to and will meet personally to confer in a bona fide attempt to resolve the matter.

(c)     Should any disputes remain existent between the parties after completion of the two-step resolution process set forth above, then the parties shall promptly submit any dispute to mediation with an independent mediator. In the event mediation is not successful in resolving the dispute, the parties may agree to submit the dispute to arbitration as provided by their respective jurisdiction.

## 11.    LIMITATION OF LIABILITY

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT (INCLUDING SECTION 12 HEREOF) OR IN THE SETTLEMENT AGREEMENT

BETWEEN CIRCUITRONIX AND BENLIDA ENTERED INTO ON OR ABOUT THE DATE HEREOF, IN NO EVENT, WHETHER AS A RESULT OF BREACH OF CONTRACT, WARRANTY, OR TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, PRODUCT LIABILITY, OR OTHERWISE, SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES OF ANY KIND, WHETHER OR NOT EITHER PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

12.    **INDEMNIFICATION**

**12.1**  Manufacturer shall defend, indemnify, and hold Circuitronix, its officers, directors, employees, and agents (the "*Circuitronix Indemnified Parties*") harmless against any and all claims, demands, proceedings, losses, damages, obligations, liabilities, deficiencies, fines, costs, or expenses (including, without limitation, reasonable attorneys' fees) (collectively, "*Losses*") arising directly or indirectly as a result of, or relating to, (a) any material breach of this Agreement by Manufacturer or its officers, trustees, employees, or agents; (b) any negligence by Manufacturer in the manufacture of the Product or any failure to manufacture the Product in accordance with the Product Specifications; or (c) any negligence or wrongful acts of Manufacturer or its officers, trustees, employees, or agents, except to the extent that any such Losses are due to the negligence or wrongful acts of Circuitronix, its officers, trustees, employees, or agents.

**12.2**  Circuitronix shall defend, indemnify, and hold Manufacturer, its officers, directors, employees, and agents harmless against any and all Losses arising directly or indirectly as a result of, or relating to defects in the Product Specifications,, except to the extent that any such Losses are due to the negligence or wrongful acts of the Manufacturer, its officers, trustees, employees, or agents.

13.    **GENERAL**

**13.1  Insurance.**  Each party to this Agreement will maintain insurance to protect itself from claims (i) by the party's employees, agents and subcontractors under Worker's Compensation and Disability Acts, (ii) for damages because of injury to or destruction of tangible property resulting out of any negligent act, omission or willful misconduct of the party or the party's employees or Contractors, (iii) for damages because of bodily injury, sickness, disease or death of its employees or any other person arising out of any negligent act, omission, or willful misconduct of the party or the party's employees, agents or subcontractors.

**13.2  Assignment.**  Neither party shall delegate, assign or transfer its rights or obligations under this Agreement, whether in whole or part, without the written consent of the other party.

**13.3  Force Majeure.**  Neither party shall be liable for any failure or delay in its performance under this Agreement due to acts of God, acts of civil or military authority, fires, floods, earthquakes, riots, wars or any other cause beyond the reasonable control of the delayed party provided that the delayed party: (i) gives the other party written notice of such cause within fifteen (15) days of the discovery of the event; and (ii) uses its reasonable efforts to remedy such delay in its performance.

**13.4    Governing Law; Venue**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, excluding its conflict of laws provisions thereof. Each of the Parties hereto irrevocably (a) accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the Florida State Courts or United States Federal District Courts located in Miami-Dade County, Florida with respect to any legal action brought in connection with the enforcement of this Agreement, and (b) waives any objection that it may have to the laying of venue of any such action in the aforesaid courts and waives and agrees not to plead or claim that any action in such courts was brought in an inconvenient forum.

**13.5    Attorneys' Fees**.  In any action to enforce this Agreement, the prevailing party shall be awarded all court costs and reasonable attorney fees incurred.

**13.6    No Waiver**.  Any waiver of any provision of this Agreement or the full and timely performance of any duties arising hereunder shall be in writing and shall be effective only in the specific instance and only for the purpose for which given.  No failure or delay on the part of either party in exercising any right, power or privilege arising hereunder shall operate as a waiver thereof, nor shall any partial exercise of any right, power or privilege arising hereunder preclude any other or further exercise thereof or the exercise of any right, power or privilege. Except where otherwise specified herein, the provisions of this Agreement may be waived, varied, modified or amended only by a written instrument executed by and on behalf of Circuitronix and Manufacturer.

**13.7    No Oral Understandings.**    This Agreement embodies the entire agreement between the parties hereto with respect to the subject matter hereof and cancels and supersedes any and all prior or contemporaneous, oral or written understandings, negotiations or communications on behalf of such parties.  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions of this Agreement will nevertheless continue in full force and effect.

**IN WITNESS WHEREOF,** each of the parties hereto has caused this Agreement to be signed on its behalf by a duly authorized individual or officer and has caused its seal to be hereunto affixed, the day and year first written above.

**CIRCUTRONIX, LLC**

By: _____
Name:  ANIMESH DUTTA
Title:  BUSINESS MANAGER

**JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD.**

By: _____  2012. 06. 08.
Name:
Title:

**ROK PRINTED CIRCUIT CO., LTD.**

By: _____  2012. 06. 08.
Name:
Title:

## SCHEDULE A

## Identified Potential Customers and Circuitronix Customers

### [LAST UPDATE : 03/12/2012]

a) Preco Electronics, USA
b) MSI Manuafacturing, USA
c) Electrolux, Global Locations
d) PKG, USA
e) Curtis Instruments
f) First Alert/BRK
g) Gecko
h) Seveco
i) MicroCraft / Niles
j) Universal Lighting
k) Logican
l) Trico
m) Lear Corporation
n) Alps Automotive
o) Magna Electronics
p) Saturn Electronics
q) Panasonic: All Global Locations and Contract Manufacturers
r) Cherry: All Global Locations and Contract Manufacturers
s) Honeywell Corporation: All Global Locations.
t) Cooper Electronics: All Global Locations besides MTL in Europe.
u) Checkpoint System:  All Global Locations.
v) Celestica: All Global Locations
w) SMTC: All Global Locations
x) Emerson: All Global Locations beside China and as agreed as per e-mail between the Parties
y) Tyco Electronics: All Global Locations
z) Osram Industries: All Global Locations
aa) Ingersoll Rand: All Global Locations
bb) Kimball Electronics: All Global Locations
cc) Helbakao:  All Global Locations.



## SCHEDULE B

## Pricing Matrix

1. **Base Pricing**:

| Layer Count | Base Price | NRE |
|---|---|---|
| DS | 0.039 | 150 |
| 4L | 0.058 | 200 |
| 6L | 0.087 | 300 |
| 8L | 0.115 | 400 |
| 10L | 0.16 | 500 |

- General Specification of P/N : FR4, 0.062", 1oz. Copper base for Outer Layers and Inner Layers; 5 mil line; 5mil spacing; smallest drill hole size 8mil, hole density < 45holes per sq. inch", routing, PCB Spec. IPC 600 Class 2 as default. There is no cost adder for 2oz./2oz. finish as long as the copper thickness is as per IPC 600 Class 2.
- For any P/N where the Annual Dollar Spend is more than US$25K, the NRE Cost is waived or will be returned if paid.
- Base price including 2500 linear inches routing length per sq meter.
- For other S/M color, black, red, white or blue no additional cost

2. **Adders**:

A. **Finishes**

| Finish | Cost Adder | |
|---|---|---|
| OSP | 0.00/sq. inch | |
| LF HASL | 0.001/sq inch | |
| Im Tin | 0.0035/sq inch | |
| In Silver | 0.0044/sq inch | |
| Im Gold (2u" min) | 0.01/sq inch | |
| Im Gold (3u" min) | 0.012/sq inch | |
| | | |



## B. TG

|  | Tg 150 | Tg 170 |
|---|---|---|
| DS | 0.003/sq inch | 0.006/sq inch |
| 4L+ | 0.004/sq inch | 0.007/sq inch |

## C. Thickness

|  | 0.039 thickness | 0.093 thickness | 0.125 thickness |
|---|---|---|---|
| DS | - $3/sq mtr | TBD based on RFQ | TBD based on RFQ |
| 4L+ | - $3/sq mtr | TBD based on RFQ* | TBD based on RFQ* |

\* Should be less than DS

## D. Stand-alone Cost Adders

| Carbon Ink: | $4/sq mtr | |
|---|---|---|
| Line Space: | 5/5 mil (standard) | 0% |
| | 4/4 mil | 2% |
| Routing: | 2500 linear inches/sq mtr standard | Additional:  0.0018 / lin inch |
| Drilling: | 45 holes/sq inch standard | Additional:  0.15 per 1000 holes |
| Peelable S/M: | $3/sq mtr | |
| Control Impedance: | 3.00% | |
| IPC Class 3: | 2.50% | |
| Cost adder for extra layer prepeg is: | 0.01 per sq. inch | |
| Manual V-Scoring: | $0 | |
| CNC & Jump V-Scoring: | 0.001/lin inch | |

12



3.  **Cu Adders**:

| Outer Layer | Base | Finish |
|---|---|---|
| H/H (0.5/0.5 oz) | -2.5 | -4 |
| 1oz/1oz | 0 | 0 |
| 2oz/2oz | 13 | 0 |
| 3oz/3oz | TBD | 13 |
| 4oz/4oz | TBD | TBD |

- For inner layers the cost will correspond to the cost of the base copper thickness outlined above
- Costs are in sq. meters.
- For boards requiring 2oz./2oz.

