**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-60125-CIV-SCOLA/GOODMAN**

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

Plaintiff,

v.

CIRCUITRONIX LLC,

Defendant.
_____/

**DEFENDANT CIRCUITRONIX, LLC'S REPLY**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

        Stephen F. Rosenthal
        Florida Bar No. 0131458
        srosenthal@podhurst.com
        Matthew Weinshall
        Florida Bar No. 84783
        mweishall@podhurst.com
        Christina H. Martinez
        Florida Bar No. 1029432
        cmartinez@podhurst.com
        PODHURST ORSECK, P.A.
        One S.E. 3rd Avenue, Suite 2300
        Miami, Florida 33131
        Tel.: 305-358-2800
        www.podhust.com

        *Counsel for Circuitronix, LLC*

Benlida's scattershot response to CTX's summary-judgment motion is fatally light on legal argument and seems designed, instead, to toss out enough factual chaff to make it appear that there are *material* evidentiary disputes.[1] There are not. This reply cuts through that fog to spotlight multiple clear reasons why summary judgment remains appropriate, as a matter of law.

**I.  Summary Judgment Should Issue as to Claims Based on Invoices to CTX-HK**

Confronted with the operative complaint's failure to in articulate even a single theory by which CTX could be responsible for the debts of another company, Benlida responds with a spate of theories and a smattering of evidence, but almost total evasion of the thrust of the motion: that the TAC did not give notice of any of these theories. The law precludes Benlida from resorting to the reframing maneuvers it belatedly attempts to avoid summary judgment.

**A. Benlida Failed to Plead Facts Supporting Any Theory by Which CTX Could be Liable for CTX-HK's Debts**

Benlida does not dispute that "[t]he TAC does not articulate how CTX could be held liable for alleged debts of CTX-HK." Mot. (DE 184-1) at 7. It cannot because the TAC is *silent* on the subject. Instead, Benlida contends that the theories it *now* relies on were somehow encompassed within its threadbare pleading. Resp. (DE 188) at 11. That defense fails.

Benlida points to just two allegations in the TAC: the entirely generic allegation that CTX "'ordered circuit boards from [Benlida]'" and the allegation from Count II (account-stated) that CTX "'expressly agreed to pay the amounts specified in the invoices.'" Resp. at 11 (quoting TAC, ¶¶ 7, 448). Neither does the work necessary. The first allegation draws no connection to CTX-HK. It says "*defendant Circuitronix* ordered circuit boards from plaintiffs," meaning Circuitronix, LLC. TAC, caption & ¶¶ 5, 7 (emphasis added). Every single invoice Benlida claims was unpaid is alleged to have been "issued by plaintiffs [sic] *to Circuitronix*." *Id.* ¶¶ 13-431 (emphasis added); DE 184-2, ¶ 17; DE 177, ¶ 17. That includes invoices whose codes

---

[1] Three housekeeping items. **1.** This reply cites to the corrected version of CTX's Motion containing citations to ECF numbers of documents (DE 184-1) in compliance with the operative scheduling order (DE 153). That version is otherwise identical to the earlier version (DE 178), save for some pagination. **2.** The deadline for filing this reply is July 5. *In re: Court Closure on Monday, July 3, 2023*, Admin. Order 2023-26 (S.D. Fla. May 23, 2023); S.D. Fla. Local R. 5.1(f). **3.** Benlida's Statement of Material Facts ("SMF") (DE 189) contains no separately numbered "Additional Facts." S.D. Fla. Local R. 56.1(b)(2)(D). CTX should not be saddled with guessing which facts Benlida adduced should have been so listed, and is not, therefore, filing a reply statement of material facts. *See* S.D. Fla. Local R. 56.1(b)(2)(A).

contain the letters "HK" within them. *Id.*, ¶¶ 261-431. But those HK-designated invoices were *not* issued to CTX; it is uncontested that they were issued to *CTX-HK*. DE 184-2, ¶¶ 18-19; DE 177, ¶¶ 18-19. And as to the allegation in paragraph 448, the TAC gives no hint as to the *source* of the supposed "express[] agree[ment]" by CTX to pay the amounts in the invoices Benlida issued to its sister company, CTX-HK. A "Defendant cannot be tasked with defending itself by guesswork against such a catchall allegation." *Viamontes v. Scottsdale Ins. Co.*, No. 20-22532-CIV, 2020 WL 5981680, at *2 (S.D. Fla. Oct. 8, 2020) (Scola, J.) (citing *Herssein L. Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015)).

