**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-60125-CIV-Scola/Goodman**

———————————————————————

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

                   Plaintiff,

v.

CIRCUITRONIX, LLC,

                   Defendant.

———————————————————————

**Plaintiff Jiangmen Benlida Printed Circuit Co., Ltd.'s**
**Motion *in Limine* (a) to Preclude Expert on Chinese Law and**
**Testimony Related Thereto; and (b) to Preclude Testimony**
**Regarding Trade-Credit Insurance**

**MAZZOLA LINDSTROM LLP**
Jean-Claude Mazzola
*Counsel for Jiangmen Benlida Printed*
*Circuit Co., Ltd.*
1350 Avenue of the Americas, Second Floor
New York, New York 10019
646.250.6666
jeanclaude@mazzolalindstrom.com

August 8, 2023

1

Plaintiff Benlida, by and through its undersigned counsel and pursuant to the applicable Federal Rules of Evidence, including FRE 401, 402, 403, and 608, and the Federal Rules of Civil Procedure, along with this Court's Scheduling Order [DE 153] and Southern District Local Rule 7.1(a)(3), hereby files its motion *in limine*, and in support thereof states as follows:

**Point I:     Circuitronix's Expert on Chinese Law, and Testimony**
**Regarding Compliance with Tax, Customs, and Trade-Credit**
**Regulations Should be Precluded.**

It is anticipated that defendant Circuitronix will seek to introduce at trial testimony concerning Benlida's obligations with respect to, and Benlida's compliance *vel non* with, Chinese foreign exchange and customs regulations, and its trade-credit reporting obligations. Such testimony, and argument predicated thereon, has no bearing on the matters at issue in this case, and would unduly complicate the case, to the prejudice of plaintiff Benlida.

Defendant Circuitronix has disclosed as a proposed expert Professor Wei Cui, whose inconclusive report (exhibit "A" hereto), opines that there *may have been* sanctionable conduct by Benlida with respect to its obligations under Chinese foreign exchange and customs regulations, and trade-credit reporting obligations. The proposed expert would, apparently, opine as to the Chinese regulatory consequences of payments by CTX-US and CTX-HK to Benlida's affiliate ROK. Such testimony, however, has no bearing upon any element of any claim or defense in this lawsuit.

In this action, as the Court is aware, plaintiff Benlida seeks recovery for non-payment of invoices for goods purchased by CTX-US, or by CTX-HK for CTX-US, as alleged in Benlida's third amended complaint. (DE 26). For its part, CTX-US asserts in its answer (DE 34), *inter alia*, that it has paid for the goods that were purchased, and that it is entitled to offsets due to non-compliance with contractual terms by Benlida.

In sum, the issues to be decided by the jury in this case will be: Did Circuitronix fail to make payment to Benlida for circuit boards that it purchased directly from Benlida, and that were purchased on its behalf by its Hong Kong affiliate CTX-HK, from Benlida? If so, how much does Circuitronix owe? And is Circuitronix entitled to offsets? Whether Benlida did or did not comply with Chinese foreign exchange and customs regulations and trade-credit reporting obligations has no bearing on whether Circuitronix or Benlida contractually owe each other money. It is not an issue that will be tried, and such testimony could only be offered for an improper purpose – to collaterally attack Benlida's credibility.

The anticipated testimony must be precluded, as it is well established that an expert witness may not present testimony regarding such collateral issues. See *United States v. Herzberg*, 558 F.2d 1219, 1223 (5th Cir. 1977) ("Prior wrongful acts not resulting in a criminal conviction ordinarily are 'collateral matters'."). Here, there is no evidence of any criminal conviction of plaintiff Benlida, nor is there any evidence that the Chinese government has even tried to sanction it.

In *Torres v. Rock & River Food, Inc.*, 2016 U.S. Dist. LEXIS 190559 (S.D. Fla. Docket No. 15-cv-22882, May 11, 2023) (Scola, J.),[1] Your Honor held that a plaintiff who had brought suit against his employer for FLSA violations could not be questioned at trial about his failure to pay taxes on his income, because:

1. "Here, the 'Plaintiff's wrongdoing—failing to pay federal income taxes on wages already earned—is in no way connected with the Defendants' alleged failure to properly compensate Plaintiff.' *Solano v. A Navas Party Produc., Inc.*, 728 F. Supp. 2d 1334, 1339-40 (S.D. Fla. 2010) (Altonaga, J.)" *Id.* at *5.

