UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

Plaintiff,

v.

CIRCUITRONIX LLC,

Defendant.
_____/

**CIRCUITRONIX, LLC'S MOTION TO EXCLUDE OR LIMIT
TESTIMONY OF PLAINTIFF'S REBUTTAL EXPERT
WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Circuitronix, LLC ("CTX") respectfully moves for an order to exclude portions of the report and testimony of Plaintiff Jiangmen Benlida Printed Circuit Co., Ltd.'s ("Benlida") expert Randall M. Paulikens of A.J. Santye & Co., P.A ("Paulikens Report"). Benlida has disclosed Paulikens as an expert, purportedly to rebut the report and testimony of CTX's accounting experts, Barry Mukamal of KapilaMukamal, LLP and Mark Parisi of Citrin Cooperman, LLC ("KM Report"), whom CTX disclosed to support part of the damages sought on its counterclaim.[1]

Paulikens' rebuttal report and likely testimony, however, is not proper rebuttal as it improperly presents affirmative opinions on the amount of damages *Benlida* seeks in its case-in-chief. His so-called "Response Report's" main criticism of the KM Report also seems to focus

---

[1] CTX disclosed both experts because Mr. Parisi left KapilaMukamal during the period of time that this case was stayed and had performed the complicated assembly of underlying data on which the KM Report relies during his employment with that firm.

1

explicitly on "[w]hat is not in the KM Report" (Paulikens Report (**Exhibit 1**) at 7), *i.e.*, consideration of transactions between Benlida and non-party Circuitronix (Hong Kong) Ltd. ("CTX-HK"). Paulikens, however, may not fault CTX's experts for failing to account for a variable (like CTX-HK) that is not part of CTX's counterclaim—even if it may be part of *Benlida's* affirmative case. CTX's experts were prepared to meet those points about CTX-HK in a rebuttal report, but were deprived of that opportunity by Benlida's failure to timely disclose Paulikens as an affirmative expert.

Finally, portions of Paulikens' report and deposition testimony improperly provide legal conclusions regarding CTX's supposed "strong operational control" over CTX-HK (*id.* at 13), and related topics regarding these entities' supposed lack of corporate separation, in a manner that is likely to either confuse or be unhelpful to a jury.

CTX accordingly seeks an order excluding any portions of Paulikens' report and any expert testimony related to these topics.

## BACKGROUND

The nub of the parties' dispute is relatively straightforward: Benlida claims that CTX failed to pay over $13 million in invoices for printed circuit boards from 2018 to 2020, DE 26 (Third Amended Complaint ("TAC")), ¶¶ 12, 457; CTX claims it actually overpaid for relevant 2018-to-2020 invoices, and that Benlida failed to properly credit millions of dollars in payments or account for accrued penalties for late delivery, DE 34 (Counterclaim), ¶¶ 5, 33-35.

Things get more complicated with Benlida's effort to hold CTX responsible for supposed debts of non-party CTX-HK—despite never mentioning CTX-HK in its complaint. Central to Benlida's case-in-chief is its worldview—unpled, but developed explicitly in response to CTX's motion for summary judgment—that CTX owes money on invoices issued to CTX-HK because

2

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

CTX-HK was acting as CTX's agent or was operating as one and the same company. *See* DE 188 (Benlida's Mem. of Law in Opp. to CTX's Mot. for Sum. Judgmt) at 2-13. That worldview also begins to explain how Benlida's undisclosed, commingled-FIFO accounting practice serves as the basis for its claims that invoices issued to CTX remain unpaid.

Apart from its TAC (which did not articulate these theories), Benlida had an opportunity to advance its damages calculations, relying on these theories, through an expert who could analyze and testify as to Benlida's claims that CTX owed it over $13 million, including debts owed by CTX-HK. Pursuant to the Third Amended Scheduling Order, both parties were to provide their initial expert witness reports by June 8, 2023. DE 153 at ¶ 1. The parties also were permitted to disclose rebuttal reports in accordance with the Federal Rules. *Id.*; *see* FED. R. CIV. P. 26(a)(2)(D)(ii).

