## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

     Plaintiff,

v.

CIRCUITRONIX LLC,

     Defendant,

_____/

### CIRCUITRONIX, LLC'S OMNIBUS MOTION *IN LIMINE* AND INCORPORATED MEMORANDUM OF LAW

Circuitronix, LLC ("CTX") moves, pursuant to Local Rule 7.1, Federal Rule of Civil

Procedure 8(c) and 37(c)(1), Federal Rules of Evidence 401, 402 and 403, and the Third

Amended Scheduling Order (DE 153), and requests the Court to enter an Order precluding

Benlida from arguing or seeking to introduce evidence at trial concerning the following

inadmissible, irrelevant, prejudicial, or otherwise improper subjects, for the reasons set forth

herein:

1. Any damages computation beyond that pled in the complaint;
2. Debts Circuitronix (Hong Kong) Ltd., a non-party, allegedly owes to Benlida;
3. Debts barred by the statute of limitations;
4. Records of CTX's account that Benlida did not produce during discovery;
5. CTX's experts' testimony regarding "related party" status;
6. Assertions contradicting Benlida's judicial admissions;
7. References to the parties' other lawsuits or alleged litigiousness;
8. The 2022 settlement agreement and CTX's termination thereof; and
9. Benlida's (or ROK's) entire print-run of invoices.

## MEMORANDUM OF LAW

Benlida should be precluded from arguing or introducing evidence about the following subjects at trial, for the particular reasons discussed for each category.

### 1. Any Damages Computation Beyond That Pled in the Complaint

Benlida should be barred from introducing evidence of its damages computation beyond that pled in the complaint as a sanction for failure to disclose that computation. CTX advanced a similar argument in its Motion for Summary Judgment briefing. *See* DE 184-1 at 3-15; DE 193 (Reply) at 7-8. If the Court grants CTX's summary-judgment motion on Benlida's claim for damages against CTX, then the argument here becomes moot. If, however, the Court finds summary judgment inappropriate as to any part of that claim, the Court should nonetheless prohibit Benlida from introducing evidence or arguing about its calculation of its damages beyond the rudimentary arithmetic it pled in the Third Amended Complaint.

Benlida neglected its obligation to disclose a computation of those damages in contravention of its obligations under Rule 26. A party's initial disclosures must provide "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). A party must then supplement or correct the disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Benlida ignored these obligations, as it failed to disclose a damages computation in its initial disclosure, and never supplemented its deficient initial disclosure, even though CTX supplemented its damages computation for its counterclaim twice after the stay in this case was lifted, on May 31, 2023 and June 26, 2023 (in advance of Mr. Kukreja's initial and continued depositions, respectively). *See* Ex. 1; Ex. 2.

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346                    www.podhurst.com

The only number Benlida mentioned in its initial disclosure of its damages "computation" was the grand total it seeks in its complaint: "$13,655,335.93," not including prejudgment interest, costs and attorney's fees.  *Compare* DE 177-1 at 43 (initial disclosure), *with* DE 26 (Third Am. Compl. ("complaint")), ¶ 8.  Looking back to the complaint, CTX is able to discern nothing more than that $13.6 million figure is comprised of the sum of the alleged amount of hundreds of invoices Benlida claims to be unpaid ($11,539,408.36) "plus $2,115,927.57" representing an undisclosed summation of a claimed price increase.  DE 26, ¶ 437.

That superficial calculation (which is not even contained in Benlida's initial disclosure) is *useless* in the context of this case because, as Benlida has admitted, during the regular course of business, CTX paid Benlida even *more* than the claimed amount of the invoices sent to CTX and even specified to Benlida that those payments should be applied to the very invoices Benlida is claiming remain unpaid.  *See* DE 177-1 at 54 (Benlida's Ans. to Interrog. No. 14); Ex. 5 (Tracy Huang Depo. Transcript) at 253:6-254:3, 261:7-262:24; DE 177-6 (Decl. of Lina Ochoa) at ¶¶ 3-6.  So the complaint and initial disclosure left CTX completely in the dark as to how Benlida could possibly claim that those invoices could be considered unpaid.  Benlida must have been using some secret accounting methodology.  What it was Benlida did not say.

Discovery failed to compensate for Benlida's failure to disclose its own damages computation, due primarily to Benlida's obstructionism.  Benlida delayed divulging key information about its accounting practice and claimed damages until the tail-end of the discovery period, depriving CTX of an opportunity to take critical follow-up discovery and to engage its accounting experts to review and opine about it.[1]

---

[1] Due to Benlida's delay tactics, CTX did not receive responses to its interrogatories seeking to discover Benlida's accounting methodology and how it applied CTX's payments, until May 17, 2023, just weeks before the close of fact discovery.  *See* DE 193 at 8 n.9.  CTX had propounded

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346                                        www.podhurst.com

And what Benlida *did* produce left essential questions unanswered, with discovery closed.  Benlida's single spreadsheet of commingled invoices and payments for CTX and CTX-HK does not isolate Benlida's invoices to CTX and payments received from CTX, leaving it a mystery which CTX invoices remained unpaid as of May 31, 2020, the supposed "cut-off date" Benlida used to identify allegedly unpaid invoices for purposes of its complaint.  *See* DE 177-1 (Benlida's Interrog. Answer) at 76; Ex. 3 (Wu Depo.) at 45:12-46:4.[2]  Had Benlida provided CTX that information, or even just divulged its commingled-FIFO allocation earlier than May 17, 2023, CTX could have engaged its expert accountants to opine on the propriety and

