**EXHIBIT 7**

**JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD**

**v.**

**CIRCUTRONIX, LLC**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRCT OF FLORIDA

Civil Action No 21-60125-Civ-Scola/Snow

PLAINTIFF'S RESPONSE REPORT

July 8, 2023



36 East Main St
Somerville, New Jersey 08876
Tel: (908) 704-1400
www.santye.com

**JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD**
v.
**CIRCUTRONIX, LLC**

## <u>Table of Contents</u>

|  | <u>**Tab**</u> |
|---|---|
| Independent Forensic Accountants' Report Letter | A |
| Assumptions and Limiting Conditions | B |
| Sources of Information Relied Upon | C |
| Curriculum Vitae-<br>      Randall M. Paulikens, CPA/ABV/CFF/CITP | D |

**Exhibits**

| | |
|---|---|
| Excerpts "2012-2019 reconciliation analysis – 2019.11.15 CCT" | Exhibit -1 |
| Excerpts "Benlida Payment Details CTX-US 2012-2021 v5" | Exhibit - 2 |
| Excerpts "Benlida Shipment and Payment Details CTX-HK 2012-2019" | Exhibit - 3 |
| Excerpts "Benlida Payment Details CTX-HK 2015-2019_v2.1" | Exhibit - 4 |
| Excerpts "Benlida Payment Details CTX-US 2012-2021_v5 (up to 2019 only" | Exhibit -5 |
| Excerpts "Benlida Payment Details CTX-US 2015-2019_v2.1" | Exhibit - 6 |

# Tab - A



July 7, 2023

**Transmitted Via Email**

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.
Mazzola Lindstrom, LLP
1350 Avenue of the Americas, Second Floor
New York, NY 10019

Re:     Jiangmen Benlida Printed Circuit Co, Ltd et al  ("Plaintiff") v Circuitronix, LLC, et al.
         ("Defendant")

Dear Counselors:

You have engaged A. J. Santye & Co. P.A. ("Santye") as an expert in the above matter.  As part of our retention, we have prepared this response report to the expert report prepared by Barry Mukamal, CPA/PFS/ABV/CFE/CFF/CIRA/CGMA and Mark Parisi, CPA/CFE/CIRA/CTCE. Until January 31, 2023, both were employed at Kapila/Mukamal CPAs, ("KM").  Mr. Parisi has since become employed by Citrin Cooperman. For purposes of identification, we will refer to the report as the "KM Report" and the individual authors by their last names (Mukamal and Parisi, respectively).

As we will discuss in the following pages, it is not what is in the KM Report that should be instructive to the trier of fact – it is what is not in the KM Report that actually informs the reader of the order of magnitude of the amount being sought by the Plaintiff Benlida and why.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

The limitations of the KM report are properly spelled out on page 3 of the KM Report.  In short, the KM Report simply reconciled the claims of the litigants based solely on reconciliations provided by CTX and Benlida.  The KM Report also "examined and summarized calculations prepared by CTX with respect to lead time penalties owed from Benlida".[1]

Further, the KM Report emphasized that it did not perform any other analysis of the underlying claims. *"We relied on the records of CTX as produced, the CTX Recon, and the Belinda Recon, and did not perform any additional procedures to provide assurance as to their reliability beyond the procedures enumerated herein."* Buried in footnote 4 on page 3 and again in footnote 14 on page 7 are the only references that there may be more to the issues between the litigants.

The KM Report contains 25 pages including the cover page, table of contents and 10 pages of the preparers' CVs and testimony experience. The majority of pages 4 and 5 contain a summary of the same information contained in the 10 pages of the CVs of the two preparers. In short, out of the entire 25 pages, less than half (11 pages) contain their analysis and findings. None of their calculations were attached to enable us to validate KM's work. We have attached excerpts of the files in the exhibits section of this report to provide a reference to the tables included in this response.

We reprint a copy of the penultimate conclusion from page 14 of the KM Report.

| Table 7: Summary of Payable Reconciliation between CTX and Benlida | | | | | |
|---|---|---|---|---|---|
| | | Per CTX | Per Benlida | Difference per KM Report | Difference With Math Correction |
| **Reconciliation Period Through July 2019** | | | | | |
| Payments | Table 2 | $    67,623,456 | $  67,636,070 | (12,614) | $      (12,614) |
| Invoices | Table 3 | (65,176,316) | (65,839,234) | 662,918 | 662,918 |
| Debit Memos | Table 5 | 2,313,707 | 1,843,314 | 97,264 | 470,393 |
| | | $    4,760,847 | $    3,640,150 | $    747,568 | $    1,120,697 |
| | | | | | |
| **Lead Time Penalties after January 2016** | | | | | |
| Lead Time Pen | Table 6 | 3,107,778 | N/A | | |
| | | | | | |
| **Owed by Benlida to CTX** | | $    7,868,625 | | | |
| | | | | | |

There is an unexplained math error on the Debit Memo line that we cannot trace.

---

[1] KM Report page 3, paragraph one.

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

As mentioned previously, we take issue not as much with what is included in the KM Report but what is not included in the KM Report. Broadly speaking, Benlida and Circuitronix have been doing business together since 2012 and as I understand from attending portions of a hearing in Miami on Friday January 13, 2023, the key members of the litigants have a long relationship outside of business as neither side denied a level of familiarity.

This fact, as well as the actions of all sides, needs to be considered to fully understand the economic relationship between the parties and where the state of the ultimate economic relationship lies.

**The Dispute**

The dispute between the parties is over payments and compensation the Plaintiff is claiming it is owed by the Defendant pursuant to a multi-year contract and relationship where the Plaintiff manufactures various printed circuit boards for the Defendant.  The Defendant is claiming that there are offsets to the amounts being owed due to contractually mandated penalties for delivery delays and other quality issues. Neither KM nor A.J. Santye & Co. were engaged to opine on the validity or the appropriateness of those offsets.

We have been provided with KM's "documents relied upon" as referenced in KM's Report as well as emails and other information as both sides attempted to reconcile the amounts owed and come to a resolution outside of litigation[2]. Understanding that settlement talks are not subject to discovery, the business records exchanged are subject to discovery to our understanding as accountants. By way of illustration, detailed lists of invoices and payments that were exchanged as part of the reconciliation process are business records. Those records provide useful insight as to the payment status of the business transactions between the parties.

It is clear from the litigants' multiple communications and exchanges of information that neither side maintained a set of records that agreed to the other. In each round of information exchange, invoices and payments that were not listed on one side's books were communicated to the other.

---

[2] Our list of "Information Relied Upon" relied upon is included at Tab C

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

In general, the new information was accepted by the other side as the parties attempted to determine the actual amounts due.

As a result of the confusing production of information, it is difficult for either side to "know" which source is the final word. (Since the KM Report did not produce any information or analysis with regard to CTX-HK or ROK, the KM Report is not a source as to the entire economic picture either.) Further, given the size of the litigants and the fact that they routinely transact business on multiple continents, whether directly or indirectly, it is difficult to appreciate why there was so much information missing from each other's records.

The significant disparity in information, and the implication that, any one source is better is, best illustrated by an email from Rishi Kukreja on November 11, 2012 at 10:28 PM.  That email claims that CTX-US overpaid Benlida by $5,314,868 and that CTX-HK overpaid by $2,179,988.74. (As we will show information from KM and others show that CTX-HK owes about $13 million. We understand that it is Benlida's position that CTX-US is responsible for orders placed by CTX-HK, and that it is CTX-US's position that it is not responsible for orders placed by CTX-HK, but that is beyond the purview of an accountant). In response to that email, an analysis was created by the Benlida accounting department. That analysis was communicated in an Excel file "2012-2019 reconciliation analysis-2019.11.15CCT".  According to the file creation information contained in the Excel workbook, that file was first created November 3, 2019.  The dating of November 15, 2019 suggests the work was completed and communicated at approximately the same date. The file contained approximately 33 pages of information comparing various sources of information between the litigants. Many of the largest discrepancies were from the earlier years of the relationships. We have reprinted this analysis at Exhibit 1[3]. The summary page in reprinted below:

---

[3] Note that the name of the file was modified to show "working copy July 2023" since a certain amount of reformatting the pages was necessary to allow them to be included in this report.

