UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-60125-CIV-Scola/Goodman

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

        Plaintiff,

v.

CIRCUITRONIX, LLC,

        Defendant.

**Plaintiff Jiangmen Benlida Printed Circuit Co., Ltd.'s
Memorandum of Law in Opposition to Circuitronix LLC's Motion
*in Limine* to Preclude the Testimony of Randall Paulikens, CPA**

**MAZZOLA LINDSTROM LLP**
Richard E. Lerner
Jean-Claude Mazzola
*Counsel for Jiangmen Benlida Printed Circuit Co., Ltd.*
1350 Avenue of the Americas, Second Floor
New York, New York 10019
646.216.8300
richard@mazzolalindstrom.com
jeanclaude@mazzolalindstrom.com

August 22, 2023

1

Plaintiff Benlida hereby opposes defendant Circuitronix LLC's first of two motions *in limine*, which seeks an order precluding Benlida's rebuttal expert Randall Paulikens from offering testimony to rebut the anticipated testimony of Circuitronix's experts Mark Parisi and Barry Mukamal. As in prior papers submitted in this action, for consistency Circuitronix LLC is referred to herein as CTX-US, and Circuitronix (Hong Kong) Ltd. is referred to as CTX-HK. The third amended complaint is referred to as TAC.

Argument

**Point I:    CTX-US Cannot Credibly Claim that it is Surprised that Benlida is Seeking to Recover from it for Orders Placed for CTX-US's Exclusive Customers by CTX-HK and that it is Surprised by the Mathematical Functions of Addition and Subtraction.**

As CTX-US acknowledges in its moving papers, this is "a relatively straightforward" case, in that Benlida claims that CTX-US failed to pay for printed circuit boards from 2018 to 2020. In the deposition of CTX-US's expert, Mr. Parisi acknowledged that the issue of whether CTX-US is responsible for the debts of CTX-HK is not an accounting issue, but an issue of law: (Parisi Dep., Ex. A, p. 215)

> Q. Do you consider the issue of whether the U.S. operation [CTX-US] owes Benlida for the debts of the Hong Kong operation [CTX-HK] to be an issue of law or accounting?
> A. Law.

Mr. Parisi also acknowledged that, having read the complaint, he was well aware that Benlida was suing CTX-US for orders placed by CTX-HK: (Parisi Dep., Ex. A, pp. 126-127)

> Q. Are you aware that the plaintiffs in this case have alleged that the CTX invoices are owed by the U.S. entity?
> MR. ROSENTHAL: Object to the form.
> A. Well, the complaint's against -- it's Benlida v. Circuitronix, LLC. So, yes.
> Q. Okay. So that makes sense -- right? -- that that would be the case.
> A. … I don't understand your question.
> Q. Well, my question was, are you aware that the plaintiffs are alleging that those CTX Hong Kong invoices are owed by the -- by CTX U.S. Do you know that to be the case?
> A. From the complaint. Yes.

Likewise, CTX-US's other expert, Mr. Mukamal, acknowledged that he assumed, by reading the complaint, that Benlida is seeking recovery from CTX-US for orders placed with Benlida by CTX-HK: (Mukamal Dep., Ex. B, pp. 62-63, 131)

> Q. I'm asking you … if you or your team, in reviewing this complaint … knew that Benlida was looking to the U.S. Circuitronix, LLC, to pay invoices owed by Circuitronix Hong Kong?
>
> MS. MARTINEZ: Objection.
>
> A. I can only surmise. They include it in a list of invoices. Whether that's legally sufficient or not to draw that conclusion, I can't give an opinion on that.
>
> Q. But from reading this, you know that they're, at a minimum, looking to Circuitronix, LLC, to pay those debts of Circuitronix Hong Kong.
>
> MS. MARTINEZ: Objection.
>
> A. I can only assume.
>
> Q. Are you assuming yes or assuming no?
>
> A. I can only assume that they're looking to collect these invoices on their -- attached to the complaint.
>
> ***
>
> Q. … And you know that in the complaint, Benlida is looking to … CTX U.S. to pay those debts to [sic, should read "of"] the Hong Kong entity. You know that as well. Right?
>
> MS. MARTINEZ: Objection.
>
> A. I assume that from the tenor of the complaint.

