UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

    Plaintiff,

v.

CIRCUITRONIX LLC,

    Defendant,
_____/

**REPLY IN SUPPORT OF CIRCUITRONIX, LLC'S OMNIBUS MOTION *IN LIMINE***

                                 Stephen F. Rosenthal
                                 Florida Bar No. 0131458
                                 srosenthal@podhurst.com
                                 Matthew P. Weinshall
                                 Florida Bar No. 84783
                                 mweinshall@podhurst.com
                                 Christina H. Martinez
                                 Florida Bar No. 1029432
                                 cmartinez@podhurst.com
                                 PODHURST ORSECK, P.A.
                                 One S.E. 3rd Avenue, Suite 2300
                                 Miami, Florida 33131
                                 Tel.: 305-358-2800

                                 *Counsel for Circuitronix, LLC*

Circuitronix, LLC ("CTX") replies to Plaintiff Benlida's response to CTX's Omnibus Motion *in Limine*. *See* DE 203 ("Resp."); DE 198 ("Mot."). The motion should be granted.

### 1. Any Damages Computation Beyond that Pled in the Complaint

CTX's motion explains why Benlida should be barred from introducing evidence of its damages computation beyond the superficial calculation pled in the complaint as a sanction for failure to disclose that computation: Benlida failed to meet its disclosure obligations under Rule 26(a) or (e), delayed responding to CTX's discovery specifically targeting the computation until the close of discovery, and even then omitted essential information that would allow CTX to evaluate how Benlida calculated its assertions that the invoices listed in the complaint were unpaid. Mot. at 2-5. Rather than rebut these points, Benlida tries to waive the problem away by suggesting that "a simple computation beyond that pled in the complaint may well be unnecessary." Resp. at 4. That's little comfort to CTX, who has already identified multiple complexities impairing its ability to fairly assess the assumptions behind Benlida's allegations of what invoices were unpaid, and other components of its claimed damages, all stemming from Benlida's disclosure omissions. Three such difficulties are detailed in the footnote.[1]

Yet another complication flowing from Benlida's failure to disclose how it computed its damages has only just become evident from Benlida's response to CTX's statute-of-limitations

---

[1] *First*, Benlida claims to have calculated the damages sought in the complaint and performed *undisclosed* computations to identify the supposedly unpaid invoices, as of May 31, 2020, yet it has never shown that work nor produced any contemporaneous version of its accounting records from which CTX can derive the list of what invoices would be paid/unpaid as of that date. Second, the $11.5 million sum of total invoices in the complaint (DE 26, ¶ 437) somehow includes consideration of invoices from *ROK*, not just Benlida, even though the listed invoices are only from Benlida. *See* Mot. at 3 n.1 (citing Benlida's CFO's testimony). Third, Benlida gave a complex and positively opaque explanation of how it arrived at the $2.11 million figure for claimed damages relating to price increases. *See id*. at 4-5. They started with a $3.3 million figure they had sent CTX in 2019, then later, for litigation purposes, reviewed their internal periodic purchasing price data for copper clad laminate ("CCL") over the more than two-year period involved, factored in value-added tax ("VAT"), applied some formula of "FIFO" use of the laminate for production (presumably to account for the variable of CTX being just one of many customers whose orders consumed the CCL), and *somehow* calculated a "correct[ed]" figure of $2.11 million. Ex. 1 (T. Huang Depo.) at 46:6-52:13, 140:8-143:7. Benlida has never disclosed any of those variables or the formula it used to derive that figure. Its interrogatory response asserted that "VAT of CCL in Belida records support this number" (DE 185-5 at 2 (No. 2)), but it never produced or identified those records.

