# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

Plaintiff,

v.

CIRCUITRONIX LLC,

Defendant.
_____/

## CIRCUITRONIX, LLC'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE OR LIMIT TESTIMONY OF PLAINTIFF'S REBUTTAL EXPERT

**PODHURST ORSECK, P.A.**
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800/Fax: 305-358-2382
Stephen F. Rosenthal
srosenthal@podhurst.com
Matthew Weinshall
mweinshall@podhurst.com
Christina H. Martinez
cmartinez@podhurst.com

*Counsel for Circuitronix, LLC*

Benlida's memorandum in opposition (DE 201) is long on irrelevant legal theories to backfill Benlida's affirmative case and short on actual responses to the arguments raised in CTX's motion to exclude or limit the "rebuttal" testimony of Randall Paulikens. This reply addresses the weaknesses in Benlida's position that Paulikens' opinions on damages and relatedness/control are proper rebuttal and admissible, as well as Benlida's inappropriate attempt to expand on irrelevant legal theories (or to articulate brand-new ones).

## I. PAULIKENS PROVIDES IMPROPER REBUTTAL TESTIMONY OFFERING BENLIDA'S AFFIRMATIVE DAMAGES FIGURE AND CRITICIZING CTX'S EXPERTS FOR OMITTING ANALYSIS RELATED TO CTX-HK

The Court should reject Benlida's bold contention that Paulikens offers "classic rebuttal testimony" (Benlida Response ("Resp.") at 10 n.4) when he offers a damages number for Benlida's affirmative case and criticizes CTX's accounting experts for omitting discussion of CTX-HK in their analysis of CTX's counterclaim. For all Benlida's insistence in its two lengthy opening "Points" that CTX cannot claim surprise (*id.* at 2-10) or lack of notice (*id.* at 10-11) about Benlida's attempt to recover on CTX-HK debts, Benlida ultimately fails to carry its burden of establishing that this testimony constitutes proper rebuttal. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300 (11th Cir. 1999). This is so because Benlida's untimely disclosure of Paulikens' opinion on damages both advances Benlida's affirmative case and does not respond to anything in Mukamal and Parisi's report. It therefore masquerades as rebuttal, and because CTX suffered harm as a result, Paulikens' report and testimony regarding Benlida's damages should be excluded.

Benlida bears the burden of proving the damages it seeks on its claims for breach of contract and account stated. *See Isaac Indus., Inc. v. Petroquimica de Venezuela, S.A.*, No. 19-23113-CIV, 2023 WL 3845432, at *3 (S.D. Fla. June 6, 2023) (damages are an element of a claim for breach of contract; *World Fuel Servs. (Singapore) Pte Ltd. v. Happy Cruises SA*, No. 11-24400-CIV, 2012 WL 1252525, at *2 (S.D. Fla. Apr. 13, 2012) (proof of an account stated claim requires "an express or implied agreement between the parties that *a specified balance* is correct and due and an express or implied promise to pay this balance") (emphasis added). Benlida's computation and proof of its own damages thus "logically belong[s] in [its] case-in-chief" and is not a proper subject for rebuttal testimony. *In re Trasylol Prods. Liab. Litig.*, No.

1

09-01928, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010). Benlida cannot meet the burden of proof on its own damages by offering an opinion in rebuttal to *CTX's* initial expert report.

      The fact that Paulikens offers a damages figure that is *different* from the nearly $13.5 million amount specified in Benlida's complaint directly contradicts Benlida's claim that it is "not introducing any new damages on rebuttal" (Resp. at 15) and that "the complaint itself sets forth the basis for its claim of damages using simple math" (*id.* at 6). *Compare* DE 197-1 (Paulikens Report) at 14 (determining Benlida's damages are $3 to $8 million), *and* DE 201-3 (Paulikens Depo. Tr.) at 64:15-18 (same), *with* DE 26 (TAC), ¶ 8 (seeking $13,655,335.93). If that were true, Paulikens opinion would simply reflect the TAC's damages amount. His different conclusion that "Benlida is actually owed between $3 and $8 million dollars" (DE 197-1 at 14) proves that that Benlida needed an expert to articulate its affirmative evaluation of the case. Benlida was obligated but failed to disclose that new $3 to $8 million figure by the deadline to submit affirmative expert reports, and should be precluded from admitting that figure at trial.

