UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

Plaintiff,

v.

CIRCUITRONIX, LLC,

Defendant.
_____/

## *AMENDED* JOINT PRE-TRIAL STIPULATION

Counter-Plaintiff, Circuitronix, LLC ("CTX" or "CTX-US") and Counter-Defendant Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida") / hereby submit their *Amended* Joint Pre-Trial Stipulation, excising those aspects of the original Joint Pre-Trial Stipulation [ECF No. 216] that were mooted by the Court's Order Granting Motion for Summary Judgment [ECF No. 221].

### I. CONCISE STATEMENTS OF THE CASE

#### A. CTX's Statement of the Case[1]

CTX and Benlida have shared a long history of working together. CTX is a Florida corporation based in Ft. Lauderdale. It specializes in the manufacturing, sale and distribution of printed circuit boards ("PCBs") to North American product manufacturers. PCBs consist of electrical circuits typically made from copper etched into plastic laminate sheets, though many involve other kinds of metal and specialized coatings. CTX offers its customers, who range from automakers to consumer electronics companies, PCBs that are quality-engineered to the customer's precise design specifications. CTX has contractual relationships with other companies, like Benlida, that operate factories, to manufacture the PCB orders that CTX brings

---

[1] Based on the Court's order granting CTX summary judgment on Benlida's claims and CTX's opposition to Benlida's new, unpled defense to CTX's counterclaim, CTX has removed references to CTX-HK. Nonetheless, if Benlida is permitted to introduce evidence regarding CTX-HK, CTX will seek to amend this statement of the case to include an additional discussion of CTX-HK.

them for CTX's customers. CTX depends upon Benlida to produce the PCBs at agreed-upon prices and quantities by specified deadlines to meet CTX's customers' needs.

This case revolves around Benlida's failures to properly credit millions of dollars CTX paid it for PCBs, over a period of more than a decade, and to honor Benlida's contractual duty to manufacture and ship the PCBs in a timely fashion.

CTX counter-sued after Benlida sued CTX on claims that have since been disposed of by the Court on summary judgment. CTX maintains it has actually overpaid Benlida by $11,011,164.50 over the years.

1. The Parties' Contractual Relationship

On March 1, 2012, Benlida entered into a written contract with CTX for the manufacture of PCBs, called the Standard Manufacturing and Representation Agreement ("Manufacturing Agreement"). A second Chinese company was also a party to that agreement: ROK Printed Circuit Co., Ltd. ("ROK"). ROK was majority-owned by the same people who own Benlida, and ROK also operated a PCB factory. The Manufacturing Agreement provides the key terms governing the Parties' business relationship. It details things like the price terms for PCBs, how prices can increase, how long CTX has to pay Benlida's invoices, how much "lead-time" Benlida gets from the time it accepts a purchase order from CTX to manufacture and deliver those PCBs to CTX, and what the monetary penalty is for late deliveries.

2. The Parties' Course of Performance Under the Manufacturing Agreement

The senior management of CTX and Benlida exchanged frequent email communications and held periodic in-person meetings to discuss the evolving business, attempt to resolve disputes, and negotiate some revised contractual terms. New adjustments were eventually memorialized in meeting minutes or emails between the parties leading up to and following the meetings. Among the most critical and consequential discussions:

- On February 1, 2015, because of the volume of business CTX was bringing to Benlida, Benlida agreed to give CTX an across-the-board discount of 6% off the contract price on all new purchase orders released into production after that date. A dispute arose as to whether the discount should be applied to the entire price of each PCB, or just to the portion reflecting the base price, as opposed to certain "cost adder" materials. This dispute resulted in the two companies having different views as to how much CTX owed for those shipments.

- In late 2016, due to Benlida's persistent cash-flow needs, it asked CTX if it would agree to pay more frequently than the contractually specified term of "AMS 60 days," which means 60 days after Benlida sends CTX its monthly statement. Without changing the contractual term of AMS 60 days, CTX agreed to accommodate Benlida's need for a more regular cash flow by sending a payment on a weekly basis based on the amount of Benlida's shipment from the week before. This practice began on December 1, 2016.

