UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

    Counter-Defendant,

v.

CIRCUITRONIX, LLC,

    Counter-Plaintiff,
_____/

**CIRCUITRONIX, LLC'S MOTION TO MINIMIZE PREJUDICE FROM INADVERTENT DISPLAY OF REDACTED INFORMATION TO JURY DURING TRIAL**

Counter-Plaintiff, Circuitronix, LLC ("CTX-US") respectfully requests that the Court take additional action to try to ameliorate the severe prejudice to CTX-US likely to flow from the inadvertent publishing to the jury of an unredacted exhibit (Ex. 136) containing highly prejudicial financial information during the testimony of Benlida's Chief Financial Officer, Wu Yukun (a/k/a "Roger" Wu) during trial on Friday, October 20, 2023.  For the reasons set forth below, CTX-US requests that the Court:

    (1) preclude Benlida's counsel from referencing or alluding to the unredacted exhibit (or its content about CTX-HK's balance) as a basis for reaching a verdict in favor of Benlida during the remainder of the trial; and

    (2) allow CTX-US to substitute the redacted version of Exhibit 136 for the unredacted one in the set of exhibits that goes to the jury for deliberations.

1

## BACKGROUND

### A. The Court's Pre-Trial Orders Regarding the CTX-HK Debt Issue

As the Court is well aware, the single most significant issue that the parties in this case have battled over for many months is whether CTX-US can be held responsible for the debts of CTX-HK. The Court has entered three orders on this issue, each successively limiting Benlida's ability to introduce evidence or argument on that subject. First the Court granted CTX-US's motion for summary judgment against Benlida's claims predicated upon CTX-US's liability for CTX-HK's debts because Benlida had failed to plead any theory by which CTX-US could be held liable for CTX-HK's debts. ECF No. 221. Then the Court granted CTX-US's motion in limine, ruling that "Benlida is precluded from presenting evidence of CTX-HK's debts ***or Circuitronix's responsibility therefor***." ECF No. 237, 1 § 2 (emphasis added). In implementing the Court's order, CTX-US's counsel and paralegals painstakingly redacted hundreds of documents, including "locking" certain tabs on live Excel spreadsheets, for use at trial.

Third, the day before trial started, because Benlida had recently listed documents that suggested it intended to smuggle in prohibited information based on the way Benlida commingled the accounts receivable for CTX-US and CTX-HK, CTX-US protectively filed a motion to enforce the pre-trial ruling excluding evidence regarding CTX-HK. ECF No. 254. The motion recited that "Benlida should be precluded from eliciting testimony from its witnesses concerning CTX-HK debts, orders, invoices, and balances, either by itself or embedded in collective, undifferentiated financial data of Circuitronix entities." *Id*. at 2. The motion further argued that "Benlida's counsel and witnesses should be instructed to refrain from eliciting or providing testimony pertaining to such CTX-HK financial data." The Court granted that motion. ECF No. 256.

## B. Benlida's Persistence in Seeking to Rely on Figures Implicating CTX-HK During Trial

Notwithstanding the Court's clear pre-trial rulings, Benlida remained intent on seeking to introduce evidence derived from its commingling of accounts between CTX-US and CTX-HK. During opening statements, Benlida's counsel voiced themes that sounded—at least to CTX-US's piqued ears—like they were primed for a subsequent insinuation that the jury was missing some critical piece of information (CTX-HK's purported indebtedness) which would undermine CTX-US's case. Mr. Mazzola argued that "something is missing" and that "if something is missing from their side, they lose."[1] He added that CTX-US's claims are "a house of cards," "a shell game," like "three-card Monty." During cross-examination of CTX-US's fact witnesses, Rishi Kukreja, Lina Ochoa, and Sourabh Sharma, Mr. Mazzola repeatedly focused attention on CTX-HK, though he did not, at that stage, transgress the Court's instructions not to discuss debts of CTX-HK or issues concerning CTX-US's responsibility therefor. Yet he continued insinuating that something not-quite-right was afoot. While cross-examining Mr. Kukreja, Mr. Mazzola discussed a "bucket of orders" and how "a related company" has "its hands in the bucket" along with CTX-US. Shortly afterwards, Mr. Mazzola identified the related company as CTX-HK. While CTX-HK's submission of orders to Benlida may bear some minimal relevance to the calculation of lead-time penalties and price discounts, Benlida's heavy focus on the relationship between CTX-US and CTX-HK was beyond disproportionate to such a narrow issue.

