**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-60125-CIV-SCOLA/GOODMAN**

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

    Counter-Defendant,

v.

CIRCUITRONIX LLC,

    Counter-Plaintiff,
_____/

## **PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW**

Counter-Plaintiff Circuitronix, LLC ("CTX-US") hereby moves, pursuant to Federal Rule of Civil Procedure 50(a), for partial judgment as a matter of law against Counter-Defendant Jiangmen Benlida Printed Circuit Co., Ltd. as to the following specific issues:

    I.    That Benlida breached the Manufacturing Agreement and Letter Agreement by refusing to return overpayments on invoices which had accumulated due to Benlida's improper payment demands not allowed under the parties' agreements;

    II.    That Benlida may not advance a FIFO defense for CTX-US's claimed damages for overpayment of invoices; and

    III.    That Benlida may not advance a price-increase defense to set off or reduce CTX's claimed damages for overpayment of invoices.

## **ARGUMENT**

The Eleventh Circuit has summarized the applicable standard to Rule 50(a) motions as follows:

> A district court may enter a judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue. Fed. R. Civ. P. 50(a); *see Thorne* [*v. All Restoration Servs., Inc.*], 448 F.3d [1264,] 1266 [(11th Cir. 2006)]. The district court must view the evidence in the light most favorable to the non-moving party and must refrain from "decid[ing] the credibility of witnesses [ ]or

> weigh[ing] the evidence." *Mich. Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998). Where there exists a "substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, [a] motion [for a judgment as a matter of law] must be denied." *Christopher v. Florida*, 449 F.3d 1360, 1364 (11th Cir. 2006) (internal quotation marks omitted); *see also EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1250 (11th Cir. 1997) (holding that a judgment as a matter of law "can be [entered] only when the evidence favoring the [movant] is so one-sided as to be of overwhelming effect").

*Davila v. Menendez*, 717 F.3d 1179, 1184 (11th Cir. 2013).

### I. Benlida breached the Manufacturing Agreement and the Letter Agreement by refusing to return CTX's overpayments.

CTX has introduced evidence at trial that Benlida demanded accelerated or advanced payments, improperly failed to credit payments on Benlida invoices that CTX made to ROK Printed Circuit Co., Ltd. at Benlida's direction, and demanded premium payments in excess of contractual pricing terms. The parties' agreements specify pricing and payment timing terms and acknowledge that Benlida owes CTX-US a duty of good faith, fair dealing, loyalty, and care. In violation of these terms, Benlida refused to return overpayments from CTX-US that had accumulated as a result of Benlida's improper demands for payment. Benlida has not put forth *any* evidence in the record to *disprove* these facts. Accordingly, CTX seeks partial judgment as a matter of law as to liability on its breach-of-contract claim and as to certain undisputed categories of damages, with the jury determining the amount of any disputed damages.

*Existence of a Valid Contract:*  There is no dispute regarding the first element of the claim—that the parties entered a valid contract. Witnesses on behalf of CTX and Benlida alike have affirmed that the parties entered into the Manufacturing Agreement and Letter Agreement. Neither is there any dispute that CTX-US satisfied the conditions precedent for bringing suit under the contracts. *See* ECF No. 34 at ¶ 14 (Counterclaim: "All conditions precedent to bringing this action have occurred or have been waived."); ECF No. 43 at ¶ 14 (Answer to Counterclaim: "Admit that all conditions precedent to suit have been satisfied, but deny that there has been any waiver.").[1]

---

[1] To the extent that Benlida has attempted to present evidence and elicit testimony to the contrary, the question of whether CTX-US satisfied any condition precedent to suit has already been foreclosed by the parties' pleadings, where Benlida "admit[ted] that all conditions

*Material Breach:*  As to breach, the second element in a breach-of-contract action, CTX has proffered sufficient evidence, and Benlida has failed to disprove, that Benlida breached the Manufacturing Agreement and Letter Agreement by refusing to return overpayments resulting from Benlida's (1) improper demands for accelerated payments, (2) its improper demands for advance payments, (3) its failure to credit payments diverted to ROK Benlida's direction, and (4) its demands for payment premiums.

CTX-US CEO Rishi Kukreja testified at length about Benlida's various extra-contractual demands.  For instance, he described Benlida's demands for payments on schedules different from the Manufacturing Agreement's "AMS 60 days" payment term.  He explained, for example, that in December 2016, Benlida demanded that CTX would pay on a "what ships this week is paid next week" basis.  On cross-examination, Benlida's Sales Director, Huang "Tracy" Sulan, acknowledged that CTX made payments on a weekly or very frequent basis.  Similarly, Mr. Kukreja testified that, beginning in August 2019, Benlida demanded and CTX began to prepay on all invoices issued by Benlida—despite being in an overpaid situation.  Benlida's CFO, Wu "Roger" Yukun acknowledged that Benlida stopped updating a spreadsheet tracking invoices and payments since it began requiring CTX to make prepayments and CTX was making those prepayments.  Tracy Huang also testified that prepayments began in August 2019.

