**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-60125-Civ-Scola/Goodman**

--------------------------------------------------------x

JIANGMEN BENLIDA
PRINTED CIRCUIT CO., LTD.,

Plaintiff,

v.

CIRCUITRONIX, LLC,

Defendant.

--------------------------------------------------------x

**Plaintiff Jiangmen Benlida Circuit Co., Ltd.'s Reply to Circuitronix's**
**Opposition to Motion for Reconsideration of Order Granting Partial**
**Summary Judgment [DE 221]**

**MAZZOLA LINDSTROM LLP**
Jean-Claude Mazzola
Richard E. Lerner
*Counsel for Jiangmen Benlida Printed*
*Circuit Co., Ltd.*
1350 Avenue of the Americas, Second Floor
New York, New York 10019
646.216.8300
jeanclaude@mazzolalindstrom.com
richard@mazzolalindstrom.com

**Preliminary Statement**

Benlida's arguments are not a mere restatement of prior arguments. As previously shown, a motion for reconsideration is appropriate where the Court has misapprehended the facts, a party's position, or the controlling law, and Benlida sought reconsideration to correct a clear error and thereby prevent a manifest injustice. (Motion for reconsideration, DE 267, p.1). Benlida respectfully submits that it has met its burden of presenting facts and law of a strongly convincing nature to induce the court to reverse its prior decision. *Sussman v. Salem, Saxon & Nielsen. P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994). Benlida has shown that the original motion for summary judgment was actually made in bad faith, because it was known to CTX-US's principal Rishi Kukreja that CTX-US was being sued for the orders placed for it by CTX-HK, as he acknowledged at deposition. Additionally, for the reasons set forth in the original moving papers, and for the reasons set forth below, it is most respectfully submitted that the Court committed clear error, in misapprehending the evidence and the law, and that reconsideration, in the interests of justice is warranted, and upon reconsideration, the motion for summary judgment should be denied.

**Argument**

**Point I:   Benlida's Motion to Reconsider is Procedurally Proper and at No Point Did Benlida Waive or Forfeit its Statutory Right to Seek Reconsideration.**

Circuitronix argues that there was an implied waiver or forfeiture by Benlida of its right to seek reconsideration because the motion was filed after trial had commenced. However, the motion for reconsideration is appropriate under Federal Rule of Civil Procedure 59(e) and Benlida acted within its rights in pursuing such relief and filing within 28 days of the Court's order granting summary judgment.

Under Rule 59(e), a party may move to amend or alter a judgment within 28 days of the filing of the judgment. Despite CTX-US's efforts to argue that the commencement of trial mooted the relief Benlida seeks, there is nothing in the rule that says the time for making the motion can be shortened by the Court (nor did the Court issue any order abridging such time period). Moreover, any such decree would have contravened Rule 83.[1] The motion was thus properly brought within 28 days, and such time could not have been shortened or abrogated (and it was

---

[1] Rule 83. "Rules by District Courts; Judge's Directives: …(b) Procedure When There Is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§2072 and 2075, and the district's local rules. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement."

not), as such would have been inconsistent with Rule 59(e), and thereby violative of Rule 83(b), particularly since Benlida was not furnished with "actual notice" of any requirement that the motion be filed before the start of the trial.

Benlida's motion filed on October 23, 2023, falls within the statutory timeframe and appropriately requests that the Court reconsider its decision. Here, in contrast to cases such as *Pratt v. Gov't Emps. Ins. Co.,* 2023 U.S. Dist. LEXIS 185042 (MD Fla., Oct. 16, 2023), wherein there was an order directing the party that had sought reconsideration to file a stipulation by a certain date whereupon the court would reconsider its summary judgment determination, there was no order in the case at bar directing that Benlida do anything by a date certain, and thus the Federal Rules of Civil Procedure must be deemed to govern the timing and timeliness of the motion.

