UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

    Counter-Defendant,

v.

CIRCUITRONIX LLC,

    Counter-Plaintiff,
_____/

**PLAINTIFF'S RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) AND, ALTERNATIVELY, UNOPPOSED MOTION FOR LEAVE TO AMEND THIS MEMORANDUM TO ADD TRANSCRIPT REFERENCES**

    Circuitronix, LLC ("CTX-US") hereby renews its motion for partial judgment as a matter of law under Federal Rule 50(b) with respect to its claim for $317,539.48 in premium payments. Because the evidence at trial indisputably demonstrated that CTX-US has been damaged as result of Jiangmen Benlida Printed Circuit Co., Ltd.'s ("Benlida's") contractual breaches in demanding these unauthorized premiums, the $317,539.48 figure should be added to the overall damages awarded in the jury's verdict and the judgment modified accordingly.

    To the extent that the Court is still not satisfied with CTX-US's description of the evidence, and insists upon more specific citations to and/or quotations from the trial testimony regarding the premium-payments issue, CTX-US respectfully requests that the Court grant it leave to amend this motion to add those citations and quotations once the transcript of the trial has been prepared by the court reporter.[1]

## BACKGROUND

    After the Court granted summary judgment dismissing Benlida's affirmative claims, the trial in this matter proceeded on CTX-US's sole counterclaim for breach of contract. CTX-US

---

[1] The Court reporter estimated that it would take 30 days to prepare the trial transcript, and that she would not begin preparing it until she received full payment. The parties agreed to split the cost of the preparation of the transcript. CTX-US paid its share, and as of this writing, Benlida had not yet paid its portion.

sought $10,246,387 for Benlida's breaches of the Manufacturing Agreement and Letter Agreement based on four distinct categories of damages: $4,760,847 in overpayments on invoices that Benlida declined to return, $2,343,001 in unpaid lead-time penalties, $2,825,000 in payments that Benlida diverted to ROK Printed Circuit Co. ("ROK") but failed to credit in its ledger with CTX-US, and $317,539 in improper premiums on the invoices.

After the parties rested their cases, CTX-US moved for partial judgment as a matter of law on three bases:

> I.   That Benlida breached the Manufacturing Agreement and Letter Agreement by refusing to return overpayments on invoices which had accumulated due to Benlida's improper payment demands not allowed under the parties' agreements;
>
> II.  That Benlida may not advance a "first in, first out" or "FIFO" defense for CTX-US's claimed damages for overpayment of invoices; and
>
> III. That Benlida may not advance a price-increase defense to set off or reduce CTX's claimed damages for overpayment of invoices.

ECF No. 269 at 1 ("DV Motion").

As relevant to this motion, in connection with the first ground, CTX-US argued that Benlida improperly demanded payment premiums in excess of the pricing terms permitted by the Manufacturing Agreement. *Id.* at 2-3. With transcripts of trial testimony unavailable, CTX-US generally cited the testimony of its principal, Rishi Kukreja, that Benlida demanded payment premiums in excess of contractual price terms and threatened to cancel orders or stop production if CTX-US did not accede to its demands. *Id.* at 3. CTX-US also referenced Mr. Kukreja's testimony regarding the premiums paid after 2019 and argued that "Benlida's evidence accords with CTX's regarding the fact of overpayment." *Id.* at 3-4 (emphasis removed). It additionally cited testimony from Benlida's key witness, Huang ("Tracy") Sulan, and its CFO, Wu ("Roger") Yukun, regarding CTX-US's overpayments on invoices Benlida identified in connection with its affirmative claims. *Id.* at 4. CTX-US argued that based on this evidence, judgment as a matter of law was appropriate as to liability and the amount of damages on its breach-of-contract claim to recover the improper premiums charges and one other claimed damages category. *Id.* at 4.

