**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-60125-CIV-SCOLA/GOODMAN**

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

      Plaintiff/Counter-Defendant,

v.

CIRCUITRONIX LLC,

      Defendant/Counter-Plaintiff.

_____/

**CIRCUITRONIX, LLC'S *UNOPPOSED* MOTION**
**FOR ATTORNEYS' FEES AND COSTS**

Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew P. Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800

*Counsel for Circuitronix, LLC*

Circuitronix, LLC ("CTX"), as the prevailing party in this case, hereby files this motion to recover its attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d) and S.D. Fla. Local R. 7.3. CTX succeeded in defeating all of the claims that Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida") asserted against it by obtaining a summary judgment in its favor on September 25, 2023, and then succeeded at trial on its counterclaims, with the jury finding that Benlida breached the parties' contract and awarding $7,585,847 to on October 24, 2023. Because the parties' contract entitles the prevailing party to reimbursement of its fees and costs from the losing party, CTX is entitled to recoup the sums detailed in this motion from Benlida.

With one small exception, Benlida does ***not*** oppose the fees and costs sought in this motion.[1]

## **BACKGROUND**

This section outlines the major components of this litigation, as background to the fees and costs for which CTX seeks recompense, and summarizes the fees and costs expended.

### A. **Brief Recap of the Procedural History of This Litigation**

#### 1. **Phase 1: Complaint through Mediation**

Benlida filed suit against CTX on January 19, 2021. ECF No. 1. It asserted claims for breach of contract and account stated. The Court promptly required the Plaintiffs to file a first and then second amended complaint. Chauncey Cole, IV appeared in the case on behalf of CTX on February 12, 2021. ECF No. 12. CTX moved to dismiss the Second Amended Complaint on April 12, 2021, arguing that Benlida had failed to exhaust the mandatory alternative dispute-resolution procedures in the contract and that Benlida's failure to join indispensable parties, and ROK Printed Circuit Co., Ltd. ("ROK") and Circuitronix (Hong Kong), Ltd. ("CTX-HK"). *See* ECF No. 14. In response, Benlida sought and obtained leave to add ROK as a plaintiff. ECF Nos. 24, 25. Benlida and ROK then filed a Third Amended Complaint on June 1, 2021. ECF No. 26.

CTX then moved to dismiss the operative complaint, arguing that ROK had failed to comply the mandatory alternative dispute-resolution procedures in the contract, that as to claims by ROK, the complaint was a shotgun pleading, and that an indispensable party, CTX-HK, had

---

[1] As explained in CTX's counsel's Rule 7.3 certification at the conclusion of this motion, Benlida does not oppose the fees and costs sought in this motion with the exception of the amount sought for computerized legal research fees.

not been joined.  *See* ECF No. 27.  After a full round of briefing (ECF Nos. 28-30), on September 22, 2021, the Court granted the motion to dismiss in part, reasoning that ROK had failed to comply with mandatory pre-suit procedures, which also mooted the shotgun-pleading question.  ECF No. 31 at 1-3.  The Court denied the aspect of the motion regarding the indispensability of CTX-HK as a party because it could not identify any place in Benlida's Third Amended Complaint that mentioned any contract which would implicate CTX-HK's interests.  *Id*. at 4-5.  When CTX filed its answer on October 15, 2021, it also asserted counterclaims against Benlida for breach of contract and breach of fiduciary duty.  ECF No. 34.  (The parties' contract, as amended, contained a fiduciary-duties provision.  ECF No. 281-3, ¶ 3.)

CTX then sought leave to file a third-party complaint against China Export & Credit Insurance Corporation (a/k/a Sinosure) for tortious interference with CTX's contract rights.  ECF No. 37.  Sinosure was Benlida's trade-credit insurer, and Benlida had sought to justify increased premium charges to CTX based on requirements imposed on it by Sinosure.  Benlida opposed that motion.  ECF No. 39.  On November 3, 2021, the Court denied CTX leave to interplead Sinosure.  ECF No. 42.

Under the original scheduling order, discovery needed to be completed by May 24, 2022.  With an eye towards the need to ramp up the discovery effort, after the holidays, CTX bolstered its legal team by retaining Podhurst Orseck, P.A. to co-counsel with Mr. Cole.  Several Podhurst lawyers filed notices of appearance in the case at the end of January 2022.  ECF Nos. 50-52.  The parties hammered out a confidentiality agreement to facilitate discovery.  ECF No. 60.

Meanwhile, on February 15, 2022, Benlida filed a motion for summary judgment, seeking a ruling as a matter of law on CTX's responsibility for the debts of CTX-HK.  ECF No. 53.  CTX filed responsive papers.  ECF Nos. 55-57.  After obtaining several extensions of time to file its reply in support of its summary-judgment motion (ECF Nos. 58, 59, 61, 62), Benlida elected to withdraw its motion.  ECF No. 63.

During the Spring of 2022, the parties' efforts to take discovery within the discovery deadline intensified.  At the parties' joint request, the Court extended the discovery deadline to June 24, 2022.  ECF No. 70 at 3.

In order to obtain evidence from Sinosure for use in its defense against Benlida's claims, CTX moved the Court for issuance of letters rogatory to Sinosure under the Hague Convention.

ECF No. 64.  The parties fully briefed that motion, which the Court referred to Magistrate Judge Snow.  ECF Nos. 65, 67, 72.

CTX was forced to file a motion to compel production of documents.  ECF No. 73.  With respect to depositions, although CTX made four witnesses available for their depositions between May 24-27, 2022,[2] Benlida refused to produce its witnesses in person, owing to onerous pandemic-related travel restrictions still in place in China.  Because remote depositions were not lawful in China, CTX had to file a motion to compel the attendance of Benlida's witnesses.  ECF No. 66.  That motion was fully briefed (ECF Nos. 67, 69, 71), and CTX prepared for an expedited hearing on the motion before Magistrate Judge Strauss.  *See* ECF Nos. 74-79.  That issue was pretermitted by the fact that the parties mediated the case on June 1, the day before the hearing, at which an agreement in principle had been reached to settle the case.  ECF No. 80.  On June 2, the Court stayed the case and administratively closed it to allow the parties to paper their settlement and dismiss the case.  Instead, a prolonged hiatus arose, discussed below.

