UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60125-CIV-SCOLA/GOODMAN

JIANGMEN BENLIDA PRINTED
CIRCUIT CO., LTD.,

    Counter-Defendant,

v.

CIRCUITRONIX LLC,

    Counter-Plaintiff,
                                     /

**PLAINTIFF'S *AMENDED* RENEWED MOTION
FOR PARTIAL JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b)
ADDING REFERENCES TO TRIAL TRANSCRIPT**

    Circuitronix, LLC ("CTX-US") hereby submits its amended renewed motion for partial judgment as a matter of law under Federal Rule 50(b) with respect to its claim for $317,539 in premium payments. Because the evidence at trial indisputably demonstrated that CTX-US has been damaged as result of Jiangmen Benlida Printed Circuit Co., Ltd.'s ("Benlida's") contractual breaches in demanding these unauthorized premiums, the $317,539 figure should be added to the overall damages awarded in the jury's verdict and the judgment modified accordingly. Pursuant to the Court's orders (ECF Nos. 302, 308) on Benlida's motion for extension of the briefing schedule on CTX-US's renewed motion for judgment as a matter of law (ECF No. 301), CTX-US submits this amended motion adding more specific citations and quotations from the trial testimony regarding this issue.[1]

---

[1] This amended motion is timely because it is filed within ten days of CTX-US's receipt of the trial transcript on February 23, 2024, consistent with the Court's latest order regarding the briefing schedule. ECF No. 308. Apart from adding trial transcript references, CTX-US has not otherwise altered the motion except to remove the section requesting leave to amend the motion with references to the trial transcript, which the Court already allowed. ECF No. 297 at 7-9.

**BACKGROUND**

After the Court granted summary judgment dismissing Benlida's affirmative claims, the trial in this matter proceeded on CTX-US's sole counterclaim for breach of contract. CTX-US sought $10,246,387 for Benlida's breaches of the Manufacturing Agreement and Letter Agreement based on four distinct categories of damages: $4,760,847 in overpayments on invoices that Benlida declined to return, $2,343,001 in unpaid lead-time penalties, $2,825,000 in payments that Benlida diverted to ROK Printed Circuit Co. ("ROK") but failed to credit in its ledger with CTX-US, and $317,539 in improper premiums on the invoices.

After the parties rested their cases, CTX-US moved for partial judgment as a matter of law on three bases:

> I. That Benlida breached the Manufacturing Agreement and Letter Agreement by refusing to return overpayments on invoices which had accumulated due to Benlida's improper payment demands not allowed under the parties' agreements;
>
> II. That Benlida may not advance a "first in, first out" or "FIFO" defense for CTX-US's claimed damages for overpayment of invoices; and
>
> III. That Benlida may not advance a price-increase defense to set off or reduce CTX's claimed damages for overpayment of invoices.

ECF No. 269 at 1 ("DV Motion").

As relevant to this motion, in connection with the first ground, CTX-US argued that Benlida improperly demanded payment premiums in excess of the pricing terms permitted by the Manufacturing Agreement. *Id.* at 2-3. With transcripts of trial testimony then unavailable, CTX-US generally cited the testimony of its principal, Rishi Kukreja, that Benlida demanded payment premiums in excess of contractual price terms and threatened to cancel orders or stop production if CTX-US did not accede to its demands. *Id.* at 3. CTX-US also referenced Mr. Kukreja's testimony regarding the premiums paid after 2019, and argued that "Benlida's evidence accords with CTX's regarding the fact of overpayment." *Id.* at 3-4 (emphasis removed). It additionally cited testimony from Benlida's key witness, Huang ("Tracy") Sulan, and its CFO, Wu ("Roger") Yukun, regarding CTX-US's overpayments on invoices Benlida identified in connection with its affirmative claims. *Id.* at 4. CTX-US argued that based on this evidence, judgment as a matter of law was appropriate as to liability and the amount of damages on its breach-of-contract claim to recover the improper premiums charges and one other claimed damages category. *Id.* at 4.

