United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jiangmen Benlida Printed Circuit Co., Ltd., Plaintiff, <br><br> v. <br><br> Circuitronix, LLC, Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 21-60125-Civ-Scola <br> ) <br> ) |

**<u>Order Denying Circuitronix's Amended Renewed
Motion for Judgment as a Matter of Law</u>**

The dispute in this case centers around tens of millions of dollars' worth of printed circuit boards, manufactured by Plaintiff and Counter-Defendant Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida") which it sold to Defendant and Counter-Plaintiff Circuitronix, LLC ("Circuitronix" or, sometimes, "CTX-US"). After resolving Benlida's claims against Circuitronix by granting summary judgment in Circuitronix's favor (SJ Order, ECF No. 221), the Court held a six-day jury trial on Circuitronix's breach-of-contract claims against Benlida, through which Circuitronix sought to recover more than $10 million. After deliberating, the jury unanimously found that Benlida had breached the parties' contract, awarding $7,585,847 in damages to Circuitronix. (Verdict, ECF No. 273.) At the close of all the evidence, Circuitronix moved orally for partial judgment as a matter of law, also following up with a written motion (Circuitronix's Mot., ECF No. 269). After reserving ruling on that motion until after the verdict, the Court subsequently denied the motion, in part, and denied it as moot, in part (ECF No. 293) and then entered final judgment in this case (J., ECF No. 294). Circuitronix thereafter sought to renew its motion for partial judgment as a matter of law, requesting an extension of its deadline so as to allow time for the preparation of the trial transcript. Now that the transcript has been filed, Circuitronix has submitted its amended renewed motion (Circuitronix's Mot., ECF No. 326) and Benlida has filed its response (Benlida's Resp., ECF No. 328), to which Circuitronix has replied (Circuitronix's Reply, ECF No. 329). After a careful review of the record, the briefing, and the relevant legal authorities, the Court **denies** Circuitronix's amended renewed motion for judgment as a matter of law (**ECF No. 326**).

1. **Background**

Since at least 2012, the parties in this case were engaged in a business relationship through which Circuitronix, a Florida limited liability company, purchased printed circuit boards manufactured by Benlida, a Chinese limited

liability company. Various details governing that relationship are memorialized in a 2012 document titled "Standard Manufacturing and Representation Agreement," referred to by the parties as the "Manufacturing Agreement." (2012 Agmt., ECF No. 281-2.) Though the procedural history of this case is more complicated, the issues relevant to Circuitronix's Rule 50(b) motion center only on the evidence the parties presented during the six-day jury trial regarding Circuitronix's claims that Benlida breached the Manufacturing Agreement.

Through those claims, Circuitronix sought damages based on four different ways it claimed Benlida breached the parties' contract, alleging that Benlida:

(1) failed to return or credit $4,760,847 that Circuitronix overpaid during the relevant part of the parties' relationship;

(2) failed to credit $2,825,000 in payments Circuitronix diverted to another company, affiliated with Benlida;

(3) failed to pay $2,343,001 in certain "lead-time" penalties based on delays in Benlida's delivery of printed circuit boards that Circuitronix had ordered; and

(4) forced Circuitronix to pay $317,539 in prohibited premiums that Benlida added to Circuitronix's invoices.

(Jury Instr., ECF No. 270, 7.) In its verdict, the jury awarded Circuitronix $7,585,847 in damages. (Verdict, ECF No. 273.) Based on the amount of that award, the parties appear to agree that the jury must have have found in Circuitronix's favor as to the first two breach allegations (the uncredited overpayments to Benlida of **$4,760,847** plus the **$2,825,000** in payments to its affiliate equaling the verdict amount), while declining to award any damages to Circuitronix for the other two breach categories. That is, there appears to be no dispute that the jury declined to award any of the $2,343,001 Circuitronix sought in lead-time penalties or any of the $317,539 that Benlida added in allegedly improper premium charges.