4.  **Discount Structure**

| Monthly Order Value/ Applicable Price Discount | 2L | 4L | 6L | 8L |
|---|---|---|---|---|
| $300k-$399k/(2% discount) | 0.078cent/sqi | 0.116cent/sqi | 0.174cent/sqi | 0.23cent/sqi |
| $400k-$499k/(3% discount) | 0.117cent/sqi | 0.174cent/sqi | 0.261cent/sqi | 0.345cent/sqi |
| $500k-$599k/(4.0% discount) | 0.156cent/sqi | 0.232cent/sqi | 0.348cent/sqi | 0.46cent/sqi |
| $600k-$749k/(4.5% discount) | 0.175cent/sqi | 0.261cent/sqi | 0.391cent/sqi | 0.517cent/sqi |
| $750k-$899k/(5.0% discount) | 0.195cent/sqi | 0.29cent/sqi | 0.435cent/sqi | 0.575cent/sqi |
| $900k-$1049k/(5.5% discount) | 0.214cent/sqi | 0.32cent/sqi | 0.478cent/sqi | 0.632cent/sqi |
| $1050k-$1199k/(6.0% discount) | 0.234cent/sqi | 0.348cent/sqi | 0.522cent/sqi | 0.69cent/sqi |
| $1200k-$1399k(6.5% discount) | 0.253cent/sqi | 0.377cent/sqi | 0.565cent/sqi | 0.747cent/sqi |
| $1400k and over/(7.0% discount) | 0.266cent/sqi | 0.406cent/sqi | 0.609cnet/sqi | 0.805cent/sqi |

- Above mentioned discount will be applied to the payment on a monthly basis
- Order volume will be based on calendar months, i.e. 1st Jan to 31st Jan etc.
- Monthly order volume will be evaluated at the end of every month. Discount will be applied to every Purchase Order released in the following month based on the above criteria.

## **SCHEDULE C**

### **Lead-Time Schedule**

1. Benlida shall update the Standard Lead Times on the 15th (or nearest business day) of every month

2. If Benlida fails to update the Standard Lead Times as required above, the Parties agree that the following Lead Times shall apply and shall be deemed the Standard Lead Times, unless otherwise agreed to by the Parties in writing:

| | |
|---|---|
| SS: | 10 days |
| DS: | 14 days |
| 4L to 6L: | 21 days |
| 8L and above: | 28 days |

3. The above Standard Lead Times includes 2 days to allow for EQ response time from Circuitronix, assuming that nothing is pending from Benlida and that Benlida is solely waiting for Circuitronix

4. In case Circuitronix takes more than 2 days to resolve EQ's, Standard Lead Times will increase by the number of days over 2 days

5. The above Standard Lead Times apply to an order of 3000 square meters per week. For each increase of 400 square meters per week, the Standard Lead Time will be increased by 1day.





# EXHIBIT B

# 业务授权书

## Business authorization

江门市奔力达电路有限公司

JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD：

我公司因业务需要，现授权 CIRCUITRONIX（HONG KONG），LIMITED 向贵公司下订单，并承担 CIRCUITRONIX（HONG KONG），LIMITED 因此项业务产生的债务。

For the purposes of our company's business, Circuitronix, LLC. hereby authorize CIRCUITRONIX（HONG KONG），LIMITED to place orders to your company on our behalf. CIRCUITRONIX, LLC assumes all CIRCUITRONIX（HONG KONG），LIMITED's debts due to these orders.

授权人（签名盖章）

Authorizer(signature and seal):

(CIRCUITRONIX, LLC)

日期：2014年 1 月 1 日

Date:   2014. 01. 01

AGREE TO THE ENGLISH VERSION ONLY



# EXHIBIT C

**circuitronix**

July 21ˢᵗ 2016

**Jiangmen Benlida Printed Circuit Co., Ltd.**
76, Longxi Road, High-tech Industrial Park
Jiangmen, Guangdong, China
Attn: Mr. Hanchao (Douglas) Huang

**ROK Printed Circuit Co., Ltd.**
21 Workshop, 8, High-tech Industrial Park
Dongnan Industrial Park, Jianghai District
Jiangmen, Guangdong, China
Attn: Mr. Hanchao (Douglas) Huang

Re:  **Letter Agreement ("Agreement") regarding Manufacturing Agreement**

Dear Mr. Huang:

Reference is hereby made to that certain Standard Manufacturing and Representation Agreement
(the **"Existing Agreement"**) entered into by and between: (i) Circuitronix, LLC, a limited liability
company organized and existing under the laws of the State of Florida, whose principal place of
business is located at 3131 SW 42ⁿᵈ Street, Fort Lauderdale, Florida 33312 (**"CTX USA"**); (ii)
Circuitronix (Hong Kong), Limited, a limited company organized and existing under the laws of
Hong Kong, whose principal place of business is located at Unit 16 7/F Block A, Po Lung Centre,
11 Wang Chiu Road, Kowloon (**"CTX HK"**) and that will join in this Agreement and in the
Secondary Manufacturing Agreement (as defined below); (iii) Jiangmen Benlida Printed Circuit
Co., Ltd., a People's Republic of China company (incorrectly referred to as a Hong Kong company
in the Existing Agreement) whose principal place of business is located at 76, Longxi Road, High-
tech Industrial Park, Jiangmen, Guangdong, China (**"Benlida"**); and (iv) ROK Printed Circuit Co.,
Ltd., a Hong Kong company whose principal place of business is located at 21 Workshop, 8,
High-tech Industrial Park, Dongnan Industrial Park, Jianghai District, Jiangmen, Guangdong,
China (**"ROK"** and together with Benlida, the **"Manufacturer"**).

Due to discrepancies between CTX USA and Manufacturer with respect to the balances of
certain accounts under the Existing Agreement (the **"Discrepancy"**), CTX USA, CTX HK, and
Manufacturer have agreed to negotiate in good faith a new manufacturing and representation
agreement (the **"Secondary Manufacturing Agreement"**).  However, until such time as
CTX USA, CTX HK and Manufacturer enter into the Secondary Manufacturing Agreement or
this Agreement otherwise terminates pursuant to Section 7 hereof, CTX USA has agreed to
continue to make payments to Manufacturer, irrespective of the Discrepancy, in accordance
with the payment schedule set forth in the Existing Agreement (even if such payments would
result in CTX USA having overpaid under the Existing Agreement) (**"Regularly Scheduled
Payments"**).

3131 SW 42ⁿᵈ Street, Fort Lauderdale, FL 33312  USA       786. 364.4458
1.305.377.9008            sales@circuitronix.com         http://www.circuitronix.com

circuitronix

In light of the foregoing and in consideration of CTX USA's agreement to continue to make the Regularly Scheduled Payments irrespective of the Discrepancy, Manufacturer and CTX USA hereby agree as follows:

1.  Except as expressly modified hereby, the Existing Agreement shall remain in full force and effect.

2.  Notwithstanding anything to the contrary contained in this Agreement or the Existing Agreement, Manufacturer shall not, and shall cause its officers, directors and/or employees to not, for a period of two (2) years after the termination of the Existing Agreement, whether individually or as an officer, director, partner, joint venture, shareholder, agent, or independent contractor, solicit, recruit, hire, or attempt to solicit, recruit or hire, directly or by assisting another to do so, a shareholder, officer, employee or agent of: (a) CTX USA, (b) CTX USA's affiliates, or (c) CTX USA or its affiliates' employees, vendors or customers. Manufacturer hereby acknowledges that the restrictions contained in this Section 2 are reasonably necessary to further CTX USA's legitimate business interests, including protecting CTX USA's: (i) trade secrets; (ii) valuable confidential business information or professional information; (iii) substantial relationships with specific, prospective or existing customers; and (iv) customer goodwill associated with CTX USA's trademarks and service marks. In addition, the unauthorized disclosure of the existence and the very nature of the relationship between the Manufacturer and Circuitronix shall be deemed a breach of the confidentiality provision set forth in Section 8.1 of the Existing Agreement.

3.  Manufacturer acknowledges that CTX USA is reposing a significant amount of trust in Manufacturer to act as CTX USA's agent vis-à-vis the companies listed on **Schedule A**, and that when Manufacturer has to perform an action for these companies, or when it is communicating directly with these companies, Manufacturer is in a superior position than CTX USA to affect CTX USA's relationship with these companies. Accordingly, Manufacturer hereby acknowledges that it owes CTX USA a contractual, common law and statutory duty of good faith, fair dealing, loyalty, and care and hereby represents and warrants that it will use its best efforts to promote and further CTX USA's business interests with respect to the companies listed on **Schedule A**. Consistent therewith, Manufacturer shall subordinate and refrain from acting upon any of its desires that may adversely affect CTX USA's interests with the companies on **Schedule A**. Without limiting the generality of the foregoing, it shall be deemed a material breach of this Agreement, a breach of the fiduciary duties that Manufacturer owes CTX USA, as well as a breach of its contractual obligation to act in good faith, if Manufacturer does not permit the companies listed on **Schedule A** to visit its factor(ies), or perform an audit, or if Manufacturer refuses to provide any other information or documentation about itself to the companies, all within a reasonable period of time, not to exceed one (1) week, upon receiving such a request.

4.  Manufacturer shall not engage in or effect any change of Control without the prior written consent of CTX USA. For the purposes of this Agreement, "**Control**" shall mean, with respect to Manufacturer, the power to direct the management and policies of Manufacturer, directly or indirectly, whether through the ownership of voting securities or other beneficial interest, by contract or otherwise.



3131 SW 42nd Street, Fort Lauderdale, FL 33312 USA    786. 364.4458
1.305.377.9008    sales@circuitronix.com    http://www.circuitronix.com

circuitronix

5. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida or, at the option of CTX USA, the laws of any jurisdiction in which CTX USA commences any suit, action or proceedings relating to this Agreement ("**Proceedings**") (other than such jurisdiction's rules of conflicts of laws to the extent that the laws of another jurisdiction would be required thereby). With respect to any Proceedings, Manufacturer irrevocably: (a) submits to the nonexclusive jurisdiction of the courts of the State of Florida and the United States District Court located in Broward County, Florida; and (b) waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have jurisdiction over Manufacturer. Nothing in this Agreement precludes CTX USA from bringing Proceedings in any other jurisdiction nor will the bringing of Proceedings in any one or more jurisdictions preclude the bringing of Proceedings in any other jurisdiction. Manufacturer agrees that service of process in any Proceeding may be made by overnight courier in the manner set forth in the Notice provision below and agrees not to object to such service of process on the grounds that it was served upon Manufacturer by such method.

6. This Agreement and the Existing Agreement represent the parties' full and complete understanding regarding the subject matter hereof. All other prior agreements, covenants, representations or warranties, express or implied, oral or written, that refer or relate to the employment relationship have either been merged into this Agreement and/or the Existing Agreement or have been intentionally omitted therefrom. This Agreement and the Existing Agreement supersede any and all prior agreements or understandings between CTX USA and Manufacturer.