A complaint must do much more to give a defendant fair notice of the legal theory upon which a plaintiff relies. It must "give[] the defendant fair notice of … *the grounds* upon which [the claim] rests." *Winther v. U.S. Steel Corp.*, 852 F. App'x 482, 484 (11th Cir. 2021) (emphasis added). For breach of contract claims, a party must "identify a provision of the contract that was allegedly breached." *Security Nat'l Ins. Co. v. City of Miami Beach*, No. 22-22357-CIV, 2023 WL 3198066, at *2 (S.D. Fla. May 2, 2023) (Scola, J.) (citations omitted); *accord Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1331-32 (11th Cir. 2016). Likewise, a party asserting an agency theory must plead it. *MasTec Renewables Puerto Rico LLC v. Mammoth Energy*, No. 20-20263, 2020 WL 671823, at *6 (S.D. Fla. 2020) (Scola, J.). The party cannot raise it for the first time in opposition to summary judgment. *Dawsey v. Carnival Corp.*, No. 16-23939-CIV, 2018 WL 5251850, at *2 (S.D. Fla. Oct. 22, 2018).

In its Response, Benlida invokes an unpled agency theory predicated, variously, on a 2014 Business Authorization letter (Resp. at 6), the 2016 Letter Agreement (*id*. at 9), and the parties' "course of dealing" (*id*. at 10), none of which are mentioned or even reasonably alluded to in the TAC.[2] Nothing in the TAC gave CTX notice that Benlida intended to rely on an agency theory to try to hold CTX liable for invoices Benlida issued to CTX-HK.

---

[2] *Capten Trading Ltd. v. Banco Santander International*, No. 17-20264, 2017 WL 7311878, at *2 n.1 (S.D. Fla. Nov. 9, 2017), is unavailing as it merely supports that a plaintiff did not need to attach a contract to a complaint in order to state a claim for breach of that contract, *id.*, and does not address the itemization required in order to provide notice to an opposing party for a claim of account stated, *see* Resp. at 17. Nor does *Haynes v. Carnival Corp.*, No. 20-21921, 2020 WL 7711642, *2 (S.D. Fla. Dec. 29, 2020) (Resp. at 18) support Benlida's argument that it adequately pled the basis for its claims of nonpayment of invoices to CTX. *Haynes* merely rejected an argument that a complaint's allegation that a cruise line had notice of a dangerous

Benlida cannot backfill the void in its complaint with the fact that it argued agency in an earlier motion paper that invoked the 2014 Business Authorization letter. Resp. at 4 n.4; *see* DE 28 at 5. In that earlier motion practice, CTX sought dismissal of the TAC on the basis that CTX-HK was an indispensable party. DE 27 at 13-15; DE 30 at 2-3, 8-11. The Court rejected CTX's motion in part because the Court refused to take the 2014 letter into consideration because it was nowhere to be found in the TAC. The Court observed that it "ha[d] carefully reviewed the complaint and notes *no mention* of this agreement within the complaint's 457 paragraphs *and certainly no mention of how this agreement would affect Benlida's claim to amounts due on the hundreds of listed invoices*." Order on Mot. to Dismiss (DE 31) at 4 (emphasis added). The inscrutability of the TAC allowed Benlida to skirt dismissal; now it must preclude Benlida from conjuring non-existent hallucinatory allegations to evade summary judgment.