2. "'[W]hile such evidence might speak to the Plaintiffs' credibility, the dangers of unfair prejudice, confusion of the issues, and misleading of the jury are too

---

[1] See also *Puerto v. Moreno*, 2021 U.S. Dist. LEXIS 123081 (S.D. Fla. Docket No. 19-cv-25282) (Scola, J.)

great.' *Galdames v. N&D Inv. Corp.*, 2010 U.S. Dist. LEXIS 43022, 2010 WL 1330000, at *4-5 (S.D. Fla. March 29, 2010) (Cooke, J.)" *Id.* at *7.

3. "In this case, the Court is not faced with a plaintiff who *falsified* tax returns or was convicted of tax fraud or tax evasion. Although the Court does not condone the Plaintiff's actions, his failure to pay income taxes has only minor probative value to his character for truthfulness. That probative value, however, is substantially outweighed by confusion of the issues and misleading the jury." *Id.* at *7.

4. "('[G]iven the facts of this case as a whole, the undersigned concludes that Defendants shall be precluded from suggesting that Plaintiffs failed to pay income taxes because such evidence will likely create undue prejudice in the minds of the jurors; and, *it will likely give rise to collateral disputes—including the extent of Plaintiffs' reporting obligations regarding such taxes—that will cause undue delay and confusion of the issues.*') (emphasis added); *Galdames*, 2010 U.S. Dist. LEXIS 43022, 2010 WL 1330000, at *4-5 ('[E]vidence of the Plaintiffs' alleged failure to file federal tax returns—to challenge the Plaintiffs' credibility—would give rise to collateral disputes about whether the Defendants knowingly hired undocumented aliens as employees in contravention of federal law, and whether the Defendant deducted the proper amount of payroll taxes from its tax returns.')." *Id.* at *8.

Here, as the report of Professor Cui shows, Circuitronix's strategy is to convey to the jury that Benlida "may be sanctionable [sic] for violations of the Exporter-Payee Identity Principle, when it instructed amounts due BLD to be paid to ROK" (Ex. A, p. 1), and also to show that Benlida "may be sanctionable [sic] for violations of the Trade Credit Reporting Requirement…." (Ex. A, p. 2). But such testimony would not have any tendency to make any fact of consequence in resolving this action more or less probable than it would be without the evidence (see FRE 401), as it would have no bearing on whether Circuitronix did or did not pay money that was owed, or whether it is entitled to any offset due to Benlida's alleged failure to comply with any contractual obligations. Assume for sake of analysis that Benlida violated both of the Chinese regulatory principles: Even assuming that, Circuitronix's debt to Benlida would not decrease by a single penny, nor would Circuitronix gain the right to a single penny of offset.

Moreover, the parties agreed that Florida law shall be the governing law for the resolution of this lawsuit. The 2012 contract between Benlida and Circuitronix, which governs this dispute, provides: "**13.4 Governing Law; Venue.** This Agreement shall be governed by and

construed in accordance with the laws of the State of Florida, excluding its conflict of laws

provisions thereof." (See DE 15-1). The subsequent 2016 letter agreement, signed by Benlida

and Circuitronix, also contains a Florida choice-of-law provision. (See DE 15-2). "5. This

Agreement shall be governed by and construed in accordance with the laws of the State of

Florida or, at the option of CTX USA, the laws of any jurisdiction in which CTX USA

commences any suit, action or proceedings relating to this Agreement ("Proceedings") (other

than such jurisdiction's rules of conflicts of laws to the extent that the laws of another jurisdiction

would be required thereby)."