CTX served the KM Report by the June 8th deadline. The KM Report provided the basis for CTX's counterclaim against Benlida, analyzing accounts-payable reconciliations between CTX and Benlida prepared by the parties as well as calculations of lead-time penalties that must be subtracted from the amounts Benlida invoiced. *See generally* KM Report (**Exhibit 2**). The KM Report noted that CTX's experts had "conducted a preliminary analysis of CTX's payments to ROK Printed Circuit Co., Ltd. ('ROK'), and [CTX-HK's] payments to Benlida and ROK to have available if necessary as a reference for rebuttal to Benlida's forthcoming expert report." *Id*. at 3 n.4. Benlida, however, did not file an expert report by the deadline.

The scheduling order set the deadline for service of rebuttal reports in accordance with Rule 26(a)(2)(D)(ii), so "within 30 days after the other party's disclosure." *See* DE 153 at 2. Since Benlida served no affirmative expert report, CTX's accounting experts had nothing to rebut. On July 7, 2023, Benlida served a "Response Report" prepared by Paulikens. Among

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

other things, the Report advances opinions regarding "the amount being sought by the Plaintiff Benlida" that relies in part upon "what is not in the KM Report," *i.e.*, information and analysis regarding data and transactions corresponding to CTX-HK or non-party ROK.  Paulikens Report at 1.  Inserting CTX-HK and ROK into his report's calculus, Paulikens concludes "Benlida is actually owed between $3 and $8 million dollars." *Id.* at 14; *see also id.* at 8 (opining that the "CTX group would still owe the Benlida Group as much as $8.0 million, again depending upon the data source").  He reiterated at his deposition that "[d]epending on the data source[,] Benlida is owed, I think, anywhere from the low 3 millions to as much as $8 million."  Transcript of Deposition of Randall Paulikens ("Tr.") (**Exhibit 3**) Tr. 64:15-18.  He reaches that possible range for Benlida's damages despite also testifying that he "wasn't asked" to prepare a report about how much money Benlida is owed (Tr. 63:24-64:8), and denying that he had conducted a formal calculation to determine the amount of damages Benlida is owed, *see* Tr. 55:9-15; *see also* Tr. 51:7-12; Tr. 56:5-22.

      Paulikens also repeatedly faults the KM Report for "focus[ing] on one entity [*i.e.*, CTX] to the exclusion of the other [*i.e.*, CTX-HK]."  Paulikens Report at 13; *see also id.* at 8 (stating KM "studiously [has] not covered" the assertion that "CTX has underpaid the Benlida group by $13.5 million"); *id.* at 14 (stating "the KM Report only seeks to show one side of the economic relationship between the litigants—namely the side that best suits their clients' needs").  In his estimation, CTX's experts should have considered CTX-HK and ROK because, "from an accounting perspective, the CTX entities and the Belinda/ROK entities are very intertwined" and because "strong operational control and influence … reduce[] the separation" between CTX and CTX-HK and between Benlida and ROK.  *Id.* at 13.

4

# MEMORANDUM OF LAW

## I. PAULIKENS' IMPROPER REBUTTAL OPINIONS SHOULD BE EXCLUDED

Paulikens is an initial expert masquerading as a rebuttal expert. His report not only agrees with much of the KM Report, but also offers up a figure for Benlida's own damages and faults the KM Report for failing to advance a key legal theory of *Benlida*'s case-in-chief, *i.e.*, that that transactions between Benlida and *CTX-HK* are relevant to the question of monies CTX allegedly owes Benlida. If Benlida wanted Paulikens to opine on the amount of money owed to Benlida or what Benlida perceives to be the "entire economic picture" (Paulikens Report at 4), it should have had him do so in an affirmative report within the court-ordered deadline. His tardy disclosure a month after that deadline passed was neither substantially justified nor harmless to CTX, as it has deprived CTX of the opportunity to rebut Paulikens' opinions with its own experts.