---

an interrogatory in April 2022 asking how Benlida computed the $11.5 million figure the complaint alleged to be "the invoiced amount."  *See* DE 185-1 at 5 (No. 4).  Benlida delayed in responding until May 17, 2023.  *See* DE 192-1, ¶ 2.  Benlida's CFO ultimately testified (on May 24, 2023) that the $11.5 million figure actually included records of aggregate invoices from both Benlida *and ROK* to both CTX and CTX-HK.  Ex. 3 (Roger Wu Depo. Transcript) at 235:13-237:4.  Benlida did not produce any bookkeeping record of how it applied CTX's payments until May 25, 2023, after CTX discovered its existence during the deposition of Mr. Wu.  While CTX was able to question the author of that spreadsheet, Ms. Chen, the next day, CTX had to wait to question the CFO about it until July 12, 2023, during a follow-up deposition, limited to one hour.  Benlida's refusal to produce its witnesses in Florida for depositions as noticed in March and April 2022, *see* DE 66 at 2, deprived CTX of the opportunity to question Benlida's witnesses about its damages until this compressed time frame in May 2023 after the stay in this case was lifted.

[2] We say "supposed" because Benlida's own testimony about the date it used to calculate which invoices remained unpaid was inconsistent.  Its bookkeeper who maintained the commingled spreadsheet testified that in December 2020 she applied a payment reflecting that the invoice from December 21, 2018—the one immediately preceding the earliest invoice listed in the complaint—was fully paid.  Ex. 4 (Chen Zhanjiao Depo. Transcript.) at 124:20-125:21 (explaining Ms. Chen's process in inputting payments and confirming the last fully paid invoice from December 21, 2018), 129:7-20 (indicating she marked that invoice as fully paid in December 2020).  The unpaid invoices in her spreadsheet correspond to the invoices Benlida lists in the complaint as unpaid.

It is difficult to square that testimony with Benlida's CFO's testimony (which is consistent with Benlida's interrogatory answer) that it calculated which invoices were unpaid as of May 31, 2020.  If that is true, how is it possible that seven months later, Ms. Chen was still working on Benlida's accounting record for CTX, and only making the allocation that designated the December 29, 2018 invoice as unpaid in December 2020?  That remains completely unclear, and Benlida has (despite request) not produced a version of its spreadsheet as of May 31, 2020.

4

implications of that practice.  Because Benlida did not comply with its discovery obligations, CTX has been deprived of the opportunity to have its accounting experts study the issue and formulate opinions about it that can be used at trial.

Nor did Benlida disclose how it computed the figure of $2,115,927.57 for "price increases."  DE 26, ¶ 437.  CTX had propounded an interrogatory in April 2022 specifically asking how Benlida computed this figure.  *See* DE 185-1 at 5 (No. 3).  Benlida delayed answering until May 17, 2023.  *See* DE 192-1, ¶ 2.  Rather than disaggregating the figure for CTX only, as the interrogatory requested, Benlida answered with combined figures for CTX and CTX-HK.  Ex. 5 (Huang Depo.) at 47:2-48:2.  Ms. Huang testified that the figure derived from a spreadsheet it had sent to CTX in 2019 stating the amount was $3.3 million, but Benlida later discovered that its figure was overstated by one-third, and the correct number was $2.11 million. *Id*. at 51:16-25.  Benlida never revealed that error until it served its interrogatory answer on May 17, 2023.  *See id.* at 52:1-6.  While CTX was able to locate that spreadsheet during Ms. Huang's deposition, with some difficulty, *see id.* at 106:4-108:25, 129:14-135:12, 140:8-141:1, CTX remains in the dark about how Benlida computed the reduction from $3.3 million to $2.11 million.

The rules provide for a sanction where a party fails to make required disclosures and to supplement them: "the party is not allowed to use [the undisclosed] information … at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The Court should impose that evidentiary sanction here.  First, there is no justification for Benlida's failure to comply with this basic disclosure obligation.  Indeed, when Benlida may have had a last-gasp opportunity to proffer one, in response to CTX's summary-judgment motion, it passed.  *See* DE

193 at 7.  The unjustified omission appears to have been deliberate[3] because, during the course of the parties' business dealings before this lawsuit, Benlida *knew* that even though CTX expected Benlida to apply its payments on invoices in the manner specified on the monthly payment details CTX sent to Benlida, Benlida was nonetheless secretly applying the funds in a vastly different manner.  *See* Ex. 5 (Huang Depo.) at 253:6-254:3, 324:11-325:14, 326:5-327:3; Ex. 3 (Wu Depo.) at 69:2-16.

Second, the non-disclosure has not been harmless, for the reasons discussed above.[4]  Had Benlida timely disclosed its computation methodologies, CTX could have used the discovery process to explore it and its forensic accounting experts to address it.  This is precisely the kind of deprivation that has recently been recognized as harmful under Rule 37 by Judge Altman and the Eleventh Circuit.  *See Vital Pharms., Inc. v. Monster Energy Co.*, No. 19-60809-CIV-ALTMAN/Hunt, 2020 WL 13513442, at *2 (S.D. Fla. May 19, 2020) ("Because the Plaintiff … failed to disclose its damages computation, the Defendants are in the unenviable position of having to guess at … the methodology the Plaintiff will use for computing … damages.  Worse, the Defendants had no opportunity to test the Plaintiff's theory in discovery—by, for example, requesting relevant evidence, developing targeting expert testimony, or subjecting the Plaintiff's theory to scrutiny."), *aff'd*, *Vital Pharms., Inc. v. Monster Energy Co.*, No. 21-13264, 2022 WL 3083273, at *3-4 (11th Cir. Aug. 3, 2022).[5]

---

[3] Not by counsel, but by Benlida, whom we presume was aware of its disclosure obligations.