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

| | Reconciliation analysis report 2012-2019 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 币种：美元 | |
| | Transactions between BLD and Circuitronix US | | | | Transactions between ROK and Circuitronix US/HK | | | | |
| Year | CTX missing inv. | inv. Discrepancy (BLD-CTX) | Payment Discrepancy (CTX-BLD) | DM records Discrepancy | CTX missing inv. | inv. Discrepancy (ROK-CTX) | Payment Discrepancy (CTX-ROK) | DM records Discrepancy | Discount Discrepancy (CTX-ROK) |
| 2012 | 13,716.50 | (4,864.51) | | 4,460.27 | 8,536.08 | (46,723.30) | | 27,486.09 | |
| 2013 | 90,699.84 | (84,538.65) | | 75,202.21 | 1,973.37 | 0.00 | 27,105.00 | 711,435.59 | 63,478.46 |
| 2014 | 139,828.91 | (38,579.02) | 1,853,799.47 | 213,364.36 | 117,356.58 | (145,948.56) | 60,000.00 | 391,189.77 | |
| 2015 | | 246,302.49 | 231,126.05 | 33,337.40 | 19,436.95 | 110,056.82 | | 179,866.33 | |
| 2016 | | 159,929.31 | | 116,743.74 | 478.80 | 313,882.77 | | 31,756.74 | |
| 2017 | | 116,453.22 | 385,000.00 | 37,041.10 | | 124,089.05 | 142,000.00 | 23,778.12 | |
| 2018 | | 24,230.02 | | 6,681.01 | | 853.75 | 200,000.00 | 5,889.20 | |
| 2019.01-2019.07 | 0.00 | | 100,000.00 | 108.64 | | 0.00 | | | |
| 合计 | 244,245.25 | 418,932.86 | 2,569,925.52 | 486,938.73 | 139,245.70 | 411,469.91 | 382,381.70 | 1,371,401.84 | 63,478.46 |

The KM Report did not include the details of their analysis in their report; rather, they included summaries within the body of their report.  As a result, we are unable to recreate the KM Report's results and are not in a position to fully agree or disagree with portions of their findings. We reprint the penultimate conclusion from the KM Report from page 3 below:

| Table 7: Summary of Payable Reconciliation between CTX and Benlida | | | | | |
|---|---|---|---|---|---|
| | | Per CTX | Per Benlida | Difference per KM Report | Difference With Math Correction |
| **Reconciliation Period Through July 2019** | | | | | |
| Payments | Table 2 | $  67,623,456 | $  67,636,070 | (12,614) | $  (12,614) |
| Invoices | Table 3 | (65,176,316) | (65,839,234) | 662,918 | 662,918 |
| Debit Memos | Table 5 | 2,313,707 | 1,843,314 | 97,264 | 470,393 |
| | | $  4,760,847 | $  3,640,150 | $  747,568 | $  1,120,697 |
| | | | | | |
| **Lead Time Penalties after January 2016** | | | | | |
| Lead Time Pen | Table 6 | 3,107,778 | N/A | | |
| | | | | | |
| **Owed by Benlida to CTX** | | $  7,868,625 | | | |

While we have not been able to recreate exactly the KM Report's results, overall, with regard to CTX-US and Benlida, there is a certain amount of consistency. As is made clear in footnote 14 of the KM Report, KM only included the CTX-US numbers and not the CTX-HK and ROK numbers. Without the details of the KM Report's analysis, we cannot opine if we agree with KM's analysis. However, given the multitude of data sources and the ongoing work by the respective litigants to determine exactly what is owed, for purposes of this analysis, we will not take issue with the "Reconciliation Period" portion of the KM Report's conclusion for CTX-US.

The KM Report does not include any discussion of how common, (or uncommon), it is for a customer to overpay on its account to the level concluded to in the KM Report.   According to the

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

KM Report and the table on the next page, CTX-US has maintained "prepaid balance" approaching three to six month months of invoices.  The author and signer of this report for A.J. Santye & Co has not seen anything like this in 37 years of public accounting. KM was silent on this issue.

The table below is reprinted (with formatting changes and additional analysis from us) from the KM Report's documents. Broadly, this document, which is noted as version 5 in the file name, meshes with the KM Report. Again, the KM Report did not provide their actual analysis but we note that there is a level of congruence.

| Source Benlida Payment Details CTX-US_2012-2021 v5 | | | | | | Payment Type | |
|---|---|---|---|---|---|---|---|
| Payment Detail Year | Total Invoices | Total Debit Memos | Total Payments | Balance Due/(Credit Balance) | Cummulative | Non rounded | 000s |
| 2012 | $  1,168,214.09 | $   (13,087.96) | $   (1,052,134.79) | $   102,991.34 | $   102,991.34 | 6 | 1 |
| 2013 | $  3,477,155.95 | $  (169,253.24) | $   (3,455,959.35) | $   (148,056.64) | $   (45,065.30) | 3 | 7 |
| 2014 | $  6,887,622.54 | $   (80,930.99) | $   (7,858,569.80) | $   (1,051,878.25) | $   (1,096,943.55) | 4 | 16 |
| 2015 | $  9,293,546.49 | $  (855,066.49) | $   (8,953,676.45) | $   (515,196.45) | $   (1,612,140.00) | 4 | 25 |
| 2016 | $  8,754,631.41 | $  (710,083.81) | $   (7,868,054.90) | $   176,492.70 | $   (1,435,647.30) | 4 | 23 |
| 2017 | $  9,197,773.44 | $   (61,717.14) | $  (12,722,992.87) | $   (3,586,936.57) | $   (5,022,583.87) | 1 | 44 |
| 2018 | $ 16,683,255.06 | $  (836,614.95) | $  (17,080,547.82) | $   (1,233,907.71) | $   (6,256,491.58) | 1 | 51 |
| 2019 | $ 11,006,004.23 | $   (28,345.44) | $   (9,605,676.58) | $   1,372,018.21 | $   (4,884,473.37) | 14 | 26 |
| 2020 | $  2,541,885.39 | $    (1,840.85) | $   (3,214,290.89) | $   (674,246.35) | $   (5,558,719.73) | 29 | 2 |
| 2021 Ends February | $   253,000.12 | $       - | $   (327,954.90) | $   (74,954.78) | $   (5,633,674.51) | 12 | 0 |
| | $ 69,263,124.71 | $ (2,756,940.87) | $  (72,139,858.35) | $   (5,633,674.51) | | 78 | 195 |

NOTE- The years 2012 to 2013 invoices and payments are listed on a Fiscal year basis ending in October. Beginning in 2014 the invoices are listed on a Fiscal year basis ending in September while the payments are listed on a calendar year basis

The live file which came from KM, includes the details of the payments.  We note that there were a total of 273 payments listed.   Of those payments, 195 were in even thousands of dollars. (Example $250,000 at a time.)  We include the summaries of each year at Exhibit-2.  As shown in the table above, through 2018, substantially all of the payments were in even amounts. In fact, it was not until the August 8, 2019 payment that the payments ceased being rounded even amounts and the payments were made in very specific amounts (dollars and cents).

This is noteworthy. Such payments and the frequency of them are consistent with ongoing "payments on account" and not specific payments on invoices. Ordinarily it is customary to apply "payments on account" to the oldest invoice first, unless, in a timely manner, specific invoices are identified.  We understand that this is an area of dispute in this matter.  We also note that much of the Excel files were created at around this time when the parties were trying to reconcile the amounts owed to one another which was in the latter half of 2019.  It is also in the latter half of

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

2019 that the payment pattern of even thousands amounts changes for payments received by both Benlida and ROK.

KM did not discuss this issue even though the data was available to them.

This impacts the starting point of when to start the analysis. Since CTX-US payments were almost entirely consistent with payments on account, an arbitrary start date that does not consider the running balance is misleading. We understand that this is also a dispute in the matter and that there are statute of limitation issues which are legal in nature.

We will return to this issue, later in this report. KM did not discuss it at all.