What complicates this case is not the fact that Benlida is seeking full recovery from CTX-US, but the fact that CTX-US is claiming that it has no obligation to pay for goods ordered by CTX-HK, even though – as shown in opposition to CTX-US's motion for summary judgment – CTX-HK's orders presented to Benlida were for customers on CTX-US's "exclusive customer list." It is a fiction that CTX-US could not have anticipated that Benlida was seeking the full measure of damages from it, as even its own experts acknowledged (as the above excerpts show) that they understood – from having reviewed the TAC – that, Benlida is suing CTX-US for all unpaid invoices, including for orders placed by CTX-HK. CTX-US has clearly understood

Benlida's position, having moved to dismiss the TAC for failure to name CTX-HK as a defendant (DE 27), which branch of their motion was properly denied. (See DE 31).

Were Benlida to have submitted its own "affirmative" expert report in support of its claims, it would have said no more than, "I, Randall Paulikens, have added up the numbers in the invoices alleged to have not been paid (subtotal: $11,539,408.36), plus the agreed-upon price increase ($2,115,927.57),[1] and subtracted the amounts that Benlida has acknowledged were paid (−$230,744.78), resulting in a total due of $13,424,591.10." On motion *in limine*, CTX-US would then have argued that a CPA adding up the numbers, and presenting them to the jury, would constitute improper bolstering, and that simple math is not the proper subject of expert testimony.

CTX-US's defense (and counterclaim) to this lawsuit is that it actually overpaid for goods ordered from Benlida, and that such "overpayments" reduce to zero the amounts owed by CTX-US, despite the commercial and common-sense reality that companies normally do not overpay for goods. CTX-US argues that "overpayments" made by CTX-US do not reduce the debts owed on orders placed by CTX-HK. To make this argument, CTX-US asserts that FIFO bookkeeping is inappropriate, even though Mr. Parisi himself (CTX-US's own expert) testified that FIFO bookkeeping is in fact proper: (Parisi Dep., Ex. A, pp. 241-242, 248)

> Q. If the payment doesn't -- if the payment made by the payor does not define what invoices or identify what invoices they should be attributable to, is there anything unreasonable about the payee applying that money to their oldest invoices?

---

[1] The question is whether the parties mutually agreed to a specific price increase, not the myriad factors that went into the price increase, including the increased costs of various materials. Was there a meeting of the minds as to the increase? That is the issue of fact for the jury, not whether the price increase was warranted based on the prices of gold and other materials. If, after review of all of the evidence, the jury believes that CTX-US did not agree to the price increase, then CTX-US won't have to pay it. If, on the other hand, the jury believes that there was a meeting of the minds as to the $2,115,927.57 price increase, then CTX-US will be held liable therefor. This doesn't involve a whit of expert testimony.

A. That's one option.

Q. Okay.

A. Another option would be to call the company and say, Hey, which invoices are you paying specifically?

Q. But it is reasonable to apply it to the oldest invoices.

A. It could be. As long as it's applied to the appropriate entity that issued those invoices.

You wouldn't want to have a matching issue. You know, the -- accounting's very big on matching. Right? You want to have the revenues and expenses in the proper period, in same way you'd want to have the invoices applied against the proper payments.

Q. So assuming it's the proper entity, there's nothing unreasonable about a bookkeeping department taking a payment that doesn't otherwise identify to what invoice it's attributable to and applying it to its old invoices.

A. Hypothetically?

Q. Yes.

A. That could happen.

Q. And is it reasonable to do that?

A. It depends on the facts and circumstances. I'd reach out and ask for detail to apply issues.

In this example, you know, if it wasn't applied FIFO, some of these, you know, invoice differences would have been flushed out, hopefully. But it could -- but payments on accounts certainly can happen.