1

argument, which is predicated on CTX's understanding that Benlida relied on time-barred debts of CTX-HK to compute which invoices from both CTX (and CTX-HK) remain unpaid. *See* Mot. at 9-10. Relying on a table Benlida produced showing debts of CTX-HK by year, the motion interprets the "Balance Due" column of the table to mean exactly what it says: the debt Benlida claims existed each year. *See id.* at 10. In response, Benlida asserts, for the very first time, that the table "was not intended to be a true representation of the aging accounts receivable, to show the amounts that were outstanding, nor from what period the amounts were unpaid." Resp. at 9. And, also for the first time *ever* in this case, Benlida provides an illustration of "additional analysis" to show how it claims to have applied payments from CTX-HK, in the aggregate, over time. *See* Resp. at 9-10. It has *never* before produced *any* such illustrative computation, let alone a contemporaneous document showing such a FIFO calculation for a CTX-HK (or CTX) only. All it produced was a *commingled*-FIFO chart for both companies, which it swore it used. Mot. at 3-4. Benlida's new illustration of how it supposedly "cleared" older invoices to CTX-HK "by properly using FIFO bookkeeping" (Resp. at 10) conflicts with its sworn testimony that it used a commingled-FIFO methodology (*i.e.*, lumping the CTX and CTX-HK invoices and payments into a single bucket), somehow also including ROK invoices.

      Benlida deflects its own failure to disclose a comprehensible damages computation by assailing CTXs' attempt to apprehend it as "obfuscatory" and based on "pretend[] … misapprehen[sion]." Resp. at 8. To the extent CTX has truly misapprehended, it's only further demonstration of the prejudice flowing from Benlida's utter disclosure failure, a point Benlida ducks entirely. Benlida complains this motion seeks to "place Benlida in a straightjacket," *id*. at 4, but the restraint that should limit Benlida's freedom to expound upon its damages at trial is a product of its own making and Federal Rules 26 and 37(c)(1). Benlida has *never* provided a straight story as to how it computed its claimed damages in this case, leaving CTX grasping for straws on the eve of trial. This is precisely the type of harmful, unjustifiable non-disclosure that Rules 26 and 37 are designed to combat.

      Avoiding confronting the Rule 37 issues of justification and harmfulness, Benlida vaguely asserts that this Court has "rejected such arguments" in three cases. Resp. at 4 (citing *Ore v. Tricam, Indus.*, No. 14-60269-Civ-Scola, 2017 WL 6597517 (S.D. Fla. Oct. 16, 2017), *FTC v. On Point Global LLC*, No. 19-25046-Civ-Scola, 2021 WL 4891334 (S.D. Fla. Sept. 23, 2021), and *Ramones v. Experian Info. Solns., LLC*, No. 19-62949-Civ-Scola, 2021 WL 4050874,

2

at *5 (S.D. Fla. Sept. 4, 2021)). In two of those cases, this Court denied particular motions *in limine* because Rules 26(a) or (e), and 37(c), are self-executing. *On Point*, 2021 WL 4891334, at *5; *Ramones*, 2021 WL 4050874, at *5.[2]

None of those rulings, however, addressed a motion seeking to preclude the use of undisclosed damages computations. A plaintiff's computation of its damages is virtually certain to figure prominently at trial, particularly in a commercial case. A plaintiff's violation of its discovery obligations to disclose its damages computations deprives the defendant of the "ability to prepare a targeted defense" and affects "the fairness of the trial." *Vital Pharms., Inc. v. Monster Energy Co.*, No. 21-13264, 2022 WL 3083273, at *4 (11th Cir. Aug. 3, 2022). Imposing the appropriate sanction *before* trial helps ameliorate that unfairness. Such a pre-trial ruling will also streamline the trial by avoiding foreseeable and likely time-consuming objections in the presence of the jury. The Eleventh Circuit has repeatedly affirmed district courts' *in limine* rulings excluding damages evidence. *Circuitronix v. Kinwong Elec. (Hong Kong) Co., Ltd.*, 993 F.3d 1299, 1308 (11th Cir. 2021); *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221–22 (11th Cir. 2010); *Vital Pharms., Inc.*, 2022 WL 3083273, at *4.