      Benlida's opposition also glosses over the fact that CTX-HK is an essential component to *its* damages claim, and that, by considering that CTX-HK component, Paulikens necessarily "adds new damages" beyond those calculated by Mukamal and Parisi without factoring CTX-HK. *Kroll v. Carnival Corp.*, No. 19-23017-CIV, 2020 WL 4793444, at *5 (S.D. Fla. Aug. 17, 2020) (holding that a report adding new damages is not proper rebuttal). Whether CTX could have anticipated that Benlida would seek to collect CTX-HK debts generally (and without an expert) (Resp. at 2-3) is irrelevant to CTX's accounting experts' report or to the Court's resolution CTX's motion to exclude Paulikens' testimony.[1] CTX was under no obligation to develop through expert testimony—or preemptively rebut—a damages figure that factored a legally irrelevant component (CTX-HK) as part of CTX's affirmative case. Nor could it have: Benlida never disclosed its damages computation nor underlying data detailing how Benlida employed a *commingled*-FIFO accounting methodology to allege that some invoices remain

---

[1] Benlida's focus on the legal nature of the issue of CTX's supposed responsibility for CTX-HK debts (Resp. at 2-3) is irrelevant here. The parties *agree* that the question whether CTX is responsible for CTX-HK debts is one of law, not accounting. Indeed, their different answers to that question take up the better portion of the summary-judgment briefing. DE 184-1 at 6-11; DE 188 at 2-13. Benlida's lengthy citations to CTX's accounting experts' testimony, in response to Benlida's self-serving questions about the legal nature of the question (Resp. at 2-3), have no bearing on *this* motion to preclude Paulikens from offering *non-responsive rebuttal* testimony.

2

unpaid.[2]  CTX's experts cannot fairly be accused of strategically burying their heads in the sand (Resp. at 10) when they actually anticipated Benlida might submit expert testimony regarding CTX-HK which they would address in rebuttal.  DE 197-2 at 3 n.4.

That CTX's counterclaim is related to Benlida's affirmative case (Resp. at 11) does not relieve Benlida of the obligation to submit an expert report or give Benlida the right to ambush CTX with an affirmative damages number (belatedly) developed in rebuttal.  While a rebuttal expert is allowed to present evidence that contradicts or rebuts evidence on the same subject matter identified by another party, and the "same subject matter" is broadly construed, the term is not boundless.  *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV, 2018 WL 3583002, at *2 (S.D. Fla. July 26, 2018).  Rebuttal testimony must still "directly address an assertion raised by an opponent's experts" and cannot be used to advance new arguments or present new evidence.  *Id.*  Paulikens' consideration of CTX-HK—analyzing a component of *Benlida's* damages that Mukamal and Parisi reasonably deferred discussing until Benlida presented its calculation—does not directly address any assertion raised by CTX's experts and therefore constitutes improper rebuttal.

Additionally, Benlida's counter that any affirmative expert report was unnecessary because it would have consisted of one sentence relaying "simple math" (Resp. at 4), is not credible given Paulikens' own contrary deposition testimony indicating the considerable amount of expert work to be done in an affirmative report.  DE 201-3 at 51-57.  Far from the simplistic formula Benlida describes, Paulikens testified that computing a formal calculation of Benlida's damages would require "look[ing] at accounts receivable" (*id.* at 56:13-14), reviewing "tens and tens of thousands of pages" (*id.* at 56:23-7), and "diligently go[ing] through the … reconciliation" (*id.* at 57:9-11); *see also id.* at 51:20-52:11 ("to come to a precise number that Benlida is entitled to … you'd have to do a fairly detailed calculation which incorporates an analysis in reconciliation of the accounts receivable from day one, in order to come to the

---

[2] There is no dispute that *ordinary* FIFO accounting can, in certain circumstances, be appropriate.  *But see* Resp. at 4 (misrepresenting that CTX has asserted FIFO bookkeeping is inappropriate).  The problem with Benlida's use of FIFO is that it apparently applied CTX payments indiscriminately to the oldest debts in its book for both CTX and CTX-HK—without informing CTX of the fact.  *See* DE 184-1 at 14-15; DE 193 at 6-10.  While that practice came to light belatedly during Benlida's witnesses' depositions, the precise details surrounding its implementation on a payment-and-invoice-specific basis remain undisclosed.