- In March 2017 communications and the Parties' February 2018 meeting, Benlida—troubled by issues with the Chinese tax and customs authorities due to gaps in ROK's books—asked CTX to send payments to ROK for invoices that Benlida (not ROK) had issued to CTX. CTX accommodated Benlida's requests and diverted approximately $2.8 million in payments to ROK as requested, but never received credit for those payments in its account with Benlida.

- The Manufacturing Agreement established a baseline lead-time for delivery of PCBs. It also specified the monetary penalty that would apply based on how long overdue the delivery was. The parties modified the standard lead time through an email agreement in 2013. At their October 20, 2017 meeting, the parties discussed relaxing those lead times in Benlida's favor, provided Benlida satisfied certain output targets. Specifically, CTX insisted that to qualify for the relaxed (longer) lead times, Benlida had to *both* release into production and ship a minimum of 7000 square meters of PCBs per week. Benlida also had to ship at least 80% of orders within the standard lead time. Benlida took the position that it should be entitled to more relaxed lead-times if it met *either* production target. Because the parties never reached an agreement as to the relaxation of the lead-time requirement, and because Benlida did not satisfy the 80% threshold, the standard lead-times continued to govern.

The Manufacturing Agreement essentially set a 90-day period for CTX to pay Benlida's invoices. The term is "AMS 60 days," meaning 60 days from receipt of the monthly statement, which Benlida sent with each shipment of PCBs. Benlida's monthly statements itemized the invoices for that month. Benlida's monthly statement covers at least a 30-day period, CTX effectively had up to 90 days to pay for the oldest invoice on the monthly statement. CTX sent Benlida frequent payments, especially after December 1, 2016, when Benlida asked CTX to pay

3

in weekly increments, much more frequently than CTX was contractually obligated to. In keeping with the AMS 60-day payment term in the Manufacturing Agreement, CTX prepared monthly Payment Details which it sent to Benlida on a roughly quarterly basis. In the monthly Payment Details, CTX identified payments it had made during that period and listed the corresponding invoices to which CTX intended its payments to cover. The Payment Details also noted and applied any "Debit Memos" that CTX issued to Benlida for problems with shipments, such as quality issues, quantity shortfalls, or lead-time penalties.

    3.  <u>The Parties' Reconciliation Efforts in 2018 to 2019</u>

Over the course of the parties' relationship, which involved tens of millions of dollars of business, a variety of discrepancies arose between both companies' records of who owed whom what. In 2016, they worked to quantify one discrepancy that arose between 2013-2015 involving the proper invoice amounts.

Then, beginning in 2018, the Parties cooperated to do a major reconciliation of their accounts for the prior year to resolve a gap in Benlida's books and address discrepancies between the Parties' books. Through 2019, they continued meeting and exchanging emails in an effort to resolve the discrepancies. In April 2019, Benlida advised that the discrepancy dating from 2016 was $395,000, not accounting for lead-time penalties. After that, Benlida asked to look at CTX's records further back in time, to 2012. CTX provided its records, and Benlida then claimed that CTX owed substantially more.

While the reconciliation effort was ongoing, in August 2019, Benlida demanded prepayment of invoices before it would release PCB orders, even though the Manufacturing Agreement did not allow that. Threatened with losing Benlida's production capacity, which CTX depended upon to satisfy its customers orders, CTX was forced from that point forward to make payments on invoices *before* Benlida manufactured and shipped the corresponding PCBs. Also starting in August 2019, Benlida began charging CTX 3%, 10%, or 20% premiums on invoices.

    4.  <u>The Lawsuit</u>

Benlida filed suit on January 19, 2021, asserting claims for breach of contract and account stated against CTX. The Court disposed of those claims on summary judgment in CTX's favor on September 25, 2023. ECF No. 221.

CTX filed several counterclaims against Benlida for breach of contract. Specifically, CTX claims that Benlida has:

- failed to honor CTX's payment instructions and thereby failed to credit CTX's payments against invoices issued to it;
- violated the lead-time-penalty provisions of the Manufacturing Agreement, as amended, by refusing to acknowledge the debits CTX was entitled to charge resulting from Benlida's production delays;
- violated the payment and price terms of the Manufacturing Agreement by demanding that CTX prepay for orders, beginning in August 2019, and by charging further premiums above the agreed price terms.