On Thursday, October 19, before Benlida called its first witness to commence its case, a discussion between counsel revealed Benlida's intention to elicit testimony from its witnesses

---

[1] No trial transcript is available. Quotations are from notes of counsel so they may be imprecise.

that the group of invoices issued to CTX-US in 2018-2019 (from the Third Amended Complaint (the "TAC invoices")) remained unpaid. This revelation prompted CTX-US to move *ore tenus*, while the jury was at lunch, to prohibit that line of questioning, as violative of the Court's prior rulings. CTX-US displayed the argument attached as Exhibit 1 to the Court during that argument. *See* Exhibit 1 (arguing that "Benlida cannot elicit testimony that the TAC invoices were not paid without contradicting their admission and multiple Court orders"). The essence of CTX-US's argument was that, as was undisputed from Benlida's witness' deposition testimony, the **only** reason Benlida considered those invoices unpaid was that it had comingled CTX-US's account with that of CTX-HK and applied CTX-US's payments on a first-in-first-out basis ("FIFO") *to CTX-HK's larger, earlier debts*. Without relying on this excluded argument, no Benlida witness could testify that CTX-US's invoices were unpaid, because it is undisputed that CTX-US had paid *more* than the value of the invoices Benlida issued to *it*.[2]

The Court entertained argument on CTX-US's motion. Benlida, as predicted, argued that it should be able to ask its witnesses whether the invoices issued to CTX-US had been paid. Despite CTX-US's arguments, the Court declined to preclude Benlida from asking its witnesses whether the invoices to CTX-US had been paid.

This ruling—which, given the known way that Benlida had done its accounting, permitted the indirect introduction or suggestion of evidence regarding CTX-HK that had previously been excluded—required CTX-US to immediately adjust its trial strategy. It was now necessary for CTX-US to plan to introduce evidence that would undercut the credibility of Benlida's forthcoming testimony that the TAC invoices to CTX-US remained unpaid. CTX-US

---

[2] Indeed, Sulan "Tracy" Huang admitted as much on cross-examination later on Friday afternoon.

had to pivot to showing the jury several documents in which Benlida had informed CTX-US that it had a credit balance (rather than owed money) after the period of time covered by the TAC invoices.

### C. The Accidental, Explosive Revelation of an Unredacted Exhibit Showing CTX-HK's Account

During the direct examination of Benlida's first witness, it's CFO, Roger Wu, Benlida elicited testimony, over CTX-US's objection, that a sworn audit statement reflecting that Benlida owed CTX-US money at the end of December 31, 2019, was actually incorrect, because, in Benlida's view, the accounts of CTX-US and CTX-HK must be considered together and could not be disaggregated. On cross-examination, seeking to impeach Mr. Wu's disaggregation assertion, CTX-US's counsel asked whether Mr. Wu was aware that Benlida had produced documents in the regular course of business showing that CTX-US was in an overpaid position and the amount of that overpayment. Mr. Wu said yes, but that they calculate the figures all together.

What happened next was nothing more than sheer human folly, under the pressure of last-minute changes at trial. CTX-US's counsel requested that the AV technician hired to display electronic documents during trial, Mr. Vega, bring up Exhibit 136 for impeachment. Mr. Vega had been instructed throughout trial to bring up redacted versions of documents where they existed in the digital exhibit folder on his computer, something he had done flawlessly for the first three days of trial. The PDF document on Mr. Vega's laptop for the redacted version of Exhibit 136 was entitled "Ex136Re.pdf." and looks like this:

5



That document shows Benlida's accounting department saying, long after the period of the TAC invoices, that "Benlida owes CTX[-US] USD 1,589,731.52."

Unfortunately, Mr. Vega accidentally clicked on a PDF with a different name, "Ex. 136.pdf," immediately displaying throughout the entire courtroom, including on the jurors' monitors, the *unredacted* version of Exhibit 136, which looks like this:

> From: accounting@benlida.com
> Sent: Thursday, September 9, 2021 2:28 AM
> To: CCT对账邮箱; LinaO; 美国CCT财务经理Ivonne Suarez; NicoleD (CCT); WindyZ(香港CCT); 香港CCT对账ChuW
> Cc: sales01; 黄素兰; 吴宇焜
> Subject: the statement of Aug in 2021(BLD)
> Attachments: 2021年BLD-CCT对账单（8）.xlsx; 2021年BLD-HKCCT对账单（8）.xlsx
>
> Hello:
>
> Here we have statement against 2021/08 attached ( USD shipment amount USD612,643.00 + HKG shipment amount USD330,404.59). Up till to 2021/8/31, CTX HKG owes Benlida USD12,616,815.82, Benlida owes CTX USD 1,589,731.52. Then CTX owes Benlida USD 11,027,084.30 in total.
>
> Pls check. If there's any problem, pls raise it up within one week.
>
> FM: JIANGMEN BENLIDA/MS CHEN
> TEL:750-3962068
>
> accounting@benlida.com

As everyone in the courtroom craned forward at their monitors to read the short email, the critical line smack in the middle of the page, "CTX HKG owes Benlida USD12, 616, 815.82," leapt off the screen. The jurors had previously been instructed to ignore precisely this kind of information, which had heretofore been redacted in other exhibits.