Additionally, Mr. Kukreja testified in painstaking detail about the nine payments CTX made to ROK between 2017 to 2018, which Benlida never credited to CTX.  Benlida offered zero evidence or testimony to contradict those facts.  Similarly, Benlida presented no evidence to controvert Mr. Kukreja's testimony that Benlida demanded payment premiums above the contractual price terms and threatened to cancel orders or stop production unless CTX complied with its demands.

*Damages:*  Finally, regarding the third element of a breach-of-contract action—damages—CTX put forth substantial evidence that it overpaid on the Benlida-issued invoices as a result of these payment demands, and Benlida has not disproved *the fact of* the overpayments. Mr. Kukreja, for example, testified as to these overpayments, including the amount quantified in the 2012-2019 reconciliation process, the diverted payments to ROK, and the premiums that

---

precedent to suit have been satisfied …."  ECF No. 43 at ¶ 12.  Indeed, the parties agreed to remove any jury instructions regarding conditions precedent at a conference with the Court regarding the instructions on October 20, agreeing that there was no dispute as to that aspect of CTX's breach-of-contract claim.

Benlida demanded after 2019. CTX's accounting expert Barry Mukamal also analyzed the parties' reconciliation efforts and testified to the amount that CTX overpaid on Benlida's invoices—more than $4.7 million.

Far from creating "substantial conflict" in the evidence, Benlida's evidence *accords with* CTX's regarding the *fact of* overpayment. Ms. Huang admitted that CTX-US actually paid Benlida more than the total owed under the 2018 to 2020 invoices Benlida entered into evidence. Although she testified on direct examination that there was no overpayment, she admitted that she was only able to maintain that view because of Benlida's commingled FIFO accounting methodology, which the Court disallowed, as discussed further below in Section II. Mr. Wu also repeatedly conceded that—after isolating and considering only transactions between Benlida and *CTX-US*—he was unable to testify whether Benlida owed CTX-US or CTX-US owed Benlida, or what amount was owed. When discussing an audit as of the end of 2019, which was based on *Benlida's own books*, for example, he testified that the amount reflected on the audit statement was inaccurate, but that he could not determine the accurate amount. He also testified that he was unable to compare only CTX-US invoices and payments because Benlida commingled CTX-US and CTX-HK records, particularly during the pre-2016 period.

In all, Benlida has not provided any basis "to create a substantial conflict in the evidence on an[y] essential element of [its]" defense to a breach-of-contract claim, that there was *no breach and no damages*. *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1210 (11th Cir. 2006). The evidence overwhelmingly favors CTX on the issue of Benlida's breach of contractual provisions requiring specified payment terms and obligating Benlida to treat CTX-US fairly and deal with it in good faith. Benlida does not dispute that if CTX-US overpaid, Benlida would be liable for breach of contract.

The only matter left for the jury's consideration is the precise amount of damages that remain in dispute—the amount of overpayment during the 2012-2019 reconciliation period and lead-time penalty damages—resulting from these breaches. Benlida presented no evidence, however, to contradict the amount of damages flowing from the diverted ROK payments and the premium charges. As the undisputed documents establish, CTX-US, at Benlida's direction, diverted $2,825,000 in payments to ROK (Ex. D-Q13), and CTX-US paid Benlida $317,539 in premium charges (D-X13). Judgment as a matter of law, therefore, should be entered in favor of CTX-US as to liability and as to damages for the ROK payments and premium charges.

4

> II.  **Benlida may not advance a defense regarding non-payment of invoices based on FIFO application of payment**

Judgment as a matter of law is appropriate as to Benlida's defense that, due to its FIFO allocation of payments to debts across two separate companies (CTX-US and CTX-HK), CTX-US did not pay Benlida or CTX owes Benlida money based on non-payment of invoices. Consistent with that defense, Benlida's witnesses admitted at trial that they applied CTX-US payments to the oldest debts as between CTX-US *and CTX-HK*. This commingled FIFO argument (and the trial testimony supporting it) are improper both because they violate the Court's Omnibus Order and because they are contrary to Florida law and to Benlida's own admitted understanding of how CTX-US was directing payments to be applied. The Court should disallow the defense as a matter of law prior to the jury's consideration of the issues.