CTX-US attempts to imply a waiver of rights, when there is not a single indication that Benlida voluntarily abandoned the remedy it seeks and the right to move to such effect was undoubtedly reserved by the Federal Rules of Civil Procedure. There can be no finding of a waiver of a right to seek reconsideration in the absence of affirmative proof of an intent to waive such right, and even CTX-US's papers admit that waiver is the "intentional relinquishment" of a right. (CTX-US memorandum of law, DE 288 at 3). Thus, in *Lumbermens Mut. Cas. Co v. Dadeland Cove Section One Homeowners' Ass'n,* 2008 U.S. Dist. LEXIS 27476 (SD Fla. March 28, 2008)*,* despite defendant's argument that the plaintiff had waived its right to petition for reconsideration in light of the agreement reached between the parties, the court noted that there was reasonable factual and legal agreement that no such waiver occurred.

Likewise, in *Waters v Int'l Precious Metals Corp.,* 237 F.3d 1273 (11th Cir. 2001), the Court held that a party is not barred from appealing merely because it did not specifically reserve a right of appeal in a settlement agreement that addressed certain aspects of a class action. Here, there was no express waiver in the joint pre-trial stipulation of the right to seek reconsideration, nor can such waiver be considered implicit. The purpose of the joint pre-trial stipulation was to provide the framework for the trial of the case, after the court had granted summary judgment.

Manifestly, there would be no reason in such a stipulation to include a reservation of the right to move for reconsideration, as such right was preserved, so to speak, by Rule 59(e), and as including such reservation would not have been germane to the matters that were the subject of the stipulation. Nor could Belida have evaded the Court's deadlines with respect to participating in the pre-trial conference or submitting the joint pre-trial stipulation without consequence, and

2

thus neither action was "inconsistent" with moving for reconsideration of the summary judgment ruling, just as neither action would be inconsistent with taking an appeal from the Court's ruling.

There is no legal or logical basis to argue that the fact that Benlida did not expressly raise the potential of a motion for reconsideration could constitute an express and knowing waiver of its statutory right to seek reconsideration of the Court's summary judgment decision within 28 days thereof. Benlida manifestly had the right to pursue a motion for reconsideration under Rule 59(e) and did so, within the statutorily authorized timeframe.

The cases cited by CTX-US are irrelevant to the case at bar. Obviously, when one provides discovery that is the subject of a motion to compel or a motion for a protective order, one waives his right to argue that he should not be compelled to produce such discovery. The genie cannot be put back in the bottle. This is what occurred in *Brown v NCL (Bahamas), Ltd.*, 2015 U.S. Dist. LEXIS 148114 (SD Fla., Oct. 30, 2015). The case has nothing to do with whether there may be a waiver of a right to move for reconsideration of the order granting summary judgment as to Benlida's main claims after commencement of the trial of CTX-US's counterclaims.

CTX-US does not explain how conduct that gives rise to a clear waiver of rights – expressly or even implicitly – can be found in the case at bar, in the face of a clear statutory right to move for reconsideration within 28 days. There has been no express waiver of the right to so move. Nor has there been an implicit waiver in the requisite submission of the joint pre-trial stipulation, setting forth the issues to be tried, after the Court had issued the summary judgment determination, as there would be no reason to have included any kind of a reservation of rights in the requisite stipulation intended to define the issues to be tried after the Court had directed the parties to proceed to trial only on the CTX-US's counterclaims. CTX-US acknowledges that Benlida indicated that it would challenge the summary judgment on appeal, but this by no means constitutes a waiver of the statutory right to move for reconsideration.

**Point II:      The Court Erred in Misapplying Pleading Standards to the Summary Judgment Motion.**

CTX-US argues that the pleadings case law relied upon by Benlida is inapt because the TAC failed to allege the material facts necessary to sustain a cause of action for CTX-US to be liable for orders placed for it by CTX-HK, quoting the portion of the Court's order that the TAC failed to provide any "hint that Benlida's theory of relief rest[ed] on Circuitronix's liability through some form of vicarious liability for debts incurred by CTX-HK." (CTX-US memorandum of law, DE 288, p.5, quoting the Court's SJ order, pp. 7-9).

It is anomalous indeed that, had the Court been presented with a Rule 12(b)(6) motion to dismiss for failure to state a cause of action with respect to the CTX-HK invoices, the Court, no doubt, would have denied the motion (or at the very least given Benlida an opportunity to replead), as it is well established that, when considering a motion to dismiss the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that might be drawn from such allegations. *Jackson v. Okaloosa Cty*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). A reasonable inference to be drawn from the TAC – an inference that *was* drawn by CTX-US's principal himself – was that CTX-US was being sued for the orders placed for it by its Hong Kong affiliate, CTX-HK. Kukreja was on notice that Benlida was seeking to hold CTX-US responsible for such invoices – and thus the TAC satisfied notice pleading standards – as he testified: "*Q.* But you do know based upon this document that Benlida is suing you here in the US … for payment of these Hong Kong invoices? You know that, right? … [*A.*] I do." (Kukreja Dep., DE 267-1, p. 196).