With respect to ground III in the motion, CTX-US argued that Benlida should not be permitted to raise what is essentially an affirmative defense for set off in an effort to reduce CTX-US's damages by $1.5 million in price increases Benlida claimed. CTX-US argued that Benlida had abandoned the ability to raise the price-increase issue by failing to raise it as an

affirmative defense in its pleadings and other submissions prior to trial. *See* DV Mot. 8-9; ECF No. 292 ("DV Reply") at 3-4. Additionally, CTX-US observed, Benlida should be foreclosed from using the price-increase setoff defense because Benlida did not disclose the amount of the hoped-for setoff—$1.5 million—until trial and never provided an explanation or evidentiary support for how it calculated that amount. DV Mot. at 8; DV Reply at 4-5.[2]

After hearing argument on CTX-US's Rule 50(a) motion, the Court deferred ruling and submitted the case to the jury. The jury returned a verdict for CTX-US, awarding $7,585,847 in damages. *See* ECF No. 278 (verdict form). That amount corresponds—to the dollar—to the damages CTX-US requested for overpayments on invoices that Benlida declined to return ($4,760,847) plus payments that Benlida diverted to ROK ($2,825,000). Mathematically, the jury's verdict made clear that it had declined to award CTX-US anything for the premium payments Benlida had improperly forced CTX-US to pay, in breach of the contract.

Once CTX-US's Rule 50(a) motion was fully briefed, the Court entered an order denying those portions of the motion that it deemed the verdict had not mooted, and separately entered final judgment in CTX-US's favor. ECF Nos. 293 ("DV Order"), 294 (Final Judgment).[3] The Court faulted CTX-US for painting its argument "with broad strokes" and "in mostly summary fashion," despite the unavailability of a trial transcript. DV Order at 5. As a result, and because CTX-US relied primarily on the testimony of its own principal, the Court concluded CTX-US had not met its burden of showing that "the evidence favoring the claimant is so one-sided as to

---

[2] After the Court's Order Granting Summary Judgment (ECF No. 221) disposed of Benlida's affirmative claims, which included money it claimed to be owed for a price increase, Benlida persisted in pressing the price-increase issue at trial as a defense, over CTX-US's pretrial objection (ECF No. 255). CTX-US had previously moved to exclude evidence pertaining to Benlida's affirmative claim for a price-increase amount of $2.11 million. *See* ECF No. 198 (Omnibus Motion) at 5-7; ECF No. 204 (Omnibus Reply) at 1 n.1.

[3] The Court determined that "the only aspect of Circuitronix's motion for judgment as a matter of law that was not mooted is Circuitronix's position that it should be awarded $317,539 in damages for improper premium charges, in addition to the verdict amount." DV Order at 4. To the extent any evidence regarding a price-increase amount purportedly owed to Benlida factored into the Court's decision to deny CTX-US's motion, CTX-US renews its motion for judgment as a matter of law on that ground in addition to its request to add the $317,539 premium amount to the judgment.

3

be of overwhelming effect." *Id.* at 4-5 (quoting *Handley v. Werner Enters. Inc.*, No. 23-10587, 2023 WL 6628921, at *3 (11th Cir. Oct. 11, 2023)) (internal quotation marks omitted).

CTX-US now timely renews its motion for judgment as a matter of law.

## STANDARD OF REVIEW

A court reviews a renewed motion for judgment as a matter of law pursuant to Rule 50(b) under "precisely the same" standard used for a motion pursuant to Rule 50(a). *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (citing 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 (2d ed.1995)). As with motions under Rule 50(a), the inquiry is whether the evidence is "legally sufficient ... to find for the party on that issue." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting Fed. R. Civ. P. 50(a)(1)) (internal quotation marks omitted). A court must determine whether "such sufficient conflicts exist in the evidence to necessitate submitting the matter to the jury or whether the evidence is so weighted in favor of one side that one party must prevail as a matter of law." *Id.* (quoting *Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 320 F.3d 1260, 1267-68 (11th Cir. 2003)) (internal quotation marks omitted).

In making its ruling, "the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *Id.* (quoting *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995)) (internal quotation marks omitted). Granting judgment as a matter of law under Rule 50(b) is appropriate—even when the movant bears the burden of proof on an issue—where "the facts and inferences point so strongly and overwhelmingly in favor of [that party] that reasonable jurors could not arrive at a contrary verdict." *LaRoche Indus., Inc. v. AIG Risk Mgmt., Inc.*, 959 F.2d 189, 191 (11th Cir. 1992) (citing *Iervolino v. Delta Airlines*, 796 F.2d 1408, 1418-19 (11th Cir. 1986)).