### 2.  Phase 2: Settlement and collateral litigation over CTX's withdrawal therefrom

Between June 2, 2022 and April 5, 2023—a period of eleven months—the main litigation was paused and interrupted by events related to the parties' settlement negotiations, entry into a settlement agreement, and then litigation over CTX's exercise of its right to withdraw from the settlement.  Because the parties agreed in principle to resolve this litigation through settlement payments tied into a revised manufacturing agreement, which required protracted negotiation over numerous details about the terms of the parties' business going forward, the Court had to extend the stay of the litigation repeatedly, at the parties' requests, between July 8 and late November 2022.  *See* ECF Nos. 86-103.

While the parties finally reached a settlement agreement on or about November 7, 2022, CTX exercised its right thereunder to review Benlida's financial data to assess the risk involved in going forward under the Revised Manufacturing Agreement.  *See* ECF No. 112 at 5, 7 (CTX's response in opposition to Benlida's motion to enforce the settlement agreement and reopen the case).  Benlida contested CTX's exercise of its right to withdraw from the settlement agreement, which prompted collateral litigation before Magistrate Judge Goodman between late November

---

[2] They were Nicole Donaldson (May 24, 2022), Lina Ochoa (May 25), Sourabh Sharma (May 26), and Akshay Koul (May 27).

2022 until April 5, 2023, when this Court adopted the report and recommendation.  *See* ECF Nos. 104-151.

Because the parties' Settlement Agreement contained its own fee-and-cost-shifting provision applicable to any dispute related to or arising from the Settlement Agreement, on April 7, 2023, CTX send Benlida a draft motion for attorney's fees and costs incurred solely in connection with Benlida's opposition to CTX's exercise of its right to withdraw from the settlement.  That draft motion sought fees for work within the scope of the fee-shifting provision of the Settlement Agreement between November 22, 2022 and March 2023.  Benlida and CTX reached a confidential settlement agreement in July 2023 to resolve CTX's fee claim related to this phase of the case.[3]  Consequently, by agreement of the parties and consistent with that prior settlement agreement, the present motion includes a request that $50,000 in fees and costs related to the motion to enforce be added to the fees and costs awarded in this motion.  Aside from that add-on, the present motion's breakdown of fees and costs by attorney and subject matter excludes fees and costs that were the subject of that already-compromised fee claim relating to the aborted settlement agreement.

### 3.  Phase 3: Resumption of the main litigation

Following the Court's reopening of the case on April 5, 2023, the Court set a compressed pre-trial schedule.  While the parties jointly sought a six-month period to resume and complete fact discovery, the Court required that it be done by June 8, 2023.  *See* ECF Nos. 150, 152, 153.

What followed was an intense period of discovery activity, during which CTX completed the production of millions of pages of electronic data, took the in-person depositions of five Benlida fact witnesses during the last two weeks of May 2023,[4] defended the deposition of CTX's remaining fact witness, CEO, Rishi Kukreja, on June 1, 2023, produced expert reports on June 8, 2023, and filed a motion for summary judgment on June 9, 2022 (ECF No. 176).  Prior to the close of discovery, CTX also litigated multiple discovery issues, one of which required a

---

[3] A part of that agreement requires the final judgment to be amended to add $50,000 to the amount Benlida owes CTX.

[4] CTX deposed Huang "Douglas" Hanchao on May 23, 2023, Wu "Roger" Yukun on May 24, Chen Zhanjiao on May 25, Huang "Tracy" Sulan on May 26, and Huang Xiangjian on May 31. Brief supplemental depositions of Tracy Huang and Roger Wu were conducted remotely on July 12, 2023.

hearing before Magistrate Judge Goodman.  *See* ECF Nos. 165-175, 179-180.  The motion for summary judgment was fully briefed.  *See* ECF Nos. 177, 178, 181-193.

CTX deposed Benlida's expert witness, Randall Paulikens, in person in New York City on July 20, 2023, and defended the depositions in Miami of its two damages experts, Mark Parisi (July 31) and Barry Mukamal (on August 1).[5]

After the close of expert discovery, CTX shifted its attention to pretrial motion practice, filing a motion to exclude the testimony of Benlida's expert, Randall Paulikens, and an omnibus motion *in limine* to limit argument or the introduction of evidence on eight distinct topics deemed inadmissible, irrelevant, prejudicial, or otherwise improper.  *See* ECF Nos. 197, 198.  It also defended Benlida's motion *in limine* to preclude CTX's expert on Chinese law and related testimony and also preclude testimony regarding Benlida's trade-credit insurance.  ECF No. 196.  Those motions were fully briefed.  *See* ECF Nos. 201-205, 212.  Concurrent with the work completing briefing on its pretrial motions and opposition, CTX had also begun tackling other pretrial preparation.  On the same day it filed the motion-*in-limine* replies, it filed deposition designations pursuant to the Court's scheduling order.  ECF No. 206.  It then reviewed and filed objections to Benlida's deposition cross-designations (ECF No. 218), filed the parties' joint pretrial stipulation, including a joint exhibit list and the witness lists (ECF No. 216), and filed its own *complete* trial exhibit list, consisting of approximately 350 additional exhibits beyond the parties' joint list of 168 exhibits, ECF No. 220.