With respect to ground III in the motion, CTX-US argued that Benlida should not be permitted to raise what is essentially an affirmative defense for set off in an effort to reduce CTX-US's damages by $1.5 million in price increases Benlida claimed. CTX-US argued that Benlida had abandoned the ability to raise the price-increase issue by failing to raise it as an affirmative defense in its pleadings and other submissions prior to trial. *See* DV Mot. 8-9; ECF No. 292 ("DV Reply") at 3-4. Additionally, CTX-US observed, Benlida should be foreclosed from using the price-increase setoff defense because Benlida did not disclose the amount of the hoped-for setoff—$1.5 million—until trial and never provided an explanation or evidentiary support for how it calculated that amount. DV Mot. at 8; DV Reply at 4-5.[2]

After hearing argument on CTX-US's Rule 50(a) motion, the Court deferred ruling and submitted the case to the jury. The jury returned a verdict for CTX-US, awarding $7,585,847 in damages. *See* ECF No. 278 (verdict form). That amount corresponds—to the dollar—to the damages CTX-US requested for overpayments on invoices that Benlida declined to return ($4,760,847) plus payments that Benlida diverted to ROK ($2,825,000). Mathematically, the jury's verdict made clear that it had declined to award CTX-US anything for the premium payments Benlida had improperly forced CTX-US to pay, in breach of the contract.

Once CTX-US's Rule 50(a) motion was fully briefed, the Court entered an order denying those portions of the motion that it deemed the verdict had not mooted, and separately entered final judgment in CTX-US's favor. ECF No. 293 ("DV Order"); ECF No. 294 (Final Judgment).[3] The Court faulted CTX-US for painting its argument "with broad strokes" and "in

---

[2] After the Court's Order Granting Summary Judgment (ECF No. 221) disposed of Benlida's affirmative claims, which included money it claimed to be owed for a price increase, Benlida persisted in pressing the price-increase issue at trial as a defense, over CTX-US's pretrial objection (ECF No. 255). CTX-US had previously moved to exclude evidence pertaining to Benlida's affirmative claim for a price-increase amount of $2.11 million. *See* ECF No. 198 (Omnibus Motion) at 5-7; ECF No. 204 (Omnibus Reply) at 1 n.1.

[3] The Court determined that "the only aspect of Circuitronix's motion for judgment as a matter of law that was not mooted is Circuitronix's position that it should be awarded $317,539 in damages for improper premium charges, in addition to the verdict amount." DV Order at 4. To the extent any evidence regarding a price-increase amount purportedly owed to Benlida factored into the Court's decision to deny CTX-US's motion, CTX-US renews its motion for judgment as a matter of law on that ground in addition to its request to add the $317,539 premium amount to the judgment.

mostly summary fashion," despite the unavailability of a trial transcript. DV Order at 5. As a result, and because CTX-US relied primarily on the testimony of its own principal, the Court concluded CTX-US had not met its burden of showing that "the evidence favoring the claimant is so one-sided as to be of overwhelming effect." *Id.* at 4-5 (quoting *Handley v. Werner Enters. Inc.*, No. 23-10587, 2023 WL 6628921, at *3 (11th Cir. Oct. 11, 2023)) (internal quotation marks omitted).

CTX-US now timely renews its motion for judgment as a matter of law, this time equipped with the trial transcript and adding citations and references to it to overcome the criticisms the Court articulated in its order denying CTX-US's Rule 50(a) motion.

## STANDARD OF REVIEW

A court reviews a renewed motion for judgment as a matter of law pursuant to Rule 50(b) under "precisely the same" standard used for a motion pursuant to Rule 50(a). *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (citing 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 (2d ed.1995)). As with motions under Rule 50(a), the inquiry is whether the evidence is "legally sufficient ... to find for the party on that issue." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting Fed. R. Civ. P. 50(a)(1)) (internal quotation marks omitted). A court must determine whether "such sufficient conflicts exist in the evidence to necessitate submitting the matter to the jury or whether the evidence is so weighted in favor of one side that one party must prevail as a matter of law." *Id.* (quoting *Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 320 F.3d 1260, 1267-68 (11th Cir. 2003)) (internal quotation marks omitted).