While Circuitronix doesn't seek to disturb the jury's verdict as to the lead-time penalties, it submits it is entitled to judgment as a matter of law as to the $317,539 in premium payments it says it was required to pay in violation of the Manufacturing Agreement.[1] Relevant to Circuitronix's premium claims

---

[1] In a footnote, Circuitronix also seeks to renew that part of its Rule 50(a) motion that argued "Benlida may not advance a price-increase defense to set off or reduce CTX's claimed damages for overpayment of invoices." (Circuitronix's Mot. at 3 n. 3; Circuitronix's Rule 50(a) Mot. at 8–9.) Circuitronix seeks renewal of this part of its motion "[t]o the extent any evidence regarding a price-increase amount purportedly owed to Benlida factored into the Court's decision to deny" the Rule 50(a) motion. Since the jury was not instructed to render a verdict on this issue and there is no indication that Benlida's price-increase evidence entered into its decision, the Court

are two provisions of the Manufacturing Agreement: one that sets forth the "base of the pricing" for Benlida's printed circuit boards, in a "pricing matrix," and another requiring Benlida to provide four-months' notice of any price increase. (2012 Agmt. ¶ 2, Sch. B.)

### 2. Legal Standard

A judgment as a matter of law is only appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party[.]" Fed. R. Civ. P. 50(a)(1), (b). In considering a motion for this relief, the Court must "review the evidence, and the inferences arising therefrom, in the light most favorable to the non-moving party." *S.E.C. v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004). Importantly, the Court "may not weigh the evidence or decide the credibility of witnesses." *Id.* (cleaned up). While the Court must review the record as a whole, "it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). In a case where the party bearing the burden of proof is the movant, as here, the Eleventh Circuit considers granting judgment as a matter of law an "extreme step," warranted "only when the evidence favoring the claimant is so one-sided as to be of overwhelming effect." *U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1250 (11th Cir. 1997).

### 3. Analysis

Circuitronix argues, through its motion for judgment as a matter of law, that it should be awarded an additional $317,539 for the premium payments that it says it should not have had to pay to Benlida. According to Circuitronix, the evidence at trial was so one sided that the conclusion that Benlida breached the parties' contract by requiring the premium payments is inescapable. In support, Circuitronix points to three general justifications: (A) the testimony of its principal, Rishi Kukreja, that, as Circuitronix describes it, "Benlida demanded payment premiums above the contractual price terms and threatened to cancel orders or stop production unless CTX-US complied with its demands" (Circuitronix's Mot. at 5 (cleaned up)); (B) the admission of Benlida's key witness, Huang "Tracy" Sulan, that Benlida charged Circuitronix $317,539 in premium payments—the exact amount that Circuitronix claims it is owed (*id.* at 6); and (C) Huang's additional admission, according

---

can discern no basis upon which judgment as a matter of law as to this issue would be appropriate. Further, the Court finds Circuitronix's mere mention of the issue, without substantive analysis, insufficient to properly raise the request for relief in its renewed motion.

Circuitronix, that the parties' agreement "did not have any provision allowing Benlida to require CTX-US to pay premiums" (*id.* at 7). After careful review, the Court is not persuaded.

### A. Kukreja's Testimony

As to the first part of Circuitronix's argument, Circuitronix contends that Kukreja's testimony supports its position that the only reasonable interpretation of the evidence is that Benlida improperly used the premiums as a way to coerce Circuitronix into paying Benlida more for its orders, in violation of the Manufacturing Agreement's pricing matrix and notice requirement. Among that testimony, is Kukreja's insistence that the premium charges were "not allowed" and his contention that Benlida itself acknowledged that the premium payments were "an overpayment." (Trial Tr. Vol. 2, 540:16–19, ECF No. 320, 240.) Kukreja also testified, unambiguously, that Benlida "had no contractual basis" to demand the premiums but "did it anyway." (*Id.* at 540:19–22.) As Circuitronix additionally points out, Kukreja further explained that he made the payments under duress, testifying that Benlida "would not release purchase orders into the system" unless Circuitronix complied. (*Id.* at 540:23–541:3.) While the Court agrees with Circuitronix that this testimony certainly weighs in its favor, it is of little help in the context of a Rule 50 motion.