7. Notwithstanding anything to the contrary contained in this Agreement or the Existing Agreement, this Agreement shall remain in full force and effect and may not be terminated by Manufacturer until the earlier to occur of: (i) CTX USA and Manufacturer having entered into the Secondary Manufacturing Agreement; (ii) the Discrepancy having been resolved; or (iii) such other time as CTX USA shall determine in its sole and absolute discretion.

8. Any modification to this Agreement shall only bind the parties if it is in writing and signed by the parties.

9. In the event that any of the terms, conditions or covenants of this Agreement are held to be unenforceable or invalid the validity and enforceability of the remaining provisions, or portions thereof, shall not be affected thereby and effect shall be given to the remaining provisions.

10. Each party agrees to take all such other and further actions as may be necessary to carry out the intents and purposes of this Agreement.

11. All notices, demands, consents, approvals, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder (collectively, "**Notices**") shall be in writing and shall be given by personal delivery, or facsimile or reputable overnight courier service (charges prepaid) or United States registered or certified mail (postage prepaid, return receipt requested) addressed as hereinafter provided, provided, however, that any Notice given by facsimile shall also be given by personal delivery or United States registered or certified mail. Notice shall be

circuitronix

deemed delivered on: (a) if by overnight express delivery or personal delivery, the date of receipt, or attempted delivery, if such communication is refused; (b) if sent by overnight courier service, one (1) business day after having been deposited for next day overnight delivery with any reputable overnight courier service; and (c) if sent by mail (as aforesaid), the date of receipt or attempted delivery, if such mailing is refused. Until further notice, notices and other communications under this Agreement shall be addressed to the parties listed below as follows:

If to Benlida:

Jiangmen Benlida Printed Circuit Co., LTD.
76, Longxi Road, High-tech Industrial Park
Jiangmen, Guangdong, China
Attn: Mr. Hanchao Huang

If to ROK:

ROK Printed Circuit Co., LTD.
21 Workshop, 8, High-tech Industrial Park
Dongnan Industrial Park, Jianghai District
Jiangmen, Guangdong, China
Attn: Mr. Hanchao Huang

If to CTX USA:

Circuitronix, LLC
3131 SW 42nd Street
Fort Lauderdale, Florida 33312
Attn: Mr. Rishi Kukreja

If to CTX HK:

Circuitronix (Hong Kong), Limited
Unit 16 7/F Block A,
Po Lung Centre :
11 Wang Chiu Road, Kowloon
Attn: Mr. Rishi Kukreja

Either party may designate another addressee (and/or change its address) for Notices hereunder by a Notice given pursuant to this Section. To the extent that Manufacturer changes its address at any time during the term of this Agreement or during any period in which Manufacturer is bound by the restrictive covenants contained herein or the Existing Agreement, Manufacturer shall provide Notice of a change in Manufacturer's mailing address within 10 days of a change thereof. Should Manufacturer's address change and Manufacturer has failed to give CTX USA Notice of such change, CTX USA and CTX HK shall be justified in relying upon the Manufacturer's address on file for purposes of the giving of any Notice hereunder.



circuitronix

Please indicate your agreement with the foregoing by signing where indicated below and by returning the originally signed counterpart hereof to the undersigned.

Sincerely,

Rishi Kukreja
FOR CTX USA AND CTX HK

**AGREED TO AND ACCEPTED:**

JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD.

By:
Name:
Title: Huang Hanchao

ROK PRINTED CIRCUIT CO., LTD.

By:
Name:
Title: Huang Hanchao



# EXHIBIT D

**From:** tracy@benlida.com <tracy@benlida.com>
**Sent:** Friday, October 5, 2018 11:52 PM
**To:** Rishi Kukreja <RishiK@circuitronix.com>
**Cc:** kun吴宇焜 <kunnywoo@126.com>; douglas <douglas@benlida.com>; aguan <aguan@gecpas.com>
**Subject:** Authorization for Payment Entrust -- important!
**Attachments:** Authorization for Payment Entrust.docx

Rishi,

Since CTX HKG was paying much less than CTX US, our record in custom and tax department will have problem
by end of 2018. As we explain before, when we ship 1 million to CTX HKG, we should get 1 million from CTX HKG.
To resolve this issue, we need CTX sign the letter of Authorization for Payment Entrust as attachment. For every
sigle wire CTX US send out in the coming days, we need this letter till the date we can make our custom record
balance.
Please review and let us know if you have any concern. Thank you.

RGDS

Jiangmen Benlida Printed Circuit Group
Tracy Huang
86-750-3962099

# 委托付款书 The Letter of Authorization for Payment Entrust

江门市奔力达电路有限公司 JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD：

我公司因业务需要，现委托 **CIRCUITRONIX, LLC** 作为我公司合法委托付款人，授权其代表我单位进行代付款工作，<span style="color:red">在代理人收到委托人指示时对外付款</span>。For the purposes of our company's business, hereby entrusted **CIRCUITRONIX, LLC** to act as our legitimate payer, authorizing it to act on behalf of our company for payment, and to pay when it receives instructions from the principal.

代理人的一切行为均代表本公司，与本公司的行为具有同等法律效力。本公司将承担该代理人行为的全部法律后果和法律责任。特此委托。Agent's acts are representative of our company, with the same legal effect as our company's behavior. Our company will bear all the legal consequences and liabilities of the agent's actions.

代理人名称 the name of representative：**CIRCUITRONIX, LLC**

开户行 bank：＿＿＿＿＿＿＿＿

账号 account number：＿＿＿＿＿＿＿＿

代理人代付款金额 Agent's payment amount:

付款日期 Date of payment:

委托人（签名盖章）Principal (signature and seal):

**CIRCUITRONIX（HONG KONG），LIMITED**

日期：x 年 x 月 x 日

Date:  Y  M  D

代理人（签名盖章）Agent (signature and seal):

**CIRCUITRONIX, LLC**

日期：x 年 x 月 x 日

Date:  Y  M  D



# EXHIBIT E

## CONFIRMATION FOR AUDIT PURPOSES
企业询证函

Reference No.: _____

询证编号： _____

To: CIRCUITRONIXLLC

The auditor, Jiangmen Beidou Certified Public Accountants Co., Ltd. ("**Auditor**"), engaged by our company, is performing an audit of the financial statements of our company. Our current accounts relating to your company should be confirmed in accordance with China's Independent Auditing Standards.

本公司聘请的江门北斗会计师事务所有限公司正在对本公司的财务报表进行审计。按照中国注册会计师审计准则的要求，应当询证本公司与贵公司的往来账项。

The below balance is from the account books of our company. If it agrees with your records please confirm by signing and stamping at the foot of this page (the place said "Confirmed"). If you note any discrepancy please give details of the difference at the place said "Discrepancy needed further explanation". Please fax the signed copy to **the Auditor** first and send the original copy to **the Audit or** directly.

下表所列数据出自本公司账簿记录，如与贵公司记录相符，请在本函下端"记录相符"处签章证明，如有不符，请在"记录不符"处列明不符之处。回函请直接寄至我们的审计人员：

The auditor's information is as follows:

Jiangmen Beidou Certified Public Accountants Co., Ltd.

Add:3/F, Foreign Trade Building, 82-1 Jianshe Road, Jiangmen, Guangdong 529000 CHINA

Tel: +86 750 328 6006, 328 6013      Fax: +86 750 328 6000

审计师信息如下：

江门北斗会计师事务所有限公司

地址：江门市蓬江区建设路 82 号之一外贸大厦三楼

电话：+86 750 328 6006, 328 6013    传真：+86 750 328 6000

This is only for confirmation of the accounts, not a request for payment.

本公司与贵公司的往来账项列示如下：

| Balance at:<br>截止日期 | Due from your company<br>贵公司欠 | Due to your company<br>欠贵公司 | Remark<br>备　　注 |
|---|---|---|---|
| 2019.12.31 | USD 0.00 | USD 75,684.83 | |

You may have settled the above account after the date mentioned above, but the account is still needed be confirmed so this page is still needed be faxed and sent out.

您可能在上述日期后已结清上述款项，但账户仍需确认，因此本页仍需确认

Thank you for your co-operation.

谢谢您的合作。

Our company's name: _____            Date:_____

(Our company's chop)

本公司名称： _____            日期： _____

（本公司的印章）

_____

Confirmed:_____            Date:_____

(Signature & your company's chop)

记录相符：_____            日期： _____

（签名和公司印章）

Discrepancy needed further explanation:_____            Date:_____

(Signature & your company's chop)

记录不符，差异需要进一步解释_____            日期： _____

（签名和公司印章）



# EXHIBIT F

MAZZOLA LINDSTROM, LLP
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
646.250.6666
jeanclaude@mazzolalindstrom.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
----------------------------------------------------------------x

JIANGMEN BENLIDA PRINTED                          CM/ECF
CIRCUIT CO., LTD.,
                                                  Civil Action No.: 21-60125-CIV-
                        Plaintiff,                SCOLA/SNOW

            -against-

CIRCUITRONIX LLC,

                        Defendant.
----------------------------------------------------------------x

### PLAINTIFF'S INITIAL DISCLOSURES PURSUANT TO RULE 26

Plaintiff, Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida") by and through counsel,

Mazzola Lindstrom LLP, make the following initial disclosures. To the best of Plaintiff's

knowledge, information, and belief, formed after an inquiry that is reasonable under the

circumstances, the disclosures herein are complete as of the time made. Nevertheless, Plaintiff has

not completed its investigation of the facts relating to this case, has not completed discovery in

this action, and has not completed preparation for trial in this action. These initial disclosures are

based upon information known at this time and given without prejudice to Plaintiff identifying

subsequently discovered witnesses, facts, or evidence. Plaintiff reserves the right to supplement

and/or amend these disclosures as necessary pursuant to Rule 26(e) of the Federal Rules of Civil

Procedure.

These disclosures are subject to all objections as to competency, relevance, materiality,

admissibility, privilege, and any and all other objections that would require the exclusion of the

testimony of any witness identified herein. All such objections and grounds are expressly reserved and may be interposed at the time of trial. These disclosures shall not be construed as a waiver of the attorney-client privilege and/or the attorney work product doctrine as to any witnesses' potential testimony.