Benlida also emphasizes that the TAC sues for payment on products it "***lists as invoiced to CTX-HK***," (Resp. at 11)—by which it really means the TAC listed invoice codes containing the letters "HK" (since it actually alleges those invoices were "issued to" *CTX*, when they weren't, and doesn't mention CTX-HK at all, *see* TAC, ¶¶ 261-431). Regardless, the mere reference to such invoices does nothing to alert CTX to the alleged *theory* of legal responsibility for payment of those invoices to CTX-HK. As this Court has explained, "the reference to an invoice does not put the Defendant (much less the Court) on notice as to the nature of the precise dispute between the parties. It also gives no notice as to the legal theories to which the Defendant must respond." *Raven Env't Restoration Servs., LLC v. United Nat'l Ins. Co.*, No. 20-23060-CIV, 2020 WL 5292049, at *2 (S.D. Fla. Sept. 3, 2020) (Scola, J.). That's especially so where the invoice was issued to a separate, unmentioned company.[3]

In short, because the TAC "provide[s] no notice whatsoever" of an agency theory, *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006), nor any

---

condition lacked "any factual support or basis" because the complaint "specifically describ[ed]" the dangerous condition and expressly alleged repeated instances of actual notice. *Id*.

[3] Invoking a state-law pleading case, Benlida claims its inclusion of CTX-HK invoices sufficed to allege that CTX "is being asked to be responsible for another [company]." Resp. at 18 (citing *6-F Corp. v. BDP Int'l Fin. Corp.*, 29 So. 3d 352 (Fla. Dist. Ct. App. 2010)). That case does not even stand for that proposition. It merely examined which of multiple defendants a poorly worded civil theft count was asserted against, holding the claim was "clear[ly]" directed at all defendants. Benlida's TAC involves an entirely different shortcoming.

"factual allegations that could possibly be construed" as advancing an agency theory, *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 (11th Cir. 2012), Benlida cannot resort to it at summary judgment. The principle from those cases animated the Court's decision in *Berene v. Nationstar Mortgage LLC*, No. CV 14-61153-CIV, 2016 WL 3787558, at *3 (S.D. Fla. June 15, 2016) (Scola, J.). Benlida tries to distinguish *Berene* on its facts (Resp. at 11), but it is the principle that forecloses Benlida's agency defense at this juncture.

That principle also precludes Benlida's apparent reliance on an *alter ego* theory which it raises by arguing CTX and CTX-HK "functioned as one and the same company." Resp. at 4; *id.* at 7-10. But this Court has held that a party seeking to make one corporate entity responsible for the acts or debts of an affiliated entity must both *plead* and prove the elements of alter-ego liability. *See, e.g.*, *United States ex rel. Lewis v. Cmty. Health Sys., Inc.*, No. 18-20394-CIV, 2020 WL 3103994, at *20 (S.D. Fla. June 11, 2020) (Scola, J.); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1119-20 (Fla. 1984). And Benlida does not even try to link this theory, or any of its elements, to any language in the TAC. The failure to have pled each of the elements of alter ego liability precludes Benlida's reliance on that theory now. *Cf. MasTec*, 2020 WL 671823, at *5 (granting motion to dismiss because no alleged facts showed that one corporation "itself engaged in actual improper conduct through either its organization or use of [the other corporation]," despite allegations "showing the lines between the two corporations were certainly blurred").

### B. Even If Benlida's Unpled Theories of Liability Were Proper to Consider, Summary Judgment Would Still Be Appropriate on the Invoices to CTX-HK

Under Benlida's unpled agency theory relying on the 2014 Business Authorization letter, none of the factual disputes Benlida raises concerning the meaning of that document (Resp. at 6-7) would preclude entry of summary judgment on the claims based on the invoices to CTX-HK. That is because the unambiguous merger provision of the 2016 Letter Agreement—"supersed[ing] any and all prior agreements or between understandings between CTX USA and [Benlida]" (DE 177-2, ¶ 6)—supplanted the understanding reached in 2014 Business Authorization, regardless of its scope. Mot. at 9-10. Benlida says nothing about this merger provision. Resp. at 12-13.[4] That omission speaks volumes.