      Yet the report of the professor would bring into the case a sideshow about the regulatory

law of China, as Professor Cui postulates (Ex. A, p. 2):

> It should be noted that it is not clear whether Chinese government authorities
> would sanction BLD's violations of the Exporter-Payee Identity Principle and the
> Trade Credit Reporting Requirement *per se*. Any government sanction may
> depend on whether such violations lead to other consequences that the
> government deems undesirable or sanctionable.
>
>         ***
>
> [F]urther examination may also reveal other Chinese legal rules and regulatory
> practices that BLD's conduct may be in violation of. This report does not address
> such other issues.
>
>         ***
>
> This report merely identifies some features of the Chinese regulatory framework
> in light of which BLD's conduct may be assessed. In view of the outstanding
> nature of the Discovery Materials, I am unable to reach any conclusions regarding
> BLD's compliance (or lack thereof) with such framework. Nor does this report
> purport to identify all features of Chinese regulations that may be implicated by
> the dispute between BLD and CTX.

      This is to say, Professor Cui has drawn no conclusion that Benlida would be subject to

any penalties in China, and yet he would be presented at trial to show off his academic expertise

about Chinese regulatory law – even though such law has no bearing on whether Circuitronix

owes or does not owe any money to Benlida, and even though the parties agreed that Florida law

would govern this case. Rather, Professor Cui would merely pontificate about whether Chinese regulatory authorities would sanction Benlida.

"The law is well settled that it is improper to litigate purely collateral matters solely for the purpose of impeaching a party or witness." *General Motors Corp. v. McGee*, 837 So.2d 1010, 1036 (Fla. 4th DCA 2002) (citation omitted). Inadmissible collateral evidence is "neither (1) relevant to prove an independent fact or issue nor (2) would discredit a witness by establishing bias, corruption, or lack of competency on the part of the witness." *Strasser v. Yalamanchi*, 783 So.2d 1087, 1095 (Fla. 4th DCA 2001) (citation omitted). Moreover, FRE 608(b) prohibits the use of extrinsic evidence to "prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Questioning plaintiff Benlida's witnesses on whether or not it complied with Chinese foreign exchange and customs regulations and trade-credit reporting requirements would be a sideshow, as such testimony would be irrelevant to whether Circuitronix owes Benlida the money claimed in this lawsuit.

Furthermore, turning to FRE 403, any relevance in the expert's report and anticipated testimony would be substantially outweighed by its potentially prejudicial effect and risk of confusing the issues to be tried, just as in a pay dispute suggesting that a plaintiff's failure to pay income taxes would be unduly prejudicial and would confuse the issues to be tried. *Ortiz v. Santuli Corp.*, 2009 U.S. Dist. LEXIS 7273l, pp. 3-4 (S.D. Fla. Docket No. 08-cv-20218) (Simonton, Mag. J.) (plaintiff sued employer for unpaid wages; the court restricted defendant from suggesting at trial that plaintiff had failed to pay income tax on past wages received).

Benlida's relationships with Chinese regulatory agencies and trade creditors are emphatically not issues for trial. And given the inconclusiveness of the professor's report, anything in the report that may be called relevant is still of negligible, if any, probative value. If

Circuitronix will use Professor Cui to show that Benlida was trying to cheat the Chinese government, what little probative value (if any) of such testimony will be substantially outweighed by the waste of time – due to the direct examination, cross-examination, and re-direct examination on unspecified Chinese regulations and the discretion of the regulatory authorities – and by the excessive prominence given to paperwork and reporting issues, none of which have any bearing on the dispute in this case. Moreover, plaintiff Benlida will be prejudiced by the insinuation that it has violated, or "may have" (as Professor Cui says) violated, Chinese regulations.

As plaintiff Benlida's compliance or non-compliance with the laws of China is entirely collateral, and as eliciting testimony regarding same would unduly complicate the trial, and prejudice Benlida should defendant attempt to elicit testimony that Benlida was in any way in violation of Chinese regulatory law, such testimony, and the proposed testimony of Professor Cui in regard thereto, as well as any questioning of the lay witnesses in such regard, should be precluded.