### A. Legal Standard for Rebuttal Expert Reports

The party offering an expert bears the burden of laying the proper foundation for the admission of the expert testimony. *See Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999). Admissibility must be shown by a preponderance of the evidence. *See id.*

Expert reports must be disclosed "at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D). Rebuttal reports may be filed within thirty days of the opposing party's affirmative expert reports if and only if they present evidence that "is intended solely to contradict or rebut evidence on the same subject matter." FED. R. CIV. P. 26(a)(2)(D)(ii); *see also Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2016 WL 8793317, at *3 (S.D. Fla. Jan. 7, 2016) (Goodman, J.) ("strictly h[olding] that '[r]ebuttal testimony is permitted only when it *directly addresses an assertion* raised by an opponent's experts'") (Court's emphasis; citation

5

omitted). "If a party attempts to advance new arguments through a 'rebuttal' expert, then 'the overwhelming weight of authority is that preclusion is *required* and *mandatory* absent some unusual or extenuating circumstances—that is, substantial justification.'" *Wreal*, 2016 WL 8793317, at *3 (Court's emphasis, quoting *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17 (D.D.C. 2013)); *see also Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 21 (11th Cir. Oct. 10, 2012) (explaining courts "are not hesitant to exclude or substantially limit expert opinion testimony at trial when an expert is masquerading as a rebuttal expert," instead of offering an opinion "solely in rebuttal").

### B. Paulikens' Opinion and Testimony Regarding Benlida's Damages Figure Should Be Excluded

Paulikens describes his "role in this litigation, among others, [a]s to analyze the KM Report, and, consequently, *quantify the amounts owed to Benlida*." Paulikens Report at 14 (emphasis added); *see also id.* at 1 (referring to facts not in the KM report that would actually inform the trier of fact of "the order of magnitude of the amount being sought by *the Plaintiff Benlida*") (emphasis added). His conclusion that "Benlida is actually owed between $3 and $8 million" (*id.*; *see also* Tr. 202:19-203:2)—or any other opinion regarding damages owed *to Benlida*—extends well "beyond the scope of appropriate rebuttal" and must be stricken as untimely, *Kroll v. Carnival Corp.*, No. 19-23017-CIV, 2020 WL 4793444, at *5 (S.D. Fla. Aug. 17, 2020) (Goodman, J.). The KM Report did not venture an opinion on that subject. It examined and quantified certain variables pertinent to CTX's counterclaim against Benlida. The KM Report did not scrutinize Benlida's claimed damages, since that would have been the work of a CTX rebuttal report.[2]

---

[2] Even if CTX's experts had wanted to attempt to pre-but some calculation that Benlida's expert might have disclosed, they could not have done so as a practical matter because Benlida never served any initial disclosure of its damages computation, and CTX did not discover material

6

This Court has explicitly held that "a report which adds new damages is not a rebuttal expert report." *Kroll*, 2020 WL 4793444, at *3 (citing *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd.*, No. 10-24310-civ, 2011 WL 6372198, at * 4 (S.D. Fla. Dec. 20, 2011)). A party bears an affirmative burden of proof on its claimed damages, so its damages figure is a central part of its case-in-chief. An expert opinion identifying that damages figure or providing support for that particular damages amount thus "logically belong[s] in the case-in-chief." *In re Trasylol Prods. Liab. Litig.*, No. 09-01928, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010) (noting causation is naturally part of the case-in-chief in products liability action against medical drug manufacturer) (quoting *Benedict v. U.S.*, 822 F.2d 1426, 1428 (6th Cir.1987)) (internal quotation marks omitted).

Paulikens' opinion on Benlida's damages belongs in and supports Benlida's case-in-chief and is not proper rebuttal. *See id.* (quoting *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 765 (5th Cir. 1991)); *Kroll*, 2020 WL 4793444, at *3, 5, 7 (noting that a plaintiff's so-called rebuttal expert retained to "testify to the extent and substance of [p]laintiff's injuries, [p]laintiff's need for future medical care and treatment, as well as causation" was "an initial expert who was not timely designated" and excluding "all of his non-rebuttal opinions"). As a result, Paulikens' affirmative opinion regarding Benlida's claimed damages should be excluded from evidence as an untimely affirmative opinion and improper rebuttal.

Paulikens seemed to recognize at his deposition that, as a rebuttal expert, he could not properly opine on Benlida's "formal" affirmative damages figure. *See* Tr. at 51:7-10 ("Q. Have

---

aspects bearing on the way Benlida accounted for CTX's payments until late May 2023, right up against the deadline for initial expert disclosures (June 8). Transcripts of Benlida's witnesses were not even available until the eve of that deadline. *See* DE 184-1 at 14 n.7 (noting not all the deposition transcripts of Benlida witnesses had been transcribed as of the filing of CTX's motion for summary judgment on June 9, 2023 (DE 176)).