[4] The Court has discretion to impose a sanction under Rule 37 even if it does not find Benlida's omission to have been unjustified or harmful.  *See Circuitronix LLC v. Kinwong Electronic (Hong Kong) Co. Ltd.,* 993 F.3d 1299, 1308 (11th Cir. 2021).

[5] *See also Circuitronix*, 993 F.3d at 1308 (affirming exclusion of damages for lost profits in breach of contract claim for failure to disclose a damages computation); *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221–22 (11th Cir. 2010) (affirming exclusion of damages evidence

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

Accordingly, the Court should preclude Benlida from introducing evidence or arguing about its computation of its claimed damages beyond the rudimentary numbers it pled in its Third Amended Complaint.  The only exception should be a reduction in its claim by the amounts which it expressly represented in a recent submission "are withdrawn."  DE 188 at 11 n.8.[6]

### 2.  Debts CTX-HK Allegedly Owes to Benlida

Benlida has sued one company, Circuitronix, LLC ("CTX"), yet its complaint seeks damages for alleged non-payment of numerous invoices sent to a different company, Circuitronix (Hong Kong) Ltd. ("CTX-HK").  *See* Ex. 5 (Huang Depo.) at 26:13-27:7 (acknowledging they are different companies).  As CTX has explained in detail in its motion for summary judgment, Benlida never pled any theory by which CTX could be held legally responsible for debts of CTX-HK; indeed, the complaint does not even *mention* CTX-HK at all.  *See* DE 184-1 at 4. Benlida has since sought to rely on two unpled theories:  agency and alter ego.  DE 188 at 2, 4, 6-10.  Benlida should be estopped from doing so because it failed to plead these theories.

---

due to Plaintiff's failure to disclose a computation of those damages); *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 905 (11th Cir. 2013) (same); *Ctr. for Indiv. Rights v. Chevaldina*, No. 16-cv-20905-EGT, 2018 WL 2432109, at *10-11 (S.D. Fla. May 30, 2018) (precluding a party from introducing "any evidence of damages" under Rule 37 based on her "fail[ure] to timely disclose here computations for actual damages"); *Boldstar Tech., LLC v. Home Depot USA, Inc.*, No. 07-80435-CIV, 2008 WL 11320010, at *2 (S.D. Fla. Feb. 28, 2008) (stating "parties must perform 'some analysis' and cannot rely on general statements" to comply with their Rule 26 obligations) (citation omitted).

[6] Benlida stated that paragraph 13 of its complaint, which claimed $34,608.09 was unpaid on an invoice to CTX (DE 26, ¶13), should be reduced to $13,548.66, and that Benlida's claims directed to the first three invoices to Circuitronix (Hong Kong) Ltd. ("CTX-HK") "are withdrawn."  DE 188 at 11 n.8 (citing TAC, ¶¶ 261, 262, 263).  The amounts Benlida had claimed on those three invoices are $96,396.08, $82,678.18, and $30,611.09, respectively.  *See* DE 26, ¶¶ 261, 262, 263.

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

Because CTX has briefed this precise argument in detail in its summary-judgment papers, it respectfully refers the Court to that discussion. *See* DE 184-1 at 7-8; DE 193 at 1-4.

Beyond the pleading deficiency, Benlida's reliance on a 2014 "Business Authorization" letter signed by CTX's CEO, Rishi Kukreja, cannot support an agency theory. As a matter of law, whatever the scope of the promise made in the 2014 document, it was superseded by a 2016 contract between the parties, which contains an integration clause that obviates any prior agreements (other than the 2012 Manufacturing Agreement). *See* DE 177-1 (2016 Letter Agreement) at 3, ¶ 6; DE 184-1 at 9-11 (explaining the effect of the integration clause); DE 193 at 4-5 (same).

Without any legal basis in the case to make evidence or argument about CTX-HK's debts to Benlida relevant to the claims Benlida has asserted against CTX, that subject should be excluded. *See* Fed. R. Evid. 401, 403. That prohibition would extend to a number of documents Benlida may seek to introduce, such as (a) invoices it sent to CTX-HK and (b) two documents from CTX-HK's outside auditing firm stating debts owed to Benlida.[7] For the same reasons, Benlida should also not be permitted to introduce evidence or argue about two additional subjects: (c) that CTX and CTX-HK somehow operate as the same company, and (d) the 2014 Business Authorization authorized Benlida to look to CTX to pay CTX-HK's debts.

---

[7] As to one of the documents in category (b) there is a separate reason for its preclusion. During the deposition of CTX's accounting experts on July 31 and August 1, 2023, Benlida's counsel utilized two documents that Benlida had not produced during discovery, letters from CTX-HK's outside auditor firm, marked as deposition exhibits 162 and 163. Deposition exhibit 162 is dated August 18, 2022, but Benlida did not produce it during discovery, despite CTX having propounded a request for Benlida to produce "[a]ll documents … that Benlida may use to support its claims or defenses." DE 192-3 at 6 (No. 1). The fact-discovery period ended on June 8, 2023. DE 153 at 1. On June 20, 2023, Benlida served CTX with its Local Rule 26.1(e)(7) notice of completion of production. Because Benlida neglected to produce the August 18, 2022 document during discovery, it should be prohibited from using or referring to it at trial.