**What is not in the KM Report**

As stated earlier, there are two Benlida entities (Benlida and ROK) and there are two Circuitronix entities (CTX-US and CTX-HK).

We reprint a portion of a spreadsheet that was included in the KM Reports documents relied upon. This shows the information that was not included in the KM Report as it related to the invoicing and payments made to ROK. We include the summary page and the annual summaries at Exhibit -3.

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

| Source Benlida Shipment and Payment Details CTX-HK_2012-2019 | | | | | | Payment Type | |
|---|---|---|---|---|---|---|---|
| Payment Detail Year | Total Invoices | Total Debit Memos | Total Payments | Balance Due/(Credit Balance) | Cummulative | Non rounded | 000s |
| 2012 | $ 50,844.68 | | $ - | $ 50,844.68 | $ 50,844.68 | | |
| 2013 | $ 663,041.04 | $ (39,550.39) | $ 242,827.24 | $ 380,663.41 | $ 431,508.10 | 7 | |
| 2014 | $ 2,127,957.19 | $ (15,911.64) | $ 776,987.44 | $ 1,335,058.11 | $ 1,766,566.20 | 4 | 3 |
| 2015 | $ 4,866,595.96 | | $ 3,959,983.86 | $ 906,612.10 | $ 2,673,178.30 | 5 | 15 |
| 2016 | $ 7,449,167.92 | | $ 5,572,718.50 | $ 1,876,449.42 | $ 4,549,627.72 | 5 | 23 |
| 2017 | $ 7,095,140.71 | | $ 4,405,490.00 | $ 2,689,650.71 | $ 7,239,278.43 | 1 | 24 |
| 2018 | $ 9,451,795.08 | | $ 4,555,000.00 | $ 4,896,795.08 | $ 12,136,073.51 | 0 | 22 |
| 2019.01-07 | $ 3,602,117.12 | | $ 2,245,367.06 | $ 1,356,750.07 | $ 13,492,823.58 | 7 | 8 |
| | $ 35,306,659.70 | $ (55,462.03) | $ 21,758,374.10 | $ 13,492,823.58 | | 29.00 | 95.00 |
| Source | | | | | | | |
| Benlida Shipment and Payment Details CTX-HK_2012-2019 | | | | | | | |
| Original creation date 11-1-2019 | | | | | | | |

As shown previously, CTX-US's and Belinda's data indicate that CTX overpaid Benlida by approximately $5.4 million (depending upon the data source). This is covered extensively by KM.

CTX has underpaid the Benlida Group by $13.5 million. This has been studiously not covered by KM. Thus, even if the offsets claimed by CTX are ultimately proved at trial and accounted for, the CTX group would still owe the Benlida Group as much as $8.0 million, again depending upon the data source.

We also note that similar to CTX-US and Benlida, the payments reflected for CTX-HK and Benlida/ROK are largely in even thousands until August 2019 when the parties apparently began to try to reconcile their accounts.

KM did not comment on this entire issue except to say they would comment on this issue after a potential response report. Why the CTX-HK/Benlida/ROK issue, which is significant, and as discussed later, is intentionally left out of the KM Report, will potentially be made after a response report, is interesting.  Ignoring the CTX-HK/Benlida/ROK issue, as KM does, makes the entire conclusion of the KM Report difficult to accept, as it is predicated upon an untenable theory that the two parties have such an inverse relationship to the norm.  We will discuss this later in this report.

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

**Illustration of the Statue of Limitation Issue**

We recognize that there is a dispute between the parties and that the Florida statute of limitations for breach of contract is five years.  We understand that that would include the period from January 2016 forward, as measured from the date of the filing of the complaint.  In fact, the KM Report appears to begin its analysis with a look back to 2012.

This was not discussed in the KM Report.  However, within the KM files produced to us, there were worksheets that illustrate the amounts due for the period from 2015 to through approximately July 2019. These documents are from the KM files. Included at Exhibit 3 and Exhibit 4 are excerpts from two files- "Benlida Payments Details CTX-HK_2015 to 2019 v2.1" (Exhibit 3) and Benlida Payments Details CTS-US_2015-2019_v2.1" (Exhibit 4).

For the periods shown, CTX owes Benlida/ROK approximately $8,843,225 and Benlida owes CTX approximately $5,723,591.   As shown in the files relied upon by KM, Benlida is owed approximately a net amount of $3,119,634 as shown on the next page.

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

| Source: Benlida Shipment and Payment Details CTX-HK_2015-2019 v2.1 | | | | |
|---|---|---|---|---|
| Payment Detail Year | Total Invoices | Total Debit Memos | Total Payments | Balance Due/(Credit Balance) |
| 2015 | $  4,632,142.06 | $  (830,291.63) | $  (3,392,641.63) | $  409,208.80 |
| 2016 | $  7,277,462.51 | $  (227,386.40) | $  (5,995,254.45) | $  1,054,821.66 |
| 2017 | $  6,918,653.29 | $  (163,942.27) | $  (4,405,492.90) | $  2,349,218.12 |
| 2018 | $  9,406,334.03 | $  (1,400,210.14) | $  (4,555,000.00) | $  3,451,123.89 |
| 2019.01-07 | $  2,666,698.53 | $  (47,845.42) | $  (1,040,000.00) | $  1,578,853.11 |
| | $  30,901,290.42 | $  (2,669,675.86) | $  (19,388,388.98) | $  8,843,225.58 |

| Source: Benlida Shipment and Payment Details CTX-US_2015-2019 v2.1 | | | | |
|---|---|---|---|---|
| Payment Detail Year | Total Invoices | Total Debit Memos | Total Payments | Balance Due/(Credit Balance) |
| 2015 | $  9,095,077.35 | $  (813,048.16) | $  (7,815,190.90) | $  466,838.29 |
| 2016 | $  9,206,847.74 | $  (560,380.12) | $  (7,623,054.90) | $  1,023,412.72 |
| 2017 | $  9,388,547.43 | $  (237,259.16) | $  (12,972,992.87) | $  (3,821,704.60) |
| 2018 | $  17,527,528.38 | $  (666,958.02) | $  (17,080,547.82) | $  (219,977.46) |
| 2019 | $  3,743,032.36 | $  (15,192.91) | $  (6,900,000.00) | $  (3,172,160.55) |
| | $  48,961,033.26 | $  (2,292,838.37) | $  (52,391,786.49) | $  (5,723,591.60) |

**Total**

| Payment Detail Year | Total Invoices | Total Debit Memos | Total Payments | Balance Due/(Credit Balance) |
|---|---|---|---|---|
| 2015 | $  13,727,219.41 | $  (1,643,339.79) | $  (11,207,832.53) | $  876,047.09 |
| 2016 | $  16,484,310.25 | $  (787,766.52) | $  (13,618,309.35) | $  2,078,234.38 |
| 2017 | $  16,307,200.72 | $  (401,201.43) | $  (17,378,485.77) | $  (1,472,486.48) |
| 2018 | $  26,933,862.41 | $  (2,067,168.16) | $  (21,635,547.82) | $  3,231,146.43 |
| 2019 | $  6,409,730.89 | $  (63,038.33) | $  (7,940,000.00) | $  (1,593,307.44) |
| | $  79,862,323.68 | $  (4,962,514.23) | $  (71,780,175.47) | $  3,119,633.98 |

Going back to the earliest analysis prepared by the litigants, from 2012 to 2019, KM acknowledges that CTX owes Benlida/ROK approximately $13,492,823 and maintains for the purpose of analysis that Benlida owes CTX approximately $9,428,652.   As shown in these files, according to KM, Benlida is owed approximately a net amount of $4,064,171.