Q. But it is -- it remains reasonable -- now, while you may prefer someone to pick up the phone and call, it does remain reasonable for a bookkeeping department to apply monies to the oldest invoices. Is that correct?

MR. ROSENTHAL: Object to form.

A. If applied to the proper entity, it – that could be an appropriate method of accounting for payments.

\*\*\*

Q. Okay. So still talking about payment application and applying of payments. [¶] I guess, hypothetically, if CTX U.S. is responsible for the debts of CTX Hong Kong, is it -- would it be appropriate and reasonable for Benlida to apply payments from the U.S. operation to the oldest invoices of either U.S. or Hong Kong?

A. If Circuitronix, LLC, is responsible for all the debts of Circuitronix Hong Kong.

Q. Hong Kong. Um-hmm.

A. Then you could presumably combine the balances.

As the issue of whether CTX-US is responsible for the debts of CTX-HK is not, as CTX-US's expert acknowledges, an accounting question, it is unclear why CTX-US is seeking to

5

preclude Benlida's accounting expert Paulikens from testifying *as a rebuttal witness*, and, in doing so, presenting testimony showing that CTX-US's expert testimony is flawed for not having taken into account the moneys owed by CTX-US for the orders placed by CTX-HK for CTX-US's "exclusive customers." It is Benlida's position that the complaint itself sets forth the basis for its claim of damages, using simple math, and that an expert is not needed to tally the amounts claimed in the invoices and the agreed-upon price increase.

CTX-US has also been aware since the filing of the TAC that Benlida's damages claim includes debts owed by CTX-HK, and cannot disclaim such.[2] The following is a statement from CTX-US's motion to dismiss dated June 15, 2021: "For example, in the TAC, Benlida purports to assert claims against CTX based on over 170 invoices issued to CTX-HK, not CTX." (DE 27).

To the extent, however, that CTX-US continues to maintain that it was, somehow, not given sufficient notice of the math behind Benlida's claim in a Rule 26 disclosure, we note Your Honor's decisions, as follows:

> ***Ore v. Tricam Indus.*, 2017 U.S. Dist. LEXIS 171639, *18-19:**
>
> "Even assuming that the Plaintiff failed to adequately comply with the requirements set forth in Rule 26(a)(2)(C), the Defendants' argument is not well-taken. First, the Defendants had ample opportunity during the pendency of this case to seek the intervention of the Court for the Plaintiff's non-compliance. … The Defendants never sought relief for what they claim to be prejudicial non-compliance. Furthermore, the Defendants' attempt to claim an inability to adequately prepare for cross examination falls flat, since the Plaintiff's treating physicians testified at trial via depositions taken well in advance of trial. Thus, the Defendants' attempt to obtain a new trial on a technicality must fail."
>
> ***FTC v. On Point Global LLC*, 2021 U.S. Dist. LEXIS 201532, *20:**
>
> "[A] motion *in limine* should "not serve as reinforcement regarding the various rules governing trial[.]" *See Powers v. Target Corp.*, No. 19-cv-60922-Bloom/Valle, 2020 U.S. Dist. LEXIS 73289, 2020 WL 1986968, at *7 (S.D. Fla. Apr. 27, 2020) (Bloom, J.). The FTC is already bound by Rule 26(e)(1) and Rule 37(c)(1), even absent court order. If the FTC uses evidence at trial in a manner

---

[2] CTX-US thus also cannot credibly allege that Benlida developed this "worldview… explicitly in response to CTX's motion for summary judgement" over two years later.

that implicates Rule 26(e)(1) and Rule 37(c)(1), the moving Defendants can raise this objection at that time."