To the extent the Court requires a more narrowly focused argument on a motion *in limine*, CTX clarifies that this aspect of its motion is directed specifically at precluding Benlida from offering evidence or arguing about the way it computed its damages that varies from, or is any more specific than, the threadbare information it disclosed to CTX. That means Benlida should be barred from evidence or argument: (1) that it calculated which invoices are allegedly unpaid by any means other than the commingled-FIFO process that Benlida's bookkeeper, Ms. Chen, testified about having done; (2) showing any computations more specific than those on the face

---

[2] The opinion in *Ore* involved a post-trial motion. 2017 WL 6597517, at * 5. Benlida appears to cite it to argue, without elaboration, that CTX did not seek relief for Benlida's non-compliance. That is inaccurate. CTX sought relief from the Court on two prior occasions to obtain critical evidence from Benlida during the discovery period. The first was CTX's motion to compel Benlida to produce its witnesses for deposition, including Ms. Chen and CFO, Roger Wu, back in April 2022. *See* DE 66. The second was a request for a hearing before Magistrate Judge Goodman on June 1, 2023 to address discovery disputes pertaining to outstanding discovery requests, including for Benlida's database of aging dets of accounts receivable for CTX. *See* DE 166 (hearing setting). The hearing on those disputes was obviated after Benlida stated that, other than what had already been produced, there were no responsive communications. *See* DE 198-12 (Letter from R. Lerner to S. Rosenthal (June 5, 2023)). Benlida ended up producing no documents that showed any non-commingled accounts receivable.

3

of the only document Benlida produced evidencing its payment allocation that coincides with the invoices listed in the complaint, an Excel spreadsheet entitled "CTX Unpaid Invoices, 2020 December" (Depo. Ex. 84);[3] and (3) showing any computations as to how Benlida actually derived the $2.11 million figure attributable to a price increase.

Last, Benlida mischaracterizes CTX's expert's testimony, saying there is "99% agreement between the parties *as to the amounts at issue*." Resp. at 2 (emphasis added). Mr. Mukamal was referring only to data "relating to the two entities, CTX, LLC and Benlida." *Id*. at 3 (quoting deposition). He was *not* talking about CTX-HK. Half of Benlida's claims implicate CTX-HK. The resulting computations are anything but simple, and Benlida's substantial disclosure failures have placed CTX in the untenable position of facing sandbagging at trial on millions in claimed damages. The exclusionary sanction Rule 37(c)(1) prescribes is warranted.

### 2. Debts CTX-HK Allegedly Owes to Benlida

This aspect of the motion is largely, though not entirely, contingent upon the Court's ruling on CTX's summary-judgment motion. If the Court rules that Benlida is estopped from suing upon the invoices it issued to CTX-HK because it failed to plead any theory by which CTX could be responsible for those asserted debts, or as a sanction for failing to plead or disclose its commingled-FIFO methodology, then an order excluding argument and evidence as to those CTX-HK debts logically should follow. The same result should obtain if the Court grants the Rule 56 motion on the ground that the promise in the 2014 Business Authorization was superseded by the integration clause of the 2016 Letter Agreement. Mot. at 7-8.

Even if the Court denies the Rule 56 motion, argument and evidence about deposition exhibit 162, a letter from CTX-HK's outside auditor, should be barred because Benlida did not produce it during discovery. *See* Mot. at 8 n.7. Benlida offers no defense to this argument.

The arguments Benlida *does* make suffer from multiple flaws. It leads with an argument that is entirely non-responsive to the failure-to-plead and sanctions arguments in the motion, seeking instead to illustrate the "preposterousness" of CTX's (merits) position. Though there is

---

[3] By way of illustration, that would mean Benlida should not be allowed to show, for the first time at trial, a demonstrative that purports to illustrate (a) *how* Benlida applied a particular wire transfer payment from CTX (or CTX-HK), identified by its amount or date received, to all or some of a particular invoice, or (b) *when* Benlida allocated such a payment to that particular invoice. Such important details of aging accounts receivable do not appear in exhibit 84 or anything else Benlida has disclosed.