3

specific finite numbers at a point in time …. Plus … you need to start from day one ….").
A review of the data from the parties' reconciliation of accounts in 2019 might require sifting through "a great deal of underlying data" (*id.* at 57:14-58:17), including invoices, debit memos, and payment records (*id.* at 58:18-59:17). That work might in turn be complicated by missing or incomplete data sets. *Id.* at 59:21-60:8. The process would be "[s]imilar" to the back-and-forth reconciliation performed by the parties and "potentially" require a granular level of review. *Id.* at 53:12-54:16. In short, a formal calculation of damages would have been "an undertaking." *Id.* at 57:13. Benlida cannot credibly say otherwise to excuse its failure timely to submit an initial expert report.

Courts in this Circuit have implicitly rejected Benlida's oversimplified view of this sort of testimony from an accounting expert. They routinely allow admission and recognize the value of damages opinions from accounting experts who, aside from providing an ultimate damages figure, can also assist a jury by explaining "the information [an accountant] extracted from the books and records, how such information was recorded, the interpretation of the information, and what information was absent from the books and records." *Lehman v. Eldridge*, No. 11-23973-CIV, 2013 WL 12064124, at *2 (S.D. Fla. Dec. 11, 2013) (Rosenbaum, J.) (refusing to strike expert "merely because arithmetic is one of many components of the Report and testimony"); *see Lord v. Univ. of Miami*, No. 13-22500-CIV, 2022 WL 18023293, at *10 (S.D. Fla. July 26, 2022) (Altonaga, C.J.) (rejecting that certified public accountant's expert opinions on equity-asset sales were "the result of straightforward arithmetic calculations that d[id] not require special expertise and thus would not assist the jury"; citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 563–64 (11th Cir. 1998), to conclude that a damages expert's opinion would assist the trier of fact "'by calculating, compiling, and explaining'" numerical evidence relevant to liability).

Ignoring the importance of this testimony for its case in chief, Benlida elected *not* to submit an affirmative expert report because it felt that "it doesn't take an expert to add up the invoices forming Benlida's affirmative damages claim." Resp. at 9. That was Benlida's (poor) strategic decision. Benlida may not properly employ Paulikens to testify on the subject.

Apart from Benlida's implausible assertion that its damages number is so simple as to not require an expert report, it has made little effort to satisfy its burden of showing that its failure to timely disclose Paulikens and his affirmative damages opinion was substantially justified or harmless such that it can avoid the sanction of exclusion under Rule 37(c). While "surprise to

4

the party against whom the evidence would be offered" is a factor to consider in evaluating an untimely disclosure, *United States v. Twenty-Nine Pre-Columbian & Colonial Artifacts from Peru*, No. 13-21697-CIV, 2015 WL 457860, at *2 (S.D. Fla. Feb. 3, 2015) (Goodman, J.), Benlida cannot avoid the exclusion of Paulikens' testimony simply because CTX was generally aware that Benlida would attempt to make a case for CTX's responsibility for CTX-HK debts. That argument does not account for the fact that CTX was still in the dark about *how* Benlida would attempt to do so due to Benlida's disclosure omissions. And both parties' experts agree that the analysis is data-intensive. *See* DE 201-3 at 51-57; *e.g.*, DE 201-1 (Parisi Depo. Tr.) at 15:9-12, 255:7-256:2; DE 201-2 (Mukamal Depo. Tr.) at 66:16-67:1. CTX could not possibly have foreordained the analysis Benlida's expert would use to compute its damages. That's why Mukamal and Parisi disclosed their intention to prepare a rebuttal report once Benlida disclosed its expert's opinions. Those never came, depriving CTX of the opportunity to meaningfully respond to Paulikens' expert analysis in kind, with its own accounting experts. CTX has therefore been prejudiced. The complicated and document-intensive nature of the parties' long-standing business relationship also undermines any potential argument that any harm was cured by CTX's opportunity to have deposed Paulikens.

      The closest Benlida comes to confronting its burden in response to CTX's arguments that the untimely expert disclosure was neither substantially justified nor harmless, is to plop into its response—without explanation or analysis—block quotes from three of this Court's decisions. *See* Resp. at 6-7 (quoting *Ore v. Tricam, Indus.*, No. 14-60269-Civ-Scola, 2017 WL 6597517 (S.D. Fla. Oct. 16, 2017), *FTC v. On Point Global LLC*, No. 19-25046-Civ-Scola, 2021 WL 4891334 (S.D. Fla. Sept. 23, 2021), and *Ramones v. Experian Info. Solns., LLC*, No. 19-62949-Civ-Scola, 2021 WL 4050874, at *5 (S.D. Fla. Sept. 4, 2021)). Benlida ostensibly means to use them to support its proposition that CTX had sufficient notice of Benlida's computation of damages. *See id.* at 6.