As a result of such breaches, CTX claims that Benlida has unlawfully retained overpayments from CTX and owes it approximately $11 million.

### B. Benlida's Statement of its Defense against the Counterclaim

As this case is headed to trial solely on CTX-US's counterclaim, this statement of defense is focused on the allegations in the counterclaim (DE 34), the answer thereto (DE 34) and the documentary and testimonial evidence.

Benlida is a manufacturer of printed circuit boards. Benlida and CTX-US executed an agreement on March 1, 2012 – the Standard Manufacturing and Representation Agreement ("Manufacturing Agreement") – pursuant to which Benlida (and its subsidiary ROK) agreed to manufacture PCBs for CTX-US, and Benlida agreed to pay therefor. Among the critical terms of the agreement was the exclusivity of the CTX-US customers. Under the agreement, all customers under the Manufacturing Agreement were exclusive to CTX-US. Benlida could not sell PCBs to any customers on the CTX-US exclusive customer list.

From time to time CTX-US has added names of customers to the list, which now includes some 178 companies to whom CTX-US has the exclusive right to sell to. CTX-US's affiliate Circuitronix (Hong Kong) Ltd. ("CTX-HK") would, from time to time, send emails to Benlida with the subject line "Exclusive Customer List," advising in those emails that certain companies were to be added to the CTX-US exclusive customer list. Benlida accepted these customers, and added their names to the list. Each customer on CTX-US's Exclusive Customer List" list had a CTX-US "X" number. That is, when CTX-US or CTX-HK would place orders, their purchase orders would indicate, by using an "X" number – such as X27 for Ingersoll Rand, or X51 for

Marquardt – and such designations indicated to Benlida that such orders were placed for those specifically enumerated and identified CTX-US customers.

In its counterclaim against Benlida, CTX-US asserts that "[¶]3. The parties subsequently entered into a Letter Agreement, dated July 21, 2016, that added Circuitronix Hong Kong, Ltd. ("CTX-HK") as an additional party to the [2012] Manufacturing Agreement, among other things. [DE 15-2]." (DE 34). In its answer to the counterclaim, Benlida admitted that CTX-HK became a party to the 2012 Manufacturing Agreement. (DE 43).[2] CTX-US further alleged in its counterclaim that "[¶]21. Pursuant to the Manufacturing Agreement, CTX agreed to purchase PCBs from Benlida and perform global sales and marketing for PCBs on an exclusive basis for specific customers identified or introduced by CTX. See Id., at §§ 1.1 – 1.7." This was admitted by Benlida. (DE 43). CTX-US further alleged in its counterclaim that "[¶]22. In return, Benlida agreed to manufacture the Product for CTX *and the exclusive customers identified by CTX.* See Id." (Emphasis added). To the extent relevant here, this was admitted by Benlida. (Benlida denied the implication that it was obligated to produce more than was actually agreed to, but it has been uncontested from the inception of this case that all orders placed for the "exclusive customers" were produced for the exclusive customers identified by CTX-US.

CTX-US further alleged in its counterclaim that "[¶]23. Benlida also agreed that it would accept and fulfill purchase orders for CTX and customers identified by CTX based on the pricing matrix and delivery terms agreed upon by the parties in the contract. See Id., at §§ 2.1 – 3.5." That is, just as with respect to paragraph 22, Benlida admitted in response to paragraph 23 that CTX-US's exclusive customers were indeed CTX-US's exclusive customers, only objecting to the implication that Benlida was required to produce beyond its agreed-upon capacity. Likewise, exclusivity of the CTX-US customers was alleged in "[¶]25. Benlida further agreed not to do business, directly or indirectly, with any customers identified by CTX (defined in the Manufacturing Agreement as either "Identified Potential Customers" or "Exclusive Circuitronix Customers"), other than through CTX. In other words, Benlida agreed not to circumvent CTX by selling products directly to the customers obtained through the work of CTX. See Id., at § 1.6." Benlida admitted this. (DE 43).