As soon as CTX-US's counsel recognized the AV operator's shocking mistake, he asked that the unredacted version be taken down and that redacted version be displayed instead. The Court, however, directed the AV operator keep the unredacted document on the screen, since the jury had seen it already. The utterly irrelevant and potentially devastatingly prejudicial fact that Benlida said non-party CTX-HK owed Benlida $12.6 million in 2021 sat like a toad in the courtroom. CTX-US's claim is for less than that figure, and Benlida's defense was that it (somehow) owes nothing. This new fact was like manna from heaven for Benlida, a fact (albeit contested) that multiple Court orders had barred it from telling the jury, but which just fell into its lap through an errant mouse-click.

CTX-US's counsel was forced to proceed with questioning Mr. Wu about other portions of the unredacted document. The Court also asked Mr. Wu how he could have testified earlier that it was impossible to disaggregate figures between CTX-US and CTX-HK if they could do so in this email. During this questioning, however, the Court pointedly asked Mr. Wu something to the effect of: "CTX-HK owes Benlida over $12 million. You see it says that?" After the witness's answer, the Court issued an instruction to the effect of: "I said it yesterday, and I will say it again: these are separate entities, whether HK owes one dollar or $1 billion or $1 million, you are to decide whether and what CTX-US is owed, if anything, from Benlida."

Subsequently, during Benlida's direct examination of its corporate representative, Huang Sulan (a/k/a "Tracy Huang"), Benlida did precisely what it prefigured it would do in its case: ask whether the TAC invoices to CTX-US were paid or not, thereby eliciting Ms. Huang's testimony that they were not. Over CTX-US's objection, the Court allowed Benlida's counsel to ask her questions on that subject. She then testified that Benlida's accounting team had determined that CTX-US owed $7,385,000 on those invoices. CTX-US's counsel was forced to explore on cross-examination that, as Ms. Huang conceded, that figure derived from Benlida's account books which commingled the funds and debts of CTX-US and CTX-HK.

At the conclusion of the day on Friday, October 21, CTX-US requested that when the evidence is given to the jury at the conclusion of trial, the redacted version of Exhibit 136 be provided. The Court declined this request and said that they would be given the unredacted version.

At the time of the filing of this motion, over the weekend, Ms. Huang remains on the stand for cross-examination. The trial is set to resume and conclude on Tuesday, October 24.

8

# ARGUMENT

## I. The Court Should Take Additional Measures to Attempt to Ameliorate the Severe Prejudice to CTX-US by the Course of Events

The extent of the prejudice to CTX-US from the state of events in this trial need not be further elaborated. Suffice it to say that, due to a combination of Benlida's stubborn insistence on injecting CTX-HK debts into this trial despite the Court's pre-trial rulings and the pure bad luck of a colossally impactful errant mouse click, members of the jury have seen highly prejudicial evidence that the Court's prior rulings correctly prohibited them from seeing. The purpose of this motion is to make a clear contemporaneous record in time for the Court to act in a manner that may at least reduce the prejudice that CTX-US has suffered.

There are at least two steps that the Court can and should take to minimize the reverberations of the inadvertent disclosure of the redacted information. The Eleventh Circuit has identified each of these steps as ameliorative actions when evidence is inadvertently disclosed to a jury. *See United States v. Perkins*, 204 F. App'x 799, 804 (11th Cir.2006) (per curium) (any error in admission of recorded jailhouse conversation in which defendant referenced her decision to remain silent was harmless; references to defendant's silence were not highlighted by prosecutor, and district court redacted references at issue from transcript before giving it to jury).

*First*, the Court should act to prevent Benlida from capitalizing unfairly upon the clerical error that thrust the damaging redacted information before the jurors. The Court should instruct Benlida's counsel that they may not reference or allude to the unredacted version exhibit (or its content about CTX-HK's balance) as a basis for finding in Benlida's favor. *See Perkins*, 204 F. App'x at 804 (referencing fact that prejudicial evidence was not highlighted by counsel). Such

9

an argument would essentially invite the jury to disregard the Court's instructions and the law, clearly an impermissible line of attack.

*Second*, the Court should reconsider its decision rejecting CTX-US's request that the redacted version of Exhibit 136 be submitted to the jury for their deliberations.  *See Perkins*, 204 F. App'x at 804 (lauding similar corrective action by a district court).  Submitting the redacted version of the document will emphasize that the blacked-out information is unavailable for the jury's evaluation.

### CERTIFICATE OF RULE 7.1(a)(3) CONFERENCE

Undersigned counsel for CTX has conferred with counsel for Benlida in a good faith effort to resolve the issues raised in the motion.  The parties unable to reach agreement.

DATED October 23, 2023

                                                          Respectfully submitted,

                                                          **PODHURST ORSECK, P.A.**
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800

*/s/ Stephen F. Rosenthal*
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew P. Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com

*Counsel for Circuitronix, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on October 23, 2023 as filed with the Clerk of the Court using CM/ECF.

By: /s/ *Stephen F. Rosenthal* .
Stephen F. Rosenthal