First, the Court has already determined that Benlida may not "present[] evidence of CTX-HK debts or Circuitronix's responsibility therefore." ECF No. 237 at Item 1, § 2. Benlida's claim that CTX-US owes it money under its FIFO accounting method seeks to circumvent the Court's clear ruling. That is because FIFO, on its own, does not allow Benlida to argue that CTX-US has underpaid. After all, Tracy Huang testified that, if one were to isolate to only CTX-US transactions and payments, CTX-US *overpaid*. Thus, it is only by employing a *commingled* FIFO accounting methodology—in which Benlida applies CTX-US payments to the oldest supposed debts of *both* CTX-US or CTX-HK—that Benlida argues CTX-US owes it any money. The Court should not give Benlida an escape hatch from its omnibus ruling by allowing Benlida to rely on a FIFO defense that necessarily requires reference to CTX-HK debts—and "Circuitronix's responsibility therefor"—to reduce Benlida's liability.

Apart from contravening the Court's Omnibus Order, Benlida's FIFO argument is also inconsistent with Florida law, which prohibits a creditor company from applying a debtor's payments to the debts of *another* company. *Urrea v. Koplow*, 359 So. 3d 1212, 1215 (Fla. Dist. Ct. App. 2023) (reversing trial court's ruling allowing a creditor to apply a payment without allocation instructions from one debtor (Ms. Urrea) to the older debt of another debtor (her company). In its summary judgment briefing and again at trial, Benlida has cited *Randall v. Pettes*, 12 Fla. 517, 535 (1868) for the contrary proposition that a creditor may allocate a debtor's payments on debts as the creditor sees fit, absent a contractual provision otherwise or instruction from the debtor about payment application. Florida's Third District Court of Appeal

5

in *Urrea*, however, clarified that *Randall* "stand[s] for the proposition that *if a single debtor* did not specify how funds were to be applied, then the creditor was free to apply the funds to whichever of the debtor's multiple debts … is desired." *Urrea*, 359 So. 3d at 1215 (emphasis added). In other words, *Randall*'s general principle applies only in a bilateral situation between one debtor and one creditor, in cases where a "*single debtor* had multiple debts or judgments against him or her." *Id.* (emphasis added). Conversely, as in *Urrea*, "the instant case involves … *two separate debtors* …" in CTX-US and CTX-HK, and the *Randall* authority Benlida "relied upon is *inapplicable*." *Id*. (emphasis added).

      Benlida has doubled down on its use of a commingled FIFO methodology and held fast to its reliance on *Randall* at trial, without addressing or confronting how *Urrea* precludes its argument. Indeed, Benlida's witnesses' trial testimony confirms *Urrea* is the more analogous case, since Tracy Huang and Roger Wu both testified that Benlida was utilizing commingled records and applying CTX-US payments to the debts of two separate supposed debtors. Specifically, Ms. Huang confirmed that Benlida maintained combined accounts receivable records for both CTX-US and CTX-HK. She acknowledged that she could not confirm the precise numbers that CTX-US paid or did not pay because Benlida was mixing the payments for both companies together. Likewise, Mr. Wu testified that he was unable to distinguish what, if anything, was owed to Benlida as between CTX-US versus CTX-HK. It is clear from this testimony that Benlida's effort to use a FIFO methodology as a defense is really an effort to use *commingled* FIFO *across CTX-US and CTX-HK* as a defense. Tracy Huang confirmed, moreover, that CTX-US overpaid. This testimony reinforces *Urrea*'s application to the case, and *Urrea* forecloses Benlida's invocation of *commingled* FIFO as a defense.

      Even setting aside Florida law's prohibition of Benlida's use of FIFO across CTX-US and CTX-HK debts, CTX-US has introduced unrebutted evidence at trial that Benlida received CTX-US's payment instructions in the form of payment details and that it understood but ignored the direction to allocate payment to the listed invoices for CTX-US. Rishi Kukreja and Lina Ochoa both testified that, through the payment details, CTX-US indicated which CTX-US invoices it intended Benlida to apply payments to. Tracy Huang acknowledged that the payment details reflected that CTX-US was issuing payments for CTX-US invoices. There is no dispute among the parties that Benlida is not free to apply payments to invoices *if CTX-US has made a timely instruction to the contrary* (only one with respect to whether CTX-US timely did so). *See,*

6

*e.g.*, DE 188 at 14-15 (Benlida's opposition to CTX's motion for summary judgment, quoting the general rule from *Randall* and arguing the payment instruction must occur at the time of payment).