To distinguish the *Baemmaert* case,[2] CTX-US argues that the word "agent" did appear in the complaint at issue therein. Nonetheless, the argument made by the defendant in that case was exactly the same as the argument made in the case at bar. In *Baemmaert*, the defendant argued:

> In this case, ***plaintiff's complaint does not allege a vicarious liability claim*** against Credit One. Even if plaintiff had pleaded such a claim, the record contains no evidence that Credit One manifested assent to iEnergizer, First Contact, or any other third party to place any calls to plaintiff's alleged telephone number on Credit One's behalf, or that Credit One had any ability to control the means and manner of making such calls. … Credit One is therefore entitled to summary judgment in its favor on plaintiff's TCPA claims. See, *e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 2018, 2013 WL 5346430, at \*3 (N.D. Ill. Sept. 23, 2013) (***dismissing TCPA claim based on the plaintiff's failure to allege sufficient facts to reasonably infer an agency relationship between the caller and the defendant***); *Spiegel v. Carlson*, No. 1:15-cv01809, 2016 WL 5477529 (N.D. Ill. Sept. 29, 2016) (***dismissing TCPA claim based on failure to allege vicarious liability***).

(3:16-cv-00540-jdp, DE 22, defendant's memorandum of law) (emphasis added).

The holding of the *Baemmaert* case, as set forth in Benlida's moving papers, is thus clearly applicable: "plaintiffs need not 'plead specific legal theories' in their complaints. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015).… So Baemmert's failure to plead an agency theory or vicarious liability in his complaint is no basis for summary judgment." *Baemmert*, 271 F. Supp. 3d at 1049. Notice pleading is all that was required, and CTX-US, through Kukreja, admitted

---

[2] *Baemmert v. Credit One Bank*, 271 F. Supp. 3d 1043, 1049 (W.D. Wis. 2017).

that it was aware that CTX-US was being sued for the orders placed for it by its Hong Kong affiliate, because the orders themselves were referenced, just as the agent's phone calls were in *Baemmert*. Kukreja drew the "reasonable inference" that CTX-US was being sued for the orders placed by CTX-HK, because those orders were specifically listed and referenced in the complaint, and thus the requirements of notice pleading were satisfied.

Moreover, it is respectfully submitted that the Court erred in applying a pleadings analysis to the motion for summary judgment, as Rule 12 provides:

> (b) *How to Present Defenses*. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: …
>
> (6) failure to state a claim upon which relief can be granted; …
>
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.
>
> ***
>
> (h) Waiving and Preserving Certain Defenses.
>
> (2) *When to Raise Others*. **Failure to state a claim upon which relief can be granted**, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:
>
> (A) in any pleading allowed or ordered under Rule 7(a);
>
> (B) by a motion under Rule 12(c); or
>
> (C) at trial.

CTX-US did move on June 15, 2021 to dismiss the TAC for failure to state a cause of action (DE 27), but it made no argument whatsoever that there was a failure to state a claim that CTX-US was responsible for the CTX-HK invoices; rather, it admitted that *it understood at the time that* "in the TAC, Benlida purports to assert claims against CTX based on over 170 invoices issued to CTX-HK, not CTX." (Motion to dismiss TAC, DE 27, p. 13). But two years later, notwithstanding that Kukreja well understood that CTX-US was being sued for the orders placed for its exclusive customers by CTX-HK, its counsel argues that the TAC no longer provided such notice. In denying the motion to dismiss on September 23, 2021, this Court stated: (DE 31) (emphasis added)

> ***Circuitronix has not carried its burden of showing that complete relief cannot be granted between the present parties [viz., Benlida and CTX-US]***. Instead, all it proffers in that regard is that "the entire controversy concerning the Manufacturing Agreement simply cannot be resolved completely among the existing parties, Benlida and Circuitronix,

without the other two parties to the Manufacturing Agreement, ROK2 and Circuitronix Hong Kong, present in this case." … Circuitronix's concerns that Circuitronix Hong Kong "would not necessarily be bound by the results of [this] case," has no impact on the analysis of whether the Court can fashion complete relief among the existing the parties. Benlida's request for relief is based on amounts due under hundreds of allegedly unpaid invoices. And ***Benlida has chosen, in this action, to seek relief against only Circuitronix***. Circuitronix fails to explain why a judgment against it, on those claims, would require Circuitronix Hong Kong's joinder to accord Benlida complete relief on the claims that are before the Court.