## ARGUMENT

**I.    CTX-US is entitled to judgment as a matter of law on its claim of damages for $317,539.48 in improperly assessed premium payments**

Although the Court previously determined that CTX-US had not carried its burden on review of the Rule 50(a) motion, the one-sided record evidence adduced at trial—by both parties—demonstrates that the judgment should be amended to add $317,539.48 in premium payments to CTX-US's damage award.

The Court should reconsider its previous conclusion that CTX-US neither "met th[e] demanding standard" for such Rule 50 motions brought by a claimant nor "even direct[ed] any

argument toward it" in its Rule 50(a) motion. DV Order at 5. Perhaps the Court was unaware that, at the time it issued its ruling, no trial transcript was available to the parties.[4] Even in the midst of trial and without the benefit of a trial transcript, CTX-US's pre-verdict motion met this standard, addressing the elements of its breach of contract claim as to each of four claimed categories of damages, including improper premium payments, and establishing the one-sided facts on the premium issue.

While the Court faulted CTX-US for "paint[ing] its argument with broad strokes" (*id.*), the lack of precise detail or specific citations to the trial testimony in the Rule 50(a) motion was a natural consequence of CTX-US's inability to cite to any trial transcript and reluctance to paraphrase trial testimony based on counsel's notes. At the time of the filing of this motion, the transcript has been ordered but still not yet prepared. Even without it, however, this motion draws upon counsel's contemporaneous notes of from trial, which expand upon and provide additional detail regarding the portions of evidence already raised in support of the Rule 50(a) motion, and should provide a sufficient basis for the Court to grant judgment as a matter of law in CTX-US's favor.

Specifically, CTX-US noted Mr. Kukreja's testimony that "Benlida demanded payment premium above the contractual price terms [of the Manufacturing Agreement] and threatened to cancel orders or stop production unless CTX[-US] complied with its demands." DV Mot. at 3. More than merely "present[ing] no evidence … to controvert" this testimony (*id.*), the testimony of Benlida's chief witness *coincided with and reinforced Mr. Kukreja's testimony* regarding the existence of the premium payments. During Tracy Huang's direct examination on October 20, 2023, she affirmatively *admitted* that Benlida had charged CTX-US premiums toward the end of 2019 because of the parties' ongoing dispute. She explained that, because Benlida's credit re-insurer's records reflected CTX-US's supposedly overdue payments, the credit re-insurer required that Benlida charge premium payments to CTX-US if the companies continued to do business together. She went on to describe how Benlida negotiated the percentage of the premiums with its re-insurer, testifying that the re-insurer had first requested a 10% premium and then had accepted Benlida's request to reduce the premium to 3% after two to three months.

---

[4] CTX-US's counsel had asked the court reporter before trial started whether she could produce daily rough transcripts and was informed that was not an option.

Ms. Huang's testimony regarding the approximate start date of the premium payments (end of 2019) and the percentage premiums Benlida exacted from CTX-US (10% then 3%) also matches the data in the "undisputed document" that CTX-US referenced in its motion (DV Mot. at 3), which was also discussed by Mr. Kukreja at trial. Specifically, this summary document contains the chart below, which shows CTX-US paid $317,539.48 in total premiums— $281,313.32 at a 10% overcharge in 2020, and $36,226.16 at a 3% overcharge in 2021:

| Summary of Premiums Paid by CTX | | | |
|---|---|---|---|
| Year | 10% Premium | 3% Premium | Total Premium |
| 2020 | $143,207.63 | - | $143,207.63 |
| 2021 | $138,105.69 | $36,226.16 | $174,331.85 |
| Total | $281,313.32 | $36,226.16 | $317,539.48 |

ECF No. 281-72 (Trial Exhibit D-X13). The Court previously dismissed reliance on this summary exhibit as "not enough" to grant judgment as a matter of law in CTX-US's favor. DV Order at 5. Viewed in the proper context of the testimony surrounding it (and with even greater detail once the trial transcript becomes available), the Court should appreciate that this exhibit serves as a clear snapshot of undisputed evidence of the amount of premium payments Benlida forced CTX-US to pay ($317,539), in plain violation of the terms of the parties' contract.