On September 25, 2023, the Court entered its order granting CTX's motion for summary judgment.  ECF No. 221.  Because it held that Benlida's operative complaint did not give notice that Benlida sought to make CTX liable for debts incurred by CTX-HK, the Court granted summary judgment as to invoices identified in the complaint which had been issued to CTX-HK.  *Id.* at 7-9.  Because the complaint also did not provide notice that Benlida was applying CTX payments to debts incurred by CTX-HK or before the time period identified in the complaint, the Court granted summary judgment as to the remainder of the invoices Benlida had identified as supposedly unpaid.  *Id.* at 10-12

---

[5] On July 19, 2023, Chauncey Cole withdrew from representation in this case, due to his competing workload, and to facilitate a more cost-effective preparation for trial by a single law firm.  *See* ECF No. 194; Declaration of Chauncey Cole ("Cole Declaration") (Exhibit 1 hereto), ¶ 12.

Because the order "dispose[d] of Benlida's claims against Circuitronix" and "only Circuitronix's counterclaims against Benlida remain[ed] for resolution at trial," the Court directed the parties to file an amended stipulation, exhibit list, and witness lists consistent with the "narrowed ... scope of the upcoming trial." *Id.* at 13.  It also instructed the parties to submit a joint report identifying those aspects of the pending motions *in limine* that had been rendered moot by its order.  *Id.*  By separate order, the Court instructed CTX to file revised deposition designations.  ECF No. 222.  In compliance with the Court's most recent order, and with the rest of its pretrial obligations, over the next week, CTX filed the parties' jury instructions, a joint report identifying which portions of the motions *in limine* had been obviated, updated exhibit and witness lists, an amended joint pre-trial stipulation, a notice of filing updated deposition designations, and objections to Benlida's amended exhibit list.  *See* ECF Nos. 223-227, 232.

At calendar call on October 3, the parties addressed logistical issues including their estimated duration of the trial.  Because Benlida had insisted that few if any portions of CTX's motions *in limine* had been obviated by the summary-judgment order—including those related to CTX-HK or the "entire print-run of invoices," the Court held argument on those motions at the calendar call.  ECF No. 235.  It later entered orders consistent with its rulings at the hearing, granting in part and denying in part CTX's omnibus motions, CTX's motion to strike, and Benlida's motion *in limine*.  ECF No. 236-237.

The Court's rulings prompted CTX to complete another round of revisions to the deposition designations, jury instructions, and exhibit and witness lists.  ECF Nos. 238-239, 243, 246.  CTX also submitted a brief memorandum of law in response to the Court's order related to Benlida's deposition designations, directing the parties to explain the relevance of a CTX witness's testimony in light of the Court's pretrial rulings.  ECF Nos. 250, 252.  Based on Benlida's indications that it intended to pursue impermissible arguments or unpled affirmative defenses at trial, CTX filed two additional motions on the eve of trial to preclude Benlida from (1) introducing evidence regarding CTX-HK, and (2) relying on unpled affirmative defenses.  ECF Nos. 254-255.  On the first day of trial, before jury selection, the Court granted the first motion by the parties' agreement, and granted in part and denied in part the second.  ECF No. 256.

Trial began on October 16, 2023 and lasted six full days.  On the first day, after the jury was impaneled, the parties made their opening arguments and CTX began its case-in-chief,

beginning with Rishi Kukreja's testimony.  ECF No. 257.  Over the next three days, CTX completed Mr. Kukreja's examination and called Lina Ochoa, Sourabh Sharma, and its experts, Barry Mukamal and Mark Parisi, to the witness stand.  ECF Nos. 259, 263-264.  It also played videos of deposition designations for Douglas Hanchao and Huang Xiangjiang and, after Benlida declined to call its expert, Randall Paulikens, read into evidence the designations of his deposition.

On the fifth day of trial, Benlida began its defensive case, and CTX cross-examined Roger Wu and Tracy Huang.  ECF No. 265.  During Mr. Wu's examination, CTX's AV technician hired for trial inadvertently published to the jury an unredacted exhibit containing highly prejudicial financial information the Court had previously excluded at CTX's behest.  As a result, in the midst of trial, CTX filed a motion seeking to preclude Benlida's counsel from referencing or alluding to the unredacted exhibit and to allow CTX to substitute the unredacted exhibit with the redacted version.  ECF No. 266.  That motion was granted in part and denied in part.  ECF No. 268.

On the last day of trial, after both parties rested their cases, CTX moved for partial judgment as a matter of law.  ECF No. 269.  The Court deferred ruling on the motion and, after the parties made their closing remarks and the Court read its instructions, the Court submitted the case to the jury.  ECF No. 270.  The jury returned a verdict of $7,585,847 for CTX.  ECF No. 273.

After trial, CTX completed briefing on its motion for judgment as a matter of law (ECF No. 292) and filed a response to Benlida's motion for reconsideration of the Court's summary-judgment ruling, ECF No. 288.  It also filed its trial exhibits in accordance with the Court's orders.  ECF No. 281.  The Court denied both parties' motions and entered final judgment in favor of CTX on December 1, 2023.  ECF Nos. 293-294.[6]

CTX timely served its motion for attorney's fees on Benlida and timely filed the motion, in accordance with the Local and Federal Rules.

### B.  The Contractual Fee and Cost Provision

---

[6] CTX's counsel has performed additional work in connection with this litigation after November 2023, including work on other motions.  *See, e.g.*, ECF No. 297 (renewed motion for partial judgment as a matter of law under Rule 50(b)).  Because that work occurred after the cut-off date for service of the draft of this motion on Benlida, however, it has not been included in this motion and will of necessity be the subject of a supplemental motion for fees and costs.

The parties' contract, the Standard Manufacturing and Representation Agreement (ECF No. 15-1), contains the fee-shifting provision upon which this motion is predicated. Section 13.5 of the contract provides that "[i]n any action to enforce this Agreement, the prevailing party shall be awarded all court costs and reasonable attorney fees incurred."