In making its ruling, "the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *Id.* (quoting *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995)) (internal quotation marks omitted). Granting judgment as a matter of law under Rule 50(b) is appropriate—even when the movant bears the burden of proof on an issue—where "the facts and inferences point so strongly and overwhelmingly in favor of [that party] that reasonable jurors could not arrive at a contrary verdict." *LaRoche Indus., Inc. v. AIG Risk Mgmt., Inc.*, 959 F.2d 189, 191 (11th Cir. 1992) (citing *Iervolino v. Delta Airlines*, 796 F.2d 1408, 1418-19 (11th Cir. 1986)).

**ARGUMENT**

I. **CTX-US is entitled to judgment as a matter of law on its claim of damages for $317,539 in improperly assessed premium payments**

Although the Court previously determined that CTX-US had not carried its burden on review of the Rule 50(a) motion, the one-sided record evidence adduced at trial—by both parties—demonstrates that the judgment should be amended to add $317,539 in premium payments to CTX-US's damage award.

The Court should reconsider its previous conclusion that CTX-US neither "met th[e] demanding standard" for such Rule 50 motions brought by a claimant nor "even direct[ed] any argument toward it" in its Rule 50(a) motion. DV Order at 5. Perhaps the Court was unaware that, at the time it issued its ruling, no trial transcript was available to the parties.[4] Even in the midst of trial and without the benefit of a trial transcript, CTX-US's pre-verdict motion met this standard, addressing the elements of its breach of contract claim as to each of four claimed categories of damages, including improper premium payments, and establishing the one-sided facts on the premium issue.

While the Court faulted CTX-US for "paint[ing] its argument with broad strokes" (*id.*), the lack of precise detail or specific citations to the trial testimony in the Rule 50(a) motion was a natural consequence of CTX-US's inability to cite to any trial transcript and reluctance to paraphrase trial testimony based on counsel's notes. Now that the trial transcript is available, this amended motion demonstrates that CTX-US has met the high evidentiary burden to grant judgment as a matter of law in CTX-US's favor on the premium-payment issue.

CTX-US previously noted Mr. Kukreja's testimony that "Benlida demanded payment premiums above the contractual price terms [of the Manufacturing Agreement] and threatened to cancel orders or stop production unless CTX[-US] complied with its demands." DV Mot. at 3. Mr. Kukreja testified that, "in December of 2019, Benlida started making [CTX-US] pay a 10 percent or 3 percent premium over the purchase [price]." ECF No. 320 ("Trial Tr. (Vol. II)") 539:6-8; *id.* at 539:12-13 (testifying that Benlida called the additional amount a "premium payment"); *id.* at 540:7-10 ("Q. When was it, approximately, that Benlida began charging premiums to Circuitronix? A. On December 1st, 2019, Benlida did not like our November 1st,

---

[4] CTX-US's counsel had asked the court reporter before trial started whether she could produce daily rough transcripts and was informed that was not an option.

2019 reconciliation numbers."); *id.* at 543:14-544:5 (explaining how Benlida began charging a 20 percent premium, but eventually accepted 10 percent, then 3 percent premiums by March 2020). Mr. Kukreja testified that Benlida was "not allowed" to charge these premiums under either the Manufacturing Agreement or the Letter Agreement (*id.* at 540:16), but did so anyway, and CTX-US paid approximately "$317,000" in premiums because Benlida otherwise refused to release purchase orders into the system. *Id.* at 540:21-541:3.

Mr. Kukreja also explained precisely how CTX-US had calculated the $317,539 amount it sought in damages for the premium payments. Specifically, since December 1, 2019, Mr. Kukreja instructed his accounting team to keep "a detailed log of every shipment which took place, what the purchase order value was, what the premium amount was, and what the payment amount was" in a document entitled "pro forma cost and inventory management spreadsheet." *Id.* 544:6-10; *id.* at 542:14 (admitting the spreadsheet (ECF No. 282 (Exhibit D-Y13)) into evidence). To calculate damages for trial, CTX-US filtered out premiums paid after the date it filed its counterclaim (October 15, 2021), and obtained the $317,539.48 figure it ultimately presented to the jury in the "undisputed document," a summary exhibit, that CTX-US referenced in its Rule 50(a) motion. *Id.* at 544:14-20; *see also* Exhibit 1 to Am. Mot. - ECF No. 281-72 (Trial Exhibit D-X13); DV Mot. at 3 (discussing this summary exhibit).