The primary hurdle Circuitronix faces as to Kukreja's testimony is that the jury could have simply chosen not to credit it. *Cleveland*, 369 F.3d 1189 at 1193 ("Credibility determinations . . . are jury functions, not those of a judge."); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court must disregard all evidence favorable to the moving party that the jury is *not required* to believe") (emphasis added). Circuitronix fails to address the fact that Kukreja was not a disinterested witness. Indeed, as Circuitronix's principal and main witness, he was quintessentially not disinterested. Thus, even if Kukreja's assessment of the impropriety of the premium demands was "uncontradicted and unimpeached," the Court cannot impose a credibility determination on the jury, taking the extraordinary step of requiring it to have believed his testimony. *Reeves*, 530 U.S. at 151 ("[T]he court should give credence to . . . that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from *disinterested* witnesses.") (cleaned up) (emphasis added). While the jury clearly appears to have believed much of Kukreja's testimony as to other matters, based on the verdict in Circuitronix's favor on much of its case, that doesn't mean the jury had to believe *all* of Kukreja's testimony: a jury is "not required to believe all or nothing of each side's case: it could accept parts of a witness's testimony and reject other parts of it." *Massey Yardley*, 117 F.3d

1244 at 1250; *see also* Jury Instr. at 3 (instructing the jury that it "may believe or disbelieve any witness, *in whole or in part.*") (emphasis added).)

Second, Kukreja's contention that Benlida's premium demands were "not allowed" by the contract and were without any "contractual basis" is a legal conclusion—not a fact. While perhaps one could argue that, since Benlida didn't object to the testimony, the jury *could have* afforded Kukreja's legal conclusions factual credence, Circuitronix has failed to point to any legal authority (and the Court is aware of none) that would *require* the jury to take Kukreja at his word on this point.

Third, Kukreja's testimony about the genesis of the premiums was arguably contradicted by other testimony. And so, not only was the jury free to discredit his testimony in the first place, but there is, in any event, conflicting testimony which could have further contributed the jury's decision to do so. According to Circuitronix, the only reasonable inference from Kukreja's testimony, or the trial evidence in general, is that Benlida improperly forced Circuitronix to pay premiums, threatening to withhold Circuitronix's orders if it didn't, and thereby increased the price of the orders in violation of the Manufacturing Agreement.

But other evidence in the trial could have led to another inference. For example, Huang testified that the premiums were being imposed by its credit insurer, Sinosure—a Chinese governmental agency. (Trial Tr. Vol. 6, 1518:24–1519:10, ECF No. 324, 41–2 (testifying that "tack[ing] on a premium charge" was "a Sinosure requirement").) Huang further testified that Sinosure, when evaluating Benlida's insurance risk, considered the operation of Circuitronix and a related company, Circuitronix (Hong Kong) Ltd. ("CTX-HK") operations together, as if something like a joint venture.[2] (*Id.* at 1601:22 – 1602:1.) Moreover, testimony throughout the trial, from both parties, established that the two companies, though separate entities, are nonetheless closely affiliated. (*E.g.*, Trial Tr. Vol. 3, 683:6–13, ECF No. 321, 60 (Kukreja acknowledging that CTX-HK is a "related company" and that volume discounts from Benlida were based, in part, on the two companies' combined orders).) Taken together, and if believed by the jury, this evidence could lead to the conclusion that Sinosure, for the purposes of evaluating Benlida's credit insurance, considered

---

[2] In its reply Circuitronix says that "the Court repeatedly instructed the jury that CTX-HK was not a part of the case." (Reply at 3.) Accordingly, Circuitronix argues, the Court should not consider how CTX-HK's debts, or even its existence, factor into this case in any way. This is not entirely accurate. Instead, the Court's orders and instructions focused on Circuitronix's lack of liability for paying CTX-HK's debts (in this case), not necessarily the existence of CTX-HK or the mere fact of its indebtedness to Benlida. Thus, the Court finds no bar to considering evidence establishing that CTX-HK's debts could have negatively impacted Circuitronix, as an affiliate, even if Circuitronix—again, in this case—could not be found vicariously liable for those debts.