### RULE 26(a)(1)(A) DISCLOSURES:

**(i) The name and, if know, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claim or defenses, unless the use would be solely for impeachment;**

Plaintiff is aware of the following individuals who may have discoverable information Plaintiff may use to support their claims or defenses:

| WITNESS | CONTACT DETAILS | KNOWLEDGE |
|---|---|---|
| | | |
| Tracy Huang ("Tracy") | c/o Plaintiff's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communication between the parties concerning accounts receivable and the disputed invoices identified in the TAC; knowledge of relationship between the parties. |
| Huang Hanchao (Douglas) | c/o Plaintiff's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communication between the parties concerning accounts receivable and the disputed invoices identified in the TAC; knowledge of relationship between the parties. |
| Huang Xiangjiang | c/o Plaintiff's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communication between the parties concerning accounts receivable and the disputed invoices identified in the TAC; knowledge of relationship between the parties. |

| | | |
|---|---|---|
| Zhang Qing | c/o Plaintiff's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communication between the parties concerning accounts receivable and the disputed invoices identified in the TAC; knowledge of relationship between the parties. |
| Liu Yusheng | c/o Plaintiff's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communication between the parties concerning accounts receivable and the disputed invoices identified in the TAC; knowledge of relationship between the parties. |
| Guangdong Yuda Investment Partnership (Limited Partnership) | c/o Plaintiff's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communication between the parties concerning accounts receivable and the disputed invoices identified in the TAC; knowledge of relationship between the parties. |
| | | |
| Liao Shusheng | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Liao Shudong | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Li Yingjie | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Lei Xiaobing | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Xie Yuguang | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Huang Youjin | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Chen Yonglian | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Chen Jian | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Xu Min | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Yan Maohua | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |

| | | |
|---|---|---|
| Zhou Weixue | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Li Zhizhou | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Fang Zhongwen | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Yang Shide | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Chen Jian | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Li Yuecheng | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Tan Yongjun | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Hao Ming | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Zhang Yong | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Xu Jun | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Huang Sulan | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Duan Jijun | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Hu Xiangbo | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Li Xianchao | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Kong Xiangchun | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Wei Jun | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| He Chuan | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Huang Genqiang | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Lin Qixiang | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| Li Shulin | c/o Plaintiff's counsel | The allegations contained in the Complaint and the Defendant's Defenses. |
| | | |
| Jiangmen Benlida Printed Circuit Co., LTD. | c/o Plaintiff's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communication between the parties concerning accounts receivable and the |

| | | |
|---|---|---|
| (Corporate Representative) | | disputed invoices identified in the TAC; knowledge of relationship between the parties. |
| ROK Printed Circuit Co., LTD. (Corporate Representative) | c/o Plaintiff's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communication between the parties concerning accounts receivable and the disputed invoices identified in the TAC; knowledge of relationship between the parties. |
| China Export & Credit Insurance Corporation, commonly known as "Sinosure" (Corporate Representative) | c/o Plaintiff's counsel | Knowledge of admissions by Benlida concerning their claims against CTX, and the amount of such claims. |
| "Ms. Chen" (Accounting at Benlida) | c/o Plaintiff's counsel | Knowledge of accounting, invoicing, reconciliations, and payments. |
| Kunny Woo | c/o Plaintiff's counsel | Knowledge of accounting, invoicing, reconciliations, and payments. |
| | | |
| Rishi Kukreja | c/o Defendant's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communications between the parties concerning accounts receivable and the disputed invoices identified in the TAC. |
| Sourabh Sharma | c/o Defendant's counsel | Knowledge of lead-time penalty amounts. |
| Akshay Koul | c/o Defendant's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communications between the parties concerning accounts receivable and the disputed invoices identified in the TAC. |
| Lina Ochoa | c/o Defendant's counsel | General operational knowledge of the business between the parties, payments, invoices, credit memos, reconciliations, and communications between the parties concerning accounts receivable and the disputed invoices identified in the TAC. |

| Nicole Donaldson | c/o Defendant's counsel | Knowledge of accounting, invoicing reconciliations, and payments, and related communications with Benlida regarding the same. |
| Melonnie Rhoden | c/o Defendant's counsel | Knowledge of accounting, invoicing, reconciliations, and payments and related communications with Benlida regarding the same. |
| Marcia Delgado | c/o Defendant's counsel | Knowledge of accounting, invoicing, reconciliations, and payments and related communications with Benlida regarding the same. |
| Barry Mukamal | c/o Defendant's counsel | Expert forensic accountant retained as a testifying expert by Defendant. Opinion will be disclosed in an expert report pursuant to the Court's Scheduling Order. We anticipate that Mr. Mukama's report and opinion will explain the current credit balance. |

All contact with the Plaintiff should be made through counsel Mazzola Lindstrom, LLP, 1350 Avenue of the Americas, 2nd Floor, New York, NY 10019.  Plaintiff emphasizes that the above list is based upon preliminary review of the allegations in the Complaint and may not be exhaustive. Accordingly, Plaintiff reserves the right to supplement or amend this list.

**(ii) A copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;**

Plaintiff identifies the following documents in its possession, custody and/or control that they may use to support its claims in this litigation:

1.  Plaintiff identifies various commercial documents including contracts, invoices, and Bills of Lading which may be responsive.

2.  Documents, sales records, purchase orders, invoices, payments monthly statements and communications relating to the products under the Manufacturer's Agreement and Letter Agreement and exhibits thereto.

3.   Plaintiff identifies various email communications between the parties regarding the aforementioned contracts, invoices, and Bills of Lading which may be responsive.

4.   Minutes of meetings between and among the parties and their representatives, including communications in connection therewith.

5.   All documents attached to any pleading, affidavit, declaration, or other filing that is a part of the record in this case.

6.   All documents identified by Plaintiff in its Initial Disclosures and produced in discovery.

7.   All documents produced by parties or third parties throughout discovery in this matter.

The aforementioned documents, electronically stored information and tangible things are located at Plaintiff's attorneys' offices at 1350 Avenue of the Americas, 2nd Floor, New York, NY 10019.

These documents may contain confidential business and proprietary data, in which case such documents will be produced only pursuant to a confidentiality agreement. Moreover, Plaintiff reserves the right to object to production of individual documents or sets of documents for any reason including, without limitation, burden, privacy, relevance, and privilege. Further, Plaintiff emphasizes that this list is based upon its preliminary review of the facts surrounding this action and may not be exhaustive. Accordingly, Plaintiff reserves the right to supplement or amend this list.

**(iii) A computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.**

Benlida demands judgment against defendant Circuitronix LLC (a) for damages in the amount of $13,655,335.93; (b) for prejudgment interest in accordance with the contract between the parties or statutory interest from the date of loss, plus costs in accordance with Florida Statute § 55.03 and 28 U.S.C. § 1961; and (c) for such other and further relief as this court deems proper and just, (d) attorney's fees in connection with pursuit of recovery of the stated damages, including, without limitation those in connection with this action, and for such other and further relief as this court deems proper and just. Plaintiff reserves the right to amend or supplement this disclosure if further information becomes available.

**(iv) For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

None.

Dated: New York, New York
         February 11, 2022

                                        Respectfully submitted,
                                        MAZZOLA LINDSTROM LLP

                    By:                 _____
                                        Jean-Claude Mazzola, Esq.
                                        1350 Avenue of the Americas, 2nd Floor
                                        New York, NY 10019
                                        Tel: (646) 250-6666
                                        *Attorneys for Plaintiff*

To:      Chauncey D. Cole IV, Esq. (via email)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via electronic mail on a registered CM/ECF user on February 11, 2022.

                    By:                 _____
                                        Kevin Kelly, Esq.



# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-60125-CIV-SCOLA/GOODMAN**

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD., *et al.*

      Plaintiffs,

v.

CIRCUITRONIX LLC,

      Defendant.

_____/

<u>**DEFENDANT'S FIRST REQUESTS FOR ADMISISONS TO PLAINTIFF JIANGMEN
BENLIDA PRINTED CIRCUIT CO., LTD.**</u>

      Defendant, Circuitronix, LLC ("CTX"), pursuant to Federal Rule of Civil Procedure 36,
requests Defendant Jiangmen Benlida Printed Circuit Co., LTD ("Benlida") respond to the
following Requests for Admissions within thirty (30) days after service.

<u>**INSTRUCTIONS**</u>

      1.      If a matter is not admitted, the response must either specifically deny the matter or
state in detail why the Plaintiff cannot truthfully admit or deny the matter. A denial must fairly
respond to the substance of the matter, and when good faith requires that plaintiff qualify an
answer or deny only a portion of the matter, the response must both specify the portion admitted
and qualify or deny the rest.

      2.      If Plaintiff asserts lack of knowledge of information as a reason for failing to
admit or deny any matter, Plaintiff must state that it made a reasonable inquiry, and that the
information Plaintiff knows or can readily obtain is insufficient for Plaintiff to admit or deny the
matter.

      3.      Grounds for objecting to a Request must be stated with specificity.  Plaintiff may
not object solely on the ground that a Request presents a genuine issue for trial.

      4.      Each Request is to be read, construed, and responded to separately and
independently without reference to or limitation by any other Request, unless otherwise noted.

## **DEFINITIONS**

1.     "Benlida" shall mean Jiangmen Benlida Printed Circuit Co., Ltd., as well as any predecessor, successor, affiliate, subsidiary, partner, agent, employee, representative or other individual or entity acting on behalf of Jiangmen Benlida Printed Circuit Co., Ltd.

2.     "Circuitronix Hong Kong" shall mean Circuitronix Hong Kong Ltd.

3.     "Circuitronix LLC" shall mean the named Defendant in this case.

4.     "You" or "your" shall mean Benlida, as well as any predecessor, successor, affiliate, subsidiary, partner, agent, employee, representative or other individual or entity acting on their behalf.

## **REQUESTS FOR ADMISSIONS**

(*Allegations using "BLDCCT-HK" designation*)

1.     Admit that, between 2018 and 2020, Benlida used the designation prefix "BLDCCT-HK" followed by an invoice number to refer to invoices issued to Circuitronix Hong Kong.

2.     Admit that all of the invoices identified in paragraphs 261 to 316 of the Third Amended Complaint, each of which are referenced using the designation prefix "BLDCCT-HK," were issued by Benlida to Circuitronix Hong Kong.