---

[4] Benlida leapfrogs, instead, onto the line in the 2016 agreement stating that "'CTX USA has agreed to continue to make payments to [Benlida],'" as though it said those payments are "for goods ordered by CTX-HK." Resp. at 13 (quoting DE 177-2 at 1). It does not. This new

4

Benlida also argues that since it had a reasonable basis to "believe" or "understand" that CTX was using CTX-HK as its agent, then summary judgment on the claims involving invoices to CTX-HK is inappropriate. *See* Resp. at 5, 9, 10. But Benlida's perception is legally irrelevant to an "actual agency,'" which turns on the actual relationship between CTX and CTX-HK. *Id*. at 5 (quoting *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990)).[5]

Benlida's hesitating invocation of an alter ego theory suffers from a similar flaw. Benlida's Response attempts to address the first element for establishing alter ego liability—that CTX so controlled CTX-HK as to render it a "mere instrumentality" with no separate corporate existence, *see* Resp. at 8-10; but it is bereft of evidentiary support as to the second element—that either CTX or CTX-HK were pursuing any improper purpose. *See MasTec*, 2020 WL 671823, at *5 (granting in part motion to dismiss based on insufficient allegations of improper conduct). Benlida has therefore presented no issue of fact on this element. Even if the Court decided to proceed with consideration of whether the corporate lines between CTX and CTX-HK were so blurred that the corporate veil should be pierced, such a finding is "rare." *BluestarExpo, Inc. v. Enis*, No. CV 21-20875-CIV, 2022 WL 4381120, at *3 (S.D. Fla. Sept. 22, 2022) (Scola, J.). And Benlida's references to corporate features of the companies (Resp. at 7-10), do not set forth a basis from which the Court could infer that CTX-HK "actually had no existence apart from" CTX. *BluestarExpo*, 2022 WL 4381120, at *3-4 (granting summary judgment for defendants on veil-piercing); *Lobegeiger v. Celebrity Cruises, Inc.*, 869 F. Supp. 2d 1350, 1354-55 (S.D. Fla. 2012) (granting summary judgment for defendant on finding plaintiff had not set forth sufficient facts to show dominion and control for veil-piercing).

---

argument doesn't just go beyond the TAC, it ignores Benlida's witnesses' testimony that what authorized Benlida to combine CTX and CTX-HK's accounts was the 2014 letter. *See* DE 177-4 (Tracy Huang Dep.) at 247:8-249:24; DE 192-4 (Roger Wu Dep.) at 190:22-192:7; DE 192-5 (Huang (Douglas) Hanchao Dep.) at 272:20-275:13.

[5] Benlida's reasonable perception would be relevant to an *apparent* agency theory, and although Benlida confusingly cites a case mentioning that theory in the course of discussing the elements of actual agency, Resp. at 6 (citing *Tampa Sand & Mat. Co. v. Davis*, 125 So. 2d 126, 127 (Fla. Dist. Ct. App. 1960)), Benlida has not even *argued* that it could satisfy either of the other two elements of apparent agency: that it "relied on" a representation from CTX that CTX-BLD was its agent and that Benlida "changed position in reliance upon the representation and suffered detriment," *Almerico v. RLI Ins. Co.*, 716 So. 2d 774, 777 (Fla. 1998).

## II. Summary Judgment Should Issue on the Claims Based on the Invoices to CTX

As to these claims, Benlida fails to show why summary judgment is not appropriate.

### A. Benlida Has Not Justified Its Failure to Have Pled the Commingled Accounting Theory Which Animates Its Claims of Nonpayment

Nothing in the TAC gave CTX notice that Benlida was relying upon an undisclosed commingled-FIFO accounting practice as the basis for its claims that the listed invoices to CTX remained unpaid. *See* Mot. at 12-13. Benlida now relies on that practice in opposition to this motion for summary judgment. Resp. at 13-16. Benlida contends it sufficed that the TAC "gave … notice that it was seeking from CTX-US payment for goods ordered by CTX-HK." *Id*. at 18 (citing TAC, ¶¶ 7-8). It also asserts it "adequately alleged the elements of the cause of action of account stated[.]" *Id*. at 17 (citing TAC, ¶¶ 451-57). But the mere fact that Benlida sued CTX for invoices Benlida had issued to CTX-HK gives no inkling as to *how* Benlida was claiming the 249 invoices it issued *to CTX* remained unpaid. *See* TAC, ¶¶ 13-260. Benlida requires some legal theory to bridge that gap between corporations, and its response to this motion finally flushed out those unpled theories.