**Point II:   Testimony and Documents Regarding Benlida's Trade-Credit Insurance Coverage Should be Precluded.**

China Export & Credit Insurance Corp. (a/k/a "Sinosure") is Benlida's trade-credit insurer. A trade-credit insurer is a company that agrees to indemnify the policyholder, here Benlida, for losses arising from the policyholder's customers' nonpayment for goods and services. See *Ario v. Ingram Micro, Inc.*, 965 A. 2d 1194 (PA Sup. Ct. 2009); see also https://www.trade.gov/export-credit-insurance. In this case, it is alleged that Circuitronix failed to pay for circuit boards that it purchased from Benlida. Introducing testimony or documents showing that Benlida has trade-credit insurance with Sinosure can have no bearing on whether Circuitronix actually owes the monetary damages claimed, and would prejudice Benlida, as such

evidence could leave the jury with the misimpression that Benlida could simply look to Sinosure for payment of the moneys that it claims in this lawsuit. Additionally, introducing such testimony would unduly complicate the case, because (a) Benlida would then be required to introduce evidence that any recovery that it obtains against Circuitronix for which Benlida has been indemnified would have to be repaid to Benlida; and (b) Benlida would be required to present testimony that the amount it claimed from Sinosure was less than the full value of the claim due to the coverage terms, leaving the jury with the misimpression that Circuitronix does not actually owe the full amount claimed in this lawsuit.

"[T]here is no question that evidence concerning either [party's] insurer, any insurance available to the parties, or payments made by insurance companies, should be excluded under Federal Rule of Evidence 411." *Jetport, Inc. v. Miami*, 1:16-cv-23303-UU, 2017 U.S. Dist. LEXIS 228492 *5-6, (S.D. Fla. 2017). Under FRE 411, insurance is not admissible as evidence to prove that an individual acted "negligently or otherwise wrongfully," though it may be used for other purposes "such as proving a witness's bias or prejudice or proving agency, ownership, or control." FRE 411. These exceptions do not apply here.

Testimony regarding insurance must also be excluded under the collateral-source rule, which is followed by the Southern District of Florida and the State of Florida. See *FDIC v. Prop. Transfer Servs., Inc*., No. 12-80533-CV, 2013 U.S. Dist. LEXIS 144663, at *56-58 n.31 (S.D. Fla. 2013). The collateral-source rule provides that "compensation for injuries from a source wholly independent of the tortfeasor is not deducted from the damages recovered against the tortfeasor," for admitting evidence of insurance payments or benefits "is considered unquestionably prejudicial to the plaintiff's case." *Cowley v. Sunset Yacht Charters*, No. 10-61928-CIV, 2011 U.S. Dist. LEXIS 80216, at *2 (S.D. Fla. 2011) (quoting *Southern v. Plumb*

*Tools*, 696 F.2d 1321, 1323 [11th Cir. 1983]) (internal quotations omitted); *Gormley v. GTE Prods.*, 587 So. 2d 455, 457-458 (Fla. 1991); see generally *Camps v. Bravo*, No. 1:20-cv-24294-Louis, 2023 U.S. Dist. LEXIS 118933, at *21 (S.D. Fla. 2023). Here, Circuitronix has no need to introduce testimony that Benlida had placed trade-credit insurance with Sinosure. Because such information would be highly prejudicial, and would unduly complicate this case, it must be precluded.

### Conclusion

Wherefore, it is respectfully submitted that the Court should issue an order, in sum and substance in the form submitted herewith as exhibit "B," precluding defendant Circuitronix from questioning Benlida witnesses about compliance *vel non* with Chinese regulatory law, and from introducing Professor Wei Cui to testify at trial regarding such matters, and from introducing testimony or documentation regarding Benlida's trade-credit insurance.

### Certification Regarding Pre-Filing Conference

Pursuant to Local Rule 7.1(a)(3), undersigned counsel for Benlida certifies that we have conferred via video conference and via email with counsel for defendant Circuitronix in a good-faith effort to reach agreement on the issues raised in this motion, and we have been unable to do so. Counsel for Circuitronix does not consent to the relief sought herein.

Dated:  New York, New York
        August 8, 2023

<div style="margin-left:40%">

**Mazzola Lindstrom LLP**
By: */s/ Jean-Claude Mazzola*
Jean-Claude Mazzola
*Counsel for Jiangmen Benlida Printed Circuit Co., Ltd.*
1350 Avenue of the Americas, Second Floor
New York, New York 10019
Tel.: (646) 216-8300
jeanclaude@mazzolalindstrom.com

</div>

Service via ECF