7

you calculated the amount of damages being sought by Benlida anywhere in this lawsuit? A. No, not as a formal calculation."); Tr. 56:17-22 ("Q. Have you looked at the accounts receivable independently to determine how much Benlida is owed in your view? A. Not independently. My role is to respond to the four corners of the KM report.").[3] The Court should hold him to his deposition concession and exclude any untimely opinion regarding Benlida's damages—formal or informal. That decision requires no "exercise of judicial discretion," but "an application of the … rule [regarding the timing of rebuttal expert disclosures] to the facts," *Flamingo S. Beach I*, 492 F. App'x at *21 (citing then-existing Local Rule 16.1(k), which tracks the requirement of Federal Rule 26(a)(2)(A)(ii)): because Paulikens' report and specifically his articulation of a damages figure for Benlida was "not 'solely in rebuttal' to" that of Mukamal and Parisi, it should have been disclosed by June 8. It was not.

Because Benlida may not belatedly smuggle in an expert opinion about its own claimed damages as rebuttal testimony regarding CTX's counterclaim damages, the Court should exclude any Paulikens testimony relating to Benlida's damages figure.

---

[3] This and other similar testimony further supports exclusion of any damages estimate Benlida seeks to offer for its case-in-chief, since an expert cannot introduce a damages theory to the jury without establishing the reliability of that theory based on sufficient facts and data and employing a reliable methodology to the facts of the case. *See* FED. R. EVID. 702. Paulikens may not provide estimates of an amount in rebuttal where he has openly admitted he did not do a "formal calculation" to come up with "a precise number that Benlida is entitled to," with all the requirements he states such a calculation would entail. Tr. 51:7-24; *see also* Tr. 53:24-54:9 (agreeing an independent formal calculation would require an exercise "similar" to the parties' reconciliation effort in 2019); Tr. 56:23-57:13 (explaining that an independent analysis of the account receivables would require, among other things, "diligently go[ing] through" the parties' reconciliations).

8

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

### C. Paulikens' Testimony and Opinions Criticizing the KM Report for Failing to Take CTX-HK Into Account in Assessing CTX's Counterclaim Should Be Excluded

The KM Report does not address CTX-HK's or ROK's role in its analysis of CTX's counterclaim because there was no reason to—CTX is the only party in the action seeking money from Benlida (and only Benlida), and CTX-HK and ROK only relate to *Benlida*'s claim. CTX's experts, however, were nevertheless prepared to analyze transactions between CTX-HK, ROK, and Benlida as part of a rebuttal to an anticipated initial report by Benlida articulating Benlida's supposed damages based on invoices issued to both CTX and CTX-HK. *See* KM Report at 3 n.4. The Paulikens Report faults CTX's expert for this perfectly justifiable omission, stating "it is *what is not in the KM Report* that actually informs the reader of the order of magnitude of the amount being sought *by the Plaintiff Benlida*." Paulikens Report at 1 (emphasis added). Because CTX was entitled to have its experts' initial report focus on the damages it seeks in its case-in-chief for its counterclaim, and exclude variables that are legally irrelevant to that claim (*i.e.*, any money CTX-HK owes Benlida or that CTX and CTX-HK owe ROK), the Court should exclude all testimony or opinion in which Paulikens faults CTX's experts for failing to consider that variable. If Benlida had prepared an affirmative report, CTX's experts could have addressed in rebuttal the variables on which Benlida apparently places great weight. It would be unfair and misleading to the jury to allow Paulikens to criticize Mukamal and Parisi for not having addressed these issues in the absence of a report from Benlida explaining its own damages computation in the first instance.

Paulikens' report makes plain that his opinion regarding the salience of ROK and especially CTX-HK is something the KM Report did not address. At his deposition, Paulikens acknowledged that the KM Report had clearly outlined the variables it had and had not considered and the work it had and had not completed in its analysis. *See, e.g.*, Tr. 84:25-85:5

9

("Q. So the KM report was clear about what they were considering and what they weren't considering, right?  A. … [t]he short answer, yes."); Tr. 104:2-3 (same).  He more specifically acknowledged that he was aware CTX's experts had either assumed or been told to assume that CTX-HK was not relevant for purposes of assessing CTX's counterclaim against Benlida.  *See, e.g.*, Tr. 189:12-191:4.  Indeed, he even conceded that CTX's experts had not "relied on" spreadsheets with CTX-HK data in reaching their opinions.  *Compare* Tr. 203:3-207:4 (referring to spreadsheets containing data related to CTX-HK as materials in CTX's experts' possession but conceding that they had not relied on "the specific exhibit, no"), *with* Paulikens Report at 9 (stating erroneously that the KM Report had "relied upon" these materials relating to CTX-HK).  In short, Paulikens freely acknowledged, consistent with his report, that he was "pointing out something that's not in [the KM] report."  Tr. 192:22-25 (acknowledging same in response to counsel's question).