### 3.   Debts Barred by the Statute of Limitations

CTX has been able to discern that a substantial portion of the amount Benlida is suing for is barred by the applicable statutes of limitations.[8]  CTX has asserted a statute of limitations defense.  DE 34 at 4.  The limitations period for a breach of a written contract is five years and for account stated, four years.  §§ 95.11(2)(b), (3)(k), Fla. Stat.  Benlida filed suit on January 19, 2021.  DE 1.  Therefore, any debts that were due before January 19, 2017 fall outside the statute of limitations for Benlida's account stated claim (Count II), and any debts that were due before January 19, 2016 fall outside the statute of limitations for Benlida's breach of contract claim (Count I).

It is now apparent that Benlida has calculated its damages using a start date of the beginning of the parties' business relationship from at least as far back as 2012.  Benlida's CFO testified that Benlida calculated the claimed amounts owed by looking back even to 2011.  Ex. 3 (Wu Depo.) at 235:5-12.  Benlida's expert, Mr. Paulikens testified that "CTX-HK underpaid by $13.5 million."  Ex. 6 (Randall Paulikens Deposition Transcript) at 183:23-24.  He based that conclusion on the following chart in his report, which identifies a balance due of $13,492,823.58 by looking back to 2012:

---

[8] CTX was unable to discern what alleged debts fell outside the statutes of limitations at the time it filed its motion for summary judgment (on June 10, 2023).  *See* DE 178 at 15; *see also* DE 184-1 (version with ECF citations) at 15.  But after Benlida disclosed its rebuttal expert (on July 8, 2023) and CTX deposed him (on July 20, 2023), it became ascertainable.

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346                    www.podhurst.com

| Payment Detail Year | Total Invoices | Total Debit Memos | Total Payments | Balance Due/(Credit Balance) | Cummulative | Non rounded | 000s |
|---|---|---|---|---|---|---|---|
| 2012 | $ 50,844.68 | | $ - | $ 50,844.68 | 50,844.68 | | |
| 2013 | $ 663,041.04 | $ (39,550.39) | $ 242,827.24 | $ 380,663.41 | 431,508.10 | 7 | |
| 2014 | $ 2,127,957.19 | $ (15,911.64) | $ 776,987.44 | $ 1,335,058.11 | 1,766,566.20 | 4 | 3 |
| 2015 | $ 4,866,595.96 | | $ 3,959,983.86 | $ 906,612.10 | 2,673,178.30 | 5 | 15 |
| 2016 | $ 7,449,167.92 | | $ 5,572,718.50 | $ 1,876,449.42 | 4,549,627.72 | 5 | 23 |
| 2017 | $ 7,095,140.71 | | $ 4,405,490.00 | $ 2,689,650.71 | 7,239,278.43 | 1 | 24 |
| 2018 | $ 9,451,795.08 | | $ 4,555,000.00 | $ 4,896,795.08 | 12,136,073.51 | 0 | 22 |
| 2019.01-07 | $ 3,602,117.12 | | $ 2,245,367.06 | $ 1,356,750.07 | 13,492,823.58 | 7 | 8 |
| | $ 35,306,659.70 | $ (55,462.03) | $ 21,758,374.10 | $ 13,492,823.58 | | 29.00 | 95.00 |

Source

Benlida Shipment and Payment Details CTX-HK_2012-2019

Original creation date 11-1-2019

*See* Ex. 7 (Paulikens Report) at 8 (rectangles added); Ex. 6 (Paulikens Depo.) at 65:12-71:22

(discussing his reliance on this chart for the $13.5 million figure); *id*. at 183:14-24.  The source

of data for the amounts in this chart for invoices, payments, and balance due was Benlida's own

accounting department.[9]  As can be seen from the chart (and the one in the footnote below),

---

[9] The Paulikens report listed as his source for this chart an Excel spreadsheet entitled "Benlida Shipment and Payment Details CTX-HK_2012-2019."  *See* Ex. 6 (Paulikens Depo.) at 70:3-71:22 (identifying the native Excel spreadsheet which was marked as deposition exhibit 146).  Deposition exhibit 146 (attached as Ex. 8 hereto) contains this summary table:

| Payment Detail Year | Total Invoices | Total Payments | Balance Due/(Credit Balance) |
|---|---|---|---|
| 2012 | $ 50,844.68 | $ - | $ 50,844.68 |
| 2013 | $ 623,490.65 | $ 242,827.24 | $ 380,663.41 |
| 2014 | $ 2,112,045.55 | $ 776,987.44 | $ 1,335,058.11 |
| 2015 | $ 4,866,595.96 | $ 3,959,983.86 | $ 906,612.10 |
| 2016 | $ 7,449,167.92 | $ 5,572,718.50 | $ 1,876,449.42 |
| 2017 | $ 7,095,140.71 | $ 4,405,490.00 | $ 2,689,650.71 |
| 2018 | $ 9,451,795.08 | $ 4,555,000.00 | $ 4,896,795.08 |
| 2019.01-07 | $ 3,602,117.12 | $ 2,245,367.06 | $ 1,356,750.07 |
| | $ 35,251,197.67 | $ 21,758,374.10 | $ 13,492,823.58 |