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

**Source: Benlida Shipment and Payment Details CTX-HK_2012-2019 (Exhibit 3)**

| Calender Year Payment Detail Year | Total Invoices | Total Debit Memos | Total Payments | Balance Due/(Credit Balance) | Cummulative |
|---|---|---|---|---|---|
| 2012 | $ 50,844.68 | $ - | $ - | $ 50,844.68 | $ 50,844.68 |
| 2013 | $ 663,041.04 | $ (39,550.39) | $ (242,827.34) | $ 380,663.31 | $ 431,507.99 |
| 2014 | $ 2,127,957.19 | $ (15,911.64) | $ (776,987.44) | $ 1,335,058.11 | $ 1,766,566.10 |
| 2015 | $ 4,866,595.96 | $ - | $ (3,959,983.86) | $ 906,612.10 | $ 2,673,178.20 |
| 2016 | $ 7,449,167.92 | $ - | $ (5,572,718.50) | $ 1,876,449.42 | $ 4,549,627.62 |
| 2017 | $ 7,095,140.71 | $ - | $ (4,405,490.00) | $ 2,689,650.71 | $ 7,239,278.33 |
| 2018 | $ 9,451,795.08 | $ - | $ (4,555,000.00) | $ 4,896,795.08 | $ 12,136,073.41 |
| 2019.01-07 | $ 3,602,117.12 | $ - | $ (2,245,367.08) | $ 1,356,750.04 | $ 13,492,823.45 |
| | $ 35,306,659.70 | $ (55,462.03) | $ (21,758,374.22) | $ 13,492,823.45 | |

**Source:Benlida Shipment and Payment Details CTX-US_2012-2021 v5  (Exhibit 5)**

| Payment Detail Year | Total Invoices | Total Debit Memos | Total Payments | Balance Due/(Credit Balance) | Cummulative |
|---|---|---|---|---|---|
| 2012 | $ 1,168,214.09 | $ (13,087.96) | $ (1,052,134.79) | $ 102,991.34 | $ 102,991.34 |
| 2013 | $ 3,477,155.95 | $ (169,253.24) | $ (3,455,959.35) | $ (148,056.64) | $ (45,065.30) |
| 2014 | $ 6,887,622.54 | $ (80,930.99) | $ (7,858,569.80) | $ (1,051,878.25) | $ (1,096,943.55) |
| 2015 | $ 9,293,546.49 | $ (855,066.49) | $ (8,953,676.45) | $ (515,196.45) | $ (1,612,140.00) |
| 2016 | $ 8,754,631.41 | $ (710,083.81) | $ (7,868,054.90) | $ 176,492.70 | $ (1,435,647.30) |
| 2017 | $ 9,197,733.44 | $ (61,717.14) | $ (12,722,992.87) | $ (3,586,936.57) | $ (5,022,583.87) |
| 2018 | $ 16,683,255.06 | $ (836,614.95) | $ (17,080,547.82) | $ (1,233,907.71) | $ (6,256,491.58) |
| 2019 | $ 3,743,032.36 | $ (15,192.91) | $ (6,900,000.00) | $ (3,172,160.55) | $ (9,428,652.13) |
| | $ 59,205,231.34 | $ (2,741,947.49) | $ (65,891,935.98) | $ (9,428,652.13) | |

**Total**

| Payment Detail Year | Total Invoices | Total Debit Memos | Total Payments | Balance Due/(Credit Balance) | Cummulative |
|---|---|---|---|---|---|
| 2012 | $ 1,219,058.77 | $ (13,087.96) | $ (1,052,134.79) | $ 153,836.02 | $ 153,836.02 |
| 2013 | $ 4,140,196.99 | $ (208,803.63) | $ (3,698,786.69) | $ 232,606.67 | $ 386,442.69 |
| 2014 | $ 9,015,579.73 | $ (96,842.63) | $ (8,635,557.24) | $ 283,179.86 | $ 669,622.55 |
| 2015 | $ 14,160,142.45 | $ (855,066.49) | $ (12,913,660.31) | $ 391,415.65 | $ 1,061,038.20 |
| 2016 | $ 16,203,799.33 | $ (710,083.81) | $ (13,440,773.40) | $ 2,052,942.12 | $ 3,113,980.32 |
| 2017 | $ 16,292,914.15 | $ (61,717.14) | $ (17,128,482.87) | $ (897,285.86) | $ 2,216,694.46 |
| 2018 | $ 26,135,050.14 | $ (836,614.95) | $ (21,635,547.82) | $ 3,662,887.37 | $ 5,879,581.83 |
| 2019 | $ 7,345,149.48 | $ (15,192.91) | $ (9,145,367.08) | $ (1,815,410.51) | $ 4,064,171.32 |
| | $ 94,511,891.04 | $ (2,797,409.52) | $ (87,650,310.20) | $ 4,064,171.32 | |

To show the untenable position that CTX seeks to do by separating Benlida and ROK (where Benlida has been overpaid and ROK has been underpaid) we will combine the two balances to show that combined, Benlida and ROK have a commercially normal relationship with CTX. We use this illustration below.

In the table above, at the end of 2018, there is a combined the $5.879 million balance owed by CTX entities to Benlida/ROK.  Also from the table above, during 2018, there was a combined $26.135 million in purchases by CTX.  $26.135 million is approximately $2.2 million in purchases per month ($26.135 million in purchases /12 months = $2.177 per month).   Based on the information in the above table, at the end of 2018 there is approximately 2.7 months of purchases

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

that CTX owes Benlida/ROK for using 2018 purchases as a guide. ($5.879 million owed /$2.177 million in monthly purchases = 2.7 months or 75 days of purchases.). This is not an unreasonable commercial relationship since it would take time for the invoices to be processed and paid.

**Lead Time Penalties ("LTPs")**

Another area in dispute is the imposition of penalties that are spelled out in the manufacturing agreement when Benlida does not ship the orders according to a specific and agreed time frame.

Based upon the language in the KM Report, KM provided a limited recalculation of approximately 8 worksheets[4] provided by CTX. *KM did not validate the inputs used to compute the LTP*[5]. Since KM, by its own report did not seek to validate the inputs, this claim is unsupported (other than mathematically in the KM Report). We are not aware of any acceptance, rejection, or waivers that both parties agreed to other than what is spelled out in the KM Report in paragraphs 34 to 36 of their report. We were also provided with the same information that supports the KM Report's calculations in paragraph 36 and Table 6 of their report. Similar to the other information summarized in the KM Report, KM did not actually provide their analysis so that we could trace their work and either agree or disagree with it. By way of illustration, the LTPs for April 2016 through March of 2018 were apparently calculated on one worksheet by CTX for both Benlida and ROK. KM did not discuss or disclose how the separation between ROK and Benlida was accomplished for those files.

We also note that the KM Report suggests that the LTPs since January 2016 have not been assessed by CTX against Benlida or ROK in the form of debit memos as they had been prior. It is ultimately a legal question when price adjustments or penalties need to be assessed before they are limited by the appropriate statute of limitations. As of the date of both expert reports, it is seven years since the LTPs measured by KM in paragraph 36 and Table 6 of their report. The earliest LTPs were for February 2016 to February 2017 according to KM,

---

[4] Paragraphs 30 to 33 of the KM Report.
[5] Footnote 22 of the KM Report

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

This provides an interesting insight into the relationship of the CTX entities.  If the CTX entities are truly separate and CTX considers Benlida and ROK separate, why does CTX calculate the substantial Lead Time Penalties on the same Excel worksheet file and tabs.  Further, arbitrarily not assessing the LTPs and then seeking to assess them at the very same time also is suggestive that CTX considers Benlida and ROK as one economic entity.

It would seem that CTX has control over CTX-HK. Put another way, CTX-HK and CTX-US would appear to be controlled and dominated by CTX.  We also are not able from the information contained, to ascertain which LTPs were for Belinda or ROK.  The KM Report is silent on how they made the determination.

**Inverse Commercial Relationship**

If CTX considers Benlida and ROK separate, why does CTX effectively lend Benlida money (by overpaying their debt to Benlida while CTX-HK owes more than two years of invoices to Benlida/ROK?  KM does not address these issues but the data that was provided to KM, and ultimately us, from an accountant's point of view shows a very close relationship between all the litigants and further given the patterns of payment behavior (rounded even payment starting and stopping at nearly the same time) suggests strong operational control and influence that reduces the separation from CTX's perspective and Benlida/ROK's perspective. We understand that it is a legal issue whether orders placed by CTX-HK were actually placed for CTX-US; however, from an accountant's standpoint, the data clearly supports such a conclusion.