***Ramones v. Experian Info. Sols., LLC*, 2021 U.S. Dist. LEXIS 168243, \*13:**

"The Court denies without prejudice motion *in limine* IV. ARR argues for the exclusion of any evidence from undisclosed witnesses or documents pursuant to Federal Rules of Civil Procedure 26(a) and 37(c). (ECF No. 115 at 9-11.) However, '[m]otions *in limine* should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial[.]' Powers, 2020 U.S. Dist. LEXIS 73289, 2020 WL 1986968, at \*7. If Ramones' attempts to introduce evidence from an undisclosed witness or documents, then ARR can renew this motion, and the parties would have the benefit of a more specific objection in order to determine whether the undisclosed witnesses or documents fell within Rule 26(a)(1)(A) and whether the failure to disclose, if any, was substantially justified or harmless under Rule 37(c)."

As for the issue of CTX-US being responsible for the debts of CTX-HK – an issue of law, rather than of accounting – we remind the Court that in opposition to the motion for summary judgment, which remains *sub judice*, Benlida demonstrated that CTX-HK's purchases were made for customers on the CTX-US exclusive customer list. (See DE 188 at 2-5, 10). We further note that CTX-US has alleged in its answer and counterclaim that CTX-HK became a party to the 2012 manufacturing agreement when Rishi Kukreja – acting on behalf of both CTX-US and CTX-HK signed the 2016 letter agreement between them and Benlida. (See DE 34, Counterclaim at ¶ 3). That is, CTX-US and CTX-HK, through the 2016 Letter Agreement (DE 177-1, Ex. C to Martinez Decl.), are said to have become co-signers of the 2012 Manufacturing Agreement (DE 177-1, Ex. A to Martinez Decl.), meaning that CTX-US made itself a co-signer on *all* debts incurred by CTX-HK.

That a co-signer is jointly and severally liable to the counterparty is a widely recognized legal principle. *See*, *e.g.*, *Trinity Universal Ins. Co. v. Drake*, 587 S.W.2d 458, 465 (Tex. Civ. App., Dallas 1979), *aff'd in part, rev'd in part on other grounds* ("Generally, joint and several liability arises when two or more persons jointly engage in the commission of a tort or *co-sign* a

7

note or *contract*." (Emphasis added)).[3] A case illustrating the point is *Thomas v. Capital Medical Management Associates, LLC*, 189 Md. App. 439, 985 A.2d 51 (Md.App. 2009), wherein a principal of an LLC signed a contract without designating that she was signing in her representative capacity. Consequently, she was found to have been a co-signer in her individual capacity, and therefore personally liable. Analogously, CTX-US and CTX-HK – by their principal Rishi Kukreja – were made co-obligors when he signed the 2016 Letter Agreement in his representative capacity for each of the two entities.

The Restatement (Second) of Contracts § 289 says: "(1) Where two or more parties to a contract promise the same performance to the same promisee, each is bound for the whole performance thereof, whether his duty is joint, several, or joint and several. (2) Where two or more parties to a contract promise the same performance to the same promisee, they incur only a joint duty unless an intention is manifested to create several duties or joint and several duties. (3) By statute in most states some or all promises which would otherwise create only joint duties create joint and several duties."

In accordance with § 289(3) above, in Florida, "joint obligors are not indispensable parties to a suit based on breach of contract." *WBDH-BC Holdings Ltd. v. Varsatel Corp.*, 2022 U.S. Dist. LEXIS 154726, at *29 (S.D. Fla. 2022) (citing *Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 586 (11th Cir. 1983)). Accordingly, a plaintiff may seek

---

[3] See also *In re Hall*, 2019 Bankr. LEXIS 4062, at *7 (Bankr. M.D. Fla. 2019) ("[W]hen Ms. Daley agreed to co-sign the loan, she assumed the full legal obligation to pay it. It is a common risk that co-signors must pay co-signed loans when the other party files bankruptcy."); and *Southeastern Bank v. Brown*, 266 B.R. 900, 907 (S.D. Ga. 2001) ("Before giving the loan to the debtor, the creditor secured the promise of the cosigner that if for some reason the debtor could not pay, the cosigner would be liable on the debt. As a result, the creditor protected itself through contract from the very problem that has arisen here, the debtor's inability to pay his or her debts.")

recovery from one of two co-signers in Florida, as Benlida has done here. CTX-HK is, indeed, dispensable, because Benlida can properly look to CTX-US for the entirety of the CTX-US and CTX-HK debt, and it is more believable that CTX-US was aware of such and making payments for the debts of CTX-HK than that CTX-US was "overpaying" Benlida for goods.