4

no such exception to the legal principles raised in the motion, we note, in direct response that Benlida's attempted illustration (of "preposterousness") through an "*If/Then* example," that it glaringly omits a crucial, inconvenient, but admitted and legally salient, fact: that CTX sent instructions with its monthly payment details for which invoices its wire transfers for that payment period should be applied to.  *See* DE 184-1 at 15-18; DE 193 at 8-10.  Contrary to Benlida's characterization that CTX was paying money to Benlida for goods *CTX-HK* ordered (Resp. at 4), for all of the invoices to CTX that Benlida is suing upon, CTX's monthly payment details designated payment only for invoices to CTX, not for invoices to CTX-HK.[4]

      Undeterred by CTX previously having pointed out Benlida's failure to have pled any legal basis for CTX's legal responsibility for invoices Benlida issued to CTX-HK, Benlida doubles down on its reliance on unpled theories, trotting out a third new theory for the first time in response to CTX's motions *in limine*.  Forced to concede that CTX-HK became a party to the Manufacturing Agreement with Benlida via the 2016 Letter Agreement (Resp. at 12), such that CTX-HK had standing itself to place its own orders with Benlida from the date of that agreement forward, Benlida pivots—out of nowhere—to claim that CTX thereby became "jointly liable" for CTX-HK's debts as a "co-signer[,]" *id*. at 5.  Benlida's attempt to move the goalposts yet again, after already doing so in response to CTX's summary-judgment motion, is way out of bounds.  *See* CTX's Reply in Support of Its Motion to Exclude or Limit Testimony of Benlida's Rebuttal Expert at 6-9.

      **3.   Debts Barred by the Statute of Limitations**

      Benlida offers a two-part response to CTX's statute of limitations defense: first, they used an appropriate accounting method (FIFO); second, CTX misapprehends how they performed that accounting to isolate the debts they sue upon.  Both analytic steps are flawed.

      They proclaim their reliance on FIFO accounting to rest on "black-letter Florida law" that a debtor must designate payment instructions "at the time of payment," Resp. at 6 (citing *Randall v. Pettes*, 12 Fla. 517 (1868)).  That bold claim is simply stunning given the more recent Florida case law CTX discussed at length in prior briefing, which Benlida willfully ignores.  *See* DE 193 at 8-10 (discussing *Urrea v. Koplow*, 359 So. 3d 1212, 1215 (Fla. Dist. Ct. App. 2023) (holding

---

[4] *See* DE 177-6 (Ochoa Decl.), ¶¶ 4-6; DE 184-2 (CTX's Stmt. of Mat. Facts), ¶ 23 (citing Ochoa Decl.); DE 189 (Benlida's Resp. Stmt. of Mat. Facts), ¶ 23 (not contesting this fact).

5

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

that the principle from *Randall* is "inapplicable" to situations involving two separate debtors), and *Ott v. Bray*, 154 So. 209, 210 (Fla 1934) (holding that a debtor's payment instructions remain binding even if sent within a reasonable time after payment)).

    Just as it ignores the law, Benlida also ignores the *admitted* facts that CTX sent monthly payment details which Benlida *knew* instructed it to apply CTX's payments to the listed invoices to CTX.  *See* DE 184-1 at 16.  Notwithstanding that, Benlida tries to pass this case off as one where a creditor was free to apply payments to time-barred debts because "the payment … does not specify that … the moneys are to be applied to only more recently applied debts."  Resp. at 6.  But Benlida has admitted that CTX *did* so specify in its payment details.  *See* note 4, *supra*.