      None of these cases, however, involves a motion seeking to preclude the use of undisclosed damages computations, much less expert testimony supplying an independent basis for a damages figure. Because Benlida's damages amount will figure prominently at trial, Benlida's failure to disclose that amount in an affirmative report deprives CTX of the "ability to

5

prepare a targeted defense" and affects "the fairness of the trial." *Vital Pharms., Inc. v. Monster Energy Co.*, No. 21-13264, 2022 WL 3083273, at *4 (11th Cir. Aug. 3, 2022).[3]

Allowing Paulikens' damages testimony would undermine Rule 26's animating goal "'to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Twenty-Nine Pre-Columbian & Colonial Artifacts*, 2015 WL 457860, at *1 (quoting *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.,* 549 F.3d 1344, 1363 (11th Cir. 2008)).

## II. BENLIDA'S NON-RESPONSIVE, NEW LIABILITY THEORY IS PROCEDURALLY IMPROPER AND LACKS MERIT

Rather than engage with CTX's actual arguments to exclude Paulikens' testimony as improper rebuttal, Benlida advances a brand-new theory of liability to support its claims, essentially submitting an impermissible summary judgment sur-reply that "remind[s] the Court" of its old summary-judgment arguments and "further note[s]" some new ones.  Resp. 7.  This non-responsive tactic not only should be rejected as procedurally improper, but also lacks merit.

For the very first time in this litigation, Benlida contends that CTX-US is responsible for CTX-HK's debts because "CTX-US made itself a co-signer on all debts incurred by CTX-HK." *Id.* (emphasis removed).  This co-signer theory of liability **never** appeared in any iteration of any pleading in this case.  Nor did it even belatedly appear in Benlida's response to CTX's motion for summary judgment.  As a result, no discovery was taken on this previously undisclosed theory.

Benlida's attempt to inject this new liability theory into the case at such a late stage is clearly improper and prejudicial.  Eleventh Circuit precedent forbids "amend[ing] [a] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004); *see Li v. Walsh*, No. 16-81871-CIV, 2022 WL 892703, at *4 (S.D. Fla. Feb. 18, 2022) ("Simply put, raising a new legal claim or theory for the first time at the summary judgment stage is improper."); *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012) ("[A] party may not raise a new theory for the first time in response to a summary judgment motion.").  It follows from that principle that a brief in response to a

---

[3] CTX incorporates by reference the more detailed argument it makes to distinguish these cases in its reply in support of its omnibus motion.  *See* CTX's Reply in Support of Its Omnibus Motion at 2-3.

6

**Podhurst Orseck, P.A**.
One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

motion *in limine* cannot amend a complaint with a new theory of liability either. *See Gatewood v. Frency's Corp., Inc.*, No. 8:16-CV-340-T-36AAS, 2017 WL 4861352, at *9 n.7 (M.D. Fla. Sept. 19, 2017) (rejecting a plaintiff's "new theory made in response to a motion in limine" as it was "unsupported by the pleadings").

Benlida also misplaces its reliance on *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014), and its progeny to argue that it was not required to specify a legal theory in its complaint. Resp. 10-11 (quoting *Houston Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*, No. 2:15-cv-219, 2017 WL 2600723 (M.D. Fla. June 15, 2017)). *Johnson* involved a hyper-technical failure to reference a statutory section in a complaint, not the injection of a brand-new theory of liability at summary judgment or in a pre-trial motion. *See Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 83–84 (2d Cir. 2023) (distinguishing *Johnson* because "the plaintiffs had simply failed to identify 42 U.S.C. § 1983 in an action asserting violations of their constitutional rights"). Courts have therefore limited *Johnson* to "the motion to dismiss stage," and "refused to apply *Johnson* to summary judgment cases." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 445 (6th Cir. 2021). And in rejecting an argument much like Belida's, the Eleventh Circuit has held that "a defendant is not required to infer all possible claims that could arise out of the facts set forth in the complaint at the summary judgment stage," and thus affirmed summary judgment in favor of the defendant when the plaintiff neither raised a particular theory in his complaint nor sought leave to amend the complaint to add the theory. *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417-18 (11th Cir. 2016).[4]