---

[2] In its opposition to the motion for summary judgment, Benlida inadvertently overlooked its admission, and focused its argument on the fact that CTX-HK had placed orders for CTX-US as an agent for CTX-US.

6

With regard to alleged overpayments by CTX-US to Benlida (see DE 34, ¶ 36), Benlida put CTX-US on clear notice by its answer that it intended to defend against such claims based upon FIFO principles: "[¶] 36. Deny as alleged, and note that overpayments offset past debts on a FIFO – first-in-first-out – basis." (DE 43). Benlida otherwise denied all material allegations of the counterclaim, and as there has been no motion to strike any of Benlida's answer to the causes of action in the counterclaim, such as the defense that overpayments were applied on a FIFO basis, and there was no motion to grant summary judgment on the counterclaims, Benlida maintains that it has the right to defend against the counterclaims on the following grounds.

It is Benlida's defense against the CTX-US's counterclaim that when CTX-HK placed orders, it did so on behalf of CTX-US, and that Benlida understood that such orders were placed for CTX-US and that CTX-US would pay for such orders, (a) because the orders were placed for the exclusive customers of CTX-US and not CTX-HK, as "exclusive" under the Manufacturing Agreement means exclusive to CTX-US, and could not mean "exclusive" to two different companies, for that would be an unreasonable interpretation of the word "exclusive"; (c) as CTX-US alleges in its counterclaim, CTX-US and CTX-HK became co-signers of the Benlida/CTX 2012 Manufacturing Agreement by virtue of Mr. Kukreja's execution of the 2016 letter agreement. They thus CTX-US and CTX-HK thereby became jointly and severally liable as co-signers. In defense against the counterclaim, Benlida will show that, as alleged, Benlida properly applied CTX-US payments to it on a FIFO basis.

The other provision of the Manufacturing Agreement that is significant to Benlida's defense to the counterclaim is that "The above Standard Lead Times apply to an order of 3000 square meters per week. For each increase of 400 square meters per week, the Standard Lead Time will be increased by 1 day." As will be shown at trial, the orders placed by CTX-US and CTX-HK far exceeded the capacity originally anticipated, and thus the lead time penalties claimed by CTX far exceed what is permissible under the agreement, as they do not account for Benlida's capacity. Additionally, Benlida maintains that CTX-US's counterclaims and offsets are otherwise erroneous, not legally permissible under the contract, and that CTX-US otherwise failed to timely assert claims for such lead time penalties, offsets and counterclaims.

Additionally, Benlida maintains that, in accordance with Florida law,[3] when CTX-US or CTX-HK made payments to Benlida, because they did not designate specific invoices "at the time of payment" that were being paid off, Benlida had the legal right to, and did so according to Florida law, apply the payments to the oldest outstanding invoices. Again, Benlida asserted FIFO as a defense to the counterclaim, which defense remains in this case.

## II.     BASIS OF FEDERAL JURISDICTION

This Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(2). The amount in controversy exceeds $75,000, and the dispute is between a citizen of Florida (CTX) and a citizen of a foreign state (Benlida).

## III.    PLEADINGS RAISING THE ISSUES

The issues are raised in CTX's Counterclaim [ECF No. 34] and Benlida's Answer to Counterclaim [ECF No. 43].

## IV.    UNDISPOSED OF MOTIONS AND OTHER MATTERS REQUIRING ACTION BY THE COURT

The following motions remain pending and require Court action, subject to the parties' joint report regarding portions of the motions obviated by the Court's ruling on summary judgment:

1. Benlida's Motion *in Limine* (a) to Preclude Expert on Chinese Law and Testimony Related Thereto; and (b) to Preclude Testimony Regarding Trade-Credit Insurance [ECF No. 196];

2. CTX's Motion to Exclude or Limit Testimony of Plaintiff's Rebuttal Expert [ECF No. 197]; and

3. CTX's Omnibus Motion *in Limine* [ECF No. 198].

## V.     CONCISE STATEMENT OF UNCONTESTED FACTS WHICH WILL REQUIRE NO PROOF AT TRIAL, WITH RESERVATIONS, IF ANY

1. CTX is a Florida limited liability company with its principal office in Fort Lauderdale, Florida, specializing in the global manufacturing, sale, and distribution of PCBs for a variety of applications.