While Benlida has previously insisted that payment instructions must accompany a payment to have any legal effect legally, Benlida has neither contended with authority indicating payment instructions need only be "reasonably prompt," nor proffered evidence indicating that the short lag between receipt of the wire and the transmission of the payment detail did not meet that standard. *Ott v. Bray*, 154 So. 209, 210 (Fla. 1934) (stating that "under the circumstances … the [debtors] had the right to direct and insist upon the application according to their directions" because equity requires that so long as a creditor is not prejudiced, a payment "should be applied in such mode as will be least onerous to the debtor," particularly "where the request for a particular application has been made with *reasonable promptness* after payment"). Benlida also has not explained how it can maintain that it did not receive allocation instructions when it knew CTX-US would eventually be sending instructions through the payment detail for that period and consistently did so.

In light of the one-sided evidence regarding Benlida's improper use of FIFO to allocate payments to debts of CTX-US and CTX-HK alike, the Court should decide the issue as a matter of law against Benlida. Relatedly, the jury instructions should be modified to remove mention of *Randall v. Pettes*, and of any FIFO argument which necessarily depends on consideration of CTX-HK debts.

### III. Benlida may not advance a price-increase defense to set off or reduce CTX-US's claimed damages amount for non-payment

CTX-US is entitled to judgment as a matter of law on Benlida's defense seeking to reduce CTX's damages by setting off price increases claimed by Benlida. For the first time at trial, Benlida has asserted that CTX-US owes it some *$1.5 million* in unpaid price increases. Previously, Benlida had calculated a different price increase amount owed as part of its then-extant claims. Regardless, because Benlida has never disclosed *how* it computed any price increases it claims to be owed—much less specified the amounts supposedly owed by CTX-US versus CTX-HK—it cannot now introduce these numbers for the very first time for jury consideration. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii).

CTX-US previously moved to exclude evidence pertaining to any price-increase set-off from Benlida's affirmative case when Benlida's claims remained active, arguing that under Federal Rule 37(c)(1), Benlida should not be allowed to introduce evidence of any damages computation beyond that pled in the complaint. ECF No. 198 at 5-7. Benlida disclosed information about the price-increase amount sought in its affirmative case—around $2.11 million—less than a month before the close of discovery, and it never provided a computation of damages for that figure. *See id.* at 5; ECF No. 204 at 1 n.1 (summarizing how Benlida began with a $3.3 million price increase damages figure and how it eventually reduced that amount to a "corrected" figure of $2.11 million without "disclos[ing] any of those variables or the formula it used to derive that figure" and without providing records that purportedly supported the number). Although CTX-US noted that its *in limine* argument to exclude the price-increase amounts would become moot if the Court granted its motion for summary judgment, since Benlida had not raised an affirmative defense of set-off based on price increases, Benlida persisted in raising the price-increase issue, over CTX-US's pretrial objection (ECF No. 255), at trial in response to CTX-US' breach-of-contract claim.

For the same reasons that Benlida should have been precluded from asserting a price increase claim in its now-dismissed claim, it should be precluded from asserting a set-off affirmative defense based on alleged price increases. Benlida did not allege an affirmative defense for set-off for unpaid price increases in its Answer. *See* ECF No. 34, ¶¶ 23-24; ECF No. 43, ¶¶ 23-24 (discussing only CTX-US' allegations regarding the manner in which Benlida could validly seek price increases under the Manufacturing Agreement). Nor did it disclose its price-

increase calculation related to that defense at any point during discovery. The very first time CTX-US learned of the $1.5 million price-increase amount was at trial, during Tracy Huang's testimony. Benlida's disclosure failures were neither "substantially justified" nor "harmless," Fed. R. Civ. P. 37(c), since they prejudiced CTX-US's ability to meet the price-increase defense by testing Benlida's set-off amount during depositions or through its experts. Accordingly, Benlida should not be allowed to submit for the jury's consideration a price-increase set-off defense.

Additionally, at the time of the drafting of this motion, Benlida has not yet rested its defensive case, but CTX-US reserves the right to orally address Benlida's evidentiary deficiencies with respect to the price increase defense at the appropriate time.

## CONCLUSION

The Court should decide these three issues in CTX's favor prior to closing arguments, to avoid confusing the jury and to focus the factual issues before it.

Dated: October 24, 2023

## CERTIFICATE OF RULE 7.1(a)(3) CONFERENCE

Undersigned counsel for CTX has conferred with counsel for Benlida in a good faith effort to resolve the issues raised in the motion. The parties are unable to reach agreement.

Respectfully submitted,

*/s/ Christina H. Martinez*
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew P. Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131

Tel.: 305-358-2800

*Counsel for Circuitronix, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on October 24, 2023 as filed with the Clerk of the Court using CM/ECF.

By: /s/ *Christina H. Martinez*
Christina H. Martinez