It is submitted that the Court understood, as CTX-US demonstrably did,[3] that Benlida was looking to CTX-US for complete relief, including for payment of all of the CTX-HK invoices. But, to return to the point of Rule 12(h)(2), as no motion had been made to dismiss for failure to state a cause of action with respect to the CTX-HK invoices for orders placed by CTX-HK for CTX-US's exclusive customers, CTX-US could thereafter only move to dismiss for failure to state a cause of action with respect to the claims arising out of the CTX-HK invoices by interposing a Rule 12(c) motion (for judgment on the pleadings – which it did not do), or it could have waited until trial, at which time it could have asserted, based upon the evidence presented, that Benlida had failed to state a cause of action with respect to the CTX-US invoices. Thus, to the extent that the Court considered Rule 12(b)(6) pleading standards, it erred, we most respectfully submit. It is also ironic that CTX-US argues that Benlida waived its statutory right to move for reconsideration, given that it is CTX-US that waived its right to argue that Benlida failed to state a cause of action for recovery as to the CTX-HK invoices, in light of Rules 12(h)(2) and 12(g).[4]

Here, as noted above, CTX-US *had* moved to dismiss the TAC pursuant to Rule 12(b)(6), and was thus foreclosed from again moving for such relief on grounds available to it at the time. Having failed to move to dismiss on the pleadings the claim that CTX-US was liable for the CTX-HK invoices, it was foreclosed from presenting any 12(b)(6) motion, and could only move for judgment on the pleadings or to dismiss the claim by motion "at trial" for failure to state a cause of action. Yet the Court

---

[3] In light of the fact that Kukreja acknowledged that, based upon his reading of the complaint, he understood that CTX-US was being sued for orders placed for it by CTX-HK, the case of *Viamontes v. Scottsdale Ins. Co.*, No. 20-22532-CIV, 2020 WL 5981680, at *2 (S.D. Fla. Oct. 8, 2020), is inapt, as the TAC herein sufficed to, and did in fact, give CTX-US notice that Benlida was seeking to recover from it for the CTX-HK invoices.

[4] Rule 12(g): "*Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

implicitly treated the motion as a hybrid motion for summary judgment and motion to dismiss, applying the motion-to-dismiss standard to the pleadings, and, actually, misapplying the standard, as the Court was well aware (pursuant to its earlier decision denying CTX-US's motion to dismiss) that Benlida was seeking complete relief from CTX-US, including upon the CTX-HK invoices for circuit boards ordered by CTX-HK for CTX-US's exclusive customers.

Moreover, in light of Kukreja's admission, it is odd indeed that CTX-US relies upon *Winther v. U.S. Steel Corp.*, 852 F. App'x 482 (11th Cir. 2021), wherein the Court stated: (internal cites and quotation marks omitted; cleaned up; emphasis added)

> All that is required under the federal pleading rules is 'a short and plain statement of the claim,' Fed. R. Civ. P. 8(a)(2), which gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The federal notice pleading standard only requires allegations as to every material point necessary to sustain a claim on any legal theory, ***even if it is not the precise theory advanced by the plaintiff.*** So the amended complaint need not have identified the 'precise theory' under which the Winthers intended to prevail on their common-law water claim.
> ***
> The wording of Count One combined with the amended complaint's supporting factual allegations were more than sufficient to give US steel fair notice of what the plaintiff's claim is and the grounds upon which it rests….

*Winther v. United States Steel Corp.*, 852 Fed. Appx. 482, 484-485.