In short, the evidence at trial that CTX-US made these premium payments pursuant to Benlida's improper demand is "so one-sided as to be of overwhelming effect." *U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1250 (11th Cir. 1997); *see also Handley*, 2023 WL 6628921, at *3. While the premium issue did not dominate the trial, the evidence on the issue was not limited to the testimony of "Circuitronix's own principal," Mr. Kukreja, as the Court seemed to suggest (DV Order at 5); Ms. Huang also testified on the matter, and her testimony did not present "conflicting" evidence or allow for "[d]ifferent inferences." *Massey Yardley*, 117 F.3d at 1250 (discussing conflicting evidence in that case). Instead, she confirmed what Mr. Kukreja testified about the amount Benlida charged and the amount CTX-US paid for these premiums. Thus, even if Mr. Kukreja cannot be considered a "disinterested witness[]," "the jury would not be at liberty to disbelieve" his testimony when it was not simply

"uncontradicted and unimpeached" (DV Order at 5 (citations omitted)), but actually *bolstered* by the testimony of the opposing party's key witness.[5]

Judgment as a matter of law adding the $317,539.48 premium damages to the judgment is appropriate where, as here, "there is insufficient evidence for permitting any different finding." *Handley v. Werner Enters., Inc.*, 655 F. Supp. 3d 1348, 1363 (M.D. Ga. 2023) (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2535 (2d ed. 1995)), *aff'd,* 2023 WL 6628921.

## II. Alternatively, the Court should permit CTX-US to amend this motion once the trial transcript has been completed

To the extent that the Court remains unsatisfied that CTX-US has met its burden of referencing the trial evidence about the premium-payments issue with sufficient particularity, it

---

[5] Lest Benlida argue that CTX-US's supposed nonpayment of invoices in Benlida's complaint necessitated and legitimized its imposition of payment premiums at the request of its re-insurer, that argument is foreclosed by other trial evidence (including testimony offered by Benlida witnesses) and, ultimately, the jury's verdict. As discussed, the jury verdict of $7,585,847 corresponds, to the dollar, with the amount of damages sought for overpayments on invoices that Benlida declined to return ($4,760,847) and payments that Benlida diverted to ROK ($2,825,000).

Ample trial testimony supports the jury's implicit finding that CTX-US *did not* underpay and was therefore damaged in the sum of $4,760,847 based on its *overpayment* of invoices. Apart from corroborative testimony by CTX-US witnesses, including Mr. Kukreja, CTX-US's accounting expert, Barry Mukamal, Benlida's witnesses' testimony also support this point. During Ms. Huang's cross-examination, for instance, she conceded that CTX-US had paid all the invoices issued *to it* (not Circuitronix (Hong Kong) Ltd. ("CTX-HK")), and in fact had actually *overpaid* those invoices by sending Benlida *more than* the money owed. She also acknowledged that, with respect to sorting out discrepancies in invoice payments between the two companies, both CTX-US and Benlida had spent enormous amounts of time and resources on reconciling their accounts in 2019 and had *put to one side* issues related to lead-time penalties and price increases in an effort to come to an agreement. For his part, Benlida's CFO Roger Wu could not state during his own cross-examination whether—when comparing *only* CTX-US invoices and payments and setting aside CTX-HK invoices and payments—CTX-US was in an overpaid position and, if so, by how much. Finally, Benlida's accounting expert, Randall Paulikens, whose deposition testimony was read into evidence, affirmed that he "was not going to quibble with the $4.7 million [overpaid] figure that [CTX-US's accounting experts] came up with." Paulikens Depo. Tr. 142:21-143:4.

This testimony from Benlida's own witnesses corroborates Mr. Kukreja's testimony regarding overpayment amounts and culminated in a jury finding plainly awarding damages that included these overpayments. It prevents Benlida from credibly arguing that the premiums it assessed were proper and required by supposed CTX-US *under*payments.

should hold off ruling on the motion until CTX-US has had the opportunity to file an amended motion with (or bullet-point list with) citations to the trial transcript once it has been prepared by the court reporter. Benlida should of course also be permitted an opportunity to amend its response (or file a responsive bullet list) following CTX-US's supplemental submission.