**C. The Attorney's Fees and Costs CTX Has Incurred to Date in This Case**

The present motion seeks fees through November 2023 and costs through December 2023 incurred by CTX from the date Benlida filed this suit, as well as $50,000 in fees and costs from prior to this time span that the parties agree should be added to the amended judgment which includes attorney's fees and costs. As set forth in the declarations of Stephen Rosenthal, Chauncey Cole, and Rishi Kukreja, CTX has incurred a total of $1,860,472.50 in attorney's fees and $668,818.27 in costs during the time period covered by this motion, for a total amount of **$2,529,290.77**. *See* Exhibit 1, Declaration of Chauncey Cole ("Cole Declaration") at ¶ 19; Exhibit 2, Declaration of Stephen F. Rosenthal ("Rosenthal Declaration") at ¶ 22; Declaration of Rishi Kukreja ("Kukreja Declaration") at ¶ 6. By agreement of the parties and consistent with a prior settlement of an interim draft fee and cost motion related to a segment of this litigation between November 22, 2022 and March 2023, the present motion additionally includes a request for $50,000 in fees. Rosenthal Declaration at ¶ 20. Thus, the total amount of fees and costs sought in this motion is **$2,579,290.77**.

Fees are sought for each of the following timekeepers:

**1. BREAKDOWN BY ATTORNEY**

   a. <u>Chauncey Cole, Esq.</u>

Mr. Cole served as lead counsel in this matter from its inception through the collateral litigation over CTX's withdrawal from the settlement agreement. Mr. Cole is a commercial litigator and trial lawyer who has practiced law for over 10 years. Mr. Cole worked on this matter as the managing partner of Chauncey Cole PA. His professional biography is attached as **Exhibit A** to his Declaration (Exhibit 1 to this motion). After accounting for the settlement agreement related to the motion to enforce, Mr. Cole reasonably expended 430.2 hours on this matter, at an hourly rate of $400, for a total fee of $171,480. *See* Cole Declaration at ¶ 19. A full description of the tasks performed by Mr. Cole is included in the invoices of Chauncey Cole PA.

b.  <u>Stephen Rosenthal, Esq.</u>

Mr. Rosenthal is both a trial and appellate lawyer, and is a partner at Podhurst Orseck, P.A.  Mr. Rosenthal is an experienced trial attorney who has practiced law for 27 years.  He served as co-lead counsel with Mr. Cole, and after the stay was lifted in the case after the aborted settlement, took over as lead counsel.  He served as lead trial counsel during the trial.  His professional biography is attached as **Exhibit B** to his Declaration (Exhibit 2 to this motion).  Mr. Rosenthal reasonably expended 929.6 hours on this matter, at an hourly rates of $825, for a total fee of $766,920.  A full description of the tasks performed by Mr. Rosenthal is included in the invoices of Podhurst Orseck PA, which are attached to the Rosenthal Declaration as **Exhibit A**.

c.  <u>Christina H. Martinez, Esq.</u>

Ms. Martinez is an associate at Podhurst Orseck, PA.  She has practiced law for over eight years.  Ms. Martinez assisted Mr. Rosenthal with many aspects of the litigation and was primarily responsible for managing the complex, voluminous electronic discovery.  She also wrote and prepared motions, put on several witnesses at trial, and argued several motions.  Her professional biography is attached as **Exhibit C** to the Rosenthal Declaration.  Ms. Martinez reasonably expended 826.7 hours on this matter, at an hourly rate of $550, for a total fee of $454,685.  A full description of the tasks she performed is included in the invoices of Podhurst Orseck PA, which are attached to the Rosenthal Declaration as **Exhibit A**.

d.  <u>Matthew Weinshall, Esq.</u>

Mr. Weinshall is a partner at Podhurst Orseck, PA.  He has practiced law for 13 years.  His professional biography is attached as **Exhibit D** to the Rosenthal Declaration.  Mr. Weinshall primarily got involved in working with CTX's damages experts and joined the trial team as Mr. Cole had to cycle off the case due to other obligations.  Mr. Weinshall reasonably expended 262 hours on this matter, at an hourly rate of $675, for a total fee of $176,850.  A full description of the tasks he performed is included in the invoices of Podhurst Orseck PA, which are attached to the Rosenthal Declaration as **Exhibit A**.

e.  <u>Lisa Lauck, Esq.</u>

Ms. Lauk was a staff attorney at Podhurst Orseck, PA from the beginning of Podhurst Orseck's involvement in this matter until her departure from the firm in June 2022.  She has practiced law for over 20 years.  Her professional biography is attached as **Exhibit E** to the

Rosenthal Declaration.  Ms. Lauck's work on the matter took place entirely before the stay of the case in June 2022, and consisted largely of preliminary legal research and review of the court docket, assistance with discovery, and deposition preparation.  Ms. Lauck reasonably expended 69.9 hours on this matter, at an hourly rate of $545, for a total fee of $38,095.50.  A full description of the tasks she performed is included in the invoices of Podhurst Orseck PA, which are attached to the Rosenthal Declaration as **Exhibit A**.

f.   <u>Ailyn Popowski</u>

Ms. Popowski is an attorney licensed to practice in Florida since 2004.  Ms. Popowski has nearly 20 years of experience working alongside attorneys during all phases of complex litigation.  She conducted limited work on the matter during the pretrial phase to assist the team with its trial exhibit list.  Ms. Popowski reasonably expended 13 hours on this matter, at an hourly rate of $445, adjusted to $295, for a total fee of $3,835.  A full description of the tasks she performed is included in the invoices of Podhurst Orseck, P.A., which are attached to the Rosenthal Declaration as **Exhibit A**.