More than merely "present[ing] no evidence … to controvert" this testimony (*id.*), the testimony of Benlida's chief witness *coincided with and reinforced Mr. Kukreja's testimony* regarding the existence of the premium payments. During Tracy Huang's direct examination on October 20, 2023, she affirmatively *admitted* that Benlida had charged CTX-US premiums toward the end of 2019 because of the parties' ongoing dispute. ECF No. 323 ("Trial Tr. (Vol. V)") 1370:5-13 (testifying that premiums came about at the "end of 2019" "since we still had the dispute pending"). She explained that, because Benlida's credit re-insurer's records reflected CTX-US's supposedly overdue payments, the credit re-insurer required that Benlida charge premium payments to CTX-US if the companies continued to do business together. *Id.* at 1370:14-18 (Ms. Huang: "So the credit insurance company requests us if we need to continue to do business with them, besides prepayment, they also request premium."). She went on to describe how Benlida negotiated the percentage of the premiums with its re-insurer, testifying that the re-insurer had first requested a 10% premium and then had accepted Benlida's request to reduce the premium to 3% after two to three months. *Id.* at 1370:18-21 ("So, firstly, [the credit

insurance company] request 10 percent.  And then after two or three months, … we request to deduct to 3 percent, and then they accept.  So that's why it's – 10 percent or 3 percent premium came out.").  On cross-examination, she again confirmed that Benlida had passed on the premium from its credit insurer to CTX-US starting in 2019.  ECF No. 324 ("Trial Tr. (Vol. VI)") 1518:22-1519:10.  She also admitted that the Manufacturing Agreement did not have any provision allowing Benlida to require CTX-US to pay premiums.  *Id.* at 1519:11-15.  In fact, she testified that the Manufacturing Agreement has a pricing matrix that controls the price Benlida is allowed to charge CTX-US for a purchase order and the limited circumstances under which Benlida is allowed to increase prices (including providing CTX-US with a four-month advance notice of the increase), but Benlida required CTX-US to pay premiums anyway.  *Id.* 1520:16-1521:16.

Ms. Huang's testimony regarding the approximate start date of the premium payments (end of 2019) and the percentage premiums Benlida exacted from CTX-US (10% then 3%) also matches the data in the "undisputed document" that CTX-US referenced in its motion (DV Mot. at 3), which was also discussed by Mr. Kukreja at trial.  Trial Tr. (Vol. II) 546:1-20 (Mr. Kukreja testifying that the summary exhibit accurately reflected $317,539.48 in premiums that Benlida charged CTX-US, which CTX-US brought as part of its claims; also stating the exhibit did not include, and CTX-US was not seeking recovery for, premiums that continued to accrue in 2022 and 2023).[5]  Specifically, this summary document contains the chart below, which shows CTX-US paid $317,539.48 in total premiums—$281,313.32 at a 10% overcharge in 2020, and $36,226.16 at a 3% overcharge in 2021:

| Summary of Premiums Paid by CTX | | | |
|---|---|---|---|
| Year | 10% Premium | 3% Premium | Total Premium |
| 2020 | $143,207.63 | - | $143,207.63 |
| 2021 | $138,105.69 | $36,226.16 | $174,331.85 |
| Total | $281,313.32 | $36,226.16 | $317,539.48 |

---

[5] Benlida introduced no testimony disputing CTX-US's calculations on the premium payments.