Circuitronix and CTX-HK's credit profiles together, finding CTX-HK's poor credit history to taint Circuitronix's own risk profile simply by association. (*See* Trial Tr. Vol. 6 at 1601:22–1602:1 (Huang testifying that when Sinosure "looked at CTX," it looked at it as "if it's Circuitronix U.S. and Hong Kong," together).) This then would contradict Kukreja's testimony that implied the premiums were fabricated by Benlida just so that it could extract payments from Circuitronix to cover CTX-HK's debts. That is, the jury could have believed Huang's testimony that Sinosure truly had "canceled their credit limits," based on Benlida's reporting a late payment and that "if the buyer still want[ed] to do business with this customer, this customer cannot be in one part of the contract or protected under the insurance policy." (Trial Tr. Vol. 6 at 1602:5–9.) While not a model of clarity, the jury could certainly have interpreted this as, at a minimum, conflicting with Kukreja's version that the premium payments were just a ruse or the result of Benlida's conveying improper information to Sinosure. *See Reeves*, 530 U.S. at 150 (noting that, in reviewing the evidence on a motion for judgment as a matter of law, "the court must draw all reasonable inferences in favor of the nonmoving party").

In sum, then, the Court disagrees with Circuitronix's position that the jury was not at liberty to discredit Kukreja's testimony as to the premiums.

### B. The Undisputed Amount and Payment of the Premiums

The second part of Circuitronix's argument seems to be that the mere existence of the premium demands and Circuitronix's payment of them shows, inescapably, that Benlida breached the Manufacturing Agreement—specifically the pricing matrix and notice provisions. The Court is not convinced. While there is some evidence indicating that this may have been the case, the evidence could also allow a jury to conclude that Circuitronix agreed to pay the premium payments outside of the Manufacturing Agreement.

As Circuitronix itself points out, section 2.2 of the Manufacturing Agreement provides that the "pricing matrix will clearly state the assumptions which will constitute the base of the pricing including but not limited to laminate costs, copper price, gold price, silver price, RMB-US Dollar exchange rate and labor costs." (Circuitronix's Reply at 4 (quoting the Manufacturing Agreement).) But Circuitronix fails to supply any argument regarding or analysis of why this provision *necessarily* prohibits Benlida and Circuitronix from agreeing on the additional premium payments. What if Circuitronix agreed to make the payments to protect its own interest in having CTX-HK maintain its business relationship with Benlida? Circuitronix also fails to supply any justification for why the premium charge would necessarily implicate the "the base of the pricing" structure of the Manufacturing

Agreement if it was being required, as Huang testified and the jury could have believed, by a Chinese governmental entity. (Trial Tr. Vol 6 at 1518:24–1519:10 (Huang agreeing that "Sinosure told Benlida, 'We're going to charge some premiums and you need to pass those on to CTX-US'" and that the premiums were "a Sinosure requirement").) If Benlida had unilaterally increased, for example, the charge for copper, without the required notice, Circuitronix would have a stronger case. But, as the parties appear to agree, nothing in the Manufacturing Agreement specifically addresses this particular type of charge. (*E.g.*, Circuitronix's Reply at 4 ("The Manufacturing Agreement says nothing about any right of Benlida to charge CTX-US premiums on products.").) In short, the Court finds Circuitronix has failed to show that the evidence (that jury is required to believe) is so one sided that it would be impossible for the jury to infer that the premium payments, though perhaps improper, were not necessarily shown to be in breach of the Manufacturing agreement.