3.     Admit that all of the invoices identified in paragraphs 318 to 337 of the Third Amended Complaint, each of which are referenced using the designation prefix "BLDCCT-HK," were issued by Benlida to Circuitronix Hong Kong.

4.     Admit that all of the invoices identified in paragraphs 341 to 431 of the Third Amended Complaint, each of which are referenced using the designation prefix "BLDCCT-HK," were issued by Benlida to Circuitronix Hong Kong.

2

(*Allegations using "CCT-BLD-[#](HK)" designation*)

5.      Admit that Benlida issued Invoice "CCT-BLD-190329001(HK)," referenced in paragraph 317 of the Third Amended Complaint, to Circuitronix Hong Kong.

6.      Admit that Benlida issued Invoice "CCT-BLD-190403002(HK)," referenced in paragraph 338 of the Third Amended Complaint, to Circuitronix Hong Kong.

7.      Admit that Benlida issued Invoice "CCT-BLD-190409002(HK)," referenced in paragraph 339 of the Third Amended Complaint, to Circuitronix Hong Kong.

8.      Admit that Benlida issued Invoice "CCT-BLD-190412001(HK)," referenced in paragraph 340 of the Third Amended Complaint, to Circuitronix Hong Kong.

Dated:  May 3, 2023

Respectfully submitted,

**PODHURST ORSECK, P.A.**
*Co-Counsel for Circuitronix, LLC*
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800

By: */s/ Stephen F. Rosenthal*
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com

**CHAUNCEY COLE, PA**
*Co-Counsel for Circuitronix, LLC*
9100 South Dadeland Blvd., Suite 1553
Miami, Florida 33156
Tel.:    (786) 497-7053

By: /s/ *Chauncey D. Cole IV*
Chauncey D. Cole, IV, Esq.
Florida Bar No. 102184
chauncey.cole@coletrial.com



**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on May 3, 2023 as filed with the Clerk of the Court using CM/ECF.

By: <u>/s/ *Stephen F. Rosenthal*</u>
Stephen F. Rosenthal

## SANDRA RODRIGUEZ

| | |
|---|---|
| **From:** | SANDRA RODRIGUEZ |
| **Sent:** | Wednesday, May 3, 2023 4:45 PM |
| **To:** | jeanclaude@mazzolalindstrom.com; richard@mazzolalindstrom.com; ruofei@mazzolalindstrom.com; steven@mazzolalindstrom.com |
| **Cc:** | STEPHEN F. ROSENTHAL; Christina H. Martinez; Chauncey Cole; JESSICA MILLER |
| **Subject:** | SERVICE OF COURT DOCUMENT - Case 0:21-cv-60125-RNS Jiangmen Benlida Printed Circuit Co., Ltd. v. Circuitronix, LLC |
| **Attachments:** | Request for Admissions (5-3-2023).pdf |

| Court: | UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA |
|---|---|
| Case No.: | 0:21-cv-60125-RNS |
| Style: | Jiangmen Benlida Printed Circuit Co., Ltd. v. Circuitronix, LLC |
| Document Title: | 1.  DEFENDANT'S REQUEST FOR ADMISSIONS TO PLAINTIFF |
| Sender's Name: | Stephen F. Rosenthal, Esq. |
| Sender's Telephone No: | 305-358-2800 |
| | Please note that pursuant to Fed.R.Civ.Pro 5(b)(2)(E) and the S.D. Fla. Local Rules you are being served with court documents and you will not receive paper copies. |
| Service List: | jeanclaude@mazzolalindstrom.com; richard@mazzolalindstrom.com; ruofei@mazzolalindstrom.com; steven@mazzolalindstrom.com; srosenthal@podhurst.com; chauncey.cole@coletrial.com; cmartinez@podhurst.com; srodriguez@podhurst.com; jmiller@podhurst.com |

Jessica Miller
Podhurst Orseck, P.A.
Suntrust International Center
One SE Third Avenue, Suite 2300
Miami, FL 33131
305 358-2800 (phone)
305 358-2382  (fax)
jmiller@podhurst.com



# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
-------------------------------------------------------------------x

JIANGMEN BENLIDA PRINTED                    CM/ECF
CIRCUIT CO., LTD., and ROK PRINTED
CIRCUIT CO., LTD.,                          Civil Action No.: 21-60125-CIV-
                                            SCOLA/SNOW
                    Plaintiffs,

          -against-

CIRCUITRONIX LLC,

                    Defendant.
-------------------------------------------------------------------x


### Declaration of Huang Hanchao

I, Huang Hanchao, state under penalty of perjury, pursuant to 28 USC 1746, as follows:

1.      In English I use the name "Douglas."

2.      Huang Xiangjiang and I are principals and members of both plaintiff Jiangmen Benlida Printed Circuit Co., Ltd., and plaintiff ROK Printed Circuit Co., Ltd.

2.      Mr. Huang and I, along with several other employees and members of Benlida, participated in over eighteen hours of mediation, with retired judge Joseph Farina acting as the mediator, on May 24, 25, and 28. (As we participated remotely via Zoom, from China, these sessions carried over into the following days, as we are 12 hours ahead in China.) CTX's principal Rishi Kukreja was also in attendance; as he knows us both personally, and our positions, he could not have any confusion that both Benlida and ROK were "present" during the mediation, as Mr. Kukreja is quite aware that both Mr. Huang and speak for Benlida and ROK. Indeed, I was the signatory to the 2012 and 2016 agreements with CTX, having executed the agreements

1

in behalf of both Benlida and ROK, so Mr. Kukreja could not have any good-faith basis to believe that ROK was not a participant at the mediation.

4.      I understand that CTX is claiming to be confused by the allegations in the complaint regarding which sums claimed on the invoices identified as unpaid in the complaint originated from Benlida versus ROK. To clarify, none of the invoices identified are ROK invoices. Rather, Benlida issued all of the invoices. All of the moneys owed by CTX are owed to Benlida, not ROK. In fact, ROK ceased manufacturing and selling goods to CTX by mid 2018.

5.      The "CCT-BLD"-denominated invoices identified in paragraphs 13 through 260 of the third amended complaint are Benlida invoices issued to CTX; the "BLDCCT-HK"-denominated invoices identified in paragraphs 261 through 431 are Benlida invoices that were issued to CTX-HK which, according to the Business Authorization (exhibit "A" to Mazzola declaration), are the responsibility of CTX.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 29, 2021
Jiangmen, China

Huang Hanchao ("Douglas")

2



# EXHIBIT I

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-60125-CIV-SCOLA/GOODMAN**

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD., *et al.*

Plaintiffs,
v.
CIRCUITRONIX LLC,
Defendant,
_____/

# Benlida's Revised Response to Interrogatory 14

14. From the date of the earliest invoice identified in your Third Amended Complaint to July 1, 2020, state how much money Benlida was paid by Circuitronix, LLC and the start date you use for calculating the figure in your answer.

**Answer: Earliest date of invoice is Dec 18, 2018. From December 18 to 23, no payment was received from Circuitronix US or Circuitronix HKG, so the earliest date of payment is December 24, 2018.**

| ITEM | PAYMENT AMOUNT | SHIPMENT AMOUNT | NOTE |
|---|---|---|---|
| CTX-US paid to BLD | US$12,240,285.87 | US$10,058,195.91 | Includes US$100,000 received on OSP chemical payment |
| CTX-HKG paid to BLD | US$2,756,127.94 | US$6,372,566.07 | |
| **TOTAL** | **US$14,996,413.81** | **US$16,430,761.98** | |

**Through the end of December 2018, Circuitronix owed Benlida US$10,486,885.95 as receivables, with US$5,792,229.02 overdue as of the end of December 2018.**

1

**I, Tracy Huang, state under penalty of perjury, pursuant to 28 U.S.C. 1746 this 8th day of June 2023, that the above responses to Circuitronix's interrogatory 14 is true and correct.**

_____

**Tracy Huang**

Dated:  June 8, 2023
          New York, New York

**MAZZOLA LINDSTROM LLP**
*Attorneys for Plaintiff Benlida*

By: /s/ *Jean-Claude Mazzola*
Jean-Claude Mazzola
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
646.250.6666
jeanclaude@mazzolalindstrom.com

Service via email upon counsel for defendant Circuitronix LLC

2



# EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/SNOW

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD., *et al.*

Plaintiffs,

v.

CIRCUITRONIX LLC,

Defendant,

_____/

## DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD.

Defendant/Counter-Plaintiff, Circuitronix, LLC ("CTX"), pursuant to Federal Rule of Civil Procedure 33, gives notice of propounding interrogatories, numbered 1 through 18, directed to Plaintiff/Counter-Defendant, Jiangmen Benlida Printed Circuit., Ltd. ("Benlida"), who is hereby requested and required to be answered under oath and in writing, within the time prescribed by said rule.

WE HEREBY CERTIFY that a copy of the forging was served via electronic mail this 23 day of April, 2022 to: Jean-Claude Mazzola, Esq., jeanclaude@mazzolalindstrom.com, and Richard Lerner, Esq., richard@mazzolalindstrom.com, Mazzola Lindstrom, LLP, 1350 Avenue of the Americas, 2nd Floor, New York, New York 10019.

Respectfully submitted,

**PODHURST ORSECK, P.A.**
SunTrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800/Fax: 305-358-2382

**CHAUNCEY COLE, PA**
9100 South Dadeland Blvd., Suite 1553
Miami, Florida 33156
Tel.:  (786) 497-7053

1

By: /s/ Stephen F. Rosenthal
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Robert C. Josefsberg
Florida Bar No. 040856
rjosefsberg@podhurst.com
Matthew Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com

By: /s/ Chauncey D. Cole IV
Chauncey D. Cole, IV, Esq.
Florida Bar No. 102184
chauncey.cole@coletrial.com



*Counsel for Circuitronix, LLC*

## **DEFINITIONS**

1.      The terms "identification," "identify," or "identity," when used in reference to a natural person, shall mean to state the full name, the present or last known home and business address, home and business telephone numbers, their employer and job title and present whereabouts of each such person.

2.      The terms "identification," "identify," or "identity" when used in reference to a corporation or other entity or person, shall mean to state the full legal name, state of incorporation or organization, address of the home office, and of the principal place of business, and in the case of LLCs and other non-incorporated business entities, identify the majority owner(s) and the manager(s) of the business.