Similarly, the bare allegations of the account-stated claim that Benlida cites did not afford CTX any notice that Benlida, as it argues, "was seeking recovery for *a* balance due on *a* running account." Resp. at 17 (citing TAC, ¶¶ 451-57; emphasis added). Benlida uses the indefinite article because—as CTX only discovered two weeks before the dispositive-motion deadline[6]—Benlida secretly utilized a single "commingled" account for the accounts receivable for both CTX and CTX-HK. *See* DE 177-4 (Tracy Huang Dep.) at 248:11-22; 249:6-18. The complaint gives no hint whatsoever that Benlida followed such an unorthodox practice, let alone that it was *the* reason animating the claim that invoices to CTX allegedly remained unpaid. To the contrary, the complaint alleges vaguely "the accounts stated" are "the invoices." TAC, ¶ 450. The invoices, in turn, reflect "the debt" Benlida is suing upon. *Id*., ¶ 455. An account stated claim requires "agreement between the parties that *a certain balance* [was] correct and due and an express ... promise to pay *this balance*." *AT&T Corp. v. Next Commc'ns, Inc.*, No. 15-cv-23699, 2016 WL 6962873, at *4 (S.D. Fla. Nov. 29, 2016) (Resp. at 17; emphasis added). All the TAC communicates about the account and balance is what it says: that Benlida is alleging that CTX

---

[6] CTX first discovered Benlida's commingled-FIFO methodology during a deposition on May 24, 2023. *See* DE 192-4 (Wu Dep.) at 184:23-185:3, 189:17-20, 193:4-7.

has not paid the listed invoices Benlida sent *to CTX* for sales of products *to CTX*. CTX is entitled to move for summary judgment by showing, as it has, that there is no dispute of fact that CTX has paid *more* than the sum of those invoices Benlida claims remain unpaid. *See* Mot. at 11. This fact is undisputed. DE 184-2 (CTX SMF), ¶¶ 21-22; DE 178 (Benlida SMF), ¶¶ 21-22. The bare-bones allegations in the TAC give no indication that the debt Benlida apparently meant to refer to was that which secretly appeared in its own internal books by virtue of its undisclosed application of payments from CTX, earmarked for its own debts, to (unspecified) debts of CTX-HK.

Having failed in its complaint to give CTX fair notice of the basis upon which its claims stand, Benlida cannot trot out that basis for the first time to try to evade summary judgment. *See, e.g.*, *Hurlbert*, 439 F.3d at 1297.

### B. Benlida Should Be Barred From Relying on a Commingled-FIFO Methodology As a Sanction

Benlida mounts little response to this argument. *Compare* Mot. at 13-15, *with* Resp. at 16-19. Benlida cannot and does not dispute that it never made any Rule 26(a)(1) or (e)(1) disclosure informing CTX of the commingled-FIFO accounting methodology underpinning its claims.[7] Benlida claims that it did not have to do so because the complaint provided a sufficient "breakdown" of the invoice amounts "with the only methodology being simple math[.]" Resp. at 17. Besides ignoring Rule 26, this contention is manifestly untrue, since to figure out how Benlida is claiming the CTX invoices remain unpaid, one must understand how and where Benlida *applied* the millions of dollars CTX paid Benlida earmarked for those very invoices.

Benlida's delay in disclosing this essential information until days before the discovery and dispositive-motion deadlines has deprived CTX of the tools of discovery to unearth those important details.[8] Lacking any justification for its inaction, Benlida tries to shift the blame to

---

[7] *See also* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring not only a "computation" of damages but also disclosure of documents "on which each computation is based"). Benlida did not even produce its accounts receivable ledger until May 25, 2023, after CTX unearthed its existence during a deposition on May 24, 2023. *See* DE 177-1 (Martinez Decl.), ¶ 5. Benlida was obligated to produce it long before under Rule 26(a)(1)(A)(iii) as well as in response to a request for production dating back to 2021. *See* DE 192-1 (Rosenthal Decl.), ¶ 3 & Ex. B (DE 192-3).

[8] The Court has discretion to impose a sanction under Rule 37 even if it does not find Benlida's omission to have been unjustified or harmful. *See Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co., Ltd.*, 993 F.3d 1299, 1308 (11th Cir. 2021).