Paulikens' criticism is therefore not a fair *rebuttal* to expert opinions about CTX's *counterclaim*.  *See In re Trasylol*, 2010 WL 4065436, at *2 ("Rebuttal testimony is permitted only when it directly addresses an assertion raised by an opponent's experts.").  His repeated observation that CTX's experts had *not* considered Benlida's transactions with CTX-HK, his focus on what was *not* in the KM Report, and his insistence that "[t]here's a whole other portion of a … dispute here" (*e.g.*, Tr. 63:15-17), reflect *Benlida's* theory of the case and *its* claim for damages.  *See Jetport, Inc. v. Landmark Aviation Miami, LLC*, No. 1:16-CV-23303-UU, 2017 WL 7732868, at *6 (S.D. Fla. July 11, 2017) (rejecting supposed rebuttal testimony since disclosed purported rebuttal topics were "[w]ithout question, … issues at the center of [the proffering party's] claims and which have been at issue for the duration of this litigation").

10

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

Paulikens flips the requirement for rebuttal expert testimony by impermissibly addressing in rebuttal assertions *not* raised by an opponent's experts (and that were expressly reserved by Mukamal and Parisi for a rebuttal opportunity that never arose because of Benlida's failure to comply with the expert-disclosure deadline). Paulikens' criticism also misses CTX's experts' acknowledgement that they would address those aspects of *Benlida's* case in rebuttal—if only Benlida had presented timely affirmative opinions.[4] Accordingly, his opinions and testimony regarding CTX's experts' failure to consider CTX-HK or ROK should be excluded. The Court should also exclude Paulikens' related testimony that CTX controls CTX-HK or that CTX and CTX-HK are not separate entities on the basis it being improper rebuttal testimony. *See* Paulikens Report at 13.[5]

---

[4] This is thus not a case of proper rebuttal testimony criticizing "an opposing expert's failure to consider certain facts and evidence in arriving at a damages estimate." *Wreal*, 2016 WL 8793317, at *4 (quoting *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09–61490–Civ., 2011 WL 2295269, at *4 (S.D. Fla. June 8, 2011)). CTX's experts were prepared to consider those facts in defending against *Benlida's* affirmative "damages estimate" provided through an affirmative expert. They need not have done so in considering what Paulikens called just "one side of the economic relationship between the litigants" (Paulikens Report at 14)—which happens to be the only side at play in the counterclaim.

[5] As elaborated in Section II below, such testimony should be excluded under the Federal Rules of Evidence, but it is also independently inadmissible as improper rebuttal testimony because it is wholly outside the class of testimony that "*directly addresses an assertion* raised by an opponent's experts." *Wreal*, 2016 WL 8793317, at *3 (Court's emphasis). The KM Report purposely did not analyze data related to CTX-HK or ROK since such data relates only to Benlida's claim; CTX's experts instead deferred that analysis to their anticipated rebuttal report—but they never had the opportunity to address these matters because Benlida failed to disclose an initial report. Even if the Court were to determine that criticizing CTX's experts for failing to discuss CTX-HK and ROK is appropriate at rebuttal—and it should not—Paulikens' testimony editorializing about CTX's control goes well beyond pointing out "an opposing expert's failure to consider certain facts and evidence" in calculating damages. *Wreal*, 2016 WL 8793317, at *4. Paulikens should not be permitted to opine on a matter that is neither in the KM Report nor even necessary to identify an omission by CTX's experts.

### D. Benlida's Tardy Expert Disclosure Was Neither Substantially Justified Nor Harmless

Because Benlida failed to provide sufficient, timely disclosures of Paulikens' opinions regarding Benlida's damages and unfairly criticized the KM report's failure to address CTX-HK and ROK in *CTX*'s counterclaim, the opinions must be excluded unless they are substantially justified or harmless. Because they are neither, the Court should grant CTX's motion.