That table was prepared by Benlida's accounting department in 2019 and sent to CTX contemporaneously.  *See* Ex. 9 (deposition exhibit 87 (email showing first attachment as "Benlida Shipment and Payment Details CTX-HK_2012-2019.xlsx")).  The email states, "[p]lease … see attachment 'Benlida Shipment and Payment Details CTX-HK_2012-2019' *for our records* of the transactions between Benlida and CTX-HK."  *Id*. (emphasis added).  Benlida's

10

Podhurst Orseck, P.A.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Benlida has counted the balances it claims CTX-HK owes it from years *before* the statutes of limitations.

Drawing directly from that source, the claimed debts that were due outside the statutes of limitations can be calculated as follows:

| Year | Balance Due ($) | | |
|------|----------------|---|---|
| 2012 | 50,844.68 | | |
| 2013 | 380,663.41 | | |
| 2014 | 1,335,058.11 | | |
| 2015 | 906,612.10 | 2012-2015 (outside 4-year SOL)  => | 2,673,178.30 |
| 2016 | 1,876,449.42 | 2012-2016 (outside 5-year SOL)  => | 4,549,627.72 |

In other words, Benlida is relying on $4,549,627 of debts that became due outside the statute of limitations for its account stated claim and $2,673,178 of debts that became due outside the statute of limitations for its breach of contract claim.

Applying the bar of the statutes of limitations to Benlida's claims must take into account the way in which Benlida designated which invoices in the complaint are unpaid.  Benlida used a commingled-FIFO accounting methodology, in which it combined the debts to and payments received from CTX and CTX-HK to allocate payments from both companies to the combined claimed debt total.[10]  Then, using its commingled-FIFO methodology, it designated the invoices chronologically (after the ones that had been fully paid) as "unpaid" for purposes of this lawsuit. *See* DE 177-1 at 66 (Ans. to Interrog. No. 1).  In other words, the sued-upon invoices are only "unpaid" because Benlida applied the money CTX (or CTX-HK) had paid towards them to earlier invoices Benlida had issued to either company.  Therefore, to take the statutes of

---

bookkeeper, Ms. Chen, sent the email.  Ex. 4 (Chen Depo.) at 152:22-154:7 (adding, "my job was to do a comparison between our own records … and [CTX's] records").

[10] *See* Ex. 5 (Huang Depo.) at 248:11-22, 249:6-18; Ex. 3 (Wu Depo.) at 184:23-185:5, 186:4-15, 189:17-20, 193:4-7.

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

limitations into account, it is necessary to add up the stated values of the invoices in the complaint, in chronological order, until they approach, first, the amount barred by the four-year statute of limitations for a breach of contract claim ($2,673,178).[11]  CTX has added up those invoices in chronological order, and the affected (time-barred) invoices are paragraphs 13-36 (invoices to CTX) and paragraphs 261-282 (invoices to CTX-HK).  *See* Ex. 10 (CTX's "TAC Invoices Affected by SOL" Chart).[12]   The invoices that add up to that amount rely on debts that were due before that statute of limitations, so evidence and argument concerning those invoices should be excluded from trial on Benlida's breach of contract claim.

Similarly, the summation of the invoice amounts must continue up to the amount barred by the shorter four-year statute of limitations for an account stated claim ($4,549,627).  That extends the span of time-barred invoices for that claim to paragraphs 13-66 (invoices to CTX) and paragraphs 261-298 (invoices to CTX-HK).[13]   Since those invoices rely on debts that were due before that statute of limitations, evidence and argument concerning those invoices should be excluded from trial on Benlida's account stated claim.

### 4.  Records of CTX's Account That Benlida Did Not Produce During Discovery

CTX sought during discovery Benlida's records of CTX's account with the company.[14] Benlida did not produce any ledgers or spreadsheets showing that account until the final weeks

---

[11] If the Court grants CTX's motion for summary judgment and excludes CTX-HK invoices, then the summation should be done solely against invoices to CTX in the complaint, as to each cause of action (account stated and breach of contract).

[12] The total of those affected invoices is $2,623,608.96.

[13] The total of those affected invoices is $4,520,901.24.

[14] *See*, *e.g.*, Ex. 11 (1st Set of RFP), No. 11 ("All documents showing how Benlida allocated payments from CTX to specific invoices."); No. 14 ("All documents … regarding debts

of the discovery period, in late May 2023.  Benlida's CFO, "Roger" Wu, testified that Benlida maintained two sets of records of CTX's account, one separate for CTX, and one combined with CTX-HK.  Ex. 3 (Wu Depo.) at 212:1-6.   He testified that the segregated account records existed on a computer system called "Jindie."   The other, an Excel spreadsheet maintained by Ms. Chen, a bookkeeper in the Finance Department, which commingled CTX's account with that of CTX-HK, was produced on May 24, 2023.  When CTX pressed Benlida to produce historical records of CTX's account from the Jindie system, Benlida through counsel represented that they did not exist save for what had been extracted from time to time and transferred to continually updated spreadsheets and emails.  *See* Ex. 12 (Letter from R. Lerner to S. Rosenthal dated June 5, 2023) at 3.  Similarly, when Benlida sought historical versions of Ms. Chen's spreadsheet, Benlida demurred that none exist because the spreadsheet was updated on a rolling basis.  *Id.* at 1.