This is clearly an area of law and the issue was not discussed at all in the KM Report.  We bring it up since the KM Report's focus on one entity to the exclusion of the other – especially given that one entity's financial behavior so would fall far outside the norm of customer and provider (CTX overpaying Benlida by months of revenue).   Normally the opposite is true - the customer owes the supplier.  In this case, the total relationship between CTX and Benlida/ROK mimics more normal commercial terms. This is clearly a legal dispute.

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

In addition, if the LTPs are appropriate (that CTX did not assess/assert), and if the inputs (that KM did not validate) are in fact correct and not in dispute, is also a legal issue. KM did not provide any analysis (other than a math checks) to support the LTPs. We reserve the right to recalculate LTPs once the necessary data is provided to us.

**Conclusion**

The KM Report is an 11 page summary of their calculations. We accept that there were multiple sources of information that were created at different times and that neither litigant's records should be considered pristine. We also recognize that the litigants themselves were working to reconcile and correct their books and records.

We believe that the KM Report only seeks to show one side of the economic relationship between the litigants – namely the side that best suits their clients' needs – that CTX has overpaid Benlida and nothing else. However, taking into consideration the CTX-HK/Benlida/ROK aspects, which is a substantial portion of the overall Benlida/CTX relationship, if LTP's are proved, then Benlida is actually owed between $3 and $8 million dollars depending upon when the analysis begins (based upon the statute of limitation) and the court's final decision on whether the payments by CTX to both Benlida and ROK were payments on account of specific invoices.

However, a deep dive into the records that KM relied upon shows that from an accounting perspective, the CTX entities and the Belinda/ROK entities are very intertwined. One affiliate has a large overpayment (CTX-US). The other entity has an even larger underpayment (the CTX-HK/Benlida/ROK claim). However, when combined, the relationship falls into more normal commercial terms.

Our role in this litigation, among others, is to analyze the KM report, and, consequently, quantify the amounts owed to Benlida, whether or not CTX-US or Benlida are successful in asserting or challenging LTP's, statute of limitations defenses or overpayment arguments  This report has been prepared solely for use in the above-referenced litigation and is intended for no other purpose. This report may not be reproduced or circulated without the prior written consent of Santye. We

A.J. Santye & Co, P.A.

Jean Claude Mazzola, Esq.
Richard Lerner, Esq.

reserve the right to update our report should more supporting information and clarity become available.

This report was prepared and edited under the supervision and direction of Randall M. Paulikens, CPA/ABV/CFF/CITP. Should expert testimony be required in this matter, Randall M. Paulikens will testify. The partners and staff of Santye, have no present or contemplated future interests in any party related to this litigation that might prevent us from forming an unbiased opinion in this matter.  Our compensation is not contingent upon the outcome of this or any related litigation. Mr. Paulikens billing rate is $550 per hour. Mr. Paulikens CV is included at Tab D.

Our engagement included an analysis of documentation that was believed to be relevant to our calculations. These documents were provided by counsel. Our investigation also included review of deposition transcripts in lieu of interviews as depositions are question and answer sessions under oath.  We also performed our own independent research, and rely upon the "body of knowledge" accumulated as accountants and litigation/damage experts.   A list or summary of this documentation is included at Tab C.

Very truly yours,
A.J. Santye & Co., P.A.

Randall M. Paulikens, CPA/ABV/CFF/CITP
Partner

A.J. Santye & Co, P.A.

# Tab - B

## ASSUMPTIONS AND LIMITING CONDITIONS

The primary assumptions and limiting conditions pertaining to the determination of economic analysis stated in this report are summarized below. Other assumptions may be cited elsewhere in this report. This economic analysis may not be used in conjunction with any other appraisal or study. The determination of economic amounts due stated in this report is based on the program of utilization described in the report, and may not be separated into parts.

As part of our engagement, we have been instructed by Counsel to assume certain facts and/or assertions regarding the actions of the defendants as well as the underlying law, proofs of which will be testified to and provided at trial. We are not responsible for proving the liability (and causation) aspects of this matter. In the narrative section of this report, A. J. Santye & Co., P.A. ("Santye") will be reciting certain of these facts in order to illustrate our methodology, as well as our rational in preparing our calculations and arriving at our opinions as to the damages calculated. We will be measuring the amount of damage based upon the determination of the existence and magnitude of liability.

We reserve the right to modify or even recall our report at our discretion in the event that counsel's representation should change. In addition, if additional information becomes available after our report is issued we also reserve the right to modify our report as appropriate.

No change of any item in this report shall be made by anyone other than Santye and we shall have no responsibility for any such unauthorized change. Unless otherwise stated in the report, the economic analysis of the amounts due to the Plaintiffs has not considered or incorporated the potential economic gain or loss resulting from contingent assets, liabilities or events existing as of the date of this report.

Neither all nor any part of the contents of the report shall be disseminated or referred to the public through advertising, public relations, news or sales media, or any other public means of communication or referenced in any publication without the prior written consent, approval and review by Santye.

Management is assumed to be competent, and the ownership to be in responsible hands, unless otherwise noted in this report. The quality of the business management can have a direct effect on the viability and the analysis of economic benefits and loss incurred by the Plaintiffs.

Unless otherwise stated, no effort has been made to determine the possible effect, if any, on the subject business because of future federal, state or local legislation, including any environmental or ecological matters or interpretations thereof.

As previously stated this report is solely for the stated litigation matter and should not be used for any other purpose or distributed to third parties, in whole or in part, without the express written consent of Santye.

All facts and data set forth in our report are true and accurate to the best of our knowledge and belief.

## ASSUMPTIONS AND LIMITING CONDITIONS (CONTINUED)

During the course of the engagement, we have considered information provided by counsel, management and other third parties. We believe these sources to be reliable, but no further responsibility is assumed for their accuracy.

We have no responsibility or obligation to update this report for events or circumstances occurring subsequent to the date of this report.

We have relied upon the representations of counsel, as necessary, in preparing this report.

In all matters that may be potentially challenged by a Court, the Internal Revenue Service or others, we do not take any responsibility for the degree of reasonableness of contrary positions that others may choose to take, nor for the costs or fees that may be incurred in the defense of our recommendations against such challenge(s). We will, however, retain our supporting work papers for your matter(s), and will be available to assist in active defense of our economic damage calculations, at our then current rates, plus direct actual expenses and according to our then standard professional agreement.

# Tab - C

**JIANGMEN BENLINDA PRINTED CIRCUIT CO., LTD.,**

**V.**

**CIRCUITRONIX, LLC**

**CASE NO. 0:21-cv-60125-RNS**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**DOCUMENTS UTILIZED FROM OPPOSING EXPERT'S REPORT**