As § 288 of the Restatement explains, "(2) Unless a contrary intention is manifested, a promise by two or more promisors is a promise that the same performance shall be given." Here, neither the 2012 Manufacturing Agreement nor the 2016 Letter Agreement evinces a contrary intention. They do not assign to CTX-US and CTX-HK mutually exclusive duties of performance owed to Benlida. *Cf.*, *e.g.*, *Eastern Electrical Co. v. Taylor Woodrow Blitman Constr. Corp.*, 11 Mass. App. Ct. 192, 199 (1981) (Mutually exclusive contractual duties that are "sharply contrasted and cover two clearly defined and largely separate areas of responsibility" suggest intention of different performance.) CTX-HK doesn't have any defined duties under the language of the 2012 Manufacturing Agreement. Rather, as shown in opposition to the motion for summary judgment, CTX-HK issued purchase orders to Benlida, identifying in the purchase orders customers designated by CTX-US as being CTX-US's "exclusive customers." With respect to such orders, CTX-HK was necessarily CTX-US's agent. And, by becoming a signatory to the 2012 Manufacturing Agreement, it became jointly and severally liable for CTX-US's debts, and vice versa.

CTX-US's motion to preclude Paulikens is misplaced as he will be a pure rebuttal witness, because (a) whether CTX-US is responsible for the debts of CTX-HK is a question of law; and (b) it doesn't take an expert to add up the invoices forming Benlida's affirmative damages claim. Thus it is odd that Mr. Parisi and Mr. Mukamal were instructed to disregard the amounts claimed by Benlida against CTX-US for orders placed by CTX-HK for CTX-US's

exclusive customers, strategically hiding their heads in the sand so that counsel could feign surprise. Such testimony is not intended to "bolster" Benlida's case in chief; rather, it is intended to counter CTX-US's claims for recoupment of "overpayments."

**Point II:     Preclusion is Not Warranted on Grounds that Benlida Did Not Plead the "Theory" Why CTX-US is Liable for the Debts of CTX-HK.**

As the above testimony of Mr. Parisi and Mr. Mukamal demonstrates, and as CTX-US's motion to dismiss makes clear – and as the Court no doubt can see for itself – the TAC alleges that CTX-US is liable to Benlida for orders placed by both CTX-US and CTX-HK. Yet CTX-US argues in its motion *in limine* that the "theory" why CTX-US is responsible for the orders placed by CTX-HK was not pled in the TAC, and that preclusion of Mr. Paulikens is therefore warranted, as he would be "smuggling" into the case in rebuttal a theory that was neither pled nor advanced in an affirmative expert report.[4] To the contrary, however, Benlida was not required to plead any particular legal theory in its TAC.

Notice pleading merely required that CTX-US be put on notice that Benlida was seeking recovery from it for the orders placed by CTX-HK. This is made clear by myriad cases, such as, *Houston Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*, 2017 U.S. Dist. LEXIS 91997, *5 (M.D. Fla. 2017), wherein the court stated:

> It is true that the operative Second Amended Complaint (Doc. #51) does not expressly allege Titleworks had "prior knowledge of a Wrongful Act." But these specific words were not needed for Houston to pursue such a theory. Even in the *Twombly/Iqbal* era, "[f]ederal pleading rules call [only] for 'a short and plain statement of the claim showing that the pleader is entitled to relief,'; they do not countenance [penalizing a plaintiff] for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). In other words, the pleading obligation Rule 8 imposes is one of including

---

[4] Benlida has no quarrel with the general principles cited in CTX-US's motion. Benlida simply does not intend to present "new" theories of damages on rebuttal through Mr. Paulikens. Rather, Benlida will offer classic rebuttal testimony. If at trial, CTX-US's counsel believes that the questioning is leading Mr. Paulikens into impermissible territory, the Court can rule on the objection at that time.

sufficient facts to support a claim, not of alleging all possible legal theories underlying that claim. *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016) (per curiam) ("A complaint need not specify in detail the precise theory giving rise to recovery." (citing *Sams v. United Food & Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989))). All that Rule 8 requires "is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Id.*; see also *Hamilton v. Allen-Bradley Co., Inc.*, 244 F.3d 819, 825 (11th Cir. 2001) (observing that a complaint need only "outline[] sufficient facts to put [the defendant] on notice of [a particular] claim," not contain any "specific words").