    Benlida denigrates CTX's reliance on the stubborn fact of its payment details as somehow "out-of-context" and "obfuscatory" because CTX's expert, Mr. Parisi, "acknowledged that FIFO application of moneys received to oldest debts is appropriate."  Resp. at 8.  Even if that were correct, it would not justify disregarding CTX's payment instructions.  Oblivious to its glass house, Benlida buries through ellipses Mr. Parisi's qualifier that FIFO application would be appropriate "[a]s long as it's applied to the appropriate entity that issued those invoices."  DE 201-1 (Parisi Depo.) at 242:14-15; *see id.* at 243:13-21; Resp. at 6.

    Regardless, and more importantly, Florida law forbids Benlida's commingled-FIFO methodology, *Urrea*, 359 So. 3d at 1215, particularly in light of CTX's payment instructions.  None of the case law Benlida cites (Resp. at 6-7) holds otherwise.  There is no dispute that the passage of a limitations period does not *automatically* bar a creditor from applying other funds of the debtor to time-bared debt.[5]  The creditor's right to do so, however, remains constrained by the debtor's payment instructions, a point Benlida fails to mention.  *Henry v. Halifax Hosp. Dist.*, 368 So. 2d 432, 433 (Fla. Dist. Ct. App 1979) (also holding that the debtor's payment instruction separately precluded the creditor from applying the funds to old debt); *cf. Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 81 A.D.3d 1331, 1332 (N.Y. App. Div. 4th Dept. 2011) (distinguishable because the terms of debtor's "letter of credit unequivocally permitted defendants to apply the letter of credit to any debts that plaintiff owed to defendants").

---

[5] *Henry v. Halifax Hosp. Dist.*, 368 So. 2d 432, 433 (Fla. Dist. Ct. App 1979); *Hoagland v. Ry. Exp. Agency*, 75 So. 2d 822, 827 (Fla. 1954); *Danielson v. Line*, 185 So. 332, 333 (Fla. 1938); *In re: Soler Somohano v. PRA Receivables Mgmt. LLC*, 819 F. App'x 873, 876 (11th Cir. 2020).

6

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

This reply has already addressed the impropriety of Benlida's virgin debut of illustrating old data "with . . . additional analysis to make it an appropriate representation of accounts receivable." Resp. 9; *see supra*, at 2-3. The tardy roll-out of such a computation, without any evidentiary support, not only renders it unreliable; it exemplifies the quandary that Benlida's broader non-disclosure of its damages computations creates for CTX. On its own terms, it must be disregarded as predicated on the errant reading of Florida law that CTX's payment instructions (or in this example CTX-HK's) could be disregarded because they were not sent "'at the time of payment.'" Resp. at 10.

### 4. Records of CTX's Account That Benlida Did Not Produce During Discovery

This aspect of the motion concerns a class of documents of central importance to the claims (and counterclaims) in this case: Benlida's internal records of CTX's account. Mot. at 12-13. Benlida argues against an order *in limine* due to the "unlikely event that a [such] document may have slipped through the cracks, so to speak." Resp. at 10. Were this class of documents merely tangential to the core dispute between the parties, Benlida's position might be persuasive. But counsel should exercise particular diligence with respect to undisclosed information about CTX's account at Benlida, both in documentary and testimonial form. There is no good reason an order *in limine* should not be entered on this subject. Specifically, the order should bar argument and evidence of (a) undisclosed versions of Ms. Chen's Excel spreadsheet concerning CTX's account or (b) undisclosed historical records of CTX's account from Benlida's "Jindie" computer system.