Permitting Benlida to raise its brand-new co-signer theory of liability at this late stage would also unduly prejudice CTX. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 2685605, at *11 (S.D. Fla. June 30, 2021) ("The introduction of new legal theories at a later stage of proceedings amounts to undue prejudice."). Without any prior notice of the theory, CTX has had no chance to conduct discovery to dispute it. Such trial-by-ambush tactics are precisely what the pleading and discovery rules are designed to prevent. *See, e.g.*, *First Baptist Ferry Pass Inc. v. W. World Ins. Co.*, No. 3:21CV544/MCR/ZCB, 2023 WL 4364403, at *6 (N.D. Fla. July 6, 2023) ("The primary purpose of the discovery rules is to ensure

---

[4] *Johnson* does not apply here, where Benlida failed to (1) allege any facts in the TAC supporting its theory that CTX could be liable for CTX-HK debts, much less (2) include any specific allegations regarding the 2016 Letter Agreement, from which its new co-signer theory arises.

7

the parties are on notice of certain information possessed by the opposing party, so as to eliminate surprise and trial by ambush.") (internal quotation marks omitted); *K3 Enters., Inc. v. Sasowski*, No. 20-24441-CIV, 2022 WL 3306725, at *5 (S.D. Fla. Aug. 11, 2022) (prohibiting plaintiff from presenting undisclosed damages calculations because allowing it "would be to endorse trial by ambush"); *Dorvil v. Nationstar Mortg., LLC*, No. 17-23193-CIV, 2020 WL 9065875, at *2 (S.D. Fla. Feb. 13, 2020) ("The Court cannot and will not sanction trial by ambush."). This court, therefore, should prohibit Benlida from presenting its unpled and untimely co-signer theory of liability at trial.

In addition to its procedural infirmity, Benlida's new theory lacks factual and legal support. The 2016 Letter Agreement states that CTX-HK "will join in this Agreement." DE 177-1 at 24. Based entirely on this provision, Benlida leaps to the conclusion that "CTX-US made itself a co-signer on all debts incurred by CTX-HK." Resp. at 7. But nothing in the document remotely suggests that CTX accepted responsibility for CTX-HK's past or future debts. Nor does any testimony from any witness indicate that the parties intended for the document to accomplish such a result. The record is devoid of even a shred of evidence supporting Benlida's new co-signer theory.

Nor does any legal principle bridge the massive gap between the agreement's actual language and Benlida's new claim of joint liability. The only decisions that Benlida cites applying Florida law, which governs this dispute, do not support Benlida's argument. In *WBDH-BC Holdings Ltd. V. Varsatel Corp.*, No. 21-61463-CIV, 2022 WL 3701452, at *9 (S.D. Fla. June 16, 2022), the guaranty at issue included language permitting the plaintiff to "demand full payment" from various parties—i.e., precisely the language that is missing here.[5] Likewise, *In re Hall*, No. 6:19-BK-00687-KSJ, 2019 WL 10734083, at *3 (Bankr. M.D. Fla. Oct. 3, 2019), involved an explicit agreement among two parties to "co-sign [a] loan" for a motorcycle, under which both parties "assumed the full legal obligation to pay it." No language in the 2016 agreement, in contrast, comes close to suggesting that CTX-US co-signed or assumed any obligation for CTX-HK's purchase orders.

---

[5] *WDBH-BC* relied on *Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 586 (11th Cir. 1983), which applied Georgia law and is inapplicable for the same reason—the lease agreement contained language making numerous parties "jointly liable," unlike the agreement here.

8

**Podhurst Orseck, P.A**.

One S.E. 3rd Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

Lacking support from Florida law, Benlida resorts to cases from other jurisdictions and secondary sources, none of which Florida courts have adopted, and none of which apply. Resp. at 7-9. For example, *Thomas v. Cap. Med. Mgmt. Assocs., LLC*, 189 Md. App. 439, 458, 985 A.2d 51, 63 (2009), involved an "implied in fact contract," not the interpretation of contractual language in any way resembling the 2016 agreement. Likewise, *Trinity Universal Ins. Co. v. Drake*, 587 S.W.2d 458, 465 (Tex. Civ. App. 1979), *aff'd in part, rev'd in part*, 600 S.W.2d 768 (Tex. 1980), simply observed that co-signing a note or contract can give rise to joint and several liability, but it provides no support for Benlida's evidence-free claim that CTX co-signed CTX-HK's debts or purchase orders. Finally, sections 288 and 289 of the Restatement (Second) of Contracts do not help Benlida because they concern contracts in which multiple parties "promise the same performance to the same promisee," § 289(1), a condition that is not satisfied here. CTX-US and CTX-HK submitted separate purchase orders to Benlida, and Benlida issued the different entities separate invoices, providing clear evidence that CTX and CTX-HK did not make a singular promise of the "same performance" to Benlida, § 288(2). And in contrast to the default rule of joint liability that Benlida seeks to impose, Florida courts refuse to enforce such liability absent "specific language subjecting the signor to joint and several liability in the event of a breach," *Porlick, Poliquin, Samara, Inc. v. Compton*, 683 So. 2d 545, 547 (Fla. Dist. Ct. App. 1996), which the agreement here indisputably lacks. On the merits, therefore, Benlida's new theory of liability is unavailing.