2. Benlida is a Chinese limited liability company engaged in the manufacture and sale of PCBs.

---

[3] *Randall v. Pettes*, 12 Fla. 517 (1868); *Frieslander v. Mahon*, 400 So. 2d 41 (Fla. 2d Dist. 1981); *Winchester v. Florida Electric Supply, Inc.*, 161 So.2d 668 (Fla. 2d DCA 1964).

3.      ROK, a Benlida affiliate, was a Chinese limited liability company engaged in the manufacture and sale of PCBs. It ceased operations and went out of business in late 2018.

4.      On March 1, 2012, CTX entered into a written contract with Benlida and ROK for the manufacture of PCBs, entitled "Standard Manufacturing and Representation Agreement."

## VI.   CONCISE STATEMENT OF ISSUES OF FACT WHICH REMAIN TO BE LITIGATED

CTX contends that the following issues of fact remain to be litigated before a jury acting as the trier of fact:

1.      Whether CTX has proven by a preponderance of the evidence that Benlida breached the Manufacturing Agreement by improperly crediting or failing to credit CTX's payments for invoices.

2.      Whether CTX has proven by a preponderance of the evidence that Benlida breached the Manufacturing Agreement by failing to apply contractual lead-time penalties to late shipments.

3.      Whether CTX paid Benlida over $50 million between January 1, 2016 and July 1, 2020.

4.      Whether Benlida asked CTX to make payments to ROK (and not Benlida) on invoices Benlida had issued to CTX in 2017 and 2018.

5.       Whether CTX has proven by a preponderance of the evidence that Benlida breached the Manufacturing Agreement by failing to credit payments on Benlida invoices that CTX made to ROK at Benlida's direction.

6.      Whether Benlida charged CTX premiums of between 3% and 20% on invoices between 2019 and 2021.

7.      Whether CTX has proven by a preponderance of the evidence that Benlida breached the Manufacturing Agreement by improperly demanding premium payments in excess of the contractual price terms, and threatening to cancel orders or halt production unless CTX complied with its demands.

8.      Whether CTX has proven by a preponderance of the evidence that Benlida otherwise breached the Manufacturing Agreement by demanding advance payments contrary to the payment terms of the Manufacturing Agreement, and threatening to cancel orders or halt production unless CTX complied with its demands.

9. Whether CTX is entitled to monetary damages based on overpayment for Benlida's invoices and, if so, how much.

\*\*\*

Benlida contends that the following issues of fact remain to be litigated before a jury acting as the trier of fact:

1. Whether CTX has proven by a preponderance of the evidence that Benlida breached the Manufacturing Agreement by applying, on a FIFO basis, payments made by CTX-US and CTX-HK to invoices for PCBs ordered for CTX-US's exclusive customers, whether such orders were placed by CTX-US or CTX-HK.

2. Whether CTX has proven by a preponderance of the evidence that CTX timely and properly made claims for lead-time penalties for late shipments, and that Benlida breached the Manufacturing Agreement by failing to apply contractual lead-time penalties to late shipments.

3. Whether, due to the extent of the accounts receivable owed by CTX, Benlida could properly require CTX to pay for such A/R, through requiring that CTX pay an additional amount on every order, which the parties have referred to as a "premium," in order to reduce the A/R.

4. Whether CTX-US understood that, when orders were placed by CTX-HK for CTX-US's exclusive customers, CTX-US was responsible therefor.

5. Whether, by having made CTX-HK a party to the 2012 Manufacturing Agreement by his execution of the 2016 Letter Agreement in behalf of both CTX-HK and CTX-US, Rishi Kukreja understood, and thus bound both companies, to pay for the contractual obligations of the other.