As the "precise theory" of liability under which Benlida intended to prevail against CTX-US with respect to the CTX-HK orders placed with Benlida for CTX-US's exclusive customers need not have been pled, and as CTX-US was, as Kukreja admitted, aware that CTX-US was being sued for those invoices, it is respectfully submitted that this Court erred in finding that Benlida failed to state a claim against CTX-US with respect to the CTX-HK purchase orders placed for CTX-HK's exclusive customers, as invoiced by Benlida. CTX-US reiterates that the TAC made no allegation about CTX-HK having acted as an agent or alter ego of CTX-US, but since CTX-US admittedly was aware that Benlida intended to hold CTX-US liable for the CTX-HK invoices, 170 of which were specifically identified as the sources of the damages sought in the TAC, CTX-US was on fair notice of material allegations to support the claim – *viz.*, that the "BLDCCT-HK" denominated invoices were the responsibility of CTX-US, and that CTX-US owed Benlida money for failing to pay the invoices. The "precise theory" need not have been alleged – whether based upon an agency theory, an alter ego theory, or based upon the 2016 Letter Agreement, pursuant to which CTX-US agreed to continue making payments for CTX-HK's debts – as that is what discovery is for, to flesh out the issues.

**Point III:  Benlida Satisfied its Burden of Demonstrating a Triable Issue of Fact, and  the Cout Committed Clear Error, as its View of the Facts was Tainted by a Misapplication of the Pleadings Standards on Summary Judgment.**

CTX-US argues that the Court was not "excessively formalistic" with respect to relying on the lack of pincites to the particular paragraphs of the Roger Wu declaration, wherein he denied the correctness of the audit confirmation upon which CTX-US predicated its motion for summary judgment. In point of fact, however, CTX-US has not challenged the point raised in the original motion that in the *Jones* decision,[5] which this Court relied upon, wherein the Eleventh Circuit noted that the trial court had allowed the party that had failed to use pincites to correct the motion papers. Here, notwithstanding the Court's reliance on the *Jones* decision, it failed to afford Benlida the opportunity to provide pincites. Moreover, as CTX-US notes, the Court did in fact review the Wu declaration, apparently acknowledging that the pincite issue is dictum, not necessary to the Court's holding. ("Regardless, the Court went on to discuss the substance of the Wu declaration…." CTX-US memorandum in response, DE 288, p.11). Thus, we turn to the Wu declaration, with respect to which, CTX-US argues:

> [The Court] recognized that Mr. Wu's explanation for "how and why he made the mistake," *id.*, in confirming the audit form's numbers ***was based on his legal conclusion about the relationship between CTX-US and CTX-HK***. In Mr. Wu's view, CTX-US was essentially responsible for CTX-HK's purchases supposedly reflected in a separate CTX-HK audit form. ***But that legal conclusion and Mr. Wu's resulting interpretation of the numbers could not contradict the plain, standalone fact reflected in the CTX-US audit form, showing Benlida owed CTX-US over $75,000—no matter what Benlida might separately contend CTX-US owed on CTX-HK purchases.*** SJ Order at 3 n.3. Benlida's attack, essentially arguing that the Court "got it wrong" in evaluating the Wu declaration, is improper in a motion for reconsideration.…

CTX-US memorandum in respons, DE 288, pp. 11-12 (emphasis added).

Here, however, the Wu declaration was not proffered to present a legal argument as to the liability of CTX-US for the debts of CTX-HK. Rather, the factual bases for why CTX-US was liable for the CTX-HK invoices was made through the declaration of Tracy Huang. (DE 186). Huang backed up her statements with purchase orders, and emails from both CTX-US and CTX-HK adding customers to the CTX-US exclusive customer list, and other documents. It is her declaration that showed that CTX-US was responsible for the CTX-HK orders, thereby raising a triable issue of fact. Huang stated: (emphasis added)

---

[5] *Jones v. Unity Behavioral Health*, 2021 WL 5495578 (11th Cir. Nov. 23, 2021).

¶3.  Annexed hereto as exhibit "A" are collected emails, wherein defendant CTX-US and its affiliate Circuitronix (Hong Kong), Ltd. ("CTX-HK"), acting as agent for CTX-US, request that certain customers be added to the CTX-US "Exclusive Customer List."