The Court has discretion in determining whether to permit an amendment to a motion. *Berber v. Wells Fargo Bank, N.A.*, No. 16-24918-CIV, 2017 WL 11501752, at *1 (S.D. Fla. May 25, 2017) (Goodman, J.) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1194 (3d ed. 2004)). The Court's discretion, however, can be exercised "only *after* a motion for leave to file such an amendment has been filed." *Id.* (quoting *Factory Direct Tires, Inc. v. Cooper Tire & Rubber Co.*, No. 3:11CV255/RV/EMT, 2012 WL 2873232, at *2 (N.D. Fla. June 13, 2012), *report and rec. adopted,* 2012 WL 2873153 (N.D. Fla. July 12, 2012)) (internal quotation marks omitted). In determining whether to permit amendment to a motion, "the Court considers: (1) whether the adverse party will be prejudiced by the amendment; (2) whether the 'amendment is necessary to insure that the case is adjudicated fairly and justly;' and (3) whether the amendment will help resolve the litigation at an early date." *Id.* (quoting *Factory Direct Tires*, 2012 WL 2873232, at *1).

The equities here, and CTX-US's proper request here for leave, favor allowing CTX-US to amend its motion once the trial transcript is available. Benlida will not be prejudiced by an amendment as it has not filed a response to the Rule 50(b) motion and will itself have the benefit of a full record to mount its opposition in a supplemental filing.

Should the Court deem CTX-US's current motion to be insufficiently specific, the amendment will also "insure the case is adjudicated fairly and justly." *Id.* After all, the basis for the Court's order denying CTX-US's Rule 50(a) motion was its determination that CTX-US had argued for relief and cited to evidence "in mostly summary fashion." DV Order at 5. The Court may have reached that conclusion without knowledge that no daily transcripts were available to the parties at the time of that motion. Allowing supplementation—with pinpoint citations to the record, more fulsome discussion of trial testimony, and the attachment of the relevant transcript pages as exhibits—will afford CTX-US the opportunity to ameliorate that perceived deficiency.

Finally, while the amendment will necessarily involve some delay, it will not affect other deadlines in the litigation given CTX-US seeks to amend a post-trial motion that is circumscribed to a single, narrow issue. The timing of CTX-US's request concurrent with this

Rule 50(b) motion and before any ruling also ensures that the parties and the Court will not need to engage in another round of briefing or review of the issue. *See In re Repetitive Stress Injury Litig.*, 165 F.R.D. 367, 371 (E.D.N.Y. 1996) (noting that a party is generally expected to submit, at the time a motion is filed, all materials it wishes the court to consider, but that "[o]ccasionally, a party may request permission to submit materials after a motion has been fully briefed and submitted, but prior to the Court's decision on such motion," in certain circumstances, as where materials or information were unavailable when the original motion was filed despite the parties' due diligence).

Accordingly, CTX-US requests the Court to allow it to submit an amended memorandum containing transcript citations and excerpts within ten (10) days of its receipt of the transcript, and to allow Benlida to file a responsive set of citations and excerpts within ten (10) days thereafter.

## CONCLUSION

For the foregoing reasons, the Court should grant CTX-US's renewed motion for judgment as a matter of law under Rule 50(b), and, alternatively, grant CTX-US's request to supplement this motion with citations and references to the trial testimony once the trial transcript becomes available.

Dated: December 28, 2023

## CERTIFICATE OF RULE 7.1(a)(3) CONFERENCE

Undersigned counsel for CTX-US has conferred with counsel for Benlida in a good faith effort to resolve the issues raised in the motion. Counsel for Benlida does not object to CTX-US making the motion, or to CTX-US's alternate request for relief to supplement the motion when the trial transcript is ready. Benlida's counsel does object, however, to the ultimate relief CTX-US seeks: increasing the judgment by $317,539 in premium payments. Accordingly, CTX-US's counsel has been unable to resolve that issue raised in the motion.

Additionally, during counsels' meet and confer efforts, Benlida indicated that, should CTX-US ultimately lose on this motion, Benlida objects to CTX-US seeking to add the time spent drafting the motion into its claim for attorney's fees.

9

Respectfully submitted,

*/s/ Christina H. Martinez*
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew P. Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800

*Counsel for Circuitronix, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on December 28, 2023 as filed with the Clerk of the Court using CM/ECF.

By: */s/ Christina H. Martinez*
      Christina H. Martinez