**2.  BREAKDOWN BY LAW CLERK / PARALEGAL / LEGAL ASSISTANT**

a.   <u>Jessica Miller</u>

Ms. Miller is a Florida Registered Paralegal at Podhurst Orseck, P.A.  Ms. Miller has eight years of experience working alongside attorneys during all phases of complex litigation, from the initiation of the case, to the discovery period, through trial, post-trial and appeals.  Ms. Miller reasonably expended 641.8 hours on this matter, at an hourly rate of $295, for a total fee of $189,331.  A full description of the tasks she performed is included in the invoices of Podhurst Orseck, P.A., which are attached to the Rosenthal Declaration as **Exhibit A**.

b.   <u>Sandra Rodriguez</u>

Ms. Rodriguez is a legal assistant with over 20 years of experience working with Mr. Rosenthal and assisting on all aspects of trial and appellate matters.  She is also qualified as a paralegal and devoted substantial amounts of time to providing assistance in the case during and immediately before trial.  Ms. Rodriguez reasonably expended 35 hours on this matter, at an hourly rate of $295, for a total fee of $10,325.  A full description of the tasks she performed is included in the invoices of Podhurst Orseck, P.A., which are attached to the Rosenthal Declaration as **Exhibit A**.

c. Ryan DelGaudio

Mr. DelGaudio was a law clerk at Podhurst Orseck PA. during the summer of 2023.  He reasonably expended 129.4 hours on this matter, at a rate of $315, for a total fee of $27,704.25, after discounts were applied as a courtesy to CTX.  A full description of the tasks performed by Mr. DelGaudio is included in the invoices of Podhurst Orseck PA, which are attached to the Rosenthal Declaration as **Exhibit A**.

d. Alperen Buyukberber

Mr. Buyukberber was a law clerk at Podhurst Orseck PA. during the summer of 2023. He reasonably expended 134.9 hours on this matter, at an hourly rate of $315 for a total fee of $21,246.75, after discounts were applied as a courtesy to CTX.  A full description of the tasks performed by Mr. Buyukberber is included in the invoices of Podhurst Orseck PA, which are attached to the Rosenthal Declaration as **Exhibit A**.

## 3. FEE AND COST BREAKDOWN BY CATEGORY / PHASE OF LITIGATION

The fees and costs are further broken down, by category of work or phase of the litigation, as follows:

| Category of work | Hours | Amount |
|---|---|---|
| Pleadings | 42.3 | $16,920 |
| Work Related to Early Mediation and Settlement Efforts | 41.9 | $16,760.00 |
| Preliminary Background Work & General Strategy | 81.4 | $40,028.00 |
| CTX's Motion to Dismiss | 19.2 | $7,680.00 |
| Work Conducted During Stay Period[7] | 100.1 | $54,575.00 |
| Discovery | 465.8 | $233,145.00 |
| Deposition and Deposition Preparation | 479.5 | $269,505.00 |
| Conferral with Opposing Counsel and Related Work and Review | 33.9 | $19,029.00 |
| Work in Connection with CTX's Experts[8] | 192.5 | $119,604.00 |
| Work on Motion for Summary Judgment[9] | 350.6 | $146,153.75 |

---

[7] This item excludes work related to Benlida's motion to enforce the parties' settlement agreement during the stay period.

[8] This category of work includes preparation for the depositions of CTX's experts.

[9] This item includes work related to both parties' motions for summary judgment.  Additionally, all discounted fees for law clerk, Alperen Buyukberber, were added to this item for ease of

| Pretrial Motions[10] | 346.4 | $174,039.25 |
|---|---|---|
| Trial Preparation | 942 | $535,092.50 |
| Trial[11] | 350.2 | $210,836.00 |
| Post-Trial Work (Partial) | 26.7 | $17,105.00 |
| **TOTAL** | **3,472.5** | **$1,860,472.50** |

The costs which are not being submitted in a separate bill of costs, but which *are* reimbursable under the contract, are broken down as follows:

| Category of Costs[12] | Amount |
|---|---|
| Fees for ESI and Document-Review Platform (KLD) Vendor | $222,156.88 |
| Legal Research | $20,841.39 |
| Accounting Expert Fees | $370,401.80 |
| Fees Connected with Deposition of Randall Paulikens | $6,160 |
| Chinese Law Expert Fees | $11,862.50 |
| Counsel's Travel Expenses | $4,209.88 |
| Counsel's Conference- and Food-Related Expenses | $4,076.74 |
| AV Specialist for Trial | $20,358.75 |
| Courier and Mailing Fees | $333.69 |
| Chauncey Cole's Uncategorized Costs | $8,416.64 |
| **Total** | **$668,818.27** |

All claimed fees, costs and expenses are described and documented in the invoices of Chauncey Cole PA, Podhurst Orseck PA, attached as **Exhibit B** to the Cole Declaration and

---

calculation and because work related to the summary-judgment motion accounted for a significant percentage of the law clerks' time.

[10] Work related to "pretrial motions" includes work on the parties' motions *in limine* and CTX's motions filed on the eve of trial to enforce the Court's pretrial rulings and preclude Benlida's reliance on unpled affirmative defenses.  Additionally, all discounted fees for law clerk, Ryan DelGaudio, were added to this item for ease of calculation and because work related to the pretrial motions accounted for a significant percentage of his time.

[11] "Trial" work includes all work conducted during the trial period, from October 16, 2023 to October 24, 2023, even if the work took place after the end of the trial day in court.

[12] Only those costs directly billed to CTX or initially borne by Podhurst Orseck are broken down by category.

Exhibits A to the Rosenthal Declaration, and **Exhibits A-F** to the Kukreja Declaration.  These
fees, costs and expenses are further explained in the declarations of Chauncey Cole, Stephen
Rosenthal, and Rishi Kukreja.  *See* Exhibits 1-3.[13]

## ARGUMENT

### I.   CTX Is the Prevailing Party and Is Entitled to Its Attorney's Fees and Costs

CTX is the prevailing party in this case and is entitled to recover its "reasonable
attorneys' fees" and "all costs" pursuant to the plain language of the Manufacturing Agreement.
ECF No. 15-1, § 13.5 ("In any action to enforce this Agreement, the prevailing party shall be
awarded all court costs and reasonable attorney fees incurred.").