Exhibit 1 to Am. Mot. - ECF No. 281-72 (Trial Exhibit D-X13).  The Court previously dismissed reliance on this summary exhibit as "not enough" to grant judgment as a matter of law in CTX-US's favor.  DV Order at 5.  Viewed in the proper context of the testimony surrounding it with the benefit of the trial transcript, the Court should appreciate that this exhibit serves as a clear and accurate snapshot of undisputed evidence of the amount of premium payments Benlida forced CTX-US to pay ($317,539), in plain violation of the terms of the parties' contract.

In short, the evidence at trial that CTX-US made these premium payments pursuant to Benlida's improper demand is "so one-sided as to be of overwhelming effect."  *U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1250 (11th Cir. 1997); *see also Handley*, 2023 WL 6628921, at *3.  While the premium issue did not dominate the trial, the evidence on the issue was not limited to the testimony of "Circuitronix's own principal," Mr. Kukreja, as the Court seemed to suggest (DV Order at 5); Ms. Huang also testified on the matter, and her testimony did not present "conflicting" evidence or allow for "[d]ifferent inferences." *Massey Yardley*, 117 F.3d at 1250 (discussing conflicting evidence in that case).  Instead, she confirmed what Mr. Kukreja testified about the amount Benlida charged and the amount CTX-US paid for these premiums.  Thus, even if Mr. Kukreja cannot be considered a "disinterested witness[]," "the jury would not be at liberty to disbelieve" his testimony when it was not simply "uncontradicted and unimpeached" (DV Order at 5 (citations omitted)), but actually *bolstered* by the testimony of the opposing party's key witness.[6]

---

[6] Lest Benlida argue that CTX-US's supposed nonpayment of invoices in Benlida's complaint necessitated and legitimized its imposition of payment premiums at the request of its re-insurer, that argument is foreclosed by other trial evidence (including testimony offered by Benlida witnesses) and, ultimately, the jury's verdict.  As discussed, the jury verdict of $7,585,847 corresponds, to the dollar, with the amount of damages sought for overpayments on invoices that Benlida declined to return ($4,760,847) and payments that Benlida diverted to ROK ($2,825,000).  *See* Exhibit 2 to Am. Mot. - ECF No. 281-61 (summary trial exhibit (Ex. D-N9) reflecting $4,760,847 in overpayments related to the reconciliation period through July 2019); Exhibit 3 to Am. Mot. - ECF No. 281-66 (summary trial exhibit (Ex. D-Q13) reflecting $2,825,000 in payments made to ROK); *see also* Trial Tr. (Vol. II) 431:17-432:10, 451:2-14 (Mr. Kukreja testifying about the ROK payments summary exhibit (Ex. D-Q13), and the $2,825,000 sum in diverted payments to ROK that CTX-US is claiming); *id.* at 422:5-426:14, 428:22-432:25, 433:16-451:14 (Mr. Kukreja testifying about broader context of how and why Benlida requested payments to ROK, and the documentation matching those payments); Trial Tr. (Vol. VI) 1666:6-1667:24 (closing argument reiterating the $4,760,847 figure for the 2019

Judgment as a matter of law adding the $317,539 premium damages to the judgment is appropriate where, as here, "there is insufficient evidence for permitting any different finding." *Handley v. Werner Enters., Inc.*, 655 F. Supp. 3d 1348, 1363 (M.D. Ga. 2023) (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2535 (2d ed. 1995)), *aff'd,* 2023 WL 6628921.

---

reconciliation and drawing jury's attention to Ex. D-N9); *id.* at 1668:2-1669:17 (same regarding the $2,850,000 figure for payments diverted to ROK and drawing jury's attention to Ex. D-Q13).

Ample trial testimony supports the jury's implicit finding that CTX-US *did not* underpay and was therefore damaged in the sum of $4,760,847 based on its *overpayment* of invoices. Apart from corroborative testimony by CTX-US witnesses, including Mr. Kukreja and CTX-US's accounting expert, Barry Mukamal, Benlida's witnesses' testimony also support this point. *See, e.g.*, Trial Tr. (Vol. II) 539:23-540:3 (Mr. Kukreja testifying CTX-US was seeking $4.7 million against Benlida for the 2019 reconciliation part of the case); *id.* at 538:14-539:5 (Mr. Kukreja testifying on the parties' reconciliation efforts, including in Trial Exhibit 148 (*see* ECF No. 282)); ECF No. 322 ("Trial Tr. (Vol. IV)") 1088:9-15 (Mr. Mukamal testifying that CTX-US incurred damages in the sum of $4,760,847, after calculating payments, invoices, and debit memos).