### C. Huang's Testimony Regarding the Manufacturing Agreement

And, finally, the third part of Circuitronix's argument is that, related to its first argument, Huang's testimony corroborates Kukreja thus preventing the jury from disbelieving his testimony. (Circuitronix's Mot. at 8.) While it is true there is no daylight between Huang and Kukreja's testimony as to the fact and amounts of the premiums, the Court disagrees that Huang's other testimony can only be interpreted as corroborating Kukreja's. For example, Huang's testimony that "the manufacturing agreement doesn't have any requirement for paying premiums," fails to bolster Kukreja's position that the contract prohibits such premiums: not requiring the premiums and specifically prohibiting them are entirely different propositions. Nor does Huang's testimony regarding the Manufacturing Agreement's notice provision necessarily align with Kukreja's testimony. While Huang acknowledged Benlida did not provide Circuitronix with four months' notice of the premium charges, as is required for price increases under the Manufacturing Agreement, she explained that this was "[b]ecause there's a big amount overdue payment pending, so all the premium is to cover the old debt." (Trial Tr. Vol. 6 at 1520:11–16.) This testimony is so ambiguous that it could easily cut in any number of ways. For example, had the jury found in Circuitronix's favor, and Benlida sought Rule 50 relief, the testimony could have been interpreted as an acknowledgement that Benlida breached the notice provision of the contract. However, the testimony could just as easily be interpreted as meaning that the premiums charged had nothing to do with the base pricing of the circuit boards under the contract's price matrix but, instead, were required if Circuitronix wanted to continue

doing business with Benlida—or wanted CTX-HK to be able to continue doing with business with Benlida—despite CTX-HK's old debt.

Ultimately, the Court disagrees with Circuitronix that Huang's testimony bolstered Kukreja's such that the jury would have no choice but to believe him.

### D. The Sum of the Evidence

While the evidence Circuitronix points to, taken together, would likely have been sufficient to ward off a Rule 50 motion from Benlida, had Circuitronix prevailed on the premium issue, it falls short of the exacting standard that Circuitronix, as the party with the burden of proof, must meet. *See OneSource Facility Services, Inc. v. Mosbach*, 205CV525FTM34DNF, 2008 WL 11430040, at *4 (M.D. Fla. Nov. 18, 2008) ("[W]hen the movant has the burden of proof on the claim or claims for which it seeks judgment as a matter of law, the movant must satisfy an exacting standard.") As set forth above, the evidence is not, as Circuitronix urges, "so one-sided," in Circuitronix's favor, "as to be of overwhelming effect," thus warranting judgment in its favor as a matter of law. (Circuitronix's Mot. at 8.) Missing from Circuitronix's assessment is any argument regarding the absence of some legally sufficient evidentiary basis for the jury to have reached any other conclusions—conclusions that would warrant finding in Benlida's favor.

In order to prevail (as set forth in the Court's instructions to the jury), Circuitronix has to show that, based on the evidence, there was no legally sufficient basis for the jury to conclude anything other than that "the contract prohibited" Benlida from charging the premiums to Circuitronix, that the "prohibition" against charging those premiums "was essential to the contract," and that Circuitronix was damaged by Benlida's prohibited conduct. (Jury Instr. at 8.) Circuitronix, in its motion, fails to specify what testimony it believes satisfies each element. Indeed, Circuitronix never mentions the jury instructions at all. Instead, Circuitronix marshals the evidence that fell in its favor, or that could be interpreted to have fallen in its favor, and relies on the volume of that evidence, and its own interpretation of that evidence, to show that it was of "overwhelming effect." But that is not the standard. While courts evaluating a Rule 50 motion are to certainly "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party," in doing so, they are to "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151. The Court finds Circuitronix fails to establish that the jury was required to believe the evidence Circuitronix relies on to warrant judgment as a matter of law on the premiums issue. Because of this, the Court also concludes Circuitronix has fallen short of convincing the Court to take the exceptional step of removing

credibility determinations and legitimate inferences away from the jury's purview, compelling it to find in favor of the party bearing the burden of proof. Simply put, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, 05-21113-CIV, 2007 WL 3232274, at *18 (S.D. Fla. Oct. 31, 2007) (Torres, Mag. J.) (quoting *Narcisse v. Illinois Cent. Gulf R. Co.,* 620 F.2d 544, 548 (5th Cir.1980)). While the conclusions Circuitronix says the jury could have or should have drawn from the evidence may be reasonable, Circuitronix fails to establish they are inescapable.

### 4. Conclusion

For the reasons set forth above, the Court finds there was a sufficient evidentiary basis for the jury to find in Benlida's favor on the premiums issue. Accordingly, the Court **denies** Circuitronix's renewed motion for judgment as a matter of law. (**ECF No. 326**.)

**Done and ordered** in Miami, Florida, on April 12, 2024.

_____
Robert N. Scola, Jr.
United States District Judge