3.      The terms "identification," "identify," or "identity," when used in reference to a document, communication or file, shall mean to state its author, the manner and date or time period in which it originated, was developed or kept, its original location, its present location, and all persons who have been custodians of the document or file. Such identification should be made with a sufficient level of particularity to enable you to respond to a request to produce same.

4.      "Benlida" shall mean Jiangmen Benlida Printed Circuit Co., Ltd., as well as any predecessor, successor, affiliate, subsidiary, partner, agent, employee, representative or other individual or entity acting on behalf of Jiangmen Benlida Printed Circuit Co., Ltd.

5.      "You" or "your" shall mean Benlida, as well as any predecessor, successor, affiliate, subsidiary, partner, agent, employee, representative or other individual or entity acting on their behalf.

6.      "Sinosure" shall mean China Export & Credit Insurance Corporation.

3

7.      "Communication" means all documents relating in any way to transmission or exchange of information between two or more persons or entities, orally or in writing, and includes, without limitation, any conversation or discussion, whether face-to-face or by means of telephone, telegraph, telex, telecopier, electronic, text, or other medium.

## **INSTRUCTIONS**

1.  If you object to fully identifying a document or oral communication because of a privilege, please provide the following information, unless divulging the information would disclose the privileged information:

    a.      the nature of the privilege claimed (including work product);

    b.      if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

    c.      the date of the document or oral communication;

    d.      if a document: its type (correspondence, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

    e.      if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

    f.      the general subject matter of the document or oral communication.

2.  Please state in your respective answer whether any or all of the names, documents, or information requested is aggregated in a computerized or electronic database and, if so, where the database is located and maintained and whether such database is searchable.

## INTERROGATORRIES

1.      State the accounting methodology or methodologies you used for your business with Circuitronix, LLC between January 1, 2016 to January 1, 2021, such as "FIFO" (first in, last out), "LIFO" (last in, first out), and the period of time during which each such methodology was used.

2.      With respect to your allegation in Paragraph 12 of the Third Amended Complaint that "the first" invoice "was paid in part," identify which invoice you are referring to, its amount, the amount you allege Circuitronix, LLC paid towards it, and the date that allegedly partial payment was made.

3.      Explain in detail how the amount you claim in Paragraph 437 of the Third Amended Complaint that Circuitronix, LLC owes for "price increases" ($2,115,927.57) was calculated, showing the amount of "price increase" for each invoice you used in your calculation of this figure (and each applicable invoice number).

4.      Explain in detail how the amount you claim in Paragraph 437 of the Third Amended Complaint as "the invoiced amount" ($11,539,408.36) was calculated, showing the amount for each invoice you used in your calculation of this figure (and each applicable invoice number).

5.      In Paragraph 443 of the Third Amended Complaint, you allege that "Circuitroinix failed to make full payment for such goods."  With respect to each invoice you are referring to in this allegation, identify:
   a.   the dollar amount by which you claim Circuitronix, LLC fell short of making "full" payment, and
   b.   the date on which the less than full payment you attribute to that invoice occurred.

5

6.       State the key facts which, in your view, support your allegation in Paragraph 444 of the Third Amended Complaint that the "lead-time penalty" discussed was "unconsented-to," including the date, location and participants at any meeting and/or written communications evidencing your lack of consent to lead-time penalties.

7.       To the extent you agree that you incurred any lead-time penalties as of the date that, as you allege in Paragraph 444 of the Third Amended Complaint, "Defendant Circuitronix alleged that … Benlida owed it a total of $6,561,044.21," state the amount of lead-time penalties that had accrued as of that date by your own calculations.

8.       With respect to your allegation in Paragraph 455 of the Third Amended Complaint that "Defendant Circuitronix has failed to remit payment of the debt although it has been in possession of the invoices":
   a.   identify which invoices this allegation relates to;
   b.   state whether you agree that Circuitronix, LLC remitted any payments to you after its receipt of those invoices; and,
   c.   if so, explain why you did not credit any or all of those payments to those invoices.

9.       Identify who served as the primary points of contact at Benlida and at Sinosure between those two companies, between January 1, 2016 and the present, concerning business with Circuitronix, LLC, and provide those individuals' mailing addresses, email addresses, and telephone numbers.  For the Benlida employees, state whether they are still employed with Benlida (or ROK Printed Circuit Co. Ltd.), and if not, provide their last known contact information.

10.     Identify any contract or agreement you had with Sinosure between January 1, 2016 to the present that applied or applies to your business with Circuitronix, LLC.

6

11.     With respect to each contract or agreement with Sinosure that is responsive to Interrogatory No. 10 above, identify the provision or provisions that you were relying upon when you insisted that Circuitronix, LLC make a 120% prepayment of the order value before you would release the orders.

12.     Identify all communications you had with Sinosure between January 1, 2016 to the present in which you informed Sinosure that Circuitronix, LLC was indebted to you.

13.     Identify all communications you had with any bank or other financial institution between January 1, 2016 to the present concerning the subject of any debt you owe or owed Circuitronix, LLC or any debt Circuitronix, LLC owed or owes you.

14.     Identify all communications you had with any of the following companies between January 1, 2016 and the present, who from Benlida communicated with them, the subject-matters of the communications:
        a.  Shenzhen Kinwong Electronic Co., Ltd.;
        b.  Kinwong Electronic (Hong Kong) Co., Ltd.
        c.  Super Tech Circuit Board Co., Ltd.;
        d.  Winglung
        e.  Guangdong Kingshine

15.     Identify all communications you had with any of the customers on the attached Exclusive Customer list between January 1, 2016 and the present, who from Benlida communicated with them, the subject-matters of the communications.

16.     From the date of the earliest invoice identified in your Third Amended Complaint to July 1, 2020, state how much money Benlida was paid by Circuitronix, LLC and the start date you use for calculating the figure in your answer.

17.     For the payments you considered in your answer to Interrogatory No. 16, above, identify any communications from you to Circuitronix, LLC that explain how that money was credited by Benlida.

18.     From January 1, 2016 to July 1, 2020, how much money was Benlida paid by Circuitronix, LLC?

19.     For the payments you considered in your answer to Interrogatory No. 18, above, identify any communications from you to Circuitronix, LLC that explain how that money was credited by Benlida.

20.     Who at Benlida has been responsible for credit insurance between January 1, 2016 and the present?  Provide those individuals' mailing addresses, email addresses, and telephone numbers.

21.     Identify all notices from the customs authority of China and tax department of China between January 1, 2016 and the present received by Benlida and/or ROK Printed Circuit Co. Ltd. stating that either company was in default.

22.     Disclose the amount of your annual sales (in dollars) in the United States, Japan, European Union countries, and Hong Kong for 2016-2021.



# EXHIBIT K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD., *et al.*

Plaintiffs,

v.

CIRCUITRONIX LLC,

Defendant,

_____/

# Benlida's Responses to Circuitronix's Interrogatories

1.   State the accounting methodology or methodologies you used for your business with Circuitronix, LLC between January 1, 2016 to January 1, 2021, such as "FIFO" (first in, first out), "LIFO" (last in, first out), and the period of time during which each such methodology was used.

**Answer: Benlida has always used FIFO, and has applied current payments to past due invoices, thereby reducing the Circuitronix (US and HK) A/R from the earliest periods. Since prepayment commenced, however, the premiums added on to the purchases and the prepayment for the unshipped products have been applied to pay down past debt on a FIFO basis.**

2.   Explain in detail how the amount you claim in Paragraph 437 of the Third Amended Complaint that Circuitronix, LLC owes for "price increases" ($2,115,927.57) was calculated.

**Answer: Benlida and Circuitronix met on December 14, 2016. At the meeting, CTX agreed to pay increasing prices on shipments that started from March 2017. (The logic of calculation was fixed in the meeting minutes.) Until September 2019, BLD's calculation result is US$2,115,927.57. This calculation was set forth in a spread sheet sent by Tracy Huang to Rishi Kukreja, with amount of US$3,336,902.28. This number was brought down due to FIFO to US$2.11 million before litigation was commenced. VAT of CCL in Benlida records support this number.**

1

3.      Explain in detail how the amount you claim in Paragraph 437 of the Third Amended Complaint as "the invoiced amount" ($11,539,408.36) was calculated.

**Answer:**

Currency: USD

| | |
|---|---|
| Cutoff Date | May 31st, 2023 |
| Shipment Amount Through Cutoff Date | US$156,031,184.88 |
| Payment Amount Through Cutoff Date | US$140,303,257.65 |
| Debit notes BLD/ROK Confirm[1] | US$4,188,518.87 |
| **Balance Amount** | **US$11,539,408.36** |

**Per agreement, not recognized as payment for shipments is U$742,000 which is out of payment amount on above sheet.**

| ITEM | AMOUNT |
|---|---|
| BLD received OSP chemical payment | US$235,000.00 |
| ROK received OSP chemical payment | US$142,000.00 |
| BLD received Immersion tin investment payment | US$80,000.00 |
| ROK received Immersion tin investment payment | US$60,000.00 |
| BLD received fit up cost | US$25,000.00 |
| wire transfer by Tracy | US$200,000.00 |
| **TOTAL** | **US$742,000.00** |

4.      In Paragraph 443 of the Third Amended Complaint, you allege that "Circuitroinix failed to make full payment for such goods."  With respect to this allegation, identify any invoice as to which BLD alleges partial payment was received.

       **Answer: Through the end of May 2020, partial payment US$11,569.69 was received on INV# BLDCCT-HK181218001.**

---

[1] Benlida / ROK did not agree to all of the debit notes that Circuitronix sent. Lead time penalties and air freight claims were and are in dispute.

2

5.   State the key facts which, in your view, support your allegation in Paragraph 444 of the Third Amended Complaint that the "lead-time penalty" discussed was "unconsented-to," including the date, location and participants at any meeting and/or written communications evidencing your lack of consent to lead-time penalties.

**Answer: In an email sent by Tracy Huang to Rishi Kukreja on November 13/14, 2019, entitled "Lead Time Penalty for Benlida for May 2019 --Benlida feedback," Ms. Huang stated clearly that Benlida did not agree to the lead-time penalty amount claimed by Circuitronix. In the email Ms. Huang also included several attachments setting forth the parties' calculations / agreements for the period of September 2015 to October 2017.**

6.   To the extent you agree that you incurred any lead-time penalties as of the date that, as you allege in Paragraph 444 of the Third Amended Complaint, "Defendant Circuitronix alleged that … Benlida owed it a total of $6,561,044.21," state the amount of lead-time penalties that had accrued as of that date by your own calculations.