CTX, claiming that CTX "delay[ed]" in "propound[ing] *proper* interrogatories." Resp. at 19. This retort ignores Rule 26's self-implementing force and is also fundamentally misleading.[9]

### C. Florida Law Prohibits Benlida From Disregarding CTX's Instructions How to Apply Its Payments

On the merits, Benlida cannot evade summary judgment as to claims relating to the invoices issued to CTX by relying on its commingled-FIFO methodology. Benlida relies on the general principle in Florida law that a creditor may, absent a contractual provision to the contrary or instruction from the debtor as to how it wants its payment applied, allocate the money to debts as the creditor sees fit. Resp. at 13-15 (citing *Randall v. Pettes*, 12 Fla. 517, 535 (1868)). This general principle does not apply to the circumstances here for two reasons.

*First*, the principle applies to a bilateral situation involving one debtor and one creditor; it is a total mismatch for Benlida's admitted conduct of applying CTX's payments to debts owed by CTX and CTX-HK. As Florida's Third District Court of Appeal recently observed, the general principle "stand[s] for the proposition that *if a single debtor* did not specify how funds were to be applied, then the creditor was free to apply the funds to whichever of the debtor's multiple debts … is desired." *Urrea v. Koplow*, 359 So. 3d 1212, 1215 (Fla. Dist. Ct. App. 2023) (emphasis added). Based on that principle, the trial court in *Urrea* had permitted a creditor to apply a payment without allocation instructions from one debtor (Ms. Urrea) to the older debt of another debtor (her company). *Id.* at 1215. The court of appeal reversed because

> [i]n all of these cases [that establish the general principle], the *single debtor* had multiple debts or judgments against him or her. Conversely, the instant case involves two separate judgments and *two separate debtors* … Therefore, because the case law that the trial court relied upon is *inapplicable* to the facts of this case, the trial court erred[.]

---

[9] CTX actually served interrogatories back on April 23, 2022 (fully a year earlier than Benlida makes it sound) seeking to ascertain Benlida's accounting methodology and specifics about how and when it had applied CTX's payments. *See* DE 192-1 (Rosenthal Decl.), ¶¶ 2(a), (c); *e.g.*, DE 185-1 (Interrog. Nos. 1, 5(b), 8(c)). Citing a numerosity objection, Benlida refused to answer any interrogatories, even though these would not have even been affected by that objection. *See* DE 185-2; Rosenthal Decl., ¶ 2(c). The parties' settlement and resulting stay of the case obviated the need to seek resolution of this dispute. Rosenthal Decl., ¶¶ 2(d)-(f). When the stay was lifted in April 2023, CTX promptly revisited the issue with Benlida's counsel, who requested that CTX "re-propound" the interrogatories in revised format. *Id.* ¶¶ 2(g)-(j) & Ex. A (DE 192-2). That is the set of interrogatories Benlida refers to, ignoring this history.

*Id*. at 1215 (emphasis added). The general principle Benlida invokes is equally "inapplicable" to Benlida's admitted reliance on a commingled-FIFO payment application methodology, whereby it applied CTX's payments to pay CTX-HK's debts in a "combined" accounts receivable book. *See* DE 189 (Benlida SMF), ¶ 26; DE 184-2 (CTX SMF), ¶ 27.

Florida law did not license Benlida to apply CTX's payments to the debts of any company other than CTX. *Urrea*, 359 So. 3d at 1215. It is undisputed that CTX paid Benlida more than the face value of Benlida's invoices to CTX, including all the invoices to CTX listed in the TAC (DE 184-2 (CTX SMF), ¶¶ 20-22; DE 189 (Benlida SMF), ¶¶ 20-22), so CTX is entitled to summary judgment on Benlida's claims that those invoices remain unpaid.

*Second*, even if the general principle Benlida seeks to rely on were somehow applicable, Benlida ignores that Florida law does *not* insist that a debtor provide payment instructions simultaneously with its payment to maintain control of how its money gets allocated. *See* Resp. at 14-15 (arguing CTX had to provide instruction "at the time of payment," quoting *Pettes*, 12 Fla. at 534). Florida law is more flexible: absent "a contract fixing the mode of application of payment," a debtor only needs to convey instructions "with reasonable promptness after payment." *Ott v. Bray*, 154 So. 209, 210 (Fla. 1934). In *Ott*, a creditor applied a payment from the debtors to reduce the principle of a mortgage rather than covering scheduled payments due, such that it declared the debtors in default. *Id*. The debtors had sent instructions to apply it to scheduled mortgage payments "fifteen days after the money was actually delivered," but the creditor "ignored" that direction. *Id*. The Florida Supreme Court held that "under the circumstances … the [debtors] had the right to direct and insist upon the application according to their directions" because equity requires that so long as a creditor is not prejudiced, a payment "should be applied in such mode as will be least onerous to the debtor," particularly "where the request for a particular application has been made with *reasonable promptness* after payment[.]" *Id*. (emphasis added). Thus, the test is "reasonable promptness." *Id*.