CTX's experts stated in their report that they had "conducted a preliminary analysis of CTX's payments to [ROK] and [CTX-HK's] payments to Benlida to have available if necessary as a reference for rebuttal to Benlida's forthcoming expert report." KM Report at 3 n.4. But they did not present that analysis in their report. They could not have even if it would have made sense to. Not only were they waiting for Benlida to disclose its expert's report computing Benlida's damages claim, but Benlida never even made an initial disclosure of its damages computation, leaving Mukamal and Parisi in the dark as to how Benlida would calculate its damages.

Because Benlida did not serve the Paulikens Report or disclose any initial expert by the deadline, CTX suffered prejudice by the deprivation of its experts' opportunity to develop a rebuttal opinion to contradict Paulikens' opinions within the time allowed by the Local Rules and the Court's scheduling order. *See Jordan v. Filippone, HolosGen, LLC*, No. 20-20023-SCOLA/TORRES, 2021 WL 1390370, at *4 (S.D. Fla. Apr. 13, 2021) (determining the defendants failed to show substantial justification or harmlessness in their disclosure of an "inadequate" expert report given the plaintiff's arguments that she would not have sufficient time to identify and disclose a rebuttal expert and her note that the time for expert discovery and filing pretrial motions had passed, and the time for trial was fast approaching).

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

That prejudice to CTX could not be remedied given the history and late stage of the litigation and specifically, the Court's "earlier-issued [scheduling] orders[,] … its active approach to case management," and the fact that Benlida's tardy disclosure "would completely upend the orderly course of litigation" by allowing Benlida to disclose affirmative opinions to CTX's detriment, just days before the expert discovery cutoff. *Kroll*, 2020 WL 4793444, at *6. Even allowing CTX's experts to file a surrebuttal report would not cure the prejudice to CTX given that, because of Benlida's tardy disclosure, CTX's experts and counsel would now be forced to divide their attention between drafting such a report and the multitude of other substantial tasks required during the remaining phase of pretrial preparation.

Accordingly, Paulikens' opinions discussing Benlida's damages and unfairly faulting CTX's experts for not considering Benlida's claims to monies owed involving non-parties ROK and CTX-HK should be excluded.

## II. PAULIKENS' OPINIONS REGARDING CTX'S SUPPOSED CONTROL OVER OR ITS LACK OF CORPORATE SEPARATION FROM CTX-HK SHOULD BE EXCLUDED FOR INADMISSIBILITY UNDER THE FEDERAL RULES OF EVIDENCE

### A. Legal Standard for Admitting Expert Testimony Under the Federal Rules

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1106-07 (11th Cir. 2005) (quoting FED. R. EVID. 702).

In assessing admissibility under Rule 702, courts engage in a "rigorous three-part inquiry" that considers whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998)).  Inquiries regarding an expert's "qualifications, reliability, and helpfulness" may overlap but the Rule's requirements remain distinct concepts.  *Id.*  Although Rule 704(a) allows a qualified expert to testify about an ultimate issue of fact in the case, experts may not offer legal conclusions or the legal implications of conduct.  *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

**B. Paulikens' Opinions Regarding CTX's Supposed Lack of Separation With and Control Over CTX-HK Are Legal Conclusions and Otherwise Inadmissible**

Paulikens' report suggests that CTX and CTX-HK are not separate entities and that CTX exercises "strong operational control and influence" over CTX-HK.  Paulikens Report at 13.  The notion that CTX controls CTX-HK or that they operate as "one and the same company" is fundamental to Benlida's unpled *legal* theory that CTX should be made responsible for invoices issued to CTX-HK.  *See* DE 188 at 2-13.[6]  While Paulikens is careful to couch his observations regarding CTX's supposed control "from an accountant's point of view," and note when subject matter is "clearly an area of law" (Paulikens Report at 13), those caveats do not automatically render his opinions admissible expert testimony.  Even if the Court rejects CTX's arguments to the contrary in deciding CTX's motion for summary judgment, Benlida may not offer Paulikens'

---

[6] CTX's motion for summary judgment seeks to preclude Benlida's reliance on those unpled theories.  *See* DE 184-1 at 6-11; DE 193 at 1-5.

14

testimony regarding the ultimate legal issues of CTX's alleged control over CTX-HK or the two entities' supposed lack of corporate separation.