Consistent with Benlida's representations, and because CTX has been denied access to such records, Benlida should not be permitted to introduce any unproduced documents or testimony based on such documents concerning the status of CTX's account in Benlida's records.

### 5.  CTX's experts' testimony regarding "related party" status

During the deposition of CTX's accounting experts, Benlida's counsel repeatedly inquired about factors that might inform whether CTX and CTX-HK are "related parties" from an accounting perspective.[15]  CTX's experts did not include any opinion on this subject in their report—which was directed at CTX's counterclaim against Benlida only—and indeed deferred any analysis regarding non-parties, CTX-HK and ROK, to an anticipated rebuttal report that they

---

allegedly owed by CTX to Benlida, or debts owed by Benlida or ROK to CTX or CTX-HK."); No. 16 ("All documents … regarding payments received from CTX.").

[15] Parisi's and Mukamal's deposition transcripts are not yet available.  Counsel for CTX can supplement this filing with relevant pinpoint citations once the transcripts become available.

never had the opportunity to assemble because Benlida failed to disclose an initial report.  CTX's experts' testimony in response to this line of questioning should be excluded as not relevant under Rule 401 and/or likely to confuse or mislead the jury under Rule 403.

Because the factors that might inform whether corporate parties are "related" for *accounting* purposes are distinct from the *legal* factors pertinent to establishing a principal-agent relationship, alter ego status, or corporate control, the testimony is irrelevant to any of the claims or defenses Benlida might seek to make—specifically, that CTX-HK is CTX's agent or alter ego, *see* DE 188 at 2-13.  *See In re Seroquel Prod. Liab. Litig.*, No. 6:06MD1769-ORL-22DAB, 2009 WL 223140, at *5-6 (M.D. Fla. Jan. 30, 2009) (excluding evidence about foreign labeling and regulatory action related to a pharmaceutical drug because it had no relevance to the applicable warning standards in plaintiff's main case and, more specifically, the "legal standards applicable under Florida law") (citing *Deviner v. Electrolux Motor, AB,* 844 F.2d 769, 771 n.2, 773 (11th Cir. 1988)), *aff'd,* 601 F. Supp. 2d 1313 (M.D. Fla. 2009).

Additionally, such testimony—even if it is limited to the accounting context—is likely to confuse jurors and possibly even cause them to conflate the *legal* standards related to corporate relationship and control with those of the accounting industry.  Courts in this Circuit have excluded evidence in similar circumstances, where the proffered evidence is likely to cause confusion or mislead a jury because it speaks to a concept or principle in one context that is ostensibly similar but actually distinct from a specific legal concept or standard in the different context of the litigation.  *See, e.g.*, *id*; *Montgomery v. Brickell Place Condo. Assn, Inc.*, No. 11-24316-CIV, 2012 WL 1203837, at *1-2 (S.D. Fla. Apr. 11, 2012) (Goodman, J.) (excluding EEOC letter finding "reasonable cause" to believe discrimination occurred given that the EEOC's standard of proof on that finding was "less than … the standard necessary to prevail in a

14

civil trial, [and] the EEOC letter may sow confusion as to the proper burden of proof and mislead

the jury as to what weight it should give the EEOC letter"); *Aetna Cas. & Sur. Co. v. Gosdin*,

803 F.2d 1153, 1160 (11th Cir. 1986) (noting that "the different standards of proof between a

criminal prosecutorial decision and a civil case might mislead the jury"); *Rozier v. Ford Motor

Co.*, 573 F.2d 1332, 1347-48 (5th Cir. 1978) (excluding guilty plea where auto driver admitted

he "did cause the death of" plaintiff's husband due to the risk of confusion it would create with

the concepts of legal cause and duty in the context of the "second collision" doctrine which was

central to plaintiff's suit).

Testimony regarding "related party" status in the accounting context should be excluded

because, far from being "essential to proving [Benlida's] claim," it at best "is intended merely to

bolster" Benlida's argument that CTX-HK's transactions should be factored into any

determination of Benlida's damages in the case. *Brown v. Davis*, 656 F. App'x 920, 922 (11th

Cir. 2016) (explaining that testimony that is "intended merely to bolster a party's case is more

easily excluded under [Rule] 403 than testimony that forms a critical part of the case). That such

testimony would almost certainly be duplicative of other witness or documentation Benlida will

seek to introduce in an effort to show that CTX and CTX-HK are generally "related" provides

further support for exclusion. *See* Fed. R. Evid. 403 (providing for exclusion based on danger of

"needlessly presenting cumulative evidence" outweighing probative value of evidence); *Noel

Shows, Inc. v. U.S.*, 721 F.2d 327, 330 (11th Cir. 1983) (excluding evidence under Rule 403

because "its confusing and cumulative effect substantially outweighed its probative value" where

the appellant had sought to introduce it for the same proposition that multiple witnesses had

already testified to).

To avoid the risk that this irrelevant and potentially confusing testimony regarding "related party" status from CTX's experts "may be assigned talismanic significance in the eyes of lay jurors," *Frazier*, 387 F.3d at 1263, the Court should exclude their deposition answers in response to questioning regarding "related party" status in the accounting context and disallow similar questioning to elicit such testimony at trial.