| No. | Document Description |
|---|---|
| 1 | Third Amended Complaint filed June 1, 2021 (Case 21-cv-60125-RNS-DE26 |
| 2 | Defendents Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint and Defendents Counterclaim filed on October 15, 2021 *(Case 21-cv-60125-RNS-DE34)* |
| 3 | Benlida Payment Details CTX-US_2012-2019.xls |
| 4 | 2012-2019reconciliation analysis-2019.11.15 CCT |
| 5 | Email dated March 21, 2017 from tracy@benlida.com Rishi Kukreja |
| 6 | Email from tracy@benlida.org to Rishi Kukreja at CTX on July 28, 2016 and its attachments including the "cancel amount and payment.xls" spreadsheet |
| 7 | Debit Memo (BEN-DM20131020, BEN-DM20131203, BEN-DM20140120, BEN-DM20140520, BEN-DM20140620, BEN-DM20140720, BEN-DM20140820, BEN-DM20140919, BEN-DM20140920, BEN-DM20150310, BEN-DM20160321, and BEN-DM20171128-2 |
| 8 | Benlinda Payment Details CTX-US_2012-2021_v5.xls |
| 9 | JiangMen Benlinda Printed Circuit Co., Ltd Commercial Invoice to Circuitronix dated April 12, 2019 *(Invoice No. CCT-BLD-190412001* ) |
| 10 | JiangMen Benlinda Printed Circuit Co., Ltd Commercial Invoice to Circuitronix dated August 30, 2019 *(Invoice No. CCT-BLD-190830001)* |
| 11 | JiangMen Benlinda Printed Circuit Co., Ltd Commercial Invoice to Circuitronix dated September 3, 2019 *(Invoice No. CCT-BLD-190903002)* |
| 12 | Lead Time Penalty Spreadsheets from Febuary 2016 to March 2021 |
| 13 | "Meeting Minutes" of a meeting between CTX and Benlida on 10/20/2017 (BLD_00000582 and BLD00000073) |
| 14 | Circuitronix, LLC Citibank N.A. Account Ending in 2698 Bank Statements for the Period from May 1, 2012 through February 28, 2021 |
| 15 | Email from Rishi Kukreja dated November 11, 2019 subject: Circuitronix, USA Payment Reconciliation from 1st of April, 2012 until present from Benlinda and ROK and its attachements which include "Benlinda Payment Details CTX-US_2012-2019.xlsx" and "ROK Payment Details CTX-US-HK 2012-2019.xlsx" |
| 16 | Responding email from accounting@benlida dated November 14, 2019 re:Circuitronix, USA payment reconciliation from 1st of April, 2012 until present for Benlida and ROK and its attachment "2012-2019reconciliation analysis-2019.11.15 CCT.xlsx" |
| 17 | Follow up email from accounting@benlida dated November 22, 2016 re:Circuitronix, USA payment reconciliation from 1st of April, 2012 until present from Benlida and ROK and its attachment "CTX missing inv. Details.xlsx", "Payment Discrepency(1).xlsx" and Benlinda Shipment and Payment and Payment Details CTX-HK_2012-2019.xlsx" |
| 18 | Payments from Circuitronix, LLC to Jiangmen Belinda details for the period August 2019 through July 2020 |
| 19 | Belinda Complaint Invoice |

| No. | ADDITIONAL DOCUMENTS UTILIZED |
|-----|-------------------------------|
|     | Document Description |
| 20  | Benlida -- CTX stipulated and so-ordered protective order |
| 21  | CTX -- Ex. 2 exerpts from Ochoa deposition |
| 22  | CTX -- Ex. 3 -- exerpt from deposition of Nicole Donaldson |
| 23  | CTX -- Ex. 4 -- exerpts from Tracy Huang's deposition |
| 24  | CTX -- Ex.5 exerpts from Roger Wu deposition |
| 25  | Ctx -- Ex.6 -- exerpts from Lina Ochoa deposition |
| 26  | CTX -- motion and memorandum in support of summary judgement |
| 27  | CTX motion for SJ; Martinez declaration in support |
| 28  | CTX motion for summary judgement -- statement of facts |
| 29  | Benlida Payment Details CTX-HK_2015-2019 |
| 30  | Benlida Payment Details CTX-US_2015-2019 |
| 31  | Benlida Shipment and Payment Details CTX-HK_2012-2019 |
| 32  | BLDROK SHIPMENTS+PAYMENTS 07.20.2019 |
| 33  | Missing Invoice List |
| 34  | Response email from Rishi Kukreja dated July 30, 2019 to douglas@benlida.com, subject: Final Payment Reconciliation for CTX, HKG, CTXm USA and ROK. "CTX_00004704.pdf" |
| 35  | ROK Payment Details CTX-US-HK_2015-2019 |
| 36  | 01 - 2022年3月财务报表 - Untranslated March, 2022 Financials - Prepared by Jiangmen Benlida Electric Circuit Co., Ltd. |
| 37  | 02 - 2022年6月财务报表 - Untranslated June, 2022 Financials - Prepared by Jiangmen Benlida Electric Circuit Co., Ltd. |
| 38  | 03 - 2022年9月财务报表 - Untranslated September, 2022 Financials - Prepared by Jiangmen Benlida Electric Circuit Co., Ltd. |
| 39  | 2021年12月财务报表(2) - PDF File - Untranslated December, 2021 Financials |
| 40  | 2021年12月财务报表(2) - Excel File -  Untranslated December, 2021 Financials |
| 41  | 2022年9月财务报表(1) - PDF -  Untranslated September, 2021 Financials |
| 42  | 2022年9月财务报表(1) - Excel -  Untranslated September, 2021 Financials |
| 43  | 6月BLD-CCT - Monthly Statement for Delivery Dated:2017.07.10 |
| 44  | 6月HK-CCT对账(BLD) - HK Monthly Statement for Delivery Dated:2017.07.10 |
| 45  | 2017 Statement Reconciliation Dated: January 10, 2018 |
| 46  | Benlida vs CTX Accounting Event Timeline |
| 47  | Email chain between Rishi Kukreja, douglas@benlida.com, tracy@benlida.com, and sourabhs@circuitronix.co.in. Subject: Procedure for Calculating Leadtime Exceedance Penalty Dated: June 16, 2016 through July 14, 2016 |
| 48  | Meeting Minutes dated December 13, 2016 and December 14, 2016 |
| 49  | Benlida Payment Details July 1 2016 ( April Invoices) |
| 50  | 2012 Manufacturing Agreement |
| 51  | 2016 Letter Agreement |
| 52  | Benlida - Circuitronix -- 2nd agreement -- 2016 |
| 53  | Benlida - Circuitronix Contract |
| 54  | Third Amended Complaint and Answer |
| 55  | Benlida Source for Complaint 12_1_20 (2) |
| 56  | Benlida Statement Reconciliation |
| 57  | ROK Statement Reconciliation |
| 58  | CTX_01533295 - Benlida Proforma Cost and Inventory Management |
| 59  | 2022.12.19 -- Circuitronix -- Chauncey Cole Reply Affidavit |
| 60  | 2022.12.19 -- Circuitonix reply re motion to enforce settlement |
| 61  | 2022.12.27; declaration of Tracy Huang in reply re motion to enforce settlement |
| 62  | Benlida v. CTX; declaration of Huang Hanchao |
| 63  | CIRCUITRONIX_ LLC_ D_B Duns Private Company Insight 4876-4235-2965 v.1 |
| 64  | CIRCUITRONIX-LLC_ 12-23-2022   D & B Report |
| 65  | Email chain exhibits included in 1-13-2023 Motions; Ex. 19, Ex. 20, Ex. 24, Ex. 26, Ex. 27, Ex. 28, Ex. 29, and Ex. 30. |
| 66  | 01 - 21 Benlida Audited Financial Statements(Revised) Benlida Version 11.8.2022 |
| 67  | 2021 Financials - 2021年12月财务报表(2) |

**68**  2022 Part Year Financials 2022年9月财务报表(1)

**69**  2022 Part Year Financials 2022年9月财务报表(1)

**70**  Bal Sheet & P&L 2021FY_2022PartYear 2021 Audited financials

**71**  Conference call Thursday November 17, 2022

**72**  Copy of Profit and Loss

**73**  excel  Balance sheet

**74**  GAAP Balance Sheet

**75**  GAAP P&L

# Tab - D

# RANDALL M. PAULIKENS
## CPA/ABV/CFF/CITP





### SUMMARY

Over 37 years of public accounting experience representing all sizes of clients from small solo practitioner professional practices to large Fortune 50 public companies. Performs all phases of litigation support, including lost profits and damage calculations, business valuations, matrimonial accounting, mergers and acquisitions, criminal (prosecution and defense), bankruptcies, forensic accounting, wrongful death calculations, and discovery. Many years of traditional accounting experience including the taxation and reporting for closely-held businesses and individuals. Involved in feasibility studies of new ventures or acquisitions from initial contact through "closing" both from the buying and selling side. Consults in connection with mergers and acquisitions, buy/sell agreements, compensation arrangements.