In this case, the TAC puts CTX-US on notice of the claim asserted against it, and the grounds upon which the claim rests – specifically, the unpaid CTX-US and CTX-HK invoices, and the unpaid but agreed-to price increase. And inasmuch as it doesn't take an expert to add up the numbers to educate a jury as to how much is owed to Benlida, there can be no legitimate claim that Benlida would be sandbagging CTX-US by introducing rebuttal testimony to show that CTX-US's experts did not take into account the entirety of the amounts in dispute when it issued their report.

CTX-US's argument might have legs if this were a case where its counterclaim was unrelated to Benlida's affirmative case. Here, however, each side disagrees about the same issue: As between Belinda and CTX-US, who owes whom what? Benlida is not introducing anything into this case that CTX-US has not been on notice of since at least June of 2021, when the TAC was interposed. Highlighting the omissions and faulty premises of an affirmative expert report is squarely within the province of a rebuttal expert.

**Point III:** **CTX-US Cannot Fault Paulikens for Fairly Criticizing the Mukamal-Parisi Report, and Paulikens's Opinions Regarding the CTX-US and CTX-HK Relationship are Admissible Specialized Knowledge in Rebuttal to Help the Jury to Understand Why it is Reasonable, from an Accounting Standpoint, to Treat CTX-HK's Debts as Owed by CTX-US, and Unreasonable to Treat Them Otherwise.**

The Paulikens report, and his anticipated testimony, is nothing but rebuttal, as there is no need to present him as an affirmative witness at trial. Plaintiff Benlida's case in chief will be

11

simple and routine, along the lines of – Q. Did CTX-US and CTX-HK issue purchase orders to Benlida for customers on the CTX-US exclusive customer list? Q. Did Benlida accept the purchase orders? Q. Did it manufacture and then ship the goods? Q. What's the dollar amount of what was shipped? Q. Were invoices sent? Q. How much is owed? Q. Did Benlida and CTX-US and CTX-HK come to an agreement about a price increase? Q. How much was agreed to? Q. What did CTX-US and CTX-HK pay Benlida? Q. What is the balance due?

Defendant CTX-US seeks to present Mr. Mukamal and Mr. Parisi to show their math – by which they would show that Benlida actually owes CTX-US millions of dollars, because (as CTX-US curiously claims) all of the money that it paid, even if such money matches up with money owed for CTX-HK purchases, was improperly applied by Benlida to CTX-HK invoices, and that Benlida should have treated the money as a loan to Benlida by CTX-US instead.

Mr. Paulikens's rebuttal testimony would be perfectly appropriate to show that CTX-US is proposing accounting methods that are not in accordance with ordinary and customary principles. To make this showing, Mr. Paulikens would explain (a) that attributing payments by a purchaser to the oldest debts is in accordance with generally accepted accounting and bookkeeping principles, (b) that the payments to Benlida by CTX-US only make sense in the context of the entire relationship, where CTX-US and CTX-HK are acting as related entities, and (c) that the "the individual pieces don't necessarily make economic sense in a vacuum." (See, e.g., Paulikens Dep., p. 82). Indeed, Mr. Paulikens explained: (Paulikens Dep., Ex. C, pp. 111-112, 168-169, 256-258)

> Q. And how does your understanding of that relationship play into your evaluation of the financial dispute between these companies?
> A. It plays into the inverse relationship towards the end of my report that discusses that one entity claims it overpaid its supplier by 5-million-odd dollars and that another entity that's clearly related was underpaid by 13 million from the chart we talked about. And individually, you wouldn't have those kind of transactions.