### 5. CTX's experts' testimony regarding "related party" status

Benlida misreads the scope of this aspect of the motion, which targets only the introduction of testimony of *CTX's experts* about the "related" status of CTX and CTX-HK, because the speculation of an accountant cannot supplant questions of law governing the legal relationship or obligation between two corporations. Mot. at 13-14.[6] Benlida reads this aspect of the motion more broadly than it's framed. *See* Resp. at 11. If the Court grants point 2 of this

---

[6] The portions of CTX's experts' depositions in which Benlida's counsel elicited such testimony include: DE 201-1 (Parisi Depo.) at 66:2-67:23, 83:8-84:4, 116:21-118:12, 120:5-124:9, 196:21-197:11, 204:9-207:2, 209:6-212:21, 214:5-21, 219:14-221:5, 228:14-229:16, 233:4-12; 201-2 (Mukamal Depo.) at 80:3-81:13, 125:17-127:18, 129:9-130:17, 137:20-139:18, 140:19-141:18, 150:23-151:19,

7

motion—excluding evidence and argument concerning CTX-HK's debts—*that* ruling would encompass the subject of "CTX and CTX-HK somehow operat[ing] as the same company." Mot. at 8, 20.  In that case, the jury would appropriately be kept "in the dark" about CTX-HK (Resp. at 11), since CTX-HK serves only a distraction from the claims Benlida *actually* asserted against CTX (not the ones it has belatedly and inappropriately tried to articulate in response to CTX's summary-judgment motion and motions *in limine*).

Benlida's response to this aspect of the motion fails to address the gist of the argument: that there is a distinction between an accountant's testimony about the perceived business relationship between two companies and the legal question of whether one is responsible for the debts of another.  That legal question is not even one that belongs in this case, since Benlida's complaint utterly failed to plead an agency or alter ego theory (let alone the joint-and-several liability theory Benlida voiced for the first time in response to CTX's motions *in limine*).  *See* DE 184-1 at 7-11; DE 193 at 1-4.  Nor did Benlida raise the theory as an affirmative defense to CTX's counterclaims to recoup its overpayments to Benlida.  *See* DE 43.

### 6. Assertions Contradicting Benlida's Judicial Admissions

Benlida's response to this point is both perplexing and incomplete.  The motion addresses two judicial admissions Benlida made in its answer: (1) that the 2016 Letter Agreement made CTX-HK an additional party to the Manufacturing Agreement and (2) that in some cases, Benlida instructed CTX to make payments for Benlida invoices to ROK instead.  During the meet-and-confer conference, Benlida represented it would not contradict either admission at trial. Mot. at 16.  Its response says nothing about the second issue, so presumably it agrees.  When presented with an agreement, the Court has granted motions *in limine*.  *See, e.g.*, *Ramones*, 2021 WL 4050874, at *4.

With respect to the first issue (that CTX-HK became a party to the Manufacturing Agreement in July 2016), however, Benlida takes a decidedly squirrely position.  It says it "does not *intend* to contract its admission" yet resists entry of an order *in limine*.  Resp. at 12 (emphasis added; capitalization altered).  That kind of hedge should raise an eyebrow.  Benlida's surprise non-committal appears to stem from its recognition that this binding admission undercuts its argument (at summary judgment) that CTX-HK was dependent on CTX to place orders with Benlida.  Benlida is forced to confess error that the argument it made in response to CTX's Rule

8

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

56 motion contradicted its earlier admission that the 2016 Letter Agreement made CTX-HK a party to the Manufacturing Agreement.

In a belated damage-control effort, Benlida tries in its response to "refine[]" (i.e., rewrite) its summary-judgement position. *Id*. As noted above, Benlida cannot at the eleventh hour assert yet another unpled legal theory of CTX's liability for CTX-HK's debts—joint-and-several liability as a co-signer. *See* DE 184-1 at 7-8; DE 193 at 1-4. Recall that the complaint does not even mention CTX-HK or the 2016 Letter Agreement; it certainly contains no facts supporting an allegation of joint-and-several liability based on that contract. If the Court denies the Rule 56 motion, the issue will be addressed during trial of how the parties' adapted the Manufacturing Agreement's prohibition against Benlida dealing with companies related to CTX's listed exclusive customers, *see* DE 15-2, § 1.6, to purchase orders *CTX-HK* independently placed with Benlida for those new customers on its own account.