### III. BENLIDA HAS FAILED TO CARRY ITS BURDEN TO ADMIT PAULIKENS' OPINION REGARDING CTX'S SUPPOSED RELATEDNESS AND SUPPOSED CONTROL OVER CTX-HK

Benlida's statements that a "related-party analysis is the typical domain of an accountant" (Resp. at 15), and that such testimony is "highly relevant" (*id.* at 16), do not overcome CTX's targeted criticisms that Paulikens' opinions about relatedness and control are improper rebuttal, inappropriately advance legal conclusions, lack proper foundation, and carry a risk of confusion and prejudice.

First, by addressing only Paulikens' opinion regarding *relatedness*, Benlida wholly fails to respond to CTX's arguments about the inappropriate legal nature and lack of foundation for Paulikens' opinion regarding CTX's supposed *control* of CTX-HK. Mot. at 15-16. Benlida has no answer for Paulikens' admission at deposition that his control opinion addresses a legal issue

9

or for the lack of record support for his general sense that CTX controlled CTX-HK. *Id.* Because Benlida concedes the point, this opinion should be excluded.

Second, Benlida's insistence that the relatedness and control opinions are "relevant" does not get it past Rule 403, which contemplates the exclusion of even relevant evidence when the interest in admission is outweighed by countervailing risks of jury confusion or presenting cumulative evidence. *See* Fed. R. Evid. 403; *U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) ("Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403."). Benlida does not offer any basis for dismissing CTX's concern that Paulikens' testimony is unduly cumulative of other testimony or that it may cause juror confusion between the factors relevant for determining control in the legal versus the accounting spheres. Mot. at 16-18.

Finally, Benlida does not confront CTX's argument that, even if injecting CTX-HK into the damages analysis in rebuttal were appropriate (and it is not), Paulikens' commentary about CTX's relatedness and control goes a step too far for a rebuttal report. Mot. at 11 & n.5. Both cases Benlida cites to support the use of a related-party analysis involved situations where a party retained an expert to opine in the case in chief. *See* Resp. at 15-16 (citing *SEC v. Das*, 723 F.3d 943, [948-51] (8th Cir. 2013); *As Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2021 WL 1140368, *6 (D. Kan. Mar. 25, 2021)). Where Benlida purports that it retained Paulikens "solely to contradict or rebut evidence," Fed. R. Civ. P. 26(a)(2)(D)(ii), advanced by CTX's experts, his opinions about CTX's control over and relatedness to CTX-HK have no place in ostensible rebuttal of a report by CTX's experts that omitted (and properly deferred) discussion of CTX-HK.

## CONCLUSION

Benlida's attempt to support its affirmative case in an untimely and non-responsive rebuttal report, and to use its response to a motion *in limine* directed at that expert testimony to try to inject new legal theories for its liability case, should be rejected. The Court should grant CTX's motion to exclude or limit Paulikens' testimony.

10

| | |
|---|---|
| Dated: August 29, 2023 | Respectfully submitted, |
| | PODHURST ORSECK, P.A.<br>One S.E. 3rd Avenue, Suite 2300<br>Miami, Florida 33131<br>Tel.: 305-358-2800 |
| | By: /s/ *Stephen F. Rosenthal*<br>Stephen F. Rosenthal<br>Florida Bar No. 0131458<br>srosenthal@podhurst.com<br>Matthew Weinshall<br>Florida Bar No. 84783<br>mweinshall@podhurst.com<br>Christina H. Martinez<br>Florida Bar No. 1029432<br>cmartinez@podhurst.com |
| | *Counsel for Circuitronix, LLC* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on August 29, 2023 as filed with the Clerk of the Court using CM/ECF.

By: /s/ *Stephen F. Rosenthal*  .
Stephen F. Rosenthal

11