## VII. CONCISE STATEMENT OF ISSUES OF LAW ON WHICH THERE IS AGREEMENT

1. The parties' contractual relationship is governed by Florida law.

2. To prove a breach-of-contract claim in Florida, a party must establish the existence of "(1) a valid contract; (2) a material breach; and (3) damages." *Cibran Enters., Inc. v. BP Prod. N. Am., Inc.*, 365 F. Supp. 2d 1241, 1254 (S.D. Fla. 2005) (citation omitted).

### VIII. CONCISE STATEMENT OF ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT

CTX contends that there are no issues of law which remain to be determined by the Court outside of those bound up with the issues of fact that remain to be tried.

Benlida contends that numerous legal issues remain and it intends to file a separate submission regarding such issues. And Benlida reserves its rights to raise any and all other legal issues that may become apparent during the trial of this case.

### IX. LISTS OF TRIAL EXHIBITS

Pursuant to the Court's Order [ECF No. 221 at 13], each party is submitting an amended exhibit list. CTX's amended exhibit list is attached as Exhibit 1. Benlida's amended exhibit list is attached as Exhibit 2.

### X. LISTS OF TRIAL WITNESSES

Pursuant to the Court's Order [ECF No. 221 at 13], each party is submitting an amended witness list. CTX's amended witness list is attached Exhibit 3; Benlida's amended witness list is attached as Exhibit 4.

### XI. ESTIMATED TRIAL TIME

CTX estimates that its counterclaims can be completed within four trial days. Benlida estimates that its defense case can be tried within ____ trial days.

### XII. ATTORNEYS' FEES

The Parties agree that, under Section 13.5 of the Manufacturing Agreement [ECF No. 177-1], the prevailing party in the action would be entitled to "all court costs and reasonable attorney fees incurred," including expert fees, audiovisual aides for trial, etc.

In accordance with S.D. Fla. Local R. 16.1(e)(12), Benlida estimates that its attorneys' fees and costs expended through trial may be $1.75 million. CTX estimates that its attorneys' fees and costs expended through trial may be $2.5 million.

11

### XIII. PROPOSED CASE-SPECIFIC VOIR DIRE QUESTIONS

Benlida's proposed questions to be included in the questionnaire to prospective jurors are:

1. Do you, anyone in your family, or anyone you've lived with have any background or professional experience in accounting, bookkeeping, or auditing?
2. Do you, anyone in your family, or anyone you've lived with have any experience working in a factory or with a factory?
3. Do you, anyone in your family, or anyone you've lived with have any experience doing business in China or India?
4. Do you have any adverse feelings regarding China, Chinese people, or Chinese businesses?

CTX's proposed questions to be included in the questionnaire to prospective jurors are:

1. Do you, anyone in your family, or anyone you've lived with have any background or professional experience in accounting, bookkeeping, or auditing?
2. Do you, anyone in your family, or anyone you've lived with have any experience working with a business that has to make products on a time schedule?
3. Have you, anyone in your family, or anyone you've lived with ever sued, or been sued, for breach of contract?
4. Would you hold any grudge or bias against someone who immigrated legally to this country and built a successful business here?
5. This case involves a counterclaim for millions of dollars. Would you have any objection or problem with awarding a company millions of dollars in damages if it proves that it is entitled to that under its contract?

Dated: September 29, 2023                                   Respectfully submitted,

 

**PODHURST ORSECK, P.A.**
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800

*/s/ Stephen F. Rosenthal*

**Mazzola Lindstrom LLP**
*/s/ Richard E. Lerner*
Richard E. Lerner
Jean-Claude Mazzola
Counsel for Jiangmen Benlida Printed
Circuit Co., Ltd.
1350 Avenue of the Americas, Second Floor
New York, New York 10019
Tel.: (646) 216-8300
richard@mazzolalindstrom.com
jeanclaude@mazzolalindstrom.com

*Counsel for Jiangmen Benlida
Printed Circuit Co., Ltd.*

Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew P. Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com

*Counsel for Circuitronix, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on September 29, 2023 as filed with the Clerk of the Court using CM/ECF.

By: /s/ *Stephen F. Rosenthal*         .
   Stephen F. Rosenthal