¶4.  Indeed, for the most part, the emails requesting that particular customers be added to the list bore the name of the customer in the subject line, along with the words "Exclusive Customer List." (See, id.) They never requested that the customer be designated as a customer of CTX-HK. …

¶5.  Notably, in the sample emails attached hereto, CTX-HK (by its manager Akshay Koul) requested that North American companies be added to the CTX-US exclusive customer list, notwithstanding that he testified that CTX-HK did not deal with North American customers. (See Exhibit "A").

¶6.  ***Accordingly, it has always been understood by Benlida that orders placed by CTX-HK were placed for CTX-US customers, in accordance with CTX-US's "Exclusive Customer List," as such list was "exclusive" to CTX-US, not CTX-HK (unless CTX-HK and CTX-US are one and the same).***

¶8.  The customers on the [Exclusive Customer List] are based worldwide. Many are based in North America, many based in Europe and Asia, and some in South America. There was never a division as to whether certain of the exclusive customers would actually be customers of CTXHK.

¶9.  When CTX-US and CTX-HK would place orders, they would normally include in the purchase orders an "X" number, identifying the customer on the "Exclusive Customer List" for whom the goods were being purchased. Exemplar copies of these purchase orders, with the "x" numbers highlighted, are attached hereto as exhibit "B."

¶10. Demonstrating that CTX-HK and CTX-US serviced the same "exclusive" customers, exhibit "C" hereto shows that they each designate the same customers, by "X" code, on their respective purchase orders.

¶13. As CTX-HK did not have its own customers, and as CTX-US's customer list was indeed an "Exclusive Customer List," and exclusive to CTX-US, when orders were placed by CTX-HK, it was always understood by Benlida generally, and me specifically, that CTX-HK was placing the orders either as an agent for CTX-US or as a division of CTX-US.

¶14. ***On myriad occasions, CTX-US made clear that it would not countenance sales of products by Benlida to customers on the exclusive customer list, other than through CTX-US, thus manifesting to Benlida in general, and to me specifically, that it understood that purchase orders issued by CTX-HK were indeed made on behalf of CTX-US.***

¶15. It was always understood by Benlida generally, and by me specifically, that orders placed by CTX-HK were placed for CTX-US, as they were placed for customers on the CTX-US Exclusive Customer List.

¶23. In an email of February 16, 2022 (the "Info-Tek" email, attached in Exhibit "A"), Mr. Kukreja acknowledged that the Exclusive Customer List continued under the same terms after the parties entered into the 2016 Letter Agreement as before, and thus that CTX-HK was not to be treated as a party to it, corroborating what Benlida understood

– that, just as before the 2016 Letter Agreement CTX-HK functioned as an agent for CTX-US when CTX-HK placed orders, so too after the 2016 Letter Agreement, CTX-HK continued to place orders as CTX-US's agent.

The foregoing shows that it is the Tracy Huang declaration that was the vehicle through which Benlida demonstrated a triable issue of fact as to whether CTX-US was responsible for the orders placed by CTX-HK for CTX-US's exclusive customers. Yes, the Court erred when it stated that the Wu declaration was of no probative value because it was based upon a legal conclusion about the relationship between CTX-US and CTX-HK. The relationship between CTX-US and CTX-HK, as principal and agent, is a factual issue that must be tried. Wu's explanation as to how and why he mixed up the audit confirmations for CTX-US and CTX-HK had nothing to do with how much CTX-US owed on CTX-HK purchases, because the issue is not of CTX-US's liability for the debts of CTX-HK, but of CTX-US's own liability for orders placed for its exclusive customers by CTX-HK. It is for the jury, it is respectfully submitted, to decide whether Wu's explanation for how and why he made the mistake is credible. It is not a legal conclusion, but a factual one, and the interests of justice warrant reconsideration of the motion in its entirety, especially since the motion was, from the inception, predicated upon the false notion that CTX-US had no inkling from reading the complaint that Benlida was seeking to hold it liable for purchases made by CTX-HK for its exclusive customers. And upon reconsideration, it is respectfully submitted that the motion for summary judgment must be denied.

\*\*\*

WHEREFORE, plaintiff Jiangmen Benlida Printed Circuit Co., Ltd, respectfully requests that this Court reconsider its decision and order of September 25, and now deny defendant Circuitronix LLC's motion for summary judgment.

Dated:  November 13, 2023
New York, New York

*/s/ Richard E. Lerner*
*/s/ Jean-Claude-Mazzola*
Counsel for Benlida

**Service via ECF**