Such a fee- and cost-shifting provision creates an enforceable obligation under applicable
law.  The Manufacturing Agreement adopts Florida law.  ECF No. 15-1, § 13.4.  "Where a
contract provides attorney's fees for a prevailing party, the trial judge is without discretion to
decline to enforce the provision."  *Prato v. Hacienda Del Mar, LLC*, 2011 U.S. Dist. LEXIS
97808, at *7 (M.D. Fla. Aug. 31, 2011) (citing *Hutchinson v. Hutchinson*, 687 So. 2d 912, 913
(Fla. 4th DCA 1997)); *see also Animal Wrappers & Doggie Wrappers, Inc. v. Courtyard Distrib.
Ctr., Inc.*, 73 So. 3d 354, 355 (Fla. 4th DCA 2011) ("Courts have no discretion to decline to
enforce this kind of contractual attorney's fees provision.").

Under Florida law, "the party prevailing on the significant issues in the litigation is the
party that should be considered the prevailing party for attorney's fees."  *Moritz v. Hoyt Enters.,
Inc.*, 604 So. 2d 807, 810 (Fla. 1992); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)
("plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on
any significant issue in litigation which achieves some of the benefit the parties sought in
bringing suit.").  The focus of this test "is the result obtained at the close of the case."  *Sidlow v.
Bowles Custom Pool & Spas, Inc.*, 32 So. 3d 722 (Fla. 5th DCA 2010) (citing *Granoff v. Seidle*,
915 So. 2d 674, 677 (Fla. 5th DCA 2005)).

Under Florida law, "in a breach of contract action, one party must prevail, absent
compelling circumstances."  *Hutchinson*, 687 So. 2d at 913.  In such cases, the victorious
plaintiff is considered the "prevailing party" for purposes of attorneys' fees and costs, even if it
did not recover all of the damages it sought.  *Id*.  The party that prevails on the significant issues

---

[13] Certain time entries in the invoices have been partially redacted to protect work product and
attorney client privilege.

is considered the prevailing party, even if it was not successful on alternative claims of liability, and even if the defendant succeeded to some degree in limiting the amount of damages to be awarded.  *See*, *e.g.*, *Kelsey v. Metro Const.*, 31 So. 3d 252, 254 (Fla. 3d DCA 2010) (defendant and counterclaimant was the "prevailing party" because he prevailed on the significant issue litigated in the trial court – the breach of contract claim); *Granoff*, 915 So. 2d at 676 (plaintiff declared "prevailing party" even though the final judgment awarded both parties some relief, plaintiff recovered only nominal damages, and plaintiff did not obtain the full injunctive relief requested);  *Port-A-Weld, Inc. v. Padula & Wadsworth Const., Inc.*, 984 So. 2d 564, 569 (Fla. 4th DCA 2008) (plaintiff in breach of contract action was the "prevailing party" despite recovering substantially less than the requested damages, and despite the defendant's successful reduction of damages through various offsets and defenses); *Musselwhite v. Charboneau*, 840 So. 2d 1158, 1160 (Fla. 5th DCA 2003) (plaintiffs were the "prevailing party" even though they were unsuccessful in obtaining the equitable relief they sought, because they succeeded in proving that the defendant breached the contract and obtained alternative relief in the form of money damages); *Hutchinson*, 687 So. 2d at 913 (plaintiff was the "prevailing party" in breach of contract action, even though she recovered substantially less than her requested damages and the defendant had "substantial success" in asserting affirmative defenses).

By any measure, CTX is the prevailing party in this case.  The only significant issue litigated was whether either party breached the Manufacturing Agreement, and CTX prevailed on that issue.  It is therefore entitled to recover its attorneys' fees and costs according to the plain language of the Settlement Agreement.  CTX obtained a summary judgment that represented a total victory over Benlida's claims.  Then CTX succeeded at trial in obtaining a $7.6 million jury verdict in its favor, which was reduced to judgment.  The jury's verdict matched, to the dollar, the amounts that CTX asked them to award for two of four categories of damages it sought: overpayments as of the 2019 reconciliation between the companies, and payments Benlida has instructed CTX to divert to ROK.  The jury did not award CTX damages for its requests for lead-time penalties owed or premium payments Benlida charged.[14]  Still, CTX won most of the damages it sought from the jury.

---

[14] The premium payments are the subject of CTX's pending renewed motion for judgment as a matter of law.  ECF No. 297.

## II.     The Requested Fees And Costs Are Reasonable

### A.  Fees

Generally, what constitutes a reasonable attorney's fee is calculated using the "lodestar" method, taking the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Alhassid v. Bank of Am., N.A.*, 688 F. App'x 753, 757–58 (11th Cir. 2017) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).[15]

In making this determination, Florida law dictates that the court consider the following eight factors:

(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

*Regions Bank v. Roth*, No. 8:16-CV-468-T-36CPT, 2018 WL 3213331, at *1 (M.D. Fla. June 13, 2018), *report and rec. adopted*, No. 8:16-CV-468-T-36CPT, 2018 WL 3208487 (M.D. Fla. June 29, 2018) (citing *Rowe*, 472 So. 2d at 1150); *see also* Rule 4-1.5(b), Fla. R. of Prof. Conduct.

Once the lodestar has been calculated, there is a strong presumption that the figure is a reasonable sum.  *Alhassid*, 688 F. App'x at 758 (citing *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008)).  "Consequently, the courts have severely limited the instances in which a lawfully found lodestar amount may be adjusted to a higher or lower level."  *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993).

The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d

---

[15] Florida state courts also use the federal lodestar method to determine appropriate attorneys' fees.  *See Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150-1151 (Fla.1985).