During Ms. Huang's cross-examination, for instance, she conceded that CTX-US had paid all the invoices issued *to it* (not Circuitronix (Hong Kong) Ltd. ("CTX-HK")), and in fact had actually *overpaid* those invoices by sending Benlida *more than* the money owed. Trial Tr. (Vol. V) 1391:4-20 ("Q. … Circuitronix U.S. actually sent Benlida the money, more than that money, for those invoices. And Benlida received it, correct? A. Correct."); *see also id.* at 1391:21-1392:11. She also acknowledged that, with respect to sorting out discrepancies in invoice payments between the two companies, both CTX-US and Benlida had spent enormous amounts of time and resources on reconciling their accounts in 2019 and had *put to one side* issues related to lead-time penalties and price increases in an effort to come to an agreement. *Id.* at 1394:25-1395:15. For his part, Benlida's CFO Roger Wu could not state during his own cross-examination whether—when comparing *only* CTX-US invoices and payments and setting aside CTX-HK invoices and payments—CTX-US was in an overpaid position and, if so, by how much. *Id.* at 1211:22-1212:3. Finally, Benlida's accounting expert, Randall Paulikens, whose deposition testimony was read into evidence, affirmed that he "was not going to quibble with the $4.7 million [overpaid] figure that [CTX-US's accounting experts] came up with." Trial Tr. (Vol. VI) 1608:2-8; *see also id.* at 1608:16-17 (Mr. Paulikens' testimony that "at this moment, the 4.7 million, based on what [CTX-US's accounting experts] did, I can live with").

This testimony from Benlida's own witnesses corroborates Mr. Kukreja's testimony regarding overpayment amounts and culminated in a jury finding plainly awarding damages that included these overpayments. It prevents Benlida from credibly arguing that the premiums it assessed were proper and required by supposed CTX-US *under*payments.

9

## CONCLUSION

For the foregoing reasons, the Court should grant CTX-US's renewed motion for judgment as a matter of law under Rule 50(b).

## CERTIFICATE OF RULE 7.1(a)(3) CONFERENCE

Undersigned counsel for CTX-US previously conferred with counsel for Benlida in a good faith effort to resolve the issues raised in the original 50(b) motion. Counsel for Benlida did not object to CTX-US making the motion, or to CTX-US's alternate request for relief to supplement the motion when the trial transcript is ready. Benlida's counsel did object, however, to the ultimate relief CTX-US seeks: increasing the judgment by $317,539 in premium payments. Accordingly, CTX-US's counsel has been unable to resolve that issue raised in the motion.

Additionally, during counsel's meet-and-confer efforts, Benlida indicated that, should CTX-US ultimately lose on this motion, Benlida objects to CTX-US seeking to add the time spent drafting the motion into its claim for attorney's fees.

As the present filing is merely an amendment to the original Rule 50(b) motion over which the parties conferred, and which the Court has instructed to be filed, the parties did not confer again before CTX-US's filing of this amended motion.

DATED this 4th day of March, 2024.

        Respectfully submitted,

        */s/  Christina H. Martinez          .*
        Stephen F. Rosenthal
        Florida Bar No. 0131458
        srosenthal@podhurst.com
        Matthew P. Weinshall
        Florida Bar No. 84783
        mweinshall@podhurst.com
        Christina H. Martinez
        Florida Bar No. 1029432
        cmartinez@podhurst.com
        PODHURST ORSECK, P.A.
        One S.E. 3rd Avenue, Suite 2300
        Miami, Florida 33131
        Tel.: 305-358-2800
        *Counsel for Circuitronix, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on March 4, 2024 as filed with the Clerk of the Court using CM/ECF.

By: /s/ *Christina H. Martinez*   .
       Christina H. Martinez