**Answer: Using the logic mentioned above, the amount of lead-time penalties that had accrued was US$1,133,106 as to the order period of February 2016 to May 2019.**

7.   With respect to your allegation in Paragraph 455 of the Third Amended Complaint that "Defendant Circuitronix has failed to remit payment of the debt although it has been in possession of the invoices," identify whether the allegation refers to <u>all</u> of the invoices in the Third Amended Complaint or, if a subset of the invoices, the paragraph numbers of the Third Amended Complaint that comprise that subset.

**Answer: Through the end of May 2020, and based upon the FIFO method set forth in answer to question 1, the invoices stated in the Third Amended Complaint remain unpaid.**

3

8.    Identify who served as the primary points of contact at Benlida and at Sinosure between those two companies, between January 1, 2016 and the present, concerning business with Circuitronix, LLC, and provide those individuals' mailing addresses, email addresses, and telephone numbers.  For the Benlida employees, state whether they are still employed with Benlida (or ROK Printed Circuit Co. Ltd.), and if not, provide their last known contact information.

**Answer: Benlida's main contact with Sinosure was Ms. Chen Zhanjiao, accounting@benlida.com, 86-750-3962065. Ms. Chen is still employed by Benlida.**

**Sinosure's main current contact with Benlida is Lyndon Liu （刘卓麟）, China Export & Credit Insurance Corportaion Guangdong Branch Indemnity & Collection Department, Collection Office, Vice Manager, Phone: 13533039891, liuzhuolin@sinosure.com.cn (Note: the prior Sinosure contact is no longer employed by Sinosure, and the address and other contact information for the former employee is unknown).**

9.    With respect to each contract or agreement that you had with Sinosure between January 1, 2016 to the present that applied or applies to your business with Circuitronix, LLC, identify the provision or provisions that you were relying upon when you insisted that Circuitronix, LLC make a 120% prepayment of the order value before you would release the orders.

**Answer: Please refer to email "2020.02.24回复_ 赔后溢价出货申请.eml".  Sinosure required minimum 10% premium of shipment amount.**

10.   Identify all communications you had with Sinosure between January 1, 2016 to the present in which you informed Sinosure that Circuitronix, LLC was indebted to you.

**Answer: (refer to September 18, 2019 email: "两厂自合作至2019.08应收CCT余额（扣款按所有扣款单金额）(2)(1).eml" Upon information and belief, all email communications between Benlida and Sinosure have been disclosed).**

11.     Identify all communications you had with any bank or other financial institution between January 1, 2016 to the present concerning the subject of any debt you owe or owed Circuitronix, LLC or any debt Circuitronix, LLC owed or owes you.

**Answer: Benlida does not include Sinosure in response to this question. While Benlida did report to banks and financial institutions debts generally owed to Benlida, it did not make any representations to any banks or financial institutions about Circuitronix's debts owed to Benlida.**

12.     Identify all communications involving Huang Xiangjiang, Tracy Huang, Huang Hanchao, Yukun Wu, or Chen Zhanjiao, that you had with any of the following companies between January 1, 2016 and the present and the subject-matters of the communications:

        a.  Shenzhen Kinwong Electronic Co., Ltd.;
        b.  Kinwong Electronic (Hong Kong) Co., Ltd.
        c.  Super Tech Circuit Board Co., Ltd.;
        d.  Winglung
        e.  Guangdong Kingshine

**Answer: There were no written communications with a-d, but there were oral communications with a, b, and e.  There were no direct communications, written or oral with c or d.**

**Topics of communications with a and b: They reached out to Benlida to speak about its own litigation with Circuitronix. Douglas Huang and Roger Wu met with them.**

**Topic of communications with e:  Mr. Huang met with them to discussion market conditions for PCBs.**

13.     Identify all communications you had with any Circuitronix Customer (as defined in § 1.5 of the Manufacturing Agreement) between January 1, 2016 and the present (April 23, 2022), with the exception of communications related to Customers' coordinated and Circuitronix-authorized site visits to Benlida's factory.

**Answer: None that Benlida can recall.**

14.     From the date of the earliest invoice identified in your Third Amended Complaint to July 1, 2020, state how much money Benlida was paid by Circuitronix, LLC and the start date you use for calculating the figure in your answer.

**Answer: Earliest date of invoice is Dec 18, 2018. From December 18 to 23, no payment received from Circuitronix US or Circuitronix HKG, so the earliest date of payment is December 24, 2018.**

| ITEM | PAYMENT AMOUNT | SHIPMENT AMOUNT | NOTE |
|---|---|---|---|
| CTX-US paid to BLD+ROK | US$12,240,285.87 | US$10,058,195.91 | Includes US$100,000 received on OSP chemical payment |
| CTX-HKG paid to BLD+ROK | US$2,756,127.94 | US$6,372,566.07 | |
| **TOTAL** | **US$14,996,413.81** | **US$16,430,761.98** | |

**Through the end of December 2018, Circuitronix owed Benlida US$10,486,885.95 as receivables, with US$5,792,229.02 overdue as of the end of December 2018.**

15.     For the payments you considered in your answer to Interrogatory No. 16, above, identify any communications from you to Circuitronix, LLC that explain how that money was credited by Benlida.

**Answer: During the above period, monthly statements were sent, and since February 2020, the statements have included the payments received during that month and the total amount of the receivable.**

6

16.     From January 1, 2016 to July 1, 2020, how much money was Benlida paid by Circuitronix, LLC?

**Answer:**

|  | PAYMENT AMOUNT | | SHIPMENT   AMOUNT | |
|---|---|---|---|---|
|  | BLD | ROK | BLD | ROK |
| CTX-US PAID | US$50,166,450.79 | US$21,466,823.05 | US$49,556,967.46 | US$17,972,275.97 |
| CTX-HKG PAID | US$17,039,336.45 | US$1,360,000.00 | US$26,106,620.62 | US$2,084,308.41 |
| TOTAL | US$67,205,787.24 | US$22,826,823.05 | US$75,663,588.08 | US$20,056,584.38 |
| **BLD+ROK TOTAL** | **US$90,032,610.29** | | **US$95,720,172.46** | |

**Through the end of December 2015, CTX owed BLD US$6,510,527.92 as receivables, with $282757.74 overdue as of the end of 2015**

**Note:**
**1) BLD payment amount includes OSP chemical payment US$235,000**
**2) ROK payment amount includes OSP chemical payment US$377,000 + wire transfer by Tracy Huang account US$200,000.**

17.     For the payments you considered in your answer to Interrogatory No. 16, above, identify any communications from you to Circuitronix, LLC that explain how that money was credited by Benlida.

**Answer: During above period, monthly statements were sent. For the months of January 2016 to December 2017, emails show the payments received, each month and the total amount of receivables. For the months of February 2020 to July 2020, emails show the payments received that month and the total amount of receivable.**

18.     Who at Benlida has been responsible for credit insurance between January 1, 2016 and the present?  Provide those individuals' mailing addresses, email addresses, and telephone numbers.

**Answer: See answer to question 8 above.**

7

19.    Identify all notices from the customs authority of China and tax department of China between January 1, 2016 and the present received by Benlida and/or ROK Printed Circuit Co. Ltd. stating that either company was in default.

**Answer: The tax refunds were withdrawn according to the regulations, but these actions were handled by the tax department, and there were no specific notifications or certifications for these actions.**

20.    For each claim Benlida made upon China Export & Credit Insurance Corporation (a/k/a Sinosure), between 2016 through 2021, for alleged losses arising from Benlida's business with Circuitronix, LLC, identify the amount of money Benlida sought.

**Answer: US$7.144 million.**

Dated: May 17, 2023
New York, New York

**MAZZOLA LINDSTROM LLP**
*Attorneys for Plaintiff Benlida*

By: */s/ Jean-Claude Mazzola*
Jean-Claude Mazzola
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
646.250.6666
jeanclaude@mazzolalindstrom.com

Service via email upon counsel for defendant Circuitronix LLC

8



# EXHIBIT L

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-60125-CIV-SCOLA/GOODMAN**

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD., *et al.*

Plaintiffs,                                                    **[corrected: May 24, 2023]**

v.

CIRCUITRONIX LLC,

Defendant,
_____/


# Benlida's Responses to Circuitronix's Interrogatories

1.      State the accounting methodology or methodologies you used for your business with
        Circuitronix, LLC between January 1, 2016 to January 1, 2021, such as "FIFO" (first in,
        first out), "LIFO" (last in, first out), and the period of time during which each such
        methodology was used.

        **Answer: Benlida has always used FIFO, and has applied current payments to past
        due invoices, thereby reducing the Circuitronix (US and HK) A/R from the earliest
        periods. Since prepayment commenced, however, the premiums added on to the
        purchases and the prepayment for the unshipped products have been applied to pay
        down past debt on a FIFO basis.**

2.      Explain in detail how the amount you claim in Paragraph 437 of the Third Amended
        Complaint that Circuitronix, LLC owes for "price increases" ($2,115,927.57) was
        calculated.

        **Answer: Benlida and Circuitronix met on December 14, 2016. At the meeting, CTX
        agreed to pay increasing prices on shipments that started from March 2017. (The
        logic of calculation was fixed in the meeting minutes.) Until September 2019, BLD's
        calculation result is US$2,115,927.57. This calculation was set forth in a spread sheet
        sent by Tracy Huang to Rishi Kukreja, with amount of US$3,336,902.28. This
        number was brought down due to FIFO to US$2.11 million before litigation was
        commenced. VAT of CCL in Benlida records support this number.**

1

3.    Explain in detail how the amount you claim in Paragraph 437 of the Third Amended Complaint as "the invoiced amount" ($11,539,408.36) was calculated.
**Answer:**

Currency: USD

| | |
|---|---|
| Cutoff Date | May 31st, 2020 |
| Shipment Amount Through Cutoff Date | US$156,031,184.88 |
| Payment Amount Through Cutoff Date | US$140,303,257.65 |
| Debit notes BLD/ROK Confirm[1] | US$4,188,518.87 |
| **Balance Amount** | **US$11,539,408.36** |

**Per agreement, not recognized as payment for shipments is U$742,000 which is out of payment amount on above sheet.**

| ITEM | AMOUNT |
|---|---|
| BLD received OSP chemical payment | US$235,000.00 |
| ROK received OSP chemical payment | US$142,000.00 |
| BLD received Immersion tin investment payment | US$80,000.00 |
| ROK received Immersion tin investment payment | US$60,000.00 |
| BLD received fit up cost | US$25,000.00 |
| wire transfer by Tracy | US$200,000.00 |
| **TOTAL** | **US$742,000.00** |

4.    In Paragraph 443 of the Third Amended Complaint, you allege that "Circuitroinix failed to make full payment for such goods."  With respect to this allegation, identify any invoice as to which BLD alleges partial payment was received.