Benlida has not created any disputed issue of fact that would justify it having disregarded CTX's reasonably prompt payment instructions. The parties' Manufacturing Agreement specified "payment terms of AMS 60 days from the date of the invoice." DE 177-1, § 4.1. AMS means "after monthly statement," DE 185-8 (Kukreja Dep.) at 72:10-13, and Benlida's monthly statements to CTX listed invoices sent that month, *see* DE 186-11. It is undisputed that, pursuant to the Manufacturing Agreement, CTX's payment for shipments was due anywhere from 60 to

9

90 days from the date Benlida shipped the products. DE 192-6 (Tracy Huang Dep.) at 36:9-37:7; DE 185-8 (Kukreja Dep.) at 72:5-19. It also is undisputed that CTX regularly transmitted payment details to Benlida, which directed how its wire payments should be applied to listed invoices to CTX from the prior three-month period.[10]

Particularly as informed by the contractual AMS 60-day payment period, which amounted to roughly quarterly deadlines, CTX's instructions through its payment details were conveyed with "reasonable promptness." *Ott*, 154 So. at 210; *see* § 671.204, Fla. Stat. To be sure, CTX wired payments to Benlida on an ongoing basis, often before the quarterly payment details for the period were compiled and transmitted. Resp. at 14-15. But it is not as though Benlida was unaware that CTX would eventually be sending its allocation instructions through the payment detail for that period. Benlida's Sales Director and main point of contact with CTX, Tracy Huang, admitted that she understood that CTX was conveying its allocation instructions through its payment details. DE 189 (Benlida SMF), ¶ 24; DE 184-2 (CTX SMF), ¶ 24.

Yet Ms. Huang deliberately disregarded CTX's instruction. Benlida's bookkeeper, Ms. Chen, testified that if a wire payment came in without specifying an invoice, her practice was to ask the Sales Department "which invoice the amount is for" (DE 185-7 (Chen Dep.) at 168:14-19)—*not*, as Benlida misleadingly argues, simply to "attribute[] [it] to the oldest invoices." Resp. at 16. The Sales Department, headed by Tracy Huang, instructed Ms. Chen to attribute CTX's payments on a commingled-FIFO basis, even though Ms. Huang was fully aware that doing so was contrary to CTX's instructions and that Benlida was not telling CTX it was disregarding its payment instructions. DE 185-7 (Chen Dep.) at 168:20-23; DE 192-4 (Wu Dep.) at 186:4-15; DE 177-4 (Tracy Huang Dep.) at 253:6-254:13; 326:5-327:6; DE 184-2, ¶ 25; DE 189, ¶ 25.[11] She could have told Ms. Chen to await CTX's forthcoming instructions, but did not.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in CTX's favor.

---

[10] *See* DE 184-2 (CTX SMF), ¶ 23; DE 189 (Benlida SMF), ¶ 23 (failing to dispute regular transmission); *see also* DE 177-6 at 6 (payment detail); DE 185-7 at 29-60 (payment details).

[11] Benlida contends its monthly statements should have placed CTX on notice that Benlida was using a single commingled "running account." Resp. at 15; DE 186 (Huang Decl.), ¶ 24. Even assuming those vague documents could have done so, they were not responsive to CTX's payment details, which came after them.

Dated: July 5, 2023	Respectfully submitted,

/s/  *Stephen F. Rosenthal*
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew Weinshall
Florida Bar No. 84783
mweishall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800
www.podhust.com

*Counsel for Circuitronix, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on July 5, 2023 as filed with the Clerk of the Court using CM/ECF.

By:  /s/ *Stephen F. Rosenthal*
Stephen F. Rosenthal