*First*, because statements regarding CTX's control and corporate indistinctness with CTX-HK are legal conclusions, they should be excluded. Although Rule 704(a) allows a qualified expert to testify about an ultimate issue of fact in the case, experts may not offer legal conclusions or the legal implications of conduct since the Court must be the jury's only source of law. *See, e.g.*, *Montgomery*, 898 F.2d at 1541 (determining an expert's opinion that one party had a duty to hire tax counsel in the case was an inadmissible legal conclusion). While Paulikens occasionally states that some of his opinions are solely "from an accountant's standpoint" (Paulikens Report at 13), he openly acknowledges other opinions are legal conclusions. For instance, although his report observes that "it would seem" "CTX has control over CTX-HK," and that "CTX-HK and CTX-US would appear to be controlled and dominated by CTX" (*id.*), he acknowledged at deposition that the question of "who is who and who controls what" is a "legal question." Tr. 247:20-22; *see also* Tr. 255:4-8 (acknowledging that the "issue as to who is calling the shots where" is "a legal issue, kind of beyond my—it's a legal issue"). The Court should exclude opinions that Paulikens himself has conceded are legal in nature, and that address whether the *legal* standard regarding corporate control has been satisfied. *See Mamani v. Sanchez Berzain*, No. 07-22459-CIV, 2018 WL 1090546, at *7 (S.D. Fla. Feb. 28, 2018) (excluding expert testimony that "goes one step too far" in opining defendants had "effective control" over Bolivian armed forces since it constituted a legal conclusion regarding defendants' liability under the "command responsibility doctrine").

*Second*, Paulikens' opinion that CTX controls CTX-HK is without foundation as Paulikens has "articulated neither a generally accepted standard for [corporate control in

15

accounting], nor an explanation of how or why he believes [CTX controls CTX-HK],"  *Cook*, 402 F.3d at 1112, beyond generically referencing "patterns of payment behavior" or the calculation of lead-time penalties, Paulikens Report at 13; *see also* Tr. 255:23-256:18 (agreeing that the fact parties are related does not necessarily mean one controls the other; noting that factors like "centralized management" or "overlapping ownership" "just have a higher level of scrutiny in accounting").  At his deposition, he appeared to base his conclusion regarding CTX's control on a vague sense that "from some of the papers … some of the decision makers, you know, defer to Rishi [Kukreja]. And … my understanding is … Rishi covers everything" in the "conglomerate." Tr. 254:5-16; *see also* Tr. 257:5-17.  But he was not able to specify Rishi Kukreja's positions within CTX or CTX-HK, was "foggy … on the, you know, specific ownership roles" in the companies, and could not speak to any overlapping ownership between CTX and CTX-HK.  Tr. 254:17-255:8; 256:19-24.  He also based his opinion on his "understanding" that "either [CTX-]HK is owned by CTX or they're controlled by some management company."  Tr. 255:16-19.  There is zero evidence supporting either of those two suppositions.  No such "management company" or "conglomerate" exists, and the evidence is that Promila Kukreja has final authority at CTX-HK, while Rishi Kukreja has final authority at CTX.  *See* Transcript of Deposition of Rishi Kukreja (**Exhibit 4**) at 52:5-54:2.  Because Paulikens' opinion regarding CTX's control over CTX-HK is thus "connected to existing data only by the *ipse dixit* of the expert," it is inadmissible.  *Cook*, 402 F.3d at 1112 (citations and internal quotation marks omitted).

*Finally*, offering such testimony about control and corporate indistinctness—even if "from an accountant's standpoint" (Paulikens Report at 13)—should be excluded under Federal Rule of Evidence 403 because it is likely to cause confusion among jurors between the relevant *legal* factors for control and corporate interrelatedness versus factors that may be relevant for

16

control and interrelatedness in *accounting*. The former is critical to Benlida's case; the latter is unnecessary window dressing in the Paulikens Report. *See* Tr. 258:18-259:3 (denying that his perception regarding "disparate relationships" between corporate parties, as an accountant, influenced the opinions set forth in his report). Paulikens testified that features regarding companies' relatedness could inform whether one company controls another, but ultimately conceded that relatedness does not necessarily equal control. *See* Tr. 256:9-12. His accountant's understanding of the term "related parties" as "a fairly broad net with which to capture relationships" (Tr. 255:20-22), exposes the potential risk that jurors may substitute the specific requirements for *legal* control and corporate sameness for the broader and potentially more lax definitions apparently used in the accounting space.[7] Paulikens' testimony is thus unlikely to assist the trier of fact, and is actually likely to complicate juror deliberation.