### 6. Assertions Contradicting Benlida's Judicial Admissions

Based on Benlida's admission in its answer to CTX's counterclaim, Benlida should be precluded from arguing at trial that (a) CTX-HK was not made a party to the Manufacturing Agreement between Benlida and CTX in the 2016 Letter Agreement or (b) Benlida never instructed CTX to divert any payments for Benlida invoices to ROK.   The applicable allegations in the counterclaim and Benlida's answer thereto are:

| CTX's Counterclaim [DE 34] | Benlida's Answer [DE 43] |
|---|---|
| ¶ 3:  "The parties subsequently entered into a Letter Agreement, dated July 21, 2016, that added Circuitronix Hong Kong, Ltd. ("CTX-HK") as an additional party to the Manufacturing Agreement, among other things." | ¶ 3: "Admit." |
| ¶ 30:  "In some cases, Benlida has instructed CTX to make payments for Benlida invoices to its affiliate, ROK." | ¶ 30:  "Admit." |

Based upon the parties' Local Rule 7.1(a)(3) conferral, CTX understands that Benlida *does not contest* this aspect of CTX's motion.  For the sake of completeness, we note that these binding admissions would preclude Benlida from arguing or introducing evidence to the contrary.

> "The general rule is that a party is bound by the admissions in his pleadings." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177 (11th Cir. 2009) (citations and quotations omitted). "Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Id.* at 1178.

*Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, No. 18-21692-CIV, 2020 WL 564037, at *2 (S.D. Fla. Feb. 5, 2020) (Scola, J.).[16]

It also bears mention that Benlida took a contrary position with respect to its interpretation of the 2016 Letter Agreement in opposition to CTX's pending motion for summary judgment. There, Benlida argued that "CTX-HK has never been a party to the Manufacturing Agreement" (DE 188 at 12) and denied that the 2016 Letter Agreement added CTX-HK as a party to the Manufacturing Agreement (DE 189, ¶ 9). Those contentions are flatly inconsistent with Benlida's prior express admission, in response to CTX's counterclaim, that the Letter Agreement added CTX-HK as an additional party to the Manufacturing Agreement. *See* chart above. However, in connection with this motion in limine, CTX understands that Benlida now concedes that CTX-HK was made a party to the Manufacturing Agreement on July 21, 2016.

Thus, the Court should enter an order in limine precluding argument or evidence contradicting both of the uncontested averments in the chart above.

### 7. References to the Parties' Other Lawsuits or Alleged Litigiousness

The parties have agreed, through their conferral, that neither party should reference other lawsuits involving the other or the other's alleged litigiousness. This restriction finds support in the law.[17] The Court should include this two-way restriction in its order in limine.

---

[16] Further, Benlida separately admitted that the 2016 Letter Agreement added CTX as a party to the Manufacturing Agreement when CTX raised the admission from Benlida's answer to the counterclaim in CTX's opposition statement of material facts to *Benlida's* February 2022 motion for partial summary judgment. DE 56 at 4, ¶ 12. Benlida opted not to file a reply in support of its motion, or a reply statement of material facts contesting CTX's additional facts and instead *withdrew* its motion for partial summary judgment. DE 63. Benlida's failure to controvert the additional fact of Benlida's prior admission that the 2016 Letter Agreement added CTX-HK as a party to the Manufacturing Agreement was also binding. *See* S.D. Fla. Local R. 56.1(c).

[17] Such evidence is highly prejudicial and not probative to any of the parties' claims. *See* Fed. R. Evid. 403; *see also Hydentra HLP Int. Ltd. v. Luchian*, No. 1:15-CV-22134-UU, 2016 WL

**8.  The 2022 Settlement Agreement and CTX's Termination Thereof**

The parties have likewise agreed, through their conferral, that neither party should

reference their settlement agreement and its termination dated November 17, 2022.   The parties

agree to instruct their witnesses to refer to the stay of the case in lieu of the settlement or

termination to refer to events during the time period or work and analysis completed during the

time period between approximately June 2022 and April 2023, as necessary.  The parties'

agreement as to this restriction helps assure, among other things, that they will not run afoul of

Rule 408.  The Court should include this limitation in its order in limine.

**9.  Benlida's (or ROK's) Entire Print-Run of Invoices**

Benlida has advised CTX that it seeks to introduce its "entire print-run of invoices,"

meaning all of the invoices Benlida (and possibly also ROK) has ever issued to both CTX and

CTX-HK, which it wishes to use in support of its claim for account stated.  That print run, as

Benlida has represented to CTX, would extend back to 2012.  For several reasons, these

documents, as well as testimony and argument concerning them, should be prohibited, save for

the specific invoices Benlida issued *to CTX* which Benlida is claiming remain unpaid (that are

not time-barred debts).

---

5942525, at *2 (S.D. Fla. May 31, 2016) ("'[T]he charge of litigiousness is a serious one, likely
to result in undue prejudice against the party charged, unless the previous claims made by the
party are shown to have been fraudulent'") (quoting *Outley v. City of New York*, 837 F.2d 587,
592 (2d Cir. 1988)); *Energy Smart Indus., LLC v. Morning View Hotels-Beverly Hills, LLC*, No.
14-CV-23284-UU, 2015 WL 11233085, at *1 (S.D. Fla. June 4, 2015) (excluding evidence of
prior similar lawsuits as irrelevant under Rule 402 since defendant seeking to use the evidence
"d[id] nothing to show that [plaintiff's] actions [we]re baseless" or that "[p]laintiff breached its
contract with [d]efendant"); *Bui v. Minority Mobile Sys., Inc.*, 2016 WL 6518804, at *1 (S.D.
Fla. 2016) (excluding prior employee lawsuits, noting that "the effect of raising a prior employee
lawsuit would effectively create a 'mini-trial' about the merits of the previous case and other
'collateral issues' that may not relate to the present case).