**Present Position:**

**Partner**
**A.J. Santye & Co**
36 E. Main Street
Somerville, NJ 08876
908-704-1400. Mobile 732-674-5462

2 Bridge Ave, Suite 522
Red Bank, New Jersey 07701
Email:  rpaulikens@santye.com
Website: www.santye.com

September 2022 to Present

**Former Positions:**

**Partner/Managing Principal**
**Forensic Accounting, Litigation Support & Valuation Services**
Friedman LLP
February 2016 to September 2022

**Partner**
Litigation/Valuation/Law Firm Support Services
WithumSmith+Brown
November 1997 to January 2016

**Supervisor**
Litigation Support
Druker, Rahl & Fein
January 1995 to November 1997

**Manager/**
**Network Administrator**
A.J. Santye & Co.
September 1988 to January 1995

**Staff Accountant**
Sidney W. Binder & Co.
September 1986 to September 1988

**Staff Accountant**
Druckman & Hill
January 1986 to September 1986

# RANDALL M. PAULIKENS
### CPA/ABV/CFF/CITP

---

## CREDENTIALS/EDUCATION

BA degree in Economics, Minor in Physics, *Rutgers University*

Certified Public Accountant (CPA), New Jersey

Accredited Business Valuation (ABV) from the AICPA

Certified in Financial Forensics (CFF) from the AICPA

Certified Information Technology Professional (CITP) for the AICPA

## PROFESSIONAL ORGANIZATIONS/MEMBERSHIPS

American Institute of Certified Public Accountants (AICPA)

New Jersey Society of Certified Public Accountants (NJSCPA)

## TRIAL/ARBITRATION EXPERT TESTIMONY

Catalyst Advisors Investors Global, Inc. v Catalyst Advisor L.P.
(Delaware Superior Court) - 2022

United States v Sergio Ramirez
(United States District Court – Eastern District of New York) 2021

Boyle v Boyle
(Civil Arbitration) 2020

Timothy Tyson, Keith Lyon and James Scandura v. Avara Pharmaceuticals,
Avara Pharma Services, Ltd. And Leonard Levie
(Civil Arbitration) 2019

Gene Camali, Nada Camali and Core Fusion v. Paladino, Strike Zone Fitness et al
(Bergen County, NJ) 2019

Sergio Magarik, individually and on behalf of Kraus USA, Inc. v.
Kraus USA, Inc., Michael Rukhlin, and Russel Levi
(Nassau County, NY) 2018, 2019

First Manhattan Consulting Group, LLC. v. Novantas, Inc. Andrew Frisbie, Peter Gilchrist and
Jonathan West
(Manhattan County Supreme Court, NY) 2017

Zeus Scientific, Inc. v. Alere, Inc.
(Civil Arbitration) 2017

**RANDALL M. PAULIKENS**
CPA/ABV/CFF/CITP

---

## TRIAL/ARBITRATION EXPERT TESTIMONY - Continued

Northern Star Management v. Castlepoint National Insurance Company
(Civil Arbitration) 2015

Hyundai Wie v. Nelson Rowell et al.
(Federal Bankruptcy) 2014

Silecky Firm v. Squire Sanders & Dempsey
(Civil Arbitration) 2011

Golden v. Golden
(Monmouth County Superior Court, NJ) 2007

Axelrod v. Central Garden & Pet et al
(Monmouth County Superior Court, NJ) 2005

In the Matter of Ketchow
(Monmouth County Chancery Court, NJ) 2005

Gillette Enterprises v. Amboy National Bank
(Middlesex County Superior Court, NJ) 2004

United States Dredging v. Murphy, Gallagher et al.
(Nassau County Supreme Court, NY) 2004

United States v. Joseph Luparella
(Criminal Federal Court) 2004

Cunningham v. Cunningham
(Mercer County Chancery Court, NJ) 2003

Thomas Neary v. Boro of Ridgefield Police Department
(Bergen County Municipal Court, NJ) 2001

Couri v. Couri
(Bergen County Chancery Court, NJ) 2001

Chesed Clothing v. Paul Fedder D/B/A Business Mailing Company
(Ocean County Superior Court, NJ) 2000

# RANDALL M. PAULIKENS
### CPA/ABV/CFF/CITP

## DEPOSITION TESTIMONY

Andrew Black, Hans Erik Molberg, Celestino Amore and Dr. Henry Balboa individually and on behalf of Phoenix Holdco, LP v Phoenix Cayman LTD, Vishal Garg, Raja Visweswaran, Nicholas Calamari and Triaxx Holdco, LLC.
Supreme Court of the State of New York
County of New York
Commercial Damages - 2023

Gary Hardwick v Ripple Collective, LLC; Another Green World Productions, Inc. et al
Supreme Court of the State of New York
County of New York
Business Valuation - 2022

Vincent H. Martinez Cienfuegos v Sean Aronsen, David McGrath, Glenco Contracting Group, Inc. Aro Construction Group, Inc.
Supreme Court of the State of New York
County of Westchester
Business Valuation - 2022

Intech Powercore Corporation et al v Albert Handtmann Eltecka GMBH & Co. KG
United States District Court of New Jersey
Economic Damages 2022

United States v Shant Hovnanian et al
United States District Court of New Jersey
Piercing the Trust Veil for Taxes - 2021

Catalyst Advisors Investors Global, Inc. v Catalyst Advisor L.P.
Delaware Superior Court
Valuation for Members Dissolution - 2021

Estate of Kentos v Richard D. Schibell, Esq., Schibell & Mennie, LLC, Schibell, Mennie & Kentos,
Monmouth County, NJ
Valuation for Shareholder Dissolution - 2021

Timothy Tyson, Keith Lyon and James Scandura v Avara Pharmaceuticals, Avara Pharma Services, Ltd. And Leonard Levie
Arbitration
Valuation for Shareholder Dissolution - 2019

US National Bank Association v. 2150 Joshua's Path et al
United States District Court
Eastern District of New York
Analysis of Trial Demonstratives - 2019

# RANDALL M. PAULIKENS
### CPA/ABV/CFF/CITP

---

**DEPOSITION TESTIMONY - Continued**

Shinnick v STIGroup, Inc., et als
Bergen County, NJ
Valuation for Shareholder Dissolution - 2019

Sergio Magarik, individually and on behalf of Kraus USA, Inc. v.
Kraus USA, Inc., Michael Rukhlin, and Russel Levi
Nassau County, NY
Lost Profits/Commercial Damages, 2017 and 2018

DR Music, Inc. and DR Handmade Strings, Inc. v. Cenveo Corporation
Federal Court, District of New Jersey
Lost Profits/Commercial Damages, 2017

First Manhattan Consulting Group, LLC v. Novantas, Inc. Andrew Frisbie, Peter Gilchrist and
Jonathan West
New York City
Lost Profits/Commercial Damages, 2017

Northern Star Management v. Castlepoint National Insurance Company
New York City
Lost Profits/Commercial Damages, 2015

Ocasio v. Rutgers University
Essex County, NJ
Lost Wages/Improper Termination, 2014

American Polymers Corporation v. PolyStar Products, Inc. et al.
Central Irrigation Supply, Inc. v. PolyStar Products, Inc et al and Consolidated Cases
Mercer County, NJ
Commercial Damages, 2013

McGee v. Kane et al.
Hudson County, New Jersey
Lost Profits, Commercial Damages, 2013

Paramount Homes at Asbury Park v. Tishman Construction Corp of New Jersey et al.
Monmouth County, New Jersey
Lost Profits, Commercial Damages, 2013

Public Service Electric And Gas Company v. Colonnelli Brothers, Inc. et al.
Union County, New Jersey
Commercial Damages, 2013

# RANDALL M. PAULIKENS
### CPA/ABV/CFF/CITP

**DEPOSITION TESTIMONY - Continued**

Daelim Trading Co v. Giagni Enterprises et al.
United States District Court
Southern District of New York
Commercial Damages, 2013

Frank Leonard v. Claus Joens et al.
Essex County, NJ,
Shareholder Buyout, 2013

Miller v. South Amboy Board of Education
Middlesex County, NJ
Wrongful Termination, 2011

Ravin, Sarasohn, Cook, Baumgarten, Fisch and Rosen, P.C. v. Lowenstein Sandler, P.C.
Morris County, NJ
Lost Profits, Damages, 2009

Donald J. Pliner of Florida v. Carl R. Danziger, Operations Management Service
United States District Court
Southern District of New York
Breach of Fiduciary Duty, CPA Malpractice, 2008

Conoco Phillips v. Alstom Power, Inc.
Union County, NJ
Lost Profits/Commercial Damages, 2008