12

Ordinarily, … a customer doesn't overpay its supplier ever. Or certainly not by months worth of revenue. And you don't have another supplier that may have one year of sales -- one year of transactions being owed.

I mean, individually, those are odd transactions. And I covered that in my report, which is simply wanting to say why is that. It doesn't make sense that these two pieces are so isolated and disparate.

***

Q. Let me come back to what you were writing about on page 6 of your report that we talked about a few minutes ago, which is this custom of payment on account being applied to the -- on a FIFO basis unless there's a specification of specific invoices.

A. Yes.

Q. Is it your intention to offer an opinion in this case that that custom is applicable to the relationship between the parties in this case?

MR. LERNER: Objection. [¶] You could answer.

A. Because, I mean, a formal opinion, it's customary, again -- let me start the answer again. [¶] To give a formal opinion, I'm unsure. Because it's such a strange – the payments on account to me is just basic business, that that's norm and I've seen that in every business I've seen in 35 years. So if that's an opinion you're asking, yes, I've seen that. You know, payments on account, apply the oldest one first. I've seen that consistently for 35 years. [¶] If that's the opinion you're asking, yes, that's the opinion I would give on the witness stand.

***

Q. … You say in the next line of your report, quote, put another way, CTX HK and CTX U.S. would appear to be controlled and dominated by CTX. [¶] When you say "by CTX," what are you referring to?

A. The parent, CTX LLC.

Q. When you say "the parent," are you saying that CTX LLC is a corporate parent of CTX HK?

A. No. I'm not trying to say in a strict corporate parent. I'm saying in the way I see the relationship -- the way I understand decisions are being made, there's a control aspect over Hong Kong. Whether it's by direct ownership interest or whether it's by direct shared management. Whether it's by direct other issues, there is some layer of influence and control over CTX. And --

Q. Over CTX Hong Kong, to be precise? You said over CTX. I'm sorry to interrupt you, but I think you meant over CTX Hong Kong, right?

A. Yes. So, again, from an accounting perspective, when you see disparate relationships like we're seeing in terms of the receivables, it suggests there's more here than the individual pieces might imply.

13

Not only does CTX-US's claim of overpaying (or extending loans) to Benlida not pass the straight-face test, one would expect – if that's what CTX-US was doing – for there to be evidence indicating that CTX-US was extending a loan, or even evidence where CTX-US cautioned Benlida not to apply any of its "overpayments" to debts owed by co-signer CTX-HK, but there is no such evidence. The Court should not let CTX-US hide the true amounts owed to Benlida from the jury on the contention that Benlida should have had an affirmative expert to do the rudimentary addition and subtraction, and that any criticism of omissions in CTX-US's expert report make such opinions and testimony inadmissible. Were CTX-US's position correct, every party in a litigation would simply have their expert omit the warts of their case, such that a rebuttal expert could never address them.

Unlike in *Kroll v. Carnival Corp.*, No. 19-23017-CIV, 2020 WL 4793444 (S.D. Fla. Aug. 17, 2020) (Goodman, J.), where there was a documented history of plaintiff designating an affirmative expert, being unsatisfied with that expert's deposition testimony, and then offering a second expert as an alleged rebuttal, Benlida looked at its affirmative case – at the strength of the documentary evidence in the form of invoices underlying its damages calculations as to its affirmative case – and decided that no affirmative expert was necessary to perform simple arithmetic. However, the Mukamal-Parisi report – in explaining CTX-US's view of the amounts owed between the two parties – missed the critical issue of debts owed by CTX-US for orders placed by CTX-HK, which CTX-US has paid for in the past. Any expert opinion on this same subject matter – the correct *accounting* between the two parties – is admissible rebuttal testimony.

Indeed, critical omissions are fair game for rebuttal opinions when they are on the same subject or topic. *Burger King Corp. v. Berry*, 2019 U.S. Dist. LEXIS 36187, *5 (S.D. Fla. Jan. 8, 2019):

> Courts are empowered to exercise their discretion and judgment in determining if a rebuttal expert report addresses the same subject matter as the opposing party's initial expert report. *citing Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687, 2018 U.S. Dist. LEXIS 124820, 2018 WL 3583002, at *2 (S.D. Fla. July 26, 2018) (*quoting ITT Corp. v. Xylem Grp., LLC*, No. 1:11-CV-3669-WSD, 2012 U.S. Dist. LEXIS 197312, 2012 WL 12871632, at *3 (N.D. Ga. Oct. 15, 2012)).
>
> The term "same subject matter" has been broadly construed. *See Northrup v. Werner Enterprise, Inc.*, No. 8:14-cv-1627-T-27JSS, 2015 U.S. Dist. LEXIS 105281, 2015 WL 4756947, at *2 (M.D. Fla. Aug. 11, 2015); *1550 Brickell Assocs. v. OBE Ins. Corp.,* No. 07-22283-CIV, 2010 U.S. Dist. LEXIS 58083, 2010 WL 1947636, at *2 (S.D. Fla. May 13, 2010).

Benlida is not introducing any new damages on rebuttal, but is merely pointing out that CTX-US's expert report failed to take into account co-signer CTX-US's debt for orders placed by co-signer CTX-HK, which have always plainly been included in Benlida's damages as CTX-US's own motion to dismiss submitted over two years ago plainly demonstrates.

In addition, Paulikens's opinions regarding the nature of CTX-US's and CTX-HK's relationship from an accounting perspective are admissible expert opinions under FRE 702 and *Daubert*, as related-party analysis is the typical domain of an accountant, and is necessarily done in order to understand how and why a business is acting in a certain way. See, *e.g.*, *SEC v. Das*, 723 F. 3d 943 (8th Cir. 2013) (expert testimony of CPA Steven Henning, PhD., regarding related-party transactions and analysis deemed appropriate); *Ad Astra Recovery Servs. v. Heath*, 2021 U.S. Dist. LEXIS 56438, *17-19 (D. Kansas 2021) ("[CPA] Zayas defines control as who directed where the money could go and states that this standard is used in related party and VIE [variable interest entity] considerations under accounting principles. … Zayas further explained

15

that in these types of cases, the entity that controls the funds generally will most often control the entity." The District Court held such testimony to be proper.)

Here, relatedness explains why CTX-US is claiming that it overpaid by millions of dollars for orders it placed with Benlida, when in fact they were not overpayments (as companies normally do not repeatedly and so greatly overpay for goods) and were attributed upon receipt to the A/R of CTX-HK, because CTX-US was responsible for making payments for CTX-HK's debts. Relatedness is necessary to explain the reasonableness of Benlida's actions, aside from the grounds that CTX-US and CTX-HK became co-signers on the 2012 Manufacturing Agreement upon execution of the 2016 Letter Agreement, and that CTX-HK was purchasing as an agent for CTX-US, by virtue of its making purchases for CTX-US's "exclusive customers." In sum, Mr. Paulikens will be offered in rebuttal to explain why Benlida's bookkeeping practice of attributing CTX-US's payments to orders placed by CTX-HK was appropriate, given the relationship between the parties. This is highly relevant in rebuttal to CTX-US's counterclaim arguments, especially its claim of having made substantial "overpayments" to Benlida.

***

WHEREFORE, CTX-US's motion in limine to preclude Benlida's expert Randall Paulikens from testifying at trial should be denied.

Dated: New York, New York
       August 22, 2023

**Mazzola Lindstrom LLP**

By:_____
Richard E. Lerner
Jean-Claude Mazzola
*Counsel for Jiangmen Benlida Printed Circuit Co., Ltd.*
1350 Avenue of the Americas, Second Floor
New York, New York 10019
Tel.: 646.216.8300
richard@mazzolalindstrom.com
jeanclaude@mazzolalindstrom.com

Service via ECF