### 7. References to the Parties' Other Lawsuits or Alleged Litigiousness

The motion should be granted as to this uncontested issue. *See* Mot. at 17; Resp. at 15.

### 8. The 2022 Settlement Agreement and CTX's Termination Thereof

The motion should be granted as to this uncontested issue. *See* Mot. at 18; Resp. at 15.

### 9. Benlida's (or ROK's) Entire Print-Run of Invoices

Even though Benlida only sued on invoices spanning a one-year period (December 2018 though December 2019), it argues that introducing all of the invoices it issued to CTX and CTX-HK dating back to 2012 is necessary to prove its damages, and that "the jurors could do the simple math and determine how much is owed." Resp. at 13-15. Benlida's position—based on the assertion that "the invoices *are* th[e] computation" of damages (*id*. at 14)—papers over substantial complexity and ignores the waste of time and risk of jury confusion adding *seven more years* worth of invoices will create. Benlida's plan to introduce the entire print-run of invoices will geometrically expand the evidence which may need to be subjected to the following cumbersome and complicated set of considerations for the jury. These considerations may become necessary if the Court does not, for various reasons, preclude Benlida from suing upon the invoices to CTX-HK, relying upon its undisclosed commingled-FIFO allocation methodology, and introducing brand-new testimony about its damages at trial:

9

- ➢ Comparing every invoice against the corresponding CTX and CTX-HK monthly payment detail to assess which were reasonably close enough in time to be controlled by CTX's (or CTX-HK's) payment instructions, *see Ott*, 154 So. at 210, such that Benlida was not free to apply the affected funds on a commingled-FIFO basis;

- ➢ Applying every debit memo listed on the payment detail to reduce the amount due;

- ➢ Re-computing the chain-reaction effect of such findings on the allocation of payments to older debts, which could require totaling up the value of hundreds of discrete, short periods of time as to which FIFO allocation could permissibly be performed;

- ➢ And finally, ascertaining the effect of that calculation upon which of the invoices Benlida actually sued upon in the complaint remain unpaid, in full or in part.

This is far from "simple math." It would be vastly more complex than that depicted in Benlida's illustrative chart (Resp. at 9), which just shows a straight-FIFO application of payments on an *annualized* basis for a *single* company.

Benlida won't admit it, but these complexities may already dog its burden of proof of its damages, even as to the one year's worth of invoices it sued upon. Unjustifiably multiplying that exercise seven-fold would create a nightmare for trial, particularly considering that Benlida has never disclosed any aspect of those calculations, lacks a damages expert for its case-in-chief, and thereby deprived CTX of the opportunity to prepare a rebuttal expert. *See generally* DE 197.

Two further considerations should weigh on the Court's consideration of this aspect of the motion. *First*, and critically, it does not appear that Benlida even produced its entire print-run of invoices for all time during discovery. Rule 26 and CTX's requests for production would have obligated it to do so. It is little solace to CTX that it may have been in "possession" of the old invoices because Benlida sent them. Resp. at 14. Benlida has never before articulated that its damages theory involves computation of all prior invoices. That works unfair surprise of its own, and the documents should be excluded. *See* Fed. R. Civ. P. 37(c). Benlida's supposition that CTX has ready access to the old invoices to CTX-HK, a separate company, is even further afield. *Second*, Benlida has dodged the question of whether the entire print-run of invoices includes those from its sister company, ROK, a prejudice-compounding factor. *See* Mot. at 19.

## CONCLUSION

For all of these reasons, CTX respectfully requests that the Court enter an order *in limine* on each of the items listed in the Conclusion to the motion. Mot. at 20.

10

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346       www.podhurst.com

Respectfully submitted,

*/s/  Stephen F. Rosenthal*
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew P. Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800

*Counsel for Circuitronix, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on August 29, 2023 as filed with the Clerk of the Court using CM/ECF.

By:  */s/ Stephen F. Rosenthal*
Stephen F. Rosenthal