1292, 1303 (11th Cir. 1988).  To meet that burden, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id*.  Additionally, a "well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.*  Reasonable hourly rates are determined by comparing attorneys' requested rate with the prevailing market rates in the relevant community.  *Galdames v. N & D Inv. Corp*., 432 F. App'x 801, 807 (11th Cir. 2011).  "In general, if a district court excludes certain hours from the amount expended on the litigation, it should identify the hours excluded and explain why those hours were disallowed."  *Alhassid*, 688 F. App'x at 758 (citing *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001)).

All the hours worked by counsel on behalf of CTX were reasonably expended in the litigation and billed to the client.  A detailed description of the tasks performed by all timekeepers is included in the invoices of CTX's counsel, which are attached as Exhibit A to the Rosenthal Declaration (attached as Exhibit 2 hereto) and Exhibit B to the Cole Declaration.

The hourly rates are also reasonable and consistent with the prevailing market rates in the South Florida legal community.  *See*, *e.g*., *Circuitronix, LLC v. Shenzhen Kinwong Electronic Co., Ltd.*, No. 17-22462-CIV-UNGARO (S.D. Fla. Dec. 20, 2019) (ECF No. 351 at 8-9) (approving $400 hourly rate for Mr. Cole and $775 hourly rate for Mr. Rosenthal), *report and rec. adopted*, ECF No. 360; *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1368 (S.D. Fla. 2010) (citing cases).  The requested rates represent reduced rates from the standard hourly billing rates for Chauncey Cole and the timekeepers at Podhurst Orseck, P.A. *See* Rosenthal Decl. at ¶ 23 & n.1; Cole Decl. at ¶ 9.  Counsel for CTX worked on an hourly basis on this case.

The time expended was reasonable considering several notable features of this case, applicable to the considerations under *Rowe*.

*First*, the litigation was between two corporations still engaged in ongoing business with each other.  This unusual dynamic at times incentivized start-and-stop pauses in the litigation to explore discussions between principals, and then more intensive litigation during compacted timeframes within the pre-trial schedules.  After the parties' aborted settlement of the case, the Court held the parties to a much more accelerated timeframe to complete discovery and prepare

for trial than the parties had requested after having ceased work on the case for the better part of a year.  The Court's aggressive schedule precluded CTX's counsel from having substantial time to devote to other work between April and October 2023.  In particular, Podhurst Orseck, P.A. had to postpone plans to file another, unrelated lawsuit for Circuitronix, that it had been drafting, until after the trial.  *See* Rosenthal Decl. at ¶ 13.

*Second*, the fact that the parties had a decade-long history of business dealings, with tens of thousands of email communications between them, and thousands of transactions, presented an enormous data set of potentially relevant material to comb through.  In response to Benlida's wide-ranging requests for production, CTX produced over 175,000 documents consisting of more than 1.5 million pages.  Rosenthal Decl. at ¶ 14.  Moreover, the claims and counterclaims implicated historical efforts by the parties to square their accounting books, with some transactions dating back as early as the inception of the Manufacturing Agreement in 2012.

*Third*, the fact that numerous of Benlida's documents were in Chinese, or contained some Chinese, required additional work and expense in the form of translation by CTX.  Likewise, all but one of Benlida's witnesses required a translator at deposition and trial, multiplying the time and expense involved in taking testimony.

*Fourth*, the lengthy hiatus in the litigation for nearly a year between the time the case settled in principle at mediation on June 1, 2022 until April 5, 2023, when the Court ruled that the settlement agreement which had been reached was no longer binding, required CTX's counsel to re-familiarize themselves with the materials in the case a second time.  That peculiar procedural history unavoidably added to the hours counsel had to devote to the case.  Rosenthal Decl. at ¶ 16.

*Fifth*, the Court's ruling granting summary judgment to CTX on all of Benlida's claims just three weeks before trial required CTX's counsel to undertake substantial additional work to reevaluate and reframe CTX's trial strategy, from a defensive posture, to the plaintiff's perspective.  For instance, CTX had to expend many hours reassessing all of its deposition designations to streamline them based on the ruling.  This late-breaking development also spawned additional litigation in the lead-up to trial over matters like Benlida's evolving affirmative defenses and strategy of eliciting evidence concerning Circuitronix (Hong Kong) Ltd., despite the summary judgment ruling.  Rosenthal Decl. at ¶ 17.

*Sixth*, the amount in controversy warranted CTX's expenditure of substantial sums to fund attorney's fees and costs.  Benlida sued CTX for over $13 million. CTX's successful defense defeated that potential liability entirely, and then turned around and recovered $7.6 million, representing a swing of more than $20-million.

*Finally*, this case involved a six-day jury trial, with all its attendant intense work.

Accordingly, consideration of the time and labor required, the difficulty of the issues involved, the skill requisite to perform the legal services properly, the amount involved, and the results obtained all weigh in favor of the requested fees being awarded in full.

**B. Costs**

The Manufacturing Agreement provides for the prevailing party to recover its "all costs." ECF No. 15-1, ¶ 13.5.[16]  Since CTX is "entitled to costs under the Agreement, this Court has greater discretion in awarding costs beyond the scope of 28 U.S.C. §§ 1821, 1920." *United Food Mart, Inc. v. Motiva Enters., LLC.*, No. 04-60539CIV, 2006 WL 3068821, at *2–3 (S.D. Fla. July 10, 2006) (Altonaga, J.).  "Provisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced" so long as they are "reasonable."  *Id.* (quoting *Lashkajani v. Lashkajani,* 911 So. 2d 1154 (Fla. 2005)).

This case required CTX to incur significant costs and litigation expenses which are recoverable under the Manufacturing Agreement.  This international business case implicated conduct that occurred over a period of nearly a decade.  The dual discovery phases of this case— punctuated by a highly unusual, pencils-down pause of nearly a year to hammer out and then litigate over a settlement agreement—required the gathering, production, and review of enormous volumes of electronically-stored information ("ESI").  Some of the documents, and ESI, produced in the case was written in Chinese.  Essential costs included costs for Chinese language interpreters to translate documents and deposition testimony.

The lengthy pause in the litigation also increased the expert costs to CTX.  CTX's experts had to pick up their work where they left off after nearly a year, something that inevitably required the experts to refamiliarize themselves with the material.  The reasonable expert costs

---

[16] CTX has separately submitted a bill of costs pursuant to 28 U.S.C. § 1920.  Because the contractual entitlement to costs is broader than that called for in the statute, any amount not recovered pursuant to that statute should be captured by and awarded in connection with this motion.

incurred here are plainly recoverable. *See Kipu Sys. LLC v. ZenCharts LLC*, No. 17-24733-CIV, 2021 WL 1895881, at *7–8 (S.D. Fla. Apr. 6, 2021) (determining "there is no reason why the expert witness fees are not recoverable under the contracts" specifying that the prevailing party "shall be awarded reasonable attorney's fees and other costs"), *report and rec. adopted sub nom. Kipu Sys., LLC, v. Zencharts LLC*, No. 17-CV-24733-WILLIAMS, 2021 WL 4479451 (S.D. Fla. Sept. 30, 2021); *Friedel v. Sun Communities, Inc.*, No. 19-14394-CIV, 2022 WL 17669933, at *10 (S.D. Fla. Nov. 3, 2022) (determining requested expert fees were recoverable by the prevailing party in a breach-of-contract action where lease provisions allowed recovery for "all costs, expenses and reasonable attorneys fees" in any action for possession brought under the agreement"), *report and rec. adopted,* No. 19-CV-14394, 2022 WL 17668290 (S.D. Fla. Dec. 14, 2022).

Finally, the case required further significant costs associated with a six-day jury trial. These costs included printing thousands of pages of voluminous trial exhibits and other written materials, significant costs for video editing of excerpts of deposition testimony that prepared for use at trial, some of which was played for the jury during the trial, and costs for the preparation of demonstrative and graphic aides used to present the case.

All of these costs are in addition to ordinary litigation costs, which are significant, such as deposition and trial transcript costs, court reporter's fees, video deposition expenses, printing and copying, storage and management of electronic data, and many other items.

These costs are detailed and documented in the invoices of CTX's counsel and issued to the company.  *See* Exhibit B to Cole Declaration; Exhibit A to Rosenthal Declaration; and Exhibits A-F to Kukreja Declaration.

## **<u>CONCLUSION</u>**

For all of these reasons, CTX respectfully requests that the Court enter an Order in favor of CTX and against Benlida in the amount $1,860,472.50 for attorneys' fees, plus $668,818.27 in costs, and plus $50,000 in attorney's fees related to the parties' prior settlement related to the motion to enforce, as for a total amount of **<u>$2,579,290.77</u>**, and enter an amended judgment for this amount.

### LOCAL RULE 7.3(b) STATEMENT OF GOOD FAITH CONFERENCE

In accordance with Local Rule 7.3(b), Circuitronix states the following:

The judgment which gives rise to this motion is the Court's Final Judgment, dated December 1, 2023.  ECF No. 294.  The other grounds entitling CTX to the award are that the Manufacturing Agreement contains a prevailing party provision found at paragraph 13, which states that the prevailing party in any dispute between the parties "shall be entitled to its attorneys' fees and costs." ECF No. 289-1.  Under Florida law, Circuitronix is the prevailing party in this action for all the reasons discussed in detail above.  *See*, *e.g.*, *Moritz*, 604 So. 2d at 810.

The amount of the award requested by Circuitronix is $1,860,472.50 for attorneys' fees, plus $668,818.27 in costs, for a total amount of **$2,529,290.77**.

1.      The applicable fee agreements in this case are hourly-fee agreements, whereby CTX agreed to pay its counsel for attorneys' fees at agreed hourly rates and costs incurred in the litigation.  Over the course of this case, CTX engaged the services of two Miami law firms, Chauncey Cole PA, and Podhurst Orseck PA.  The hourly rates set forth in this motion for each timekeeper are the hourly rates CTX agreed to pay.

2.      Additionally, CTX seeks $50,000 in fees and costs connected with the parties' prior agreement related to the litigation surrounding Benlida's motion to enforce.

3.      Benlida does not oppose the fees and costs sought in this motion with the exception of the amount sought for computerized legal research fees.

4.      This motion is verified below, in accordance with 28 U.S.C. § 1746, Fla. Stat. § 92.525, and Local Rule 7.3(a)(7).

5.      Undersigned counsel for CTX hereby certifies that, pursuant to Local Rule 7.3(b), counsel for the movant has conferred with counsel for Benlida in a good faith effort to resolve by agreement the issues raised in this motion.  CTX served a draft of this motion on Benlida, on December 29, 2023.  Counsel for the parties then met and conferred via videoconference on January 16, 2024, in a good faith effort to resolve by agreement the issues raised in this motion. CTX's counsel is authorized to represent that Benlida does not oppose the fees and costs sought in this motion with the exception of costs associated with computerized legal research.

*/s/  Christina H. Martinez*
Christina H. Martinez

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. Section 1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 5, 2024                    */s/  Christina H. Martinez*
                                                                Christina H. Martinez


Respectfully submitted,

*/s/  Christina H. Martinez*
Stephen F. Rosenthal
Florida Bar No. 0131458
srosenthal@podhurst.com
Matthew P. Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Christina H. Martinez
Florida Bar No. 1029432
cmartinez@podhurst.com
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Tel.: 305-358-2800

*Counsel for Circuitronix, LLC*


## <u>CERTIFICATE OF SERVICE</u>

6.      I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on February 5, 2024 as filed with the Clerk of the Court using CM/ECF.

By: */s/ Christina H. Martinez*
                Christina H. Martinez