**Answer: Through the end of May 2020, partial payment US$11,569.69 was received on INV# BLDCCT-HK181218001.**

---

[1] Benlida / ROK did not agree to all of the debit notes that Circuitronix sent. Lead time penalties and air freight claims were and are in dispute.

2

5.    State the key facts which, in your view, support your allegation in Paragraph 444 of the Third Amended Complaint that the "lead-time penalty" discussed was "unconsented-to," including the date, location and participants at any meeting and/or written communications evidencing your lack of consent to lead-time penalties.

**Answer: In an email sent by Tracy Huang to Rishi Kukreja on November 13/14, 2019, entitled "Lead Time Penalty for Benlida for May 2019 --Benlida feedback," Ms. Huang stated clearly that Benlida did not agree to the lead-time penalty amount claimed by Circuitronix. In the email Ms. Huang also included several attachments setting forth the parties' calculations / agreements for the period of September 2015 to October 2017.**

6.    To the extent you agree that you incurred any lead-time penalties as of the date that, as you allege in Paragraph 444 of the Third Amended Complaint, "Defendant Circuitronix alleged that … Benlida owed it a total of $6,561,044.21," state the amount of lead-time penalties that had accrued as of that date by your own calculations.

**Answer: Using the logic mentioned above, the amount of lead-time penalties that had accrued was US$1,133,106 as to the order period of February 2016 to May 2019.**

7.    With respect to your allegation in Paragraph 455 of the Third Amended Complaint that "Defendant Circuitronix has failed to remit payment of the debt although it has been in possession of the invoices," identify whether the allegation refers to <u>all</u> of the invoices in the Third Amended Complaint or, if a subset of the invoices, the paragraph numbers of the Third Amended Complaint that comprise that subset.

**Answer: Through the end of May 2020, and based upon the FIFO method set forth in answer to question 1, the invoices stated in the Third Amended Complaint remain unpaid.**

3

8.    Identify who served as the primary points of contact at Benlida and at Sinosure between those two companies, between January 1, 2016 and the present, concerning business with Circuitronix, LLC, and provide those individuals' mailing addresses, email addresses, and telephone numbers.  For the Benlida employees, state whether they are still employed with Benlida (or ROK Printed Circuit Co. Ltd.), and if not, provide their last known contact information.

**Answer: Benlida's main contact with Sinosure was Ms. Chen Zhanjiao, accounting@benlida.com, 86-750-3962065. Ms. Chen is still employed by Benlida.**

**Sinosure's main current contact with Benlida is Lyndon Liu （刘卓麟）, China Export & Credit Insurance Corportaion Guangdong Branch Indemnity & Collection Department, Collection Office, Vice Manager, Phone: 13533039891, liuzhuolin@sinosure.com.cn (Note: the prior Sinosure contact is no longer employed by Sinosure, and the address and other contact information for the former employee is unknown).**

9.    With respect to each contract or agreement that you had with Sinosure between January 1, 2016 to the present that applied or applies to your business with Circuitronix, LLC, identify the provision or provisions that you were relying upon when you insisted that Circuitronix, LLC make a 120% prepayment of the order value before you would release the orders.

**Answer: Please refer to email "2020.02.24回复_ 赔后溢价出货申请.eml".  Sinosure required minimum 10% premium of shipment amount.**

10.    Identify all communications you had with Sinosure between January 1, 2016 to the present in which you informed Sinosure that Circuitronix, LLC was indebted to you.

**Answer: (refer to September 18, 2019 email: "两厂自合作至 2019.08 应收 CCT 余额（扣款按所有扣款单金额）(2)(1).eml" Upon information and belief, all email communications between Benlida and Sinosure have been disclosed).**

4

11.    Identify all communications you had with any bank or other financial institution between January 1, 2016 to the present concerning the subject of any debt you owe or owed Circuitronix, LLC or any debt Circuitronix, LLC owed or owes you.

**Answer: Benlida does not include Sinosure in response to this question. While Benlida did report to banks and financial institutions debts generally owed to Benlida, it did not make any representations to any banks or financial institutions about Circuitronix's debts owed to Benlida.**

12.    Identify all communications involving Huang Xiangjiang, Tracy Huang, Huang Hanchao, Yukun Wu, or Chen Zhanjiao, that you had with any of the following companies between January 1, 2016 and the present and the subject-matters of the communications:

    a.   Shenzhen Kinwong Electronic Co., Ltd.;
    b.   Kinwong Electronic (Hong Kong) Co., Ltd.
    c.   Super Tech Circuit Board Co., Ltd.;
    d.   Winglung
    e.   Guangdong Kingshine

**Answer: There were no written communications with a-d, but there were oral communications with a, b, and e.  There were no direct communications, written or oral with c or d.**

**Topics of communications with a and b: They reached out to Benlida to speak about its own litigation with Circuitronix. Douglas Huang and Roger Wu met with them.**

**Topic of communications with e:  Mr. Huang met with them to discussion market conditions for PCBs.**

13.    Identify all communications you had with any Circuitronix Customer (as defined in § 1.5 of the Manufacturing Agreement) between January 1, 2016 and the present (April 23, 2022), with the exception of communications related to Customers' coordinated and Circuitronix-authorized site visits to Benlida's factory.

**Answer: None that Benlida can recall.**

14. From the date of the earliest invoice identified in your Third Amended Complaint to July 1, 2020, state how much money Benlida was paid by Circuitronix, LLC and the start date you use for calculating the figure in your answer.

**Answer: Earliest date of invoice is Dec 18, 2018. From December 18 to 23, no payment received from Circuitronix US or Circuitronix HKG, so the earliest date of payment is December 24, 2018.**

| ITEM | PAYMENT AMOUNT | SHIPMENT AMOUNT | NOTE |
|---|---|---|---|
| CTX-US paid to BLD+ROK | US$12,240,285.87 | US$10,058,195.91 | Includes US$100,000 received on OSP chemical payment |
| CTX-HKG paid to BLD+ROK | US$2,756,127.94 | US$6,372,566.07 | |
| **TOTAL** | **US$14,996,413.81** | **US$16,430,761.98** | |

**Through the end of December 2018, Circuitronix owed Benlida US$10,486,885.95 as receivables, with US$5,792,229.02 overdue as of the end of December 2018.**

15. For the payments you considered in your answer to Interrogatory No. 16, above, identify any communications from you to Circuitronix, LLC that explain how that money was credited by Benlida.

**Answer: During the above period, monthly statements were sent, and since February 2020, the statements have included the payments received during that month and the total amount of the receivable.**

16.   From January 1, 2016 to July 1, 2020, how much money was Benlida paid by Circuitronix, LLC?

**Answer:**

|  | PAYMENT AMOUNT | | SHIPMENT   AMOUNT | |
|---|---|---|---|---|
|  | BLD | ROK | BLD | ROK |
| CTX-US PAID | US$50,166,450.79 | US$21,466,823.05 | US$49,556,967.46 | US$17,972,275.97 |
| CTX-HKG PAID | US$17,039,336.45 | US$1,360,000.00 | US$26,106,620.62 | US$2,084,308.41 |
| TOTAL | US$67,205,787.24 | US$22,826,823.05 | US$75,663,588.08 | US$20,056,584.38 |
| **BLD+ROK TOTAL** | **US$90,032,610.29** | | **US$95,720,172.46** | |

**Through the end of December 2015, CTX owed BLD US$6,510,527.92 as receivables, with $282757.74 overdue as of the end of 2015**

**Note:**

**1) BLD payment amount includes OSP chemical payment US$235,000**

**2) ROK payment amount includes OSP chemical payment US$377,000 + wire transfer by Tracy Huang account US$200,000.**

17.   For the payments you considered in your answer to Interrogatory No. 16, above, identify any communications from you to Circuitronix, LLC that explain how that money was credited by Benlida.

**Answer: During above period, monthly statements were sent. For the months of January 2016 to December 2017, emails show the payments received, each month and the total amount of receivables. For the months of February 2020 to July 2020, emails show the payments received that month and the total amount of receivable.**

18.   Who at Benlida has been responsible for credit insurance between January 1, 2016 and the present?  Provide those individuals' mailing addresses, email addresses, and telephone numbers.

**Answer: See answer to question 8 above.**

7

19.    Identify all notices from the customs authority of China and tax department of China between January 1, 2016 and the present received by Benlida and/or ROK Printed Circuit Co. Ltd. stating that either company was in default.

**Answer: The tax refunds were withdrawn according to the regulations, but these actions were handled by the tax department, and there were no specific notifications or certifications for these actions.**

20.    For each claim Benlida made upon China Export & Credit Insurance Corporation (a/k/a Sinosure), between 2016 through 2021, for alleged losses arising from Benlida's business with Circuitronix, LLC, identify the amount of money Benlida sought.

**Answer: US$7.144 million.**

**I, Tracy Huang, state under penalty of perjury, pursuant to 28 U.S.C. 1746 this 24th day of May 2023, that the above responses to Circuitronix's interrogatories are true and correct.**

_____

                                                    **Tracy Huang**

Dated: May 24, 2023
       New York, New York

                                                    **MAZZOLA LINDSTROM LLP**
                                                    *Attorneys for Plaintiff Benlida*

                                                    By: /s/ *Jean-Claude Mazzola*
                                                    Jean-Claude Mazzola
                                                    1350 Avenue of the Americas, 2nd Floor
                                                    New York, NY 10019
                                                    646.250.6666
                                                    jeanclaude@mazzolalindstrom.com

Service via email upon counsel for defendant Circuitronix LLC