Paulikens' expert testimony on these subjects is separately excludable under Rule 403 because it is cumulative and "is intended merely to bolster" Benlida's argument that CTX-HK's

---

[7] Courts in this Circuit have often excluded proffered evidence that speaks to a particular standard in a specific context when the evidence is likely to confuse or mislead the jury about the applicable *legal* standard or rule governing the context of the case. *See In re Seroquel Prods. Liab. Litig.*, No. 6:06MD1769-ORL-22DAB, 2009 WL 223140, at *5-6 (M.D. Fla. Jan. 30, 2009) (excluding evidence about foreign labeling standards and regulatory action related to a pharmaceutical drug because they might cause juror confusion regarding the applicable legal warning standards in plaintiff's main case), *aff'd,* 601 F. Supp. 2d 1313 (M.D. Fla. 2009); *Montgomery v. Brickell Place Condo. Assn., Inc.*, No. 11-24316-CIV, 2012 WL 1203837, at *1-2 (S.D. Fla. Apr. 11, 2012) (Goodman, J.) (excluding EEOC letter finding "reasonable cause" to believe discrimination occurred given that different standard of proof for the EEOC's finding "may sow confusion as to the proper burden of proof [at trial] and mislead the jury as to what weight it should give the EEOC letter"); *Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir. 1986) (noting that "the different standards of proof between a criminal prosecutorial decision and a civil case might mislead the jury"); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1347-48 (5th Cir. 1978) (excluding guilty plea where auto driver admitted he "did cause the death of" plaintiff's husband due to the risk of confusion it would create with the concepts of legal cause and duty in the context of the "second collision" doctrine which was central to plaintiff's suit).

transactions should be factored into any determination of Benlida's damages in the case. *Brown v. Davis*, 656 F. App'x 920, 922 (11th Cir. 2016) (explaining that testimony that is "intended merely to bolster a party's case is more easily excluded under [Rule] 403 than testimony that forms a critical part of the case). Even if the Court denies CTX's summary judgment arguments that CTX is not responsible for CTX-HK's debts (DE 184-1 at 6-11; DE 193 at 1-5), such that a jury must determine whether CTX-HK's transactions should be considered in computing Benlida's damages, the Court should still exclude Paulikens' testimony regarding CTX's control and/or its supposedly "intertwined" relationship with CTX-HK. Such opinions would almost certainly be duplicative of testimony from other witnesses or documentation Benlida will seek to introduce in an effort to show that CTX and CTX-HK operate as one or that CTX controls CTX-HK, and it should therefore be excluded. *See* DE 188 (Benlida's Opp. to Mot. for Summ. J.) at 8; FED. R. EVID. 403 (providing for exclusion based on danger of "needlessly presenting cumulative evidence" outweighing probative value of evidence); *Noel Shows, Inc. v. U.S.*, 721 F.2d 327, 330 (11th Cir. 1983) (excluding evidence under Rule 403 because "its confusing and cumulative effect substantially outweighed its probative value" where the appellant had sought to introduce it for the same proposition that multiple witnesses had already testified to).

Because of the risks of confusion and the presentation of needlessly cumulative evidence, the Court should exclude this testimony. Likewise, the risk that Paulikens' testimony regarding CTX and CTX-HK's corporate relationship *in the accounting sphere* "may be assigned talismanic significance in the eyes of lay jurors," in evaluating CTX and CTX-HK's relationship *in the legal sphere*, *Frazier*, 387 F.3d at 1263, counsels in favor of exclusion.

## CERTIFICATE OF RULE 7.1(a)(3) CONFERENCE

Undersigned counsel for CTX has conferred with counsel for Benlida in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: August 8, 2023

Respectfully submitted,

PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800

By: /s/ Stephen F. Rosenthal
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com

*Counsel for Circuitronix, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on August 8, 2023 as filed with the Clerk of the Court using CM/ECF.

By: /s/ *Stephen F. Rosenthal* .
     Stephen F. Rosenthal