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

*First*, the invoices to CTX-HK should be excluded for the reasons stated in Section 2, *supra*.

*Second*, any invoices to CTX beyond those which Benlida is claiming remain unpaid are irrelevant and would only potentially confuse the jury concerning the amount of money at issue on Benlida's claims. Benlida itself previously acknowledged that "each allegation as to each unpaid invoice could itself suffice as a properly pled claim for breach of contract." DE 28 at 10. The same is no doubt true for a claim of account stated with respect to a particular invoice.[18] And the Court has recognized that "the invoices identified in Benlida's complaint … comprise the entire subject matter of this action." DE 31 (Order) at 4 n.2.[19] Those invoices to CTX span one-year: December 29, 2018 through December 18, 2019. *See* DE 26, ¶¶ 13, 259. Benlida should not be permitted to go beyond that and introduce hundreds if not thousands of invoices dating back to 2012.

*Third*, if Benlida also seeks to introduce invoices from ROK, that should also be precluded because ROK is not a party to this case, no ROK invoices are being sued upon, and as the Court observed early in the case, Benlida has "explicit[ly] acknowledge[ed] that 'all of the moneys owned by Circuitronix are owed to Benlida, not ROK.'" DE 31 (Order) at 3, n.1 (quoting DE 29-3 (Decl. of Juang Hanchao), ¶ 4).

---

[18] Insofar as Benlida might respond that it needs the older invoices in evidence to show the jury how it calculated that the invoices itemized in the complaint are the ones that allegedly went unpaid, based on Benlida's accounting methodology, that justification falls short because Benlida failed to disclose its commingled-FIFO methodology and should be barred from relying upon it as a result. *See* DE 193 at 7-8 (summary-judgment papers arguing that "Benlida should be barred from relying on a commingled-FIFO methodology as a sanction") (capitalization altered); DE 184-1 at 13-15 (same).

[19] The Court said that in its order on a motion to dismiss, before CTX filed its counterclaim (DE 34), which expanded the subject matter of the action. But the Court's observation remains no less true concerning the subject matter of Benlida's *claims*.

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

## **CONCLUSION**

For all of these reasons, CTX respectfully requests that the Court enter an Order precluding Benlida from introducing evidence or arguing about the following categories of evidence:

1. Any computation of Benlida's damages beyond that pled in the complaint, including documents and testimony regarding how Benlida was applying CTX's payments to outstanding invoices;

2. Debts CTX-HK allegedly owes to Benlida, including through:

   (a) invoices Benlida issued to CTX-HK,

   (b) two documents from CTX-HK's outside auditing firm referencing debts owed to Benlida,

   (c) testimony or arguments that CTX and CTX-HK somehow operate as the same company, and

   (d) the 2014 Business Authorization and any argument it authorized Benlida to look to CTX to pay CTX-HK's debts;

3. Debts barred by the statute of limitations, *i.e.*,

   (a) with respect to the breach of contract claim (Count I), invoices to CTX listed in paragraphs 13-36 of the TAC and invoices to CTX-HK listed in and paragraphs 261-282 of the TAC; and

   (b) with respect to the account stated claim (Count II), invoices to CTX listed in paragraphs 13-66 of the TAC and invoices to CTX-HK listed in and paragraphs 261-298 of the TAC;

4. Records of CTX's account that Benlida did not produce during discovery;

5. CTX's experts' deposition testimony regarding "related party" status or attempts to elicit the same testimony from them at trial;

6. Assertions or testimony contradicting Benlida's judicial admissions;

7. References to other lawsuits involving either of the parties or their alleged litigiousness;

8. The 2022 settlement agreement and CTX's termination thereof; and

9. Benlida's (or ROK's) entire print-run of invoices.

**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

**REQUEST FOR HEARING UNDER RULE 7.1(b)(2)**

CTX hereby requests a hearing on this motion given the highly fact-intensive nature of some of the categories of evidence sought to be excluded.  The Court may benefit from a colloquy with counsel regarding the more fact-based categories of evidence and pertinent underlying documents.  CTX estimates one hour—or around 10 minutes per disputed category—will be sufficient for the parties to address the motion.

**CERTIFICATE OF RULE 7.1(a)(3) CONFERENCE**

Undersigned counsel for CTX has conferred with counsel for Benlida in a good faith effort to resolve the issues raised in the motion.  The parties were able to reach agreement on several issues, as discussed in the motion above.  As to the remaining issues, the parties were unable to resolve their conflicting positions.

Dated: August 8, 2023

Respectfully submitted,

PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800

*/s/  Stephen F. Rosenthal*
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew P. Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com

*Counsel for Circuitronix, LLC*

Podhurst Orseck, P.A.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on August 8, 2023 as filed with the Clerk of the Court using CM/ECF.

By: /s/ *Stephen F. Rosenthal*
Stephen F. Rosenthal

**Podhurst Orseck, P.A.**
One S.E. 3ʳᵈ Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346                                    www.podhurst.com