Entology v. Storch, Jolley, Amell
Morris County, New Jersey
Lost Profits, Breach of Contract, Business Valuation, 2007

Golden v. Golden
Monmouth County, New Jersey
Dispute of Payments, Business Ownership, 2005

Mazza v. NRI Data, Inc.
Mercer County, NJ
Lost Profits, Breach of Contract, Business Valuation, 2004

Bel Fuse, Inc. v. Lucent Technologies, Inc.
Middlesex County, New Jersey
Lost Profits, Breach of Contract, Business Valuation

**RANDALL M. PAULIKENS**
CPA/ABV/CFF/CITP

---

**DEPOSITION TESTIMONY - Continued**

    Gillette Enterprises et al v. Amboy National Bank, et al.
    Middlesex County, New Jersey
    Valuation of Payment Streams, 2004

    Dr. Herbert R. Axelrod and Evelyn Axelrod v. Central Garden & Pet Company, Inc.
    Monmouth County, New Jersey
    Lost Profits, Breach of Contract, Business Valuation, 2003

**PRESENTATIONS**

**Webinars** –

    The Knowledge Group
        "Practical E discovery Advice for lawyers" – December 2015
    WithumSmith+Brown
        "Valuation Issues in Startup Companies" - September 2014
    Meeker Sharkey
        "Disaster Recovery" - February 2012
    Accounting Today Institute
        "Business Valuation Series FASB 157" – December 2010, May 2011

**Live Presentations-**

    Newmark Title Services
        CLE Series
        "Avoiding Loan Workout Mistakes" – Panelist, June 2021
        "Carbon Emissions, C-PACE, Green Financing" Panelist, July 2021

    Eastern Monmouth Chamber of Commerce
        "Tax and Financial Ideas for the end of 2020" November 2020

    Friedman - Continuing Legal Education Programs
        "The New Tax Code and Its Impact on The Matrimonial Practice" - 2018

    American Academy of Matrimonial Lawyers – New Jersey Chapter
        "Navigating COVID Disruptions" – July 2021

    New Jersey Society of Certified Public Accountants – State Organization
        "Cost of Capital" December 2015
        "Ibbotson v. Duff & Phelps" - December 2009
        "When Clients Divorce" - October 2009
        "Employees – Your Most Important Asset –

**RANDALL M. PAULIKENS**
CPA/ABV/CFF/CITP

---

How to Ensure that they are NOT a Liability" - September 2008
"Myths, Misconceptions, and the realities of the Financial Aspects
of Divorce in New Jersey", multiple presentations - 2007, 2008
"Discussion of SSVS #1" - June 2008
"Valuation Tips for Intangibles and Goodwill for Controllers" - September 2007
"Standards of Value"- December 2005

New Jersey Certified Public Accounting Society – Monmouth/Ocean Chapter
"Tips on Recognizing Workplace Fraud" - November 2011
"Helping Clients with Family Owned Business Navigate
Intergenerational Transfers" - December 2010
"Round Table Discussion Ibbotson v Duff & Phelps" - November 2009

Jersey Society of Certified Public Accountants– Mercer Chapter
"When Clients Divorce" - November 2010

WithumSmith+Brown– Continuing Legal Education Programs
"Quantifying Damages" - multiple presentations 2010 to 2014
'Reading and Understanding Financial Statements" - multiple presentations 2010 to 2014
"When Clients Divorce-Basic Economics" - December 2010
"Managing Cash Flow in a Professional Practice" - December 2010, March 2012
"Business Valuation Basics" - multiple presentations 2010 to 2012
"Preventing and Detecting Fraud in Not for Profits" - November 2011

WithumSmith+Brown – In House Presentations
"The New IRA Distribution Rules" - December 2001
"Engagement Management" - multiple presentations 2007 to 2013
"Know Your Strength – Supercharge your Marketing Success" - July 2009

WithumSmith+Brown – Annual Partners' Network
"Forensic Investigation – An Introduction, Also Known As
Is Someone Stealing From Me?" - June, 2008
"Employees – Your Most Important Asset - How to ensure
they are NOT a liability" - November, 2008

Houston Family Law Conference– Houston Law School
"Business Valuation for a Family Lawyer" May 2012, May 2014

Association of Government Accountants – North Carolina Chapter –
"Enabling a Fraudster" - April 2013

## RANDALL M. PAULIKENS
**CPA/ABV/CFF/CITP**

**PRESENTATIONS - Continued**

**Live Presentations- (continued)**

New Jersey Institute of Continuing Legal Education –
"Tax Aspects in Business Sales" - July 2013

New Jersey Healthcare Financial Management Association –
"Valuing a Medical Practice" - July 2014

New Jersey State Bar Association
"Round Table – Hot Tips for Litigators" May 2021
"You Thought Cash Was Hard – Try Cyber Currency" March 2019
"Use of Forensic Accountants in Civil Litigation –Panel Discussion" – May 2016
"Hot Tips for Hot Litigators –Panel Discussion" – October 2016
"Valuation of Assets/Tax Implications of Alimony Buyouts" - March 2012

State of Pennsylvania– Audit Training
"Enabling a Fraudster" - April 2012

Association of Government Accountants
"Tips Tipoff and Other Ideas to Recognize Workplace Fraud" - April 2012

Healthcare Management Association NY
"The Legal Aspects of Revenue Cycle Audits" - November 2011

Philadelphia Chapter Certified Fraud Examiners
"Enabling a Fraudster" - February 2012

National Association of Certified Valuation Analysts
"Current Trends in Business Valuation" - December 2008
"Commercial Damages" - July 2006

William Patterson College – Accounting Society
"Forensic Investigation – for College Students" - November 2008

# RANDALL M. PAULIKENS
### CPA/ABV/CFF/CITP

## PRESENTATIONS - Continued

### Live Presentations- (continued)

Raymond James Financial Services
"Financial Fraud – at Home, in the Workplace
and the Financial Markets" - September 2009

American Payroll Association – Jersey Shore Chapter
"Developing and Testing Internal Controls for
Payroll Professionals"- August 2008

National Association of Trial Executives
"Fraud Prevention, Identity Theft & the Accountable CEO" - July 2011

DFK International -
"Mergers and Acquisitions – So Many Smart People Structured this –
So Why Are They Fighting Now?" – May 2017

Central New Jersey Estate and Financial Planning Council
"Valuation Discounts" - December 2006

National Shooting Sports Symposium
"How to Write a Business Plan" - June 2000

Inn of Transactional Attorneys – Bergen Chapter
"How a CPA Can Help a Client Sell Their Business" – October 2016

# RANDALL M. PAULIKENS
## CPA/ABV/CFF/CITP

---

## PUBLICATIONS

Law 360- "When Should You Rely on Your Company Counsel and When Should You Rely on Your Own" Fall 2016

Commerce Magazine- "Forensic Accounting Roundtable" September 2014

Commerce Magazine- "Forensic Accounting Roundtable" August 2012

New Jersey Society of CPAs Magazine– "The New Economics of Divorce" Jan/Feb 2012

New Jersey Society of CPAs Magazine– "Helping Your Client Measure the Costs of Eminent Domain" July/August 2011

New Jersey Society of CPAs Magazine– "Practical Considerations for Handling Shareholder and LLC Member Disputes" March/April 2011

Whitepaper - "Having Your Cake and Eating It Too", May 2008

Whitepaper – "Managing Cash Flow in a Professional Practice During Economic Downtimes", May 2008

The Journal - "Alternate Methods for Dispute Resolution" Fall 2007

New Jersey Society of CPAs (Website)– "Saving on Auto Insurance Properly" March 2007

The Journal – "A Hasty Agreement Can Lead to Litigation", Fall 2006

The Journal – "What is Your Business Worth?", Fall 2004

The Journal – "Welcome to the Fascinating World of Forensic Accounting", Winter 1999

New Jersey Lawyer – "Lawyers, CPAS Team to Combat Workplace Fraud", July 2004

Proceedings – "Developing a Business Plan" June 2000

The Range Reporter – "On Target With Your Taxes", Winter 2000

The Range Reporter - "The